## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC., and<br>BRUCE KIRBY<br><br>       Plaintiffs,<br><br>       vs.<br><br>LASERPERFORMANCE (EUROPE) LIMITED,<br>QUARTER MOON, INCORPORATED,<br>KARAYA (JERSEY) LIMITED,<br>INTERNATIONAL SAILING FEDERATION<br>LIMITED,<br>INTERNATIONAL LASER CLASS<br>ASSOCIATION, and<br>FARZAD RASTEGAR<br><br>       Defendants. | Civil Action No.<br><br>JURY TRIAL<br>DEMANDED |

### COMPLAINT FOR COUNTERFEITING, DEFAULT OF CONTRACT, INDUCEMENT TO DEFAULT CONTRACT, TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, FALSE DESIGNATION OF ORIGIN AND <u>MISAPPROPRIATION OF PUBLICITY RIGHTS</u>

BRUCE KIRBY, INC. and BRUCE KIRBY (collectively "Kirby") bring this action

against LASERPERFORMANCE (EUROPE) LIMITED, QUARTER MOON,

INCORPORATED, KARAYA (JERSEY) LIMITED (collectively "Laser Performance"), the

INTERNATIONAL SAILING FEDERATION LIMITED ("ISAF"), INTERNATIONAL

LASER CLASS ASSOCIATION ("ILCA"), and FARZAD RASTEGAR ("Rastegar") and

complains and alleges as follows:

## Introduction

This case concerns the production, sale, and racing of sailboats designed and sold by Bruce Kirby since about 1970.

In order to establish the Kirby sailboat design as a standard class for international racing, Kirby reached agreements with the various sailboat builders who held rights to the Laser name as well as the international governing bodies that regulate competitive sailing.  Under the terms of these agreements, the builders paid a royalty to Kirby and received the right to manufacture boats according to the Kirby sailboat design and uniform Construction Manual and to affix a plaque on the hull of each boat featuring Bruce Kirby's name and trademark, and a unique hull/sail number.

The plaque confirms that the boat was built according to the Kirby sailboat design and is authorized by Bruce Kirby.  Only those boats manufactured under the various builder agreements and bearing the appropriate plaque were entitled to race in events sanctioned by the international governing bodies.

This system worked to the mutual benefit of the builders, the governing bodies, Kirby, and sailors worldwide for over 20 years until certain builders decided to breach their agreements by, among other things, ceasing royalty payments and transferring their rights without notice or consent of Kirby.  Notwithstanding their breach, these builders continue using both the Kirby sailboat design and the Bruce Kirby name and trademark.

The governing bodies named in this complaint compound this breach by continuing to issue hull plaques featuring the Bruce Kirby name and trademark, as well as a unique hull/sail number even though the boats were no longer made under Kirby's authorization. As a result, boats currently distributed in interstate commerce and in Connecticut are counterfeit, and violate

Kirby's trademark and publicity rights.  Kirby sues for default of contract as well as counterfeiting, trademark infringement, unfair competition, false designation of origin, inducement to default on contract, and right of publicity under federal and state law.

### Jurisdiction and Venue

1.      This is a civil action arising under the trademark laws of the United States, Title 15, U.S.C. Sections 1051 et seq., as amended (hereinafter the "Lanham Act"), 1114 and 1125. This Court has subject matter jurisdiction pursuant to 15 U.S.C. Sections 1121, and 28 U.S.C. Sections 1331, 1338, and 1367(a) because this Complaint raises federal questions under the Lanham Act, and it involves state causes of action, including claims of unfair competition, misappropriation of publicity rights, default of contract, and inducement to default contract.

2.      Personal jurisdiction over Defendants is vested in the United States District Court for the District of Connecticut pursuant to Conn. Gen. Stat. § 52-59b.  Upon information and belief, Defendants conduct business in Connecticut and their acts within or directed toward Connecticut have caused injury to Kirby in Connecticut.  On information and belief, Defendants actively promote and sell their products and services in Connecticut, have advertised in Connecticut, and have used the marks described herein in Connecticut, have used the marks in electronic form available in Connecticut, have delivered publications bearing the infringing marks to persons located in Connecticut, and/or have intentionally acted in a manner to cause injury in Connecticut.  Furthermore, Quarter Moon, LP Europe, Rastegar, ILCA, and ISAF have had direct business dealings with Kirby in Connecticut.

