## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X

BRUCE KIRBY, INC., and
BRUCE KIRBY,                        :   Civil Action No. 3:13-cv-00297 (RNC)

                 Plaintiffs,      :

           - against -           :

LASERPERFORMANCE (EUROPE) LIMITED,   :   **ANSWER AND COUNTERCLAIMS OF**
QUARTER MOON, INCORPORATED,          :   **DEFENDANTS LASERPERFORMANCE**
KARAYA (JERSEY) LIMITED,             :   **(EUROPE) LIMITED AND**
VELUM LIMITED ITM SA (ANTIGUA AND    :   **QUARTER MOON, INCORPORATED**
   BARBUDA),                         :
INTERNATIONAL SAILING FEDERATION     :
   LIMITED                           :
INTERNATIONAL LASER CLASS            :
   ASSOCIATION, and                  :
FARZAD RASTEGAR,                     :
                     :
              Defendants.   :

-----------------------------------------------------------------X

LASERPERFORMANCE (EUROPE) LIMITED, and   :
QUARTER MOON, INCORPORATED,               :

    Defendants-Counterclaim Plaintiffs,   :

        - against -           :

BRUCE KIRBY, INC., and                    :
BRUCE KIRBY,                              :

    Plaintiffs-Counterclaim Defendants,   :

        and               :

GLOBAL SAILING LIMITED, and               :
PERFORMANCE SAILCRAFT PTY. LTD.,          :

    Additional Counterclaim Defendants.   :

-----------------------------------------------------------------X

Defendants LaserPerformance (Europe) Limited ("LaserPerformance") and

Quarter Moon, Incorporated ("Quarter Moon") as and for their answer and counterclaims to the

Amended Complaint (the "complaint"), of plaintiffs Bruce Kirby and Bruce Kirby, Inc. state as

follows:

## <u>Introduction</u>

This case arises out of a scheme by plaintiffs Bruce Kirby and Bruce Kirby, Inc.

("BKI") and their foreign co-conspirators, Global Sailing Limited ("Global Sailing") and

Performance Sailcraft Pty. Ltd. ("PSA") to force LaserPerformance and Quarter Moon out of

business.  The conspirators' first step toward that goal was to block LaserPerformance and

Quarter Moon from building and selling the Laser, a small sailboat that is raced and enjoyed by

tens of thousands of sailors at every level from novice to the Olympics.  LaserPerformance,

Quarter Moon and their predecessors have been building and selling Lasers since the 1980s.

They are the licensees of the trademark LASER in the Americas and Europe, a trademark as to

which Kirby and BKI have no rights.

The Laser was conceived in the late 1960s by Ian Bruce, a Canadian industrial

designer known as the "Father of the Laser."  Plaintiff Bruce Kirby created the line drawings,

while Ian Bruce designed the rigging and Hans Fogh designed the sails.  Kirby's so-called

"design rights," if there ever were such rights, have long since expired.  Likewise Kirby was not

the author of the Laser Construction Manual as he asserts in his complaint.  The Construction

Manual was a collaborative work, developed over a number of years, to which Kirby was only

one partial contributor.

It is the name Laser that distinguishes the boat and that has united an international

class of recreational and racing sailors under the umbrella of the International Laser Class

Association ("ILCA," a co-defendant in this case).  The Laser class has thrived as a result of the years of investment by LaserPerformance and Quarter Moon in promoting regattas and participation in the class, including funding events throughout the world to make the class truly international.

In league with Global Sailing and PSA, Kirby and BKI have wrongfully interfered with the long-standing business of LaserPerformance and Quarter Moon in order to put them out of business, kill the Laser class and usurp the Laser trademark.  To that end, Kirby, BKI and their co-schemers have purported to re-name the Laser as the "Kirby Torch."  In recent months, they have launched a public campaign to recruit existing Laser owners to form a new class of sailboats (using the same old design) called the Torch.  They have failed.  Their new "class" has not been approved by the International Sailing Federation (defendant "ISAF"), the world governing body for the sport of sailing, which continues to support the Laser class.

Kirby's and BKI's efforts to destroy LaserPerformance and Quarter Moon commenced as early as 2008.  Although Kirby and BKI were bound by contracts under which LaserPerformance and Quarter Moon built sailboats according to Kirby's co-design (the "Builder Agreements"), Kirby and BKI sold their rights and the contracts to Global Sailing in 2008 for more than $2.6 million.

Global Sailing and its affiliate PSA hold the Laser trademark for use solely in Australia, New Zealand and Oceania.  By assigning the contracts to Global Sailing, Kirby and BKI purported to give Global Sailing the additional power to control the manufacture and sale of Laser sailboats in the Americas, Europe, Africa and Asia.  And, in short order, Global Sailing put its new-found power to the test.  In May 2010, Global Sailing sent a notice purporting to

terminate the contract with LaserPerformance for no cause, using a provision for not renewing the contract and ostensibly precluding LaserPerformance from manufacturing and selling Lasers.

Global Sailing then began soliciting dealers throughout the world to purchase PSA's Australian-built boats.  When Global Sailing failed to create a worldwide market for PSA, it shifted to a new tactic.

First, Global Sailing and PSA unilaterally tried to get LaserPerformance to give up rights to build, market, distribute and sell Lasers in China in exchange for continued rights in Europe.  When that failed, Global Sailing and PSA tried to force LaserPerformance's parent company to buy them out for the exorbitant sum of $15 million for a business worth no more than $2 million.  That tactic was rejected.  Then Kirby, BKI, Global Sailing and PSA joined forces to destroy LaserPerformance and Quarter Moon and, with them, the Laser class.

The instant action is just the latest gambit in that effort.  It has been brought by the same lawyer, Wesley W. Whitmyer, Jr., Esq., who has represented Global Sailing, Kirby and BKI throughout the relevant events; and it is undoubtedly financed by Global Sailing.  The complaint purports to state claims for the supposed misuse of Kirby's name and trademark in connection with the manufacture and sale of Lasers.  But Laser Performance and Quarter Moon are not using Kirby's name in any way.

Despite the window dressing of federal statutory claims, the case is essentially a claim that LaserPerformance and Quarter Moon have breached post-termination obligations in the license agreements with Kirby and BKI.  As set forth in detail in this Answer and Counterclaims, however, the defendants deny any such breach and deny that they have violated any federal statutes.  Nor do the defendants owe any unpaid royalties to Kirby, BKI or Global

Sailing.  In fact, as demonstrated in the counterclaims, Kirby, BKI and Global Sailing were overpaid.

The real case here is in the counterclaims of LaserPerformance and Quarter Moon against Kirby, BKI, Global Sailing and PSA.  Those counterclaims seek to end the predatory behavior of Kirby, BKI and their co-conspirators that have resulted in damages to LaserPerformance and Quarter Moon of more than $10 million. The counterclaims also seek damages for Kirby's and BKI's breach of the Builder Agreements as well as their blatant failure to keep confidential the Laser Construction Manual by copyrighting it in violation of their own confidentiality agreement.  That breach alone resulted in millions of dollars of damages to LaserPerformance and Quarter Moon.  Accordingly, defendants LaserPerformance and Quarter Moon request that the Court dismiss Kirby's and BKI's complaint and enter judgment in their favor on the counterclaims.