3.      Venue is proper under 28 U.S.C. § 1391(b) because the claim arose in this district and under 28 U.S.C. § 1391(c).

**The Parties**

4.      Plaintiff Bruce Kirby, Inc. ("BKI") is a Connecticut corporation having a place of business at 213 Rowayton Avenue, Rowayton, CT  06853.

5.      Plaintiff Bruce Kirby is an individual residing at 213 Rowayton Avenue, Rowayton, Connecticut, United States of America 06853.

6.      Defendant LaserPerformance (Europe) Limited ("LP Europe"), on information and belief, is incorporated in England and Wales, having a place of business at StationWorks, Long Buckby, Northampton, NN6 7PF, England, United Kingdom.  On information and belief, LP Europe has regularly conducted business in Connecticut, at least by making royalty payments to Kirby.

7.      Defendant Quarter Moon, Incorporated ("Quarter Moon"), on information and belief, is a Rhode Island Corporation having a place of business at 200 Highpoint Avenue, Portsmouth, Rhode Island 02871.  On information and belief, Quarter Moon has regularly conducted business in Connecticut by selling boats and parts throughout the state, and paying royalties to Kirby.

8.      Defendant Karaya (Jersey) Limited ("Karaya"), on information and belief, is a Channel Island company with an address of 14 Conway Street, St. Helier, Jersey, Channel Islands.  On information and belief, Karaya has regularly conducted business in Connecticut by licensing its LASER trademarks to Quarter Moon for use on Kirby Sailboats sold throughout Connecticut.

9.      LP Europe, Quarter Moon, and Karaya will hereinafter be collectively referred to as "Laser Performance".

10.     Defendant Farzad Rastegar ("Rastegar") is an individual having residence at 30 Broad Street, Weston, Connecticut, United States.  Upon information and belief, Rastegar owns and/or controls Laser Performance, and has places of business in Connecticut at 25 Van Zant Street, Norwalk, CT 06855; 125 Main Street, Westport, CT 06880; and 4 Testa Place, Norwalk, CT 06854.

11.     On information and belief, ISAF is an Isle of Man company.  The records of the government of the Isle of Man indicate the incorporation address of ISAF is 69 Athol Street, Douglas, Isle of Man IM1 1JE.  ISAF's website indicates a registered business address at 4 Upper Church Street, Douglas, Isle of Man IM1 1EE.  On information and belief, ISAF regularly conducts business in Connecticut and throughout the United States by issuing plaques placed on boats entering Connecticut and the stream of interstate commerce in the United States.

12.     On information and belief, ILCA is a British organization having a mailing address of PO Box 26, Falmouth, Cornwall, United Kingdom TR11 3TN. On information and belief, ILCA regularly conducts business in Connecticut, and throughout the United States by issuing plaques placed on Kirby Sailboats entering Connecticut and the stream of interstate commerce in the United States, and by sending reports of issued plaques to Kirby.

**Background**

13.     Kirby is the designer of a 13 foot 10 ½ inch sailboat herein referred to as the "Kirby Sailboat" as depicted on Exhibit 1 attached.  The methods and materials for manufacturing an official Kirby Sailboat are contained in a confidential document hereinafter referred to as the "Construction Manual".

14.     Plaintiff Bruce Kirby is a widely recognized figure in the sailing community, both in the United States and throughout the world.

5

15.    BKI is the owner of U.S. Trademark Registration No. 3532451 for the mark BRUCE KIRBY® for use in connection with "Boats."  A copy of U.S. Trademark Registration No. 3532451 is attached as Exhibit 2.

16.    BKI and its affiliates by themselves and through predecessors in interest have been using the BRUCE KIRBY® trademark in connection with boats since at least as early as July 1983.

17.    BKI has actively promoted the BRUCE KIRBY® trademark and associated it with sophisticated, high-quality boats.

18.    BKI's use of the BRUCE KIRBY® trademark in Connecticut, the United States, and throughout the world has made the BRUCE KIRBY® trademark famous and strong, symbolizing and identifying the high-quality services and products provided by BKI.