## ANSWER

Defendants LaserPerformance and Quarter Moon deny the allegations in the "Introduction" to the complaint and respond as follows to its numbered paragraphs:

### As To "Jurisdiction And Venue"

1.      The allegations contained in paragraph 1 of the complaint purport to state conclusions of law, as to which no response is required.

2.      Deny the allegations contained in paragraph 2 of the complaint except admit that plaintiffs purport to assert jurisdiction under Conn. Gen. Stat. § 52-59b.

3.      The allegations contained in paragraph 3 of the complaint purport to state conclusions of law, as to which no response is required.

## As To "The Parties"

4.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 4 of the complaint.

5.      Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 5 of the complaint, except admit that plaintiff Bruce Kirby is an individual.

6.      Admit that LaserPerformance is incorporated under the laws of England and Wales, and that LaserPerformance has a place of business at StationWorks, Long Buckby, Northampton, NN6 7PF, England, United Kingdom and deny the remaining allegations in this paragraph.

7.      Admit the allegations in paragraph 7 of the complaint.

8.      Admit, on information and belief, the allegations in the first sentence of paragraph 8 of the complaint and deny the remaining allegations.

9.      Admit, on information and belief, the allegations in the first sentence of paragraph 9 of the complaint and deny the remaining allegations.

10.     Admit, on information and belief, that defendant Rastegar is an individual residing at 30 Broad Street, Weston, Connecticut and deny the remaining allegations in paragraph 10 of the complaint.

11.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 11 of the complaint.

12.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 12 of the complaint.

## As To "Background"

13.     Admit, on information and belief, that Kirby was one of the co-designers of the sailboat depicted in Exhibit 1 to the complaint and deny the remaining allegations in paragraph 13 of the complaint.

14.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the complaint.

15.     Admit, on information and belief, the allegations in paragraph 15 of the complaint.

16.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 16 of the complaint.

17.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 17 of the complaint.

18.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 18 of the complaint.

## As To "ISAF Agreement"

19.     Refer to the November 30, 1983 Agreement among Kirby, BKI, the International Yacht Racing Union, the International Laser Class Association, IYRU Holdings Limited and Laser International Holdings (1983) Limited (the "ISAF Agreement") for its contents and deny that "Performance Sailcraft, Inc." is a party to that agreement.

20.     Refer to the ISAF Agreement for its contents.

21.     Refer to the ISAF Agreement for its contents.

22.     Admit, on information and belief, the allegations in paragraph 22 of the complaint.

### As To "1983 Builder Agreement"

23.     Refer to the July 11, 1983 license agreement between Kirby, BKI and Brook Shaw Motor Services Ltd. (the "1983 Builder Agreement") for its contents.

24.     Refer to the 1983 Builder Agreement for its contents.

25.     Refer to the August 30, 1995 Agreement Amending License between BKI and Performance Sailcraft Europe Limited for its contents.

26.     Refer to the May 3, 2005 Amendment between Kirby, BKI and Performance Sailcraft Europe Limited for its contents.

27.     Refer to the June 16, 2005 Amendment between Kirby, BKI and Performance Sailcraft Europe Limited for its contents.

28.     Defendant LaserPerformance denies the allegations in paragraph 28 of the complaint.  Defendant Moon Quarter denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 28 of the complaint.

29.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 29 of the complaint.

30.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the complaint.

31.     Defendant LaserPerformance denies that Kirby or BKI are entitled to any royalties and therefore denies allegations contained in paragraph 31 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 31 of the complaint.

32.     Defendant LaserPerformance denies the allegations contained in paragraph 32 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 32 of the complaint.

33.     Deny the allegations contained in paragraph 33 of the complaint.

## As To "1983 Builder Agreement"

34.     Refer to the March 31, 1989 license agreement between Kirby, BKI and PY Small Boat, Inc. (the "1989 Builder Agreement") for its contents.

35.     Refer to the 1989 Builder Agreement for its contents.

36.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 36 of the complaint.

37.     Refer to the March 25, 1997 Amendment to License between BKI and Sunfish/Laser Inc., for its contents.

38.     Defendant Quarter Moon denies the allegations in paragraph 38 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 38 of the complaint.

39.     Deny the allegations contained in paragraph 39 of the complaint.

40.     Deny that any such notice was required and therefore deny the allegations in paragraph 40 of the complaint.

41.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 41 of the complaint.

42.     Defendant Quarter Moon denies that Kirby or BKI are entitled to any royalties and therefore denies the allegations contained in paragraph 42 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 42 of the complaint.

43.     Defendant Quarter Moon denies the allegations contained in paragraph 43 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 30 of the complaint.

44.     Deny the allegations contained in paragraph 44 of the complaint.

### As To "Laser Trademark"

45.     Admit, on information and belief, the truth of the allegations in paragraph 45 of the complaint.

46.     Deny the allegations contained in paragraph 46 of the complaint.

47.     Admit, on information and belief, the truth of the allegations in paragraph 47 of the complaint.

48.     Admit, on information and belief, the truth of the allegations in paragraph 48 of the complaint.

49.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 49 of the complaint.

50.     Refer to the 1983 and 1989 Builder Agreements and the ISAF Agreement for their contents.

### As To "Termination Of The 1989 Builder Agreement"

51.     Refer to the July 17, 2012 letter from Kirby and BKI to Quarter Moon for its contents.

52.     Refer to the October 11, 2012 letter from Kirby and BKI to Quarter Moon for its contents.

53.     Defendant Quarter Moon denies that Kirby or BKI are entitled to royalties and therefore denies the allegations contained in paragraph 53 of the complaint.  Defendant

LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 53 of the complaint.

54.     Defendant Quarter Moon denies the allegations contained in paragraph 54 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 54 of the complaint.

55.     Defendant Quarter Moon denies the allegations contained in paragraph 55 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 55 of the complaint.

56.     Defendant Quarter Moon denies the allegations contained in paragraph 56 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 56 of the complaint.

57.     Defendant Quarter Moon denies the allegations contained in paragraph 57 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 57 of the complaint.

58.     Defendant Quarter Moon denies the allegations contained in paragraph 58 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 58 of the complaint.

59.     Defendant Quarter Moon denies the allegations contained in paragraph 59 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 59 of the complaint.

60.     Defendant Quarter Moon denies the allegations contained in paragraph 60 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 60 of the complaint.

## As To "Termination Of The 1989 Builder Agreement"

61.     Refer to the October 11, 2012 and November 15, 2012 letters from Kirby and BKI to LaserPerformance for their contents.

62.     Refer to the November 15, 2012 and March 1, 2013 letters from Kirby and BKI to LaserPerformance for their contents.