## ISAF Agreement

19.    On or about November 30, 1983, BKI and Bruce Kirby entered into an Agreement ("ISAF Agreement") with Performance Sailcraft, Inc., Laser International Holdings Limited, ILCA, and the International Yacht Racing Union ("IYRU"), copy attached as Exhibit 3.

20.    The ISAF Agreement governed the production, distribution, and management of Kirby Sailboats approved for officially sanctioned sailboat races worldwide.   Section "Agreement 1" specifies that all authorized builders of Kirby Sailboats must have a license from Kirby.

21.    Section 5.1 of the ISAF Agreement stipulates that all Kirby Sailboats must be built in accordance with the Construction Manual to receive accreditation from the IYRU. Section 5.1 further stipulates that all parties agree that all Kirby Sailboats shall be manufactured in accordance with the highest possible degree of uniformity in every respect.

22.     Upon information and belief, ISAF is the successor in interest to the rights and obligations of the IYRU under the ISAF Agreement.

## **1983 Builder Agreement**

23.     On or about July 11, 1983, Kirby entered into a License Agreement ("1983 Builder Agreement") with Brook Shaw Motor Services Ltd. ("Brook Shaw"), a copy is attached as Exhibit 4.

24.     The 1983 Builder Agreement established Brook Shaw as the licensed builder of Kirby Sailboats in Europe and elsewhere.

25.     Upon information and belief, Performance Sailcraft Europe Limited ("PSE") succeeded to all of Brook Shaw's rights and obligations under the 1983 Builder Agreement on or about August 30, 1995 pursuant to a written amendment between PSE and Kirby, a copy of which is attached as Exhibit 5.

26.     On or about May 3, 2005, Kirby and PSE entered an Amendment to the 1983 Builder Agreement a copy of which is attached as Exhibit 6.

27.     On or about June 16, 2005, Kirby and PSE entered into an Amendment to the 1983 Builder Agreement a copy of which is attached as Exhibit 7.

28.     On information and belief, LP Europe is currently building Kirby Sailboats under a claim of authorization from the 1983 Builder Agreement and its Amendments.

29.     Kirby has not received any notice of change of name from PSE or its successor as required by article 13.2 of the 1983 Builder Agreement.

30.     Kirby has not granted or been asked to grant prior written permission for PSE to assign its rights and obligations under the 1983 Builder Agreement as required by article 11.2.

31.     Since at least about January 2011, Kirby has not received any royalty payments under the 1983 Builder Agreement as required by article 8.

32.     On information and belief, Rastegar caused and directed the events alleged in paragraphs 28-30.

## 1989 Builders Agreement

33.     On or about March 31, 1989, Kirby entered into a License Agreement ("1989 Builder Agreement") with PY Small Boat, Inc. ("PYSBI"), a copy of which is attached as Exhibit 8.

34.     The 1989 Builder Agreement establishes PYSBI as the licensed builder of Kirby Boats in North America and elsewhere.

35.     Upon information and belief, in or about 1991, Sunfish/Laser, Inc. succeeded to all of PYSBI's rights and obligations under the 1989 Builder Agreement.

36.     On or about March 25, 1997, Kirby and Sunfish/Laser, Inc. entered into an Amendment and Quarter Moon, Inc d/b/a Vanguard Racing Sailboats ("QM Vanguard"), succeeded to all Sunfish/Laser, Inc.'s rights and obligations in and to the 1989 Builder Agreement and the ISAF Agreement, copies of which are attached as Exhibit 9.

37.     On information and belief, Quarter Moon is currently building Kirby Sailboats under a claim of authorization from the 1989 Builder Agreement.

38.     On information and belief, Quarter Moon and Karaya are both owned and/or controlled by Rastegar and are cooperating to manufacture and sell unauthorized Kirby Sailboats and transfer the proceeds offshore in lieu of paying royalties to Kirby.

39.     Kirby has not received any notice of change of name from QM Vanguard or its successor as required by article 14.2 of the 1989 Builder Agreement.

40.     Kirby has not granted or been asked to grant prior written permission for QM Vanguard to assign its rights and obligations under the 1989 Builder Agreement as required by article 11.2.

41.     Since at least about January 2011, Kirby has not received any royalty payments under the 1989 Builder Agreement as required by article 8.