63.     Defendant LaserPerformance denies the allegations contained in paragraph 63 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 63 of the complaint.

64.     Defendant LaserPerformance denies the allegations contained in paragraph 64 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 64 of the complaint.

65.     Defendant LaserPerformance denies the allegations contained in paragraph 65 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 65 of the complaint.

66.     Defendant LaserPerformance denies the allegations contained in paragraph 66 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 66 of the complaint.

67.     Defendant LaserPerformance denies the allegations contained in paragraph 67 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 67 of the complaint.

68.     Defendant LaserPerformance denies the allegations contained in paragraph 68 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 68 of the complaint.

69.     Defendant LaserPerformance denies the allegations contained in paragraph 69 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 69 of the complaint.

## As To "Issuance Of ISAF Plaques To Terminated Builders"

70.     Refer to the October 11, 2012 letter from Kirby and BKI to ILCA (the "October 11, 2012 Letter") for its contents.

71.     Refer to the October 11, 2012 Letter for its contents.

72.     Refer to the sample ISAF Plaque for its contents.

73.     Refer to the 1983 and 1989 Builder Agreements for their contents.

74.     Refer to the 1983 and 1989 Builder Agreements for their contents.

75.     Refer to the 1983 and 1989 Builder Agreements for their contents.

76.     Deny the allegations in paragraph 76 of the complaint.

77.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 77 of the complaint.

78.     Deny the allegations contained in paragraph 78 of the complaint.

79.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 79 of the complaint.

## As To "ILCA Rule Change"

80.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 80 of the complaint.

81.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 81 of the complaint.

82.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 82 of the complaint.

83.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 83 of the complaint.

84.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 84 of the complaint.

85.     Deny the allegations contained in paragraph 85 of the complaint.

### As To "CLAIM I Counterfeiting Of The Kirby Sailboat"

86.     Repeat each response to paragraphs 1 through 85, above.

87.     Deny the allegations contained in paragraph 87 of the complaint.

88.     Deny the allegations contained in paragraph 88 of the complaint.

89.     Deny the allegations contained in paragraph 89 of the complaint.

90.     Defendant LaserPerformance denies the allegations contained in paragraph 90 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 90 of the complaint.

91.     Deny there are any "counterfeit Kirby sailboats" and knowledge or information sufficient to form a belief as to what Kirby and BKI have "control over."

92.     Deny there is any counterfeiting by defendants LaserPerformance and Quarter Moon and therefore deny the allegations contained in paragraph 92 of the complaint.

93.     Deny the allegations contained in paragraph 93 of the complaint.

94.     Deny there is any counterfeiting and therefore deny the allegations contained in paragraph 94 of the complaint.

**As To "CLAIM II Infringement Of Bruce Kirby**
**Trademark, Unfair Competition And False Designation Of Origin"**

95.     Repeat each response to paragraphs 1 through 94, above.

96.     Deny the allegations in paragraph 96 of the complaint.

97.     Deny the allegations contained in paragraph 97 of the complaint.

98.     Defendant LaserPerformance denies the allegations contained in paragraph 98 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 98 of the complaint.

99.     Deny the allegations contained in the first and third statement of paragraph 99 of the complaint and refer to Exhibit 19 to the complaint for its contents.

100.     Deny there are any "unauthorized Kirby sailboats" and deny knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 100 of the complaint.

101.     Deny there is any infringement and therefore deny the allegations contained in paragraph 101 of the complaint.

102.     Deny the allegations contained in paragraph 102 of the complaint.

103.     Deny the allegations contained in paragraph 103 of the complaint.

**As To "CLAIM III Unfair Competition**
**Under The Connecticut Unfair Trade Practices Act"**

104.     Repeat each response to paragraphs 1 through 103, above.

105.     Deny the allegations contained in paragraph 105 of the complaint.

106.     Deny the allegations contained in paragraph 106 of the complaint.

107.     Deny the allegations contained in paragraph 107 of the complaint.

108.     Deny any interference and therefore deny the allegations contained in paragraph 108 of the complaint.

109.     Deny the allegations contained in paragraph 109 of the complaint.

110.     Deny the allegations contained in paragraph 110 of the complaint.

111.     Deny the allegations contained in paragraph 111 of the complaint.

## As To "Claim IV Misappropriation Of Bruce Kirby's Publicity Rights"

112.     Repeat each response to paragraphs 1 through 111, above.

113.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 113 of the complaint.

114.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 114 of the complaint.

115.     Deny the allegations contained in paragraph 115 of the complaint.

116.     Deny the allegations contained in paragraph 116 of the complaint.

117.     Deny the allegations contained in paragraph 117 of the complaint.

118.     Deny any "unauthorized use" and therefore deny the allegations contained in paragraph 118 of the complaint.

119.     Deny the allegations contained in paragraph 119 of the complaint.

## As To "CLAIM V Default Of The 1983 Builder Agreement"

120.     Repeat each response to paragraphs 1 through 119, above.

121.     Defendant LaserPerformance denies the allegations contained in paragraph 121 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 121 of the complaint.

122.    Defendant LaserPerformance denies the allegations contained in paragraph 122 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 122 of the complaint.

123.    Defendant LaserPerformance denies the allegations contained in paragraph 123 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 123 of the complaint.

124.    Defendant LaserPerformance denies the allegations contained in paragraph 124 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 124 of the complaint.

125.    Defendant LaserPerformance denies the allegations contained in paragraph 125 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 125 of the complaint.

126.    Defendant LaserPerformance denies the allegations contained in paragraph 126 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 126 of the complaint.

127.    Defendant LaserPerformance denies the allegations contained in paragraph 127 of the complaint.  Defendant Quarter Moon denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 127 of the complaint.

## As To "CLAIM VI Default Of The 1989 Builder Agreement"

128.    Repeat each response to paragraphs 1 through 127, above.

129.    Defendant Quarter Moon denies the allegations contained in paragraph 129 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 129 of the complaint.

130.    Defendant Quarter Moon denies the allegations contained in paragraph 130 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 130 of the complaint.

131.    Defendant Quarter Moon denies the allegations contained in paragraph 131 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 131 of the complaint.

132.    Defendant Quarter Moon denies the allegations contained in paragraph 132 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 132 of the complaint.

133.    Defendant Quarter Moon denies the allegations contained in paragraph 133 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 133 of the complaint.

134.    Defendant Quarter Moon denies the allegations contained in paragraph 134 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 134 of the complaint.

135.    Defendant Quarter Moon denies the allegations contained in paragraph 135 of the complaint.  Defendant LaserPerformance denies knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 135 of the complaint.

## As To "CLAIM VII Inducement To Default The Builder Agreements"

136.    Repeat each response in paragraphs 1 through 135, above.

137.    Deny the allegations contained in paragraph 137 of the complaint.

138.    Admit that Kirby and BKI purported to terminate the 1983 and 1989 Builder Agreements and deny they had any right to do so and deny the remaining allegations contained in paragraph 138 of the complaint.