42.     On information and belief, Rastegar caused and directed the events alleged in paragraphs 36-40.

## LASER Trademark

43.     The records of the United States Patent and Trademark Office indicate that the current owner of the LASER trademark in the United States is Karaya (Jersey) Limited, with an address of 14 Conway Street, St. Helier, Jersey, Channel Islands.  Copies of the LASER trademark registrations are attached as Exhibit 10.

44.     The records of the United States Patent and Trademark Office indicate that Karaya's current domestic representative for the LASER trademarks is Ilan Nordmann, DORY VENTURES, c/o Mr. Thomas von Urbisch, 25 Van Zant Street, Norwalk, CT 06855, and that Karaya's current correspondence address for the LASER trademarks is Thomas von Urbisch, 41 Boulevard d'Italie, Monte-Carlo, Monaco 98000.

45.     The records of the United Kingdom Intellectual Property Office indicate that the current owner of the LASER trademark in the United Kingdom is Velum Limited ITM SA (Antigua and Barbuda), with an office at 17 rue du Cendrier, PO Box 1699 CH-1211 Geneva 1, Switzerland.

46.     On information and belief, Rastegar owns and/or controls both Karaya (Jersey) Limited and Velum Limited ITM SA.

47.     As authorized builders under respectively under the 1983 and 1989 Builder Agreements, PSE and QM Vanguard are required to own or have a license to use the trademark LASER in their territory on Kirby Sailboats, according to article 11 of each Builder Agreements and section "Agreement 1" of the ISAF Agreement.


## Termination of the 1989 Builder Agreement

48.     On or about July 17, 2012, Kirby gave written notice to Quarter Moon/QM Vanguard of  default under the 1989 Builder Agreement pursuant to article 10.2 for nonpayment of royalties pursuant to article 10.1 e), a copy of which is attached as Exhibit 11.

49.     On or about October 11, 2012, Kirby gave written notice to Quarter Moon/QM Vanguard of termination of the 1989 Builder Agreement pursuant to article 10.2 due to failure to cure the default for non payment of royalties pursuant to article 10.2, a copy of which is attached as Exhibit 12.

50.     On information and belief, the failure of Quarter Moon/QM Vanguard to pay royalties to Kirby under the 1989 Builder Agreement, and the failure to cure the nonpayment was caused and directed by Rastegar.

51.     Quarter Moon/QM Vanguard have continued to manufacture Kirby Sailboats following termination of the 1989 Builder Agreement in violation of article 10.9.

52.     Quarter Moon/QM Vanguard have continued to use the Construction Manual following termination of the 1989 Builder Agreement in violation of article 10.9.

53.     Quarter Moon/QM Vanguard have continued to use the production tooling following termination of the 1989 Builder Agreement in violation of article 10.9.

54.     Quarter Moon/QM Vanguard have continued to use the molds following termination of the 1989 Builder Agreement in violation of article 10.9.

55.     Quarter Moon/QM Vanguard have continued to use the plugs following termination of the 1989 Builder Agreement in violation of article 10.9.

56.     Quarter Moon/QM Vanguard have continued to use the design of the Kirby Sailboat following termination of the 1989 Builder Agreement in violation of article 10.9.

57.     On information and belief, Rastegar has caused and directed the actions of Quarter Moon/QM Vanguard as alleged in paragraphs 50-55.


**Termination of the 1983 Builder Agreement**

58.     On or about October 11 and November 15, 2012, Kirby gave written notice to PSE/LP Europe of default under the 1983 Builder Agreement pursuant to article 10.2 for nonpayment of royalties pursuant to article 10.1 e), a copy of which is attached as Exhibit 13.

59.     On or about November 15, 2012 and March 1, 2013, Kirby gave written notice to PSE/LP Europe of termination of the 1983 Builder Agreement pursuant to article 10.2 due to failure to cure the default for non payment of royalties pursuant to article 10.2, a copy of which is attached as Exhibit 14.

60.     On information and belief, the failure to pay royalties to Kirby under the 1983 Builder Agreement, and the failure to cure the nonpayment was caused and directed by Rastegar.

61.     PSE/LP Europe have continued to manufacture Kirby Sailboats following termination of the 1983 Builder Agreement in violation of article 10.9.

62.     PSE/LP Europe have continued to use the production tooling following termination of the 1983 Builder Agreement in violation of article 10.9.