139.    Deny the allegations contained in paragraph 139 of the complaint.

140.    Deny the allegations contained in paragraph 140 of the complaint.

141.    Deny the allegations contained in paragraph 141 of the complaint.

142.    Deny the allegations contained in paragraph 142 of the complaint.

143.    Deny the allegations contained in paragraph 143 of the complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

144.    The complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

145.    Plaintiffs have no standing to bring this lawsuit, having sold in 2008 whatever intellectual property and contract rights they owned.

### Third Affirmative Defense

146.    Plaintiffs are barred from relief because they failed to join a required party under Fed. R. Civ. P. 19.

### Fourth Affirmative Defense

147.    Plaintiffs' claims are barred by the applicable statutes of limitations and laches.

### Fifth Affirmative Defense

148.    Plaintiffs are barred from relief under the doctrine of unclean hands.

## Sixth Affirmative Defense

149.   Plaintiffs have failed to mitigate any damage they claim to have incurred.

## COUNTERCLAIMS

Defendants-counterclaim plaintiffs LaserPerformance (Europe) Limited ("LaserPerformance") and Quarter Moon, Incorporated ("Quarter Moon"), for their counterclaims against plaintiffs-counterclaim defendants Bruce Kirby and Bruce Kirby, Inc. ("BKI") and additional counterclaim defendants Global Sailing Limited ("Global Sailing") and Performance Sailcraft Pty., Ltd. ("PSA"), allege:

## Parties

1.   Defendant-counterclaim plaintiff LaserPerformance is incorporated under the laws of England and Wales, having a principal place of business at StationWorks, Long Buckby, Northampton, NN6 7PF, England, United Kingdom.

2.   Defendant-counterclaim plaintiff Quarter Moon is a Rhode Island corporation, having a principal place of business at 200 Highpoint Avenue, Portsmouth, Rhode Island 02871.

3.   On information and belief, plaintiff-counterclaim defendant BKI is a Connecticut corporation having a place of business at 213 Rowayton Avenue, Rowayton, Connecticut 06853.

4.   On information and belief, plaintiff-counterclaim defendant Bruce Kirby is an individual residing at 213 Rowayton Avenue, Rowayton, Connecticut  06853.

5.   On information and belief, counterclaim defendant Global Sailing is a New Zealand company with a principal place of business at Level 8, 57 Symonds Street, Auckland, New Zealand.

6.      On information and belief, counterclaim defendant PSA is incorporated under the laws of New South Wales, Australia, with a principal place of business at Lot 7 Catamaran Road, Ourimbah NSW 2258, Australia.

## Jurisdiction and Venue

7.      This Court has jurisdiction over the counterclaims pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1367(a).

8.      This Court has personal jurisdiction over plaintiffs-counterclaim defendants as residents of Connecticut and over the additional counterclaim defendants pursuant to Conn. Gen. Stat. § 33-929 as they have engaged in tortious conduct in Connecticut with and through their co-conspirators Bruce Kirby and BKI.

9.      There is an actual controversy between LaserPerformance and Quarter Moon on the one hand and Kirby, BKI and Global Sailing on the other hand regarding the ownership of the rights and obligations of the Builder Agreements and the BRUCE KIRBY name and trademark.  Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §§ 2201 and 2202.

10.     Venue is proper in this district under 28 U.S.C. §§ 1391(b) and (c).

## Foreign Law

11.     Pursuant to Fed. R. Civ. P. 44.1, defendants-counterclaim plaintiffs LaserPerformance and Quarter Moon give notice that aspects of the claims and counterclaims may be governed by the law of Ontario, Canada and/or the United Kingdom.

**Factual Background**

**The 1983 Builder Agreement**

12.     On information and belief, on July 11, 1983, plaintiffs Bruce Kirby and BKI entered into a license agreement (the "1983 Builder Agreement") with Brook Shaw Motor Services Ltd. ("Brook Shaw").  The 1983 Builder Agreement authorized Brook Shaw to manufacture and market a so-called "Kirby Sailboat" in Europe, the United Kingdom and the Middle East.  The "Kirby Sailboat" is defined in the agreement as "a sailboat or sailboat hull manufactured in accordance with the Licensed Design which has been commonly sold in association with the trademark 'LASER.'"

13.     On information and belief, Kirby subsequently assigned his rights and obligations under the 1983 Builder Agreement to BKI.

14.     LaserPerformance is a successor to the rights and obligations of Brook Shaw under the 1983 Builder Agreement.

15.     On or about August 30, 1995, BKI entered into an Agreement Amending License with Performance Sailcraft Europe Limited (the former name of LaserPerformance). The amendment extended the license of the 1983 Builder Agreement to more than 35 territories in Europe, Latin America, Africa and Asia.

**The 1989 Builder Agreement**

16.     On information and belief, on March 31, 1989, Kirby and BKI entered into a license agreement (the "1989 Builder Agreement") with PY Small Boats, Inc. ("PY Small Boats").  The 1989 Builder Agreement authorized PY Small Boat to manufacture and market the "Kirby Sailboat" (defined as above) in North America and certain countries in Central and South America.

21

17.     Quarter Moon is a successor to the rights and obligations of PY Small Boats under the 1989 Builder Agreement.

**The LASER Trademark Owners**

18.     Kirby and BKI do not have any rights to the trademark LASER.  That mark is owned and registered by defendants Karaya (Jersey) Limited and Velum Limited.

19.     The boat defined as the "Kirby Sailboat" in the 1983 and 1989 Builder Agreements is commonly referred to as the "Laser" in the sailing world.  LaserPerformance and Quarter Moon are the authorized licensees of the trademark LASER.

**The 1983 ISAF Agreement**

20.     On information and belief, in November 1983, Kirby and BKI entered into an agreement with the International Yacht Racing Union ("IYRU"), Laser International Holdings Limited ("Trade Mark Owner") and the International Laser Class Association ("ILCA"). Defendant International Sailing Federation Limited ("ISAF") is the successor to and current name of the former IYRU.  This agreement is now referred to as the "ISAF Agreement."

21.     The objective of the ISAF Agreement is to establish requirements for maintaining the Laser class as a one-design international racing class.

**ISAF Plaques**

22.     In its role as the governing body of sailboat racing, ISAF issues "plaques" that identify boats as a "Laser International Class Sailboat" with a unique sail number and state that it is authorized by ISAF and ILCA.

23.     Boats bearing the ISAF plaques are eligible for participation in ILCA-sponsored regattas, including world championships.  The plaque is a certification by ISAF

that a boat meets the one-design requirements of the Laser class.  However, boats for Olympic competitions are not required to bear any plaques.

**Global Sailing and PSA**

      24.    On information and belief, Global Sailing is a New Zealand holding company affiliated with PSA, an Australian company licensed by Kirby and BKI to build "Kirby sailboats" for sale in Australia, New Zealand and Micronesia.