63.     PSE/LP Europe have continued to use the molds following termination of the 1983 Builder Agreement in violation of article 10.9.

64.     PSE/LP Europe have continued to use the plugs following termination of the 1983 Builder Agreement in violation of article 10.9.

65.     PSE/LP Europe have failed to negotiate the sale of "all plugs, moulds and tooling" used to make the Kirby Sailboat following termination of the 1983 Builder Agreement in violation of article 10.8.

66.     On information and belief, Rastegar has caused and directed the actions of PSE/LP Europe as alleged in paragraphs 60-64.


**Issuance of ISAF Plaques to Terminated Builders**

67.     On or about October 11, 2012, Kirby notified ILCA that Kirby had terminated the 1989 Builder Agreement and that ILCA should not issue ISAF Plaques to Quarter Moon/QM Vanguard or any other entity claiming to have North American rights to build Kirby Sailboats, a copy of which is attached as Exhibit 15.

68.     Subsequent to October 11, 2012, Kirby notified both ILCA and ISAF that Kirby had terminated both the 1983 and 1989 Builder Agreements, and that neither ISAF nor ILCA should issue ISAF Plaques to Quarter Moon/QM Vanguard, or PSE/LP Europe, or any entity claiming rights to build Kirby Sailboats in North America or Europe.

69.     Attached as Exhibit 16 is a sample ISAF Plaque that includes a Hull Number/Sail Number, and includes the trademark BRUCE KIRBY, and when placed on a Kirby Sailboat purports to notify a purchaser/user that the boat is royalty paid and authorized by Kirby.

70.     Article 6.1 of both the 1983 and 1989 Builder Agreements give Kirby the right to issue and assign Hull Numbers/Sail Numbers for use to build and sell Kirby Sailboats.

71.     Article 6.2 of both the 1983 and 1989 Builder Agreements give Kirby the right to refuse to issue Hull Numbers/Sail Numbers to any builder that owes and has not paid royalties to Kirby.

72.     Article 6.3 of both the 1983 and 1989 Builder Agreements give Kirby the right to designate an agent to issue and assign Hull Numbers/Sail Numbers.

73.     Notwithstanding the notification provided by Kirby to ISAF and ILCA as set out in paragraphs 66-67, ISAF and ILCA have continued to issue ISAF Plaques to terminated builder Quarter Moon/QM Vanguard, as evidenced by a copy of the shipping notification attached as Exhibit 17.

74.     ISAF and ILCA have told Kirby that they will continue to issue ISAF Plaques to terminated builders Quarter Moon/QM Vanguard and PSE/LP Europe until a court tells ILCA and ISAF not to issue plaques or tells the terminated builders not to make and sell Kirby Sailboats.

75.     On information and belief, Rastegar has encouraged ISAF and ILCA to continue to issue ISAF Plaques to terminated builders, interfering with Kirby's rights under the 1983 and 1989 Builder Agreements.

**CLAIM I**
**Counterfeiting Of The Kirby Sailboat**

76.     Kirby repeats the allegations contained in Paragraphs 1-75.

77.     Terminated builder Quarter Moon/QM Vanguard, together with ISAF Plaque suppliers ISAF and ILCA, and LASER trademark owner Karaya, continue to manufacture and

sell counterfeit Kirby Sailboats with ISAF Plaques bearing the federally registered BRUCE KIRBY trademark in Connecticut and in interstate commerce.

78.     The counterfeit Kirby Sailboats made by the terminated builder are substantially identical to authentic, royalty paid and authorized Kirby Sailboats, bear the identical ISAF Plaque provided by ILCA and ISAF which features the federally registered BRUCE KIRBY trademark and the LASER trademark, and therefore deceive the public into believing the counterfeit Kirby Sailboats originate from, are associated with, or are otherwise authorized by Kirby, in violation of 15 U.S.C. § 1114.

79.     Use of the federally registered BRUCE KIRBY trademark by Quarter Moon/QM Vanguard, ISAF, ILCA and Karaya in the manner described in paragraph 77 is likely to cause confusion, mistake and deception as to the origin of the counterfeit Kirby Sailboats.