      25.    On information and belief, Global Sailing and PSA have common ownership and common directors.

**Kirby, BKI, Global Sailing And PSA's
Scheme To Destroy LaserPerformance
And Quarter Moon**

      26.    Global Sailing and PSA have long coveted the larger markets for Laser sailboats served by LaserPerformance and Quarter Moon, encompassing most of the Americas, as well as Europe and the United Kingdom.  As set forth in detail below, beginning in about 2008, Global Sailing and PSA wrongfully conspired with Kirby and BKI to interfere with the business of LaserPerformance and Quarter Moon and prevent them from selling Lasers in those markets.

      27.    On information and belief, and without any notice to LaserPerformance, Quarter Moon, ISAF or ILCA, on or about June 25, 2008, Kirby and BKI entered into an agreement with Global Sailing by which he sold and transferred to Global Sailing all of the assets that he and BKI owned in and relating to:  the vessel hull designs for the Kirby Sailboat; any copyright, creative works and works of authorship; patents; trademarks, brand names, trade dress rights, logos, internet domain names and corporate names, together with the goodwill

associated with the foregoing, and applications registrations and renewals thereof; and any rights in confidential information used by Kirby and BKI.

28.     On information and belief, on or about June 25, 2008, and without any notice to LaserPerformance, Quarter Moon, ISAF or ILCA, Kirby and BKI sold and transferred to Global Sailing all rights under agreements entered into between them and third parties relating to the Kirby Sailboats, including the Builder Agreements and the ISAF Agreement.

29.     On information and belief, Global Sailing paid Kirby and BKI the sum of $2.6 million for the assets and rights referred to in paragraphs 27 and 28, above.

30.     Accordingly, Global Sailing ostensibly became a party to the 1983 and 1989 Builder Agreements with LaserPerformance and Quarter Moon, respectively; Kirby and BKI were no longer parties to those agreements.

31.     On or about January 19, 2009, Global Sailing informed LaserPerformance and Quarter Moon that "[a]ll extant agreements with Kirby Inc., including rights and obligations have been assigned to Global Sailing."

32.     Accordingly, as a result of the transaction referred to above, Global Sailing ostensibly controlled the building rights of LaserPerformance and Quarter Moon.

33.     However, Global Sailing and PSA could not directly sell Lasers (the so-called "Kirby Sailboats") in the Americas, the U.K., Europe, Africa and Asia because LaserPerformance and Quarter Moon were (and are) the licensees of the trademark LASER in those territories.

34.     Accordingly, with Global Sailing claiming to have the "design" rights under Kirby's and BKI's contracts, Kirby, BKI, Global Sailing and PSA set out to wrongfully

and maliciously interfere with LaserPerformance's and Quarter Moon's relations with the thousands of wholesale and retail customers who purchased Lasers from them.

35.    To that end, on or about May 10, 2010, Wesley W. Whitmyer, Jr., Esq., Kirby's and BKI's counsel in this case but then purporting to represent Global Sailing, sent a notice to LaserPerformance stating that Global Sailing was terminating the 1983 Builder Agreement in lieu of renewing its term.

36.    In February 2011, again purporting to represent Global Sailing, Kirby's and BKI's lawyer Mr. Whitmyer wrote to LaserPerformance and its counsel, insisting that royalties be paid to his client Global Sailing, rather than his other clients, Kirby and BKI.

37.    Later, in July 2011, Global Sailing and PSA tried to force LaserPerformance to give up its lucrative China territory in exchange for a new contract for Europe and other territories or, alternatively, to purchase Global Sailing and PSA -- and all the rights Global Sailing had purchased from Kirby and BKI -- for the excessive sum of $15 million for a business worth no more than $2 million.  LaserPerformance refused to be extorted.

38.    Subsequently, in September 2011, Kirby, BKI and Global Sailing set out on a new path.  Without any notice to LaserPerformance, Quarter Moon, ISAF or ILCA, they purported to enter into another agreement to "unwind" the sale of Kirby's and BKI's rights that had occurred three years earlier in 2008.

39.    The "unwinding" agreement between Global Sailing and Kirby and BKI does not alter Global Sailing's controlling position.  In fact, Global Sailing retains a security interest in all the assets and contracts Kirby earlier assigned to Global Sailing, purports to grants him no more than a "license back" of those rights and maintains control by precluding their transfer without Global Sailing's permission.

40.     As Kirby, BKI and Global Sailing had expected, the purported unwinding of the 2008 assignment of Kirby's and BKI's contracts caused widespread confusion as to who was authorized to build boats and in what territories, and as to what party was entitled to receive royalty payments and for what territories.

41.     Moreover, the assignment and non-assignment of rights by Kirby, BKI and Global Sailing violated Kirby's and BKI's contractual obligations under the ISAF Agreement which required ISAF's consent to the transactions.  In flat violation of that agreement, Kirby and BKI failed to get ISAF's approval.

42.     This chaotic situation continued into late 2012, when Kirby himself sent multiple notices to LaserPerformance and Quarter Moon purporting to terminate the 1983 and 1989 Builder Agreements, even though he and BKI were no longer a party to those agreements and Global Sailing had already terminated the 1983 Builder Agreement in May 2010.

43.     Also in 2012, and in furtherance of the conspiracy to interfere with the business relations of LaserPerformance and Quarter Moon, PSA and Global Sailing commenced a series of predatory and unauthorized sales of Australian-built Lasers into territories in South America, Europe and Asia in violation of the LASER trademark licenses held by LaserPerformance and Quarter Moon.

44.     Specifically, PSA and Global Sailing have been selling Australian-built Lasers and parts into Mexico, Chile, Argentina, Brazil, Belgium, Netherlands, China and Bali. These unlawful activities have caused LaserPerformance and Quarter Moon to retain attorneys to defeat PSA's and Global Sailing's efforts in multiple jurisdictions.

45.     Likewise, on or about March 14, 2013, Kirby and BKI filed an application to register the LASER trademark with the United States Patent and Trademark office, even

though they well know they have no rights to the mark, which is owned by Karaya (Jersey) Limited and licensed to Quarter Moon.

46.      Kirby and BKI then commenced this lawsuit in April 2013, with Mr. Whitmyer -- Global Sailing's lawyer -- as their attorney.  The complaint asserts, without any basis, that defendants LaserPerformance and Quarter Moon had infringed on the trademark BRUCE KIRBY and had breached the Builder Agreements, notwithstanding that Kirby and BKI have no standing to make any of the claims.

**The End Game:  "The Kirby Torch"**

47.      Frustrated by their inability to completely destroy LaserPerformance and Quarter Moon, Global Sailing, PSA, Kirby and BKI have announced that Kirby, (the public face of the conspiracy) had started a new class of sailboat, called the "Kirby Torch."

48.      Kirby, BKI, Global Sailing and PSA advertise the "Torch" as the exact same sailboat as the Laser, but with a different name.

49.      In clear breach of the exclusive license terms of the 1983 and 1989 Builder Agreements, Kirby and BKI purport to have licensed the same "design rights" to PSA (for Asia and Oceania) and builders in Canada (for the Americas) and the Netherlands (for Europe, Africa and the Middle East).