80.     Kirby has no control over the nature and quality of the counterfeit Kirby Sailboats.

81.     Counterfeiting of the Kirby Sailboat by Quarter Moon/QM Vanguard, ISAF, ILCA and Karaya is willful and intentional, warranting an award of enhanced damages, statutory damages and attorney fees under 15 U.S.C. § 1117.

82.     Kirby has no adequate remedy at law and continues to suffer irreparable harm as a result of the counterfeiting of Kirby Sailboats by Quarter Moon/QM Vanguard, ISAF, ILCA and Karaya.

83.     On information and belief, Rastegar directs and controls the counterfeiting by Quarter Moon/QM Vanguard and Karaya, and encourages the counterfeiting by ISAF and ILCA.

## CLAIM II
### Infringement of BRUCE KIRBY Trademark,
### Unfair Competition And False Designation Of Origin

84.     Kirby repeats the allegations contained in Paragraphs 1-83.

85.     Terminated builder Quarter Moon/QM Vanguard, together with ISAF Plaque

suppliers ISAF and ILCA, and LASER trademark owner Karaya, continue to manufacture and

sell Kirby Sailboats with ISAF Plaques bearing the federally registered BRUCE KIRBY

trademark in Connecticut and in interstate commerce.

86.     The unauthorized Kirby Sailboats made by the terminated builder are

substantially identical to authentic royalty paid and authorized Kirby Sailboats, bear the identical

ISAF Plaque provided by ILCA and ISAF which features the federally registered BRUCE

KIRBY trademark and the LASER trademark, and are likely to cause confusion, mistake and

deception as to their origin, in violation of 15 U.S.C. § 1114.

87.     Kirby has no control over the nature and quality of the unauthorized Kirby

Sailboats.

88.     Infringement of the federally registered BRUCE KIRBY trademark by Quarter

Moon/QM Vanguard, ISAF, ILCA and Karaya is willful and intentional, warranting an award of

attorney fees under 15 U.S.C. § 1117.

89.     Kirby has no adequate remedy at law and continues to suffer irreparable harm as a

result of the unauthorized manufacture of Kirby Sailboats by Quarter Moon/QM Vanguard,

ISAF, ILCA and Karaya.

90.     On information and belief, Rastegar directs and controls the trademark

infringement, unfair competition and false designation of origin by Quarter Moon/QM Vanguard

and Karaya, and encourages the trademark infringement, unfair competition and false designation of origin by ISAF and ILCA.

## CLAIM III
### Unfair Competition Under The Connecticut Unfair Trade Practices Act

91.     Kirby repeats the allegations contained in Paragraphs 1-90.

92.     The acts of Quarter Moon/QM Vanguard, ISAF, ILCA and Karaya that are in violation of 15 U.S.C. § 1114 also violate of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, resulting in damage and ascertainable loss to Kirby.

93.     By continuing to issue ISAF Plaques to and permit use of the LASER trademark by terminated builders Quarter Moon/QM Vanguard and PSE/LP Europe, ISAF, ILCA and Karaya have tortiously interfered with Kirby's rights under the Builder Agreements by encouraging and enabling the terminated builders to continue to manufacture and sell unauthorized and counterfeit Kirby Sailboats, depriving Kirby of royalties in their territories.

94.     ISAF, ILCA and Karaya's tortious interference with Kirby's Builder Agreements constitutes unfair competition under the Connecticut Unfair Trade Practices Act.

95.     On information and belief, the complained of activities were undertaken by ILCA, ISAF and Karaya in disregard of Kirby's rights and the law, and will continue to cause damage and irreparable harm to Kirby who has no adequate remedy at law.

96.     Kirby is entitled to punitive damages and attorney fees in accordance with Conn. Gen. Statue 42-110g.

97.     On information and belief, Rastegar directs and controls the trademark infringement, unfair competition and false designation of origin by Quarter Moon/QM Vanguard

and Karaya, and encourages the trademark infringement, unfair competition and false

designation of origin by ISAF and ILCA.

## CLAIM IV
### Misappropriation of Bruce Kirby's Publicity Rights

98.     Kirby repeats the allegations contained in Paragraphs 1-97.

99.     Bruce Kirby is a widely recognized figure in the sailing community, both in the

United States and throughout the world.

100.     Bruce Kirby owns the publicity rights to his name, Bruce Kirby.

101.     ISAF and ILCA have used Bruce Kirby's name without authorization on the ISAF

Plaques.