50.      Kirby, BKI, Global Sailing and PSA have launched a world-wide publicity campaign wrongfully impugning the integrity of LaserPerformance and Quarter Moon and falsely accusing them of building Lasers that require frequent repairs and of failing to make necessary parts available.  Indeed, Kirby has falsely accused LaserPerformance, ISAF and ILCA of trying to "steal the Kirby Sailboat from its designer."

51.    This false and defamatory publicity is in furtherance of the conspirators' campaign to damage the business reputation and interfere with the business relations of LaserPerformance and Quarter Moon and to destroy the Laser class.

**Kirby Revealed The Construction Manual
To The Public In Violation Of His
Agreement To Keep It Confidential**

52.    On information and belief, during the 1980s, Performance Sailcraft Europe Limited, the former name of LaserPerformance, together with other builders of Laser sailboats, developed what has come to be known as the "Construction Manual." The Construction Manual contained confidential information with respect to the manufacture of Laser sailboats, including the hull, rigging, sails and related materials. Although Kirby had contributed to information contained in the Construction Manual, he was not its sole author or owner. ILCA together with LaserPerformance and other builders developed the Construction Manual.

53.    On or about November 11, 2005, Kirby and BKI entered into an agreement (the "November 2005 Agreement") by which the parties agreed to keep all information contained in the Construction Manual strictly confidential. The other parties to the November 2005 Agreement were builders Performance Sailcraft Europe Limited (the former name of LaserPerformance); Vanguard Sailboats, Inc. (d/b/a name of Quarter Moon); PSA; and Performance Sailcraft Japan. ILCA was also a party to the November 2005 Agreement.

54.    The November 2005 Agreement states that the parties are "signatories" to the 1993 Construction Manual as reissued by the Chief Measurer of ILCA, as amended. As signatories they were all "owners" of the Construction Manual.

55.     One of the objectives of the November 2005 agreement was to keep the Construction Manual confidential such that unauthorized builders could not obtain the methods and means of building Lasers that are contained in the Construction Manual.

56.     On or about June 21, 2007, Kirby and BKI made public the contents of the Construction Manual by depositing it with the United States Copyright Office and registering it for a United States Copyright, which they had no right to do.

57.     By making public the contents of the Construction Manual in breach of their promise not to do so, Kirby and BKI enabled unauthorized builders to use the Construction Manual as a reference for constructing boats that mimicked Lasers being manufactured and sold by the authorized builders.  These unauthorized builders competed for customers with LaserPerformance and Quarter Moon and their predecessors, causing them to lose substantial sales.

**LaserPerformance And Quarter Moon
Overpaid Royalties To Kirby,
BKI And Global Sailing**

58.     Pursuant to the 1983 Builder Agreement and the 1989 Builder Agreement (as amended in 1997), Kirby, BKI and/or Global Sailing were due two percent of the wholesale price for each Kirby Sailboat manufactured and sold after deducting the value of any returns or credits.

59.     Between 2007 and 2011, LaserPerformance overpaid Kirby, BKI and/or Global Sailing more than $250,000 in royalties that were not due pursuant to the terms of the Builder Agreement.  None of the overpayments has been repaid to or credited to LaserPerformance or Quarter Moon.

**Kirby, BKI And Global Sailing's Efforts To**
**Intimidate ISAF, ILCA, LaserPerformance**
**And Quarter Moon_____ _____**

60.    Consistent with their conspiracy to crush LaserPerformance and Quarter

Moon, Kirby, BKI and Global Sailing set out upon a course of conduct designed to intimidate

ISAF and ILCA into supporting the conspirators' goals.

61.    Kirby, BKI and Global Sailing at first tried to ignore ISAF and ILCA.

Thus, although the ISAF Agreement, signed by Kirby and BKI in 1983, clearly required that

Kirby and BKI obtain the approval of ISAF and ILCA for Kirby's and BKI's purported 2008

assignment to Global Sailing of Kirby's rights under the ISAF Agreement, they ignored that

obligation.

62.    Upon learning of Kirby's and BKI's sale and assignment, as well as

Global Sailing's unilateral 2010 termination of the 1983 Builder Agreement with

LaserPerformance, ISAF refused to approve the assignment because it was not in the best

interests of the sport to have one licensed builder ostensibly control another in this fashion.

63.    After Global Sailing terminated the 1983 Builder Agreement between

Kirby and BKI and LaserPerformance, Global Sailing tried to intimidate ISAF and ILCA into

joining Global Sailing in its efforts to obtain LaserPerformance's rights in China in exchange for

a renewal of the 1983 Builder Agreement to retain building rights in Europe.  On information

and belief, Global Sailing threatened to start a new class of competing sailboats if ISAF and

ILCA would not join their scheme to put LaserPerformance and Quarter Moon out of business.

64.    After sending the notice, Global Sailing purported to direct ISAF not to

issue plaques for LaserPerformance Lasers.

65.    ISAF and ILCA refused to be intimidated and refused to support Global

Sailing's avaricious goals.  And Kirby, BKI and Global Sailing have made good on the threat to

start a new class:  the Kirby Torch.  But ISAF and ILCA have remained firm and have refused to recognize the Kirby Torch as a class for international sailboat racing.

66.     The ultimate act of intimidation by Kirby, BKI and Global Sailing is this lawsuit, naming ISAF and ILCA as defendants.  Kirby, BKI and Global Sailing well know that ISAF and ILCA are not-for-profit organizations that are dedicated to promoting and organizing the sport of sailing.  Nonetheless, to satisfy their own profit motives, Kirby and BKI (undoubtedly financed by Global Sailing) has embroiled ISAF and ILCA in distracting and expensive litigation.

**Kirby, BKI And Global Sailing**
**Have Refused To Resolve**
**The Issues Affecting The Laser Class**

67.     In their role as the governing bodies of the sport of sailing and of the Laser Class, respectively, ISAF and ILCA have made repeated efforts to resolve the issues affecting the Laser Class, as exemplified by this lawsuit.

68.     LaserPerformance and Quarter Moon have repeatedly agreed to meet in an effort to resolve globally the many issues affecting the Laser Class.  Thus, in January 2013, ISAF approached the parties suggesting mediation.  LaserPerformance and Quarter Moon agreed.  Kirby, BKI and Global Sailing refused.

69.     Likewise, ISAF and ILCA proposed a mediation even after this lawsuit had been commenced, in late May 2013.  LaserPerformance and Quarter Moon agreed.  Again, Kirby and BKI refused to mediate the issues and refused even to involve their co-conspirator Global Sailing.

70.     Accordingly, and unfortunately for the sport of sailing and the Laser Class in particular, LaserPerformance and Quarter Moon are compelled to answer Kirby's and BKI's baseless charges and make public the conspiracy among Kirby, BKI, Global Sailing and PSA.