102.     Quarter Moon/QM Vanguard and Karaya have cooperated to use Bruce Kirby's

name without authorization by affixing ISAF Plaques on unauthorized Kirby Sailboats.

103.     On information and belief, Rastegar directs and controls Quarter Moon/QM

Vanguard and Karaya's unauthorized use of Bruce Kirby's name and encourages ISAF and

ILCA's unauthorized use of Bruce Kirby's name.

104.     The unauthorized use of Bruce Kirby's name on the ISAF Plaques and on

unauthorized Kirby Sailboats is likely to cause damage to the commercial value of Bruce Kirby's

persona because it falsely implies that the unauthorized Kirby Sailboats are in fact authorized,

sponsored, or approved by Bruce Kirby.

105.     Bruce Kirby has suffered and will continue to suffer irreparable harm as a result

of such misappropriation of his publicity rights and has no adequate remedy at law.

## CLAIM V
### Default of 1983 Builder Agreement

106.     Kirby repeats the allegations contained in Paragraphs 1-105.

107.    PSE/LP Europe is in default of the 1983 Builder Agreement under article 10.1 e) for failure to pay the royalties due Kirby under article 8, and is in default of the 1983 Builder Agreement under article 10.1 d) for failure to provide written reports on the number of Kirby Sailboats sold under article 7.

108.    On information and belief, PSE/LP Europe is in default of the 1983 Builder Agreement under article 13.2 for failure to provide notice of change of name.

109.    On information and belief, PSE/LP Europe is in default of the 1983 Builder Agreement under article 11.2 for failure to seek or obtain prior written consent to assign the rights and obligations under the Agreement.

110.    PSE/LP Europe is in default of their post-termination obligations under articles 10.7, 10.8 and 10.9 of the 1983 Agreement.

111.    On information and belief, Rastegar directs and controls PSE/LP Europe's default of the 1983 Builder Agreement.

112.    PSE/LP Europe's defaults of the 1983 Builder Agreement are intentional.  They have and will continue to cause damage and irreparable harm to Kirby who has no adequate remedy at law.

## CLAIM VI
### Default of 1989 Builder Agreement

113.    Kirby repeats the allegations contained in Paragraphs 1-112.

114.    Quarter Moon/QM Vanguard is in default of the 1989 Builder Agreement under article 10.1 e) for failure to pay the royalties due Kirby under article 8, and is in default of the 1989 Builder Agreement under article 10.1 d) for failure to provide written reports on the number of Kirby Sailboats sold under article 7.

115.    On information and belief, Quarter Moon/QM Vanguard is in default of the 1989 Builder Agreement under article 14.2 for failure to provide notice of change of name.

116.    On information and belief, Quarter Moon/QM Vanguard is in default of the 1989 Builder Agreement under article 11.2 for failure to seek or obtain prior written consent to assign the rights and obligations under the Agreement.

117.    Quarter Moon/QM Vanguard is in default of their post-termination obligations under articles 10.7 and 10.9 of the 1989 Agreement.

118.    On information and belief, Rastegar directs and controls Quarter Moon/QM Vanguard's default of the 1989 Builder Agreement.

119.    Quarter Moon/QM Vanguard's defaults of the 1989 Builder Agreement are intentional.  They have and will continue to cause damage and irreparable harm to Kirby who has no adequate remedy at law.

## CLAIM VI
## Inducement To Default The Builder Agreements

120.    Kirby repeats the allegations contained in Paragraphs 1-119.

121.    ISAF and ILCA have continued to issue ISAF Plaques to Quarter Moon/QM Vanguard and PSE/LP Europe after they stopped paying royalties and providing written reports of their sales to Kirby.  As a result, Quarter Moon/QM Vanguard and PSE/LP Europe were able to manufacture and sell unauthorized Kirby Sailboats bearing ISAF Plaques without fulfilling their obligations to Kirby under the 1983 and 1989 Builder Agreements.  ISAF and ILCA's actions induced Quarter Moon/QM Vanguard and PSE/LP Europe to default on those Agreements.

122.    As a result of Quarter Moon/QM Vanguard and PSE/LP Europe's failure to pay royalties or provide written reports, Kirby notified them of their default and subsequently terminated the 1983 and 1989 Builder Agreements.