## FIRST COUNTERCLAIM
### Declaratory Judgment That Kirby And BKI
### Have No Rights Under The Builder Agreements
### (Against Kirby And BKI)

71.     LaserPerformance and Quarter Moon incorporate by reference the allegations contained in Paragraphs 1 through 70 of the counterclaims.

72.     Kirby and BKI transferred all rights and obligations in the Builder Agreements to Global Sailing in June 2008.

73.     In May of 2010, Global Sailing terminated the 1983 Builder Agreement with LaserPerformance.  The 1989 Builder Agreement with Quarter Moon has not been terminated.

74.     Kirby and BKI no longer have any rights or obligations under the 1983 and 1989 Builder Agreements.

75.     There is an actual controversy between Kirby and BKI and LaserPerformance and Quarter Moon regarding the ownership of the rights and obligations of the Builder Agreements because Kirby and BKI have sued LaserPerformance and Quarter Moon in this action for breach of the Builder Agreements.

76.     Accordingly, defendants-counterclaim plaintiffs request a judgment declaring that plaintiffs Kirby and BKI have no rights under the 1983 and 1989 Builder Agreements.

## SECOND COUNTERCLAIM
### Declaratory Judgment That Kirby And BKI
### Have No Rights In The "Bruce Kirby" Name Or Trademark
### (Against Kirby And BKI)

77.     LaserPerformance and Quarter Moon incorporate by reference the allegations contained in Paragraphs 1 through 70 of the counterclaims.

78.     In 2008, Kirby and BKI transferred to Global Sailing all trademarks, brand names, trade dress rights, logos, internet domain names and corporate names, together with the goodwill associated with the foregoing, and applications registrations and renewals thereof.

79.     On information and belief, Global Sailing owns and controls all rights associated with the BRUCE KIRBY name and trademark, including the licensing of the BRUCE KIRBY name and trademark.

80.     Although Kirby and BKI have no rights in the BRUCE KIRBY name and trademark, they have purported to sue for infringement of those rights in Counts I through III of the complaint in this action.

81.     There is an actual controversy between Kirby and BKI and LaserPerformance and Quarter Moon regarding the BRUCE KIRBY name and trademark because Kirby and BKI have sued LaserPerformance and Quarter Moon and others in this action, alleging counterfeiting, infringement of the BRUCE KIRBY trademark, unfair competition, false designation of origin and misappropriation of publicity rights.

82.     Accordingly, defendants-counterclaim plaintiffs request a judgment declaring that plaintiffs Kirby and BKI have no rights under the 1983 and 1989 Builder Agreements.

**THIRD COUNTERCLAIM**
**Tortious Interference With Business Relations**
**(Against Kirby, BKI, Global Sailing And PSA)**

83.     LaserPerformance and Quarter Moon incorporate by reference the allegations contained in Paragraphs 1 through 70 of the counterclaims.

84.     LaserPerformance and Quarter Moon have extensive business relationships with thousands of customers to which they sell Lasers.

85.     As long time participants in the sailing market, Kirby, BKI, Global Sailing and PSA knew of the business relationships between LaserPerformance and Quarter Moon and their customers.

86.     Kirby, BKI and Global Sailing intentionally interfered with the business relationships between LaserPerformance and Quarter Moon and their customers by engaging in the transfer to Global Sailing of rights and obligations under the Builder Agreements and the BRUCE KIRBY name and trademark.

87.     Kirby, BKI and Global Sailing intentionally interfered with the business relationships between LaserPerformance and Quarter Moon and their customers by causing Global Sailing to terminate the 1983 Builder Agreement.

88.     Kirby and BKI intentionally interfered with the business relationships between LaserPerformance and Quarter Moon and their customers by initiating and pursuing this baseless lawsuit.

89.     Kirby, BKI, Global Sailing and PSA have intentionally interfered with the business relationships between LaserPerformance and Quarter Moon and their customers by launching a world-wide publicity campaign wrongfully impugning the integrity of LaserPerformance and Quarter Moon and falsely accusing them of building Lasers that require frequent repairs and of failing to make necessary parts available.  Indeed, Kirby has falsely

accused LaserPerformance, ISAF and ILCA of trying to "steal the Kirby Sailboat from its designer."

90.     Kirby, BKI, Global Sailing and PSA intentionally interfered with the business relationships between LaserPerformance and Quarter Moon and their customers by creating and advertising the "Kirby Torch."

91.     In all of the actions referred to above, Kirby, BKI, Global Sailing and PSA acted maliciously with the objective of destroying the business of LaserPerformance and Quarter Moon.

92.     As a result of the tortious interference by Kirby, BKI, Global Sailing and PSA, Laser Performance and Quarter Moon have been damaged in an amount to be established at trial in excess of $10 million.

## FOURTH COUNTERCLAIM
### Conspiracy To Tortiously Interfere With Business Relations
### (Against Kirby, BKI, Global Sailing And PSA)

93.     LaserPerformance and Quarter Moon incorporate by reference the allegations contained in Paragraphs 1 through 70 of the counterclaims.

94.     On information and belief, Kirby, BKI, Global Sailing and PSA entered into a conspiratorial agreement to tortiously interfere with the business relationships between LaserPerformance and Quarter Moon and their customers, as set forth in paragraphs 50 and 84 through 92, above.

95.     As a result of the conspiracy, LaserPerformance and Quarter Moon have been damaged in an amount to be established at trial in excess of $10 million.

**FIFTH COUNTERCLAIM**
**Violation of the Connecticut Unfair Trade Practices Act**
**(By Quarter Moon Against Kirby, BKI, Global Sailing And PSA)**

96.     Quarter Moon incorporates by reference the allegations contained in Paragraphs 1 through 70 of the counterclaims.

97.     Kirby, BKI, Global Sailing and PSA have engaged in the following unfair trade practices in the advertising, sale, offering for sale and distribution of the Laser, the Kirby Sailboat and/or the Kirby Torch:

(a)     Kirby, BKI and Global Sailing intentionally interfered with the business relationships between Quarter Moon and its customers by engaging in the transfer to Global Sailing of rights and obligations under the 1989 Builder Agreement and the BRUCE KIRBY name and trademark.

(b)     Kirby and BKI intentionally interfered with the business relationships between Quarter Moon and its customers by initiating and pursuing this baseless lawsuit.

(c)     Kirby, BKI, Global Sailing and PSA intentionally interfered with the business relationships between Quarter Moon and its customers by creating and advertising the "Kirby Torch."

98.     In all of the actions referred to above, Kirby's, BKI's, Global Sailing's and PSA's unfair and deceptive trade practices caused a substantial and unjustified injury to Quarter Moon, which could not have been avoided and is likely to mislead consumers.  The injury to Quarter Moon is not outweighed by any countervailing benefits to consumers or by legitimate competition.

99.     Kirby, BKI, Global Sailing and PSA have launched a world-wide publicity campaign wrongfully impugning the integrity of Quarter Moon and falsely accusing it of

building Lasers that require frequent repairs and of failing to make necessary parts available. The misleading misrepresentations are material, and likely to affect consumer decisions and conduct because the misrepresentations speak to the quality of the Lasers manufactured and sold by Quarter Moon.