123.    Subsequent to termination, ILCA and ISAF have continued to issue ISAF Plaques to the terminated builders.  As a result, the terminated builders have been able to continue to manufacture and sell unauthorized Kirby Sailboats, in violation of the termination provisions of the 1983 and 1989 Builder Agreements.  ISAF and ILCA's actions induced Quarter Moon/QM Vanguard and PSE/LP Europe to default on the termination provisions of the 1983 and 1989 Builder Agreements.

124.    Upon information and belief, ISAF and ILCA's inducement of PSE/LP Europe and Quarter Moon/QM Vanguard's to default on the Builder Agreements was intentional.

125.    The induced default of the 1983 and 1989 Builder Agreements have materially damaged Kirby for at least the reason that they have deprived him of royalties, interest, and post-termination rights to which he is entitled.

126.    Kirby has suffered and will continue to suffer irreparable harm as a result of the induced default of the 1983 and 1989 Builder Agreements and has no adequate remedy at law.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all claims and issues so triable.

## PRAYERS FOR RELIEF

WHEREFORE, Plaintiffs pray that judgment be entered against the Defendants as follows:

A.    That Quarter Moon/QM Vanguard immediately pay Kirby for all unpaid past royalties, plus interest pursuant to Article 8.3 of the 1989 Builder Agreement;

B.      That PSE/LP Europe immediately pay Kirby for all unpaid past royalties, plus interest pursuant to Article 8.3 of the 1983 Builder Agreement;

C.      That ILCA and ISAF, their officers, members, managers, affiliates, agents, employees, servants, representatives, and all persons acting under or in concert with them, be preliminarily and permanently enjoined from issuing ISAF Plaques to any entity not explicitly authorized by Kirby, including but not limited to the other named Defendants and their officers, members, managers, affiliates, agents, employees, servants, representatives, and all persons acting under or in concert with them;

D.      That Defendants, their affiliates, agents, employees, servants, representatives, and all persons acting under or in concert with them, be preliminary and permanently enjoined from manufacturing Kirby Sailboats;

E.      That Defendants immediately forfeit and return to Kirby all copies of the Construction Manual, along with all production tooling, moulds, and plugs associated with the manufacture of Kirby Sailboats;

F.      That Defendants, their officers, members, managers, affiliates, agents, employees, servants, representatives, and all persons acting under or in concert with them, be preliminarily and permanently enjoined from using, in conjunction with any goods or services, the mark "BRUCE KIRBY®" or any other mark, word or name confusingly similar to or including the mark "BRUCE KIRBY®" without prior written authorization;

G.      That Defendants, their officers, members, managers, affiliates, agents, employees, servants, representatives, and all persons acting under or in concert with them, be preliminarily and permanently enjoined from using, in conjunction with any goods or services, Bruce Kirby's name "BRUCE KIRBY" without prior written authorization;

21

H.      That Defendants, their officers, members, managers, affiliates, agents, employees, servants, representatives, and all persons acting under or in concert with them, be required to forfeit to Kirby all ISAF plaques in their possession;

I.      That Defendants be required to account for and pay to Kirby all profits derived as a result of the activities complained of herein;

J.      That Defendants be required to pay to Kirby statutory damages sustained as a result of the activities complained of herein;

K.      That Defendants be required to pay enhanced damages due to its willful unlawful acts;

L.      That Defendants be required to pay heightened statutory damages for willful counterfeit of the BRUCE KIRBY® trademark;

M.      That Defendants be required to pay costs and attorney fees and prejudgment interest at the statutory rate; and

N.      Such other and further relief as this Court deems just and proper.

Respectfully submitted,


March 4, 2013                                     /s/ Wesley W. Whitmyer, Jr._____
                                                 Wesley W. Whitmyer, Jr., ct03509
                                                 Andy I. Corea, ct25925
                                                 Brian L. Repper, ct28225
                                                 ST. ONGE STEWARD JOHNSTON & REENS LLC
                                                 986 Bedford Street
                                                 Stamford, Connecticut  06905-5619
                                                 Telephone: (203) 324-6155
                                                 Facsimile: (203) 327-1096
                                                 Email:  litigation@ssjr.com

                                                 ATTORNEYS FOR PLAINTIFFS