100.    Kirby's, BKI's, Global Sailing's and PSA's unfair and deceptive trade practices demonstrate a reckless indifference to the rights of Quarter Moon, and reveal that Kirby, BKI, Global Sailing and PSA acted out of malice to injure Quarter Moon.

101.    Quarter Moon has suffered an ascertainable loss in an amount to be determined at trial, but in excess of $1 million, as a result of Kirby's, BKI's, Global Sailing's and PSA's unfair and deceptive trade practices.

**SIXTH COUNTERCLAIM**
**Breach Of The 1983 Builder Agreement**
**(By LaserPerformance Against Kirby, BKI And Global Sailing)**

102.    LaserPerformance incorporates by reference the allegations contained in Paragraphs 1 through 70 of the counterclaims.

103.    Pursuant to Section 2.3 of the 1983 Builder Agreement, Kirby, BKI and later Global Sailing granted to LaserPerformance's predecessor in interest the exclusive license of the "design rights" to manufacture, sell and market the "Kirby Sailboat" in the "Licensed Territory." This Licensed Territory is defined in the agreement as Europe, certain countries in Africa and the Middle East.

104.    As consideration for this exclusive license, LaserPerformance agreed to and did pay certain royalties to Kirby, BKI and later Global Sailing.

105.    Kirby, BKI and Global Sailing have breached Section 2.3 of the 1983 Builder Agreement by licensing the same "design rights" to a builder in the Netherlands to build the so-called "Kirby Torch" in LaserPerformance's Licensed Territory.

106.    As a result, LaserPerformance has been damaged in an amount to be determined at trial, in excess of $1 million.

## SEVENTH COUNTERCLAIM
### Breach Of The 1989 Builder Agreement
### (By Quarter Moon Against Kirby, BKI And Global Sailing)

107.    Quarter Moon incorporates by reference the allegations contained in Paragraphs 1 through 70 of the counterclaims.

108.    Pursuant to Section 2.1 of the 1989 Builder Agreement, Kirby, BKI and later Global Sailing granted to Quarter Moon's predecessor in interest the exclusive license of the "design rights" to produce, market and sell the "Kirby Sailboat" in the "Licensed Territory." This Licensed Territory is defined in the agreement as North America and certain countries in Central and South America.

109.    As consideration for this exclusive license, Quarter Moon agreed to and did pay certain royalties to Kirby, BKI and later Global Sailing a royalty for each sailboat built.

110.    Kirby, BKI and Global Sailing have breached Section 2.1 of the 1989 Builder Agreement by licensing the same "design rights" to a builder in Canada to build the so-called "Kirby Torch" in Quarter Moon's Licensed Territory.

111.    As a result, Quarter Moon has been damaged in an amount to be determined at trial, but in excess of $1 million.

**EIGHTH COUNTERCLAIM**
**Breach Of The November 2005 Agreement**
**(Against Kirby And BKI)**

112.    LaserPerformance and Quarter Moon incorporate by reference the allegations contained in Paragraphs 1 through 70 of the counterclaims.

113.    Kirby, BKI, LaserPerformance and Quarter Moon are parties to the November 2005 Agreement.

114.    Pursuant to Section 4 of the November 2005 Agreement, the parties agreed to "keep all information contained in the Construction Manual strictly confidential."

115.    LaserPerformance and Quarter Moon performed their obligations under the November 2005 Agreement by keeping all information in the Construction Manual confidential, and by manufacturing the Kirby Sailboat pursuant to the specifications in the Construction Manual.

116.    Kirby and BKI have breached Section 4 of the November 2005 Agreement by depositing a copy of the Construction Manual with the U.S. Copyright Office with an application for copyright protection.  On information and belief, the public therefore has access to the contents of the Construction Manual.

117.    As a result of Kirby's, BKI's and Global Sailing's breach, LaserPerformance and Quarter Moon have been damaged because the public (and other builders not parties to the November 2005 Agreement) have access to the confidential specifications in the Construction Manual.

118.    Accordingly, LaserPerformance and Quarter Moon have been damaged in an amount to be determined at trial, in excess of $1 million.

## NINTH COUNTERCLAIM
### Unjust Enrichment
### (Against Kirby, BKI And Global Sailing)

119.     LaserPerformance and Quarter Moon incorporate by reference the allegations contained in Paragraphs 1 through 70 of the counterclaims.

120.     From about 2007, LaserPerformance and Quarter Moon overpaid Kirby, BKI and Global Sailing more than $250,000 in royalties.  Accordingly, Kirby, BKI and Global Sailing have been unjustly enriched.

121.     As a result, LaserPerformance and Quarter Moon have been damaged in an amount to be determined at trial in excess of $250,000.

## Prayer For Relief

**WHEREFORE**, defendants-counterclaim plaintiffs LaserPerformance and Quarter Moon respectfully seek judgment:

(a)     Dismissing plaintiffs' Amended Complaint with prejudice;

(b)     Declaring that Bruce Kirby and BKI have no rights in the 1983 and 1989 Builder Agreements;

(c)     Declaring that Bruce Kirby and BKI have no rights to the BRUCE KIRBY trademark;

(d)     Awarding judgment in an amount to be determined at trial in excess of $10 million against counterclaim defendants Bruce Kirby, BKI, Global Sailing and PSA on the Third and Fourth counterclaims;

(e)     Awarding judgment in an amount to be determined at trial in excess of $1 million against Kirby, BKI, Global Sailing and PSA on the Fifth Counterclaim;

(f)     Awarding judgment in an amount to be determined at trial in excess of $1 million against Kirby, BKI and Global Sailing on the Sixth Counterclaim;

(g)     Awarding judgment in an amount to be determined at trial in excess of $1 million against Kirby, BKI and Global Sailing on the Seventh Counterclaim;

(h)     Awarding judgment in an amount to be determined at trial in excess of $1 million against Kirby and BKI on the Eighth Counterclaim;

(i)     Awarding judgment in an amount to be determined at trial in excess of $250,000 against Kirby, BKI and Global Sailing on the Ninth Counterclaim;

(j)     Awarding the costs of this action, including reasonable attorneys' fees and disbursements; and

(k)     Granting such other and further relief as this Court deems just and proper.

## **Jury Trial**

LaserPerformance and Quarter Moon demand trial by jury of all issues so triable.

Dated:  June 12, 2013

Respectfully submitted,


By:  _____/s/Turner P. Smith_____
        Turner P. Smith (ct 24359)
        T. Barry Kingham (ct 00622)
        CURTIS, MALLET-PREVOST,
           COLT & MOSLE LLP
        101 Park Avenue
        New York, New York 10178
        Phone:  (212) 696-6121
        Fax:  (917) 368-8821
        Email:  tsmith@curtis.com

*Attorneys for Defendants-Counterclaim Plaintiffs*
*LaserPerformance (Europe) Limited and*
*   Quarter Moon, Incorporated*