# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X
|  |  |
|---|---|
| BRUCE KIRBY, INC., and | : |
| BRUCE KIRBY, | : Civil Action No. 3:13-cv-00297 (RNC) |
|  | : |
| Plaintiffs, | : |
|  | : |
| - against - | : |
|  | : |
| LASERPERFORMANCE (EUROPE) LIMITED, | : |
| QUARTER MOON, INCORPORATED, | : |
| KARAYA (JERSEY) LIMITED, | : |
| VELUM LIMITED ITM SA (ANTIGUA AND | : |
|     BARBUDA), | : |
| INTERNATIONAL SAILING FEDERATION | : |
|     LIMITED | : |
| INTERNATIONAL LASER CLASS | : |
|     ASSOCIATION, and | : |
| FARZAD RASTEGAR, | : |
|  | : |
| Defendants. | : |

-----------------------------------------------------------------X
|  |  |
|---|---|
| LASERPERFORMANCE (EUROPE) LIMITED, and | : |
| QUARTER MOON, INCORPORATED, | : |
|  | : |
| Defendants-Counterclaim Plaintiffs, | : |
|  | : |
| - against - | : |
|  | : |
| BRUCE KIRBY, INC., and | : |
| BRUCE KIRBY, | : |
|  | : |
| Plaintiffs-Counterclaim Defendants, | : |
|  | : |
| and | : |
|  | : |
| GLOBAL SAILING LIMITED, and | : |
| PERFORMANCE SAILCRAFT PTY. LTD., | : |
|  | : |
| Additional Counterclaim Defendants. | : |

-----------------------------------------------------------------X

## REPORT OF PARTIES' PLANNING MEETING
## PURSUANT TO FED. R. CIV. P. 26(f)

Date Original Complaint Filed:  March 4, 2013

Date Complaint Served on LaserPerformance (Europe) Limited ("LP Europe"):

April 4, 2013

Date Complaint Served on Quarter Moon, Incorporated ("Quarter Moon"):  March 11, 2013

Date Complaint Served on Karaya (Jersey) Limited ("Karaya"):  March 22, 2013

Date Complaint Served on Velum Limited ITM SA (Antigua and Barbuda) ("Velum"):

May 2, 2013

Date Complaint Served on International Sailing Federation Limited ("ISAF"):

June 5, 2013

Date Complaint Served on International Laser Class Association ("ILCA"):  May 8, 2013

Date Complaint Served on Farzad Rastegar ("Rastegar"):  March 9, 2013

Date of Appearance for LP Europe:  April 1, 2013

Date of Appearance for Quarter Moon:  April 1, 2013

Date of Appearance for Karaya:  April 1, 2013

Date of Appearance for Velum:  May 16, 2013

Date of Appearance for ISAF:  June 26, 2013

Date of Appearance for ILCA:  July 2, 2013

Date of Appearance for Rastegar:  April 1, 2013

Date Counterclaims Filed:  June 12, 2013

Date Counterclaims Served on Global Sailing Limited ("Global Sailing"):  service is

pending.

Date Counterclaims Served on Performance Sailcraft Pty. Ltd. ("PSA"):  service is pending.

Date of Appearance for Global Sailing:  ____, 2013

Date of Appearance for PSA:  ____, 2013

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a conference was held on June 28, 2013.   The participants were:

- Andy I. Corea, of St. Onge Steward Johnston & Reens LLC for Plaintiffs;

- Brian L. Repper, of St. Onge Steward Johnston & Reens LLC for Plaintiffs;

- Turner P. Smith, of Curtis Mallet-Prevost, Colt & Mosle LLP for LP Europe, Quarter Moon, Karaya, Velum, and Rastegar;

- Nicole Mazanitis, of Curtis Mallet-Prevost, Colt & Mosle LLP for LP Europe, Quarter Moon, Karaya, Velum, and Rastegar;

- Jeffrey S. Boxer, of Carter Ledyard & Milburn LLP for ISAF;

- Kevin C. Cain, of Zizik Powers O'Connell Spaulding & Lamontagne, P.C. for ILCA.

## I.      Certification

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with the clients, have developed the following proposed case management plan.  Counsel further certify that they have forwarded a copy of this report to their clients.  Additional counterclaim defendants Global Sailing and PSA have not been served.  Therefore, the proposed case management plan is subject to revision upon the service and appearance of Global Sailing and PSA.

## II.      Jurisdiction

A.  Subject Matter Jurisdiction:  Subject matter jurisdiction is alleged to arise under the trademark laws of the United States, Title 15, U.S.C. Sections 1051 et seq., as amended (hereinafter the "Lanham Act"), 1114 and 1125.  This Court has subject matter jurisdiction over the complaint and the counterclaims pursuant to 15 U.S.C. Sections 1121, and 28 U.S.C. Sections 1331, 1338, and 1367(a).

B.  Personal Jurisdiction:  Plaintiffs have alleged that personal jurisdiction over Defendants is vested in the United States District Court for the District of Connecticut pursuant to Conn. Gen. Stat. § 52-59b.  Plaintiffs have further alleged that Defendants have established requisite minimum contacts with Connecticut to vest personal jurisdiction in this Court by, *inter alia*, transacting business within Connecticut, and committing tortious acts causing injury to a person within Connecticut.  Counterclaims plaintiffs have alleged that the court has personal jurisdiction over plaintiffs-counterclaim defendants as residents of Connecticut and over the additional counterclaim defendants pursuant to Conn. Gen. Stat. § 33-929 as they have engaged in tortious conduct in Connecticut with and through their co-conspirators Kirby and Bruce Kirby, Inc.

Defendants Karaya and Velum have challenged personal jurisdiction.

Defendant ISAF's time to respond to the complaint has not yet expired.  ISAF reserves it right to challenge personal jurisdiction.

## III.     Brief Description of the Case

A.  Claims of Plaintiffs:

1.      Plaintiff Bruce Kirby is the designer of the 13 foot 10 ½ inch sailboat referred to in the Complaint as the "Kirby Sailboat."  Plaintiff Bruce Kirby, Inc. ("BKI") is the owner of

U.S. Trademark Registration No. 3532451 for the mark BRUCE KIRBY® for use in connection with "Boats."  The Plaintiffs will hereinafter be referred to collectively as "Kirby."

2.     Kirby entered into a series of agreements with various sailboat builders as well as the international governing bodies that regulate competitive sailing for the manufacture and sale of boats using the Kirby Sailboat design.  Under the terms of these agreements, the builders paid a royalty to Kirby and received the right to manufacture boats according to the Kirby Sailboat design and uniform Construction Manual and to affix a plaque ("ISAF Plaque") on the hull of each boat featuring Bruce Kirby's name and trademark, and a unique hull/sail number.  The plaque confirms that the boat was built according to the Kirby sailboat design and is authorized by Kirby.  Only those boats manufactured under the various builder agreements and bearing the appropriate plaque were entitled to race in events sanctioned by the international governing bodies.  LP Europe and Quarter Moon are successors to the Builder Agreements for Europe and North America, respectively.  Both LP Europe and Quarter Moon defaulted their Builder Agreements for *inter alia* failure to pay royalties to Kirby, and their agreements were therefore terminated in 2012.

3.     Notwithstanding the termination, LP Europe and Quarter Moon have continued to affix ISAF Plaques bearing the BRUCE KIRBY trademark to boats sold within the United States and this District.  Further, ISAF and ILCA have supplied ISAF Plaques to the defendant builders after termination of the Builder Agreements.  On information and belief, Karaya and Velum have permitted Quarter Moon and LP Europe to use the LASER trademark to manufacture and sell these boats. Quarter Moon, LP Europe, Karaya, Velum, Rastegar, ISAF, and ILCA's use of the BRUCE KIRBY trademark on boats that are not authorized by Kirby constitutes trademark

infringement, counterfeiting, unfair competition and false designation of origin under federal and state law, as well as misappropriation of Bruce Kirby's rights of publicity.

4.      Terminated builder LP Europe, together with ISAF Plaque suppliers ISAF and ILCA, and LASER trademark owner Velum are manufacturing unauthorized Kirby Sailboats in the United Kingdom and importing them into the United States for sale in Connecticut and in interstate commerce in the United States.   These unauthorized Kirby Sailboats are marked "BUILT BY LaserPerformance" which is likely to confuse consumers into believing those Kirby Sailboats are manufactured by a company in the United States.   These activities are likely to cause confusion, mistake and deception as to the origin of these Kirby Sailboats, in violation of 15 U.S.C. § 1114.

5.      LP Europe and Quarter Moon have defaulted their obligations under their respective Builder Agreements by failing to pay required royalties, failing to provide written sales reports, failing to provide notice or secure approval of assignments of rights and obligations under the agreements, selling and/or sourcing boats outside their respective territories.   LP Europe and Quarter Moon have further defaulted their post-termination obligations under their respective Builder Agreements by: continuing to manufacture Kirby Sailboats after termination; continuing to use molds, plugs, production tooling, and the Construction Manual for making Kirby Sailboats; and failing to negotiate the sale of the molds, plugs, and production tooling to Kirby at a fair market price.

6.      ISAF, ILCA, Karaya, and Velum have induced LP Europe and Quarter Moon to default on their Builder Agreements by continuing to issue ISAF Plaques to them after they had ceased making royalty payments and providing sales reports to Kirby.   ILCA and ISAF have created a new version of the ISAF Plaque ("New ISAF Plaque") that does not feature the

BRUCE KIRBY trademark and issued the New ISAF Plaques to the terminated builders.  ISAF, ILCA, Karaya, and Velum induced LP Europe and Quarter Moon to default on the post-termination obligations of the Builder Agreements (including the obligation to cease the manufacture of Kirby Sailboats) by continuing to issue ISAF Plaques and New ISAF Plaques to them after they had been terminated.

7.      ISAF, ILCA, Karaya, and Velum tortiously interfered with the Builder Agreements by continuing to issue ISAF Plaques and New ISAF Plaques to and permit use of the LASER trademark by LP Europe and Quarter Moon.  This encouraged and enabled LP Europe and Quarter Moon to continue to manufacture and sell Kirby Sailboats, depriving Kirby of royalties in their territories.

8.      ILCA purports to have lawfully changed the ILCA rules to permit ILCA to appoint non-licensed builders of the Kirby Sailboat ("ILCA Rule Change").  ISAF purports to have lawfully sanctioned and approved the ILCA Rule Change.  Neither of these actions was lawfully executed, but they created a false impression in the sailing community that the unauthorized and counterfeit Kirby Sailboats are officially sanctioned, authentic, legitimate, and comply with the ISAF Agreement and the Construction Manual.  As a result, the terminated builders have been able to continue to manufacture and sell unauthorized Kirby Sailboats, in violation of the termination provisions of the 1983 and 1989 Builder Agreements.  Therefore, these actions of ISAF and ILCA induced Quarter Moon and LP Europe to default on the termination provisions of the 1983 and 1989 Builder Agreements and tortiously interfered with those Agreements.

B.  Defenses and Counterclaims of Defendants:

LP Europe's and Quarter Moon's Affirmative Defenses:

1.      First Affirmative Defense:  the complaint fails to state a claim upon which relief can be granted.

2.      Second Affirmative Defense:  plaintiffs have no standing to bring this lawsuit, having sold in 2008 whatever intellectual property and contract rights they owned.

3.      Third Affirmative Defense:  plaintiffs are barred from relief because they failed to join a required party under Fed. R. Civ. P. 19.

4.      Fourth Affirmative Defense:  plaintiffs' claims are barred by the applicable statutes of limitations and laches.

5.      Fifth Affirmative Defense:  plaintiffs are barred from relief under the doctrine of unclean hands.

6.      Sixth Affirmative Defense:  plaintiffs have failed to mitigate any damage they claim to have incurred.

<u>Karaya and Velum</u>

Karaya and Velum have moved to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction over them and pursuant to Fed R. Civ. P. 12 (b)(6) for failure to state a claim.  They reserve the right to assert affirmative defenses should the court deny their motion to dismiss.

<u>Mr. Rastegar</u>

Mr. Rastegar has moved to dismiss the complaint pursuant to Fed R. Civ. P. 12 (b)(6) for failure to state a claim.  He reserves the right to assert affirmative defenses should the court deny his motion to dismiss.

<u>ISAF</u>

ISAF's time to respond to the complaint has not yet expired.  ISAF reserves its rights to move to dismiss the complaint, including pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and Fed R. Civ. P. 12 (b)(6) for failure to state a claim.  ISAF further reserves its right to assert affirmative defenses or claims should it answer the complaint or should the court deny its motion to dismiss.

LP Europe's and Quarter Moon's Counterclaims:

     1.     First Counterclaim By LaserPerformance and Quarter Moon Against Kirby and BKI:  Declaratory Judgment That Kirby and BKI Have No Rights Under the Builder Agreement.

Kirby and BKI transferred all rights and obligations in the Builder Agreements to Global Sailing in June 2008.  In May of 2010, Global Sailing terminated the 1983 Builder Agreement with LP Europe.  The 1989 Builder Agreement with Quarter Moon has not been terminated.  Kirby and BKI no longer have any rights or obligations under the 1983 and 1989 Builder Agreements.  There is an actual controversy between Kirby and BKI and LP Europe and Quarter Moon regarding the ownership of the rights and obligations of the Builder Agreements because Kirby and BKI have sued LP Europe and Quarter Moon in this action for breach of the Builder Agreements.  Accordingly, defendants-counterclaim plaintiffs request a judgment declaring that plaintiffs Kirby and BKI have no rights under the 1983 and 1989 Builder Agreements.

     2.     Second Counterclaim By LaserPerformance And Quarter Moon Against Kirby and BKI:  Declaratory Judgment That Kirby And BKI Have No Rights In the "Bruce Kirby" Name Or Trademark.

In 2008, Kirby and BKI transferred to Global Sailing all trademarks, brand names, trade dress rights, logos, internet domain names and corporate names, together with the goodwill associated with the foregoing, and applications registrations and renewals thereof.  On information

and belief, Global Sailing owns and controls all rights associated with the BRUCE KIRBY name

and trademark, including the licensing of the BRUCE KIRBY name and trademark.  Although

Kirby and BKI have no rights in the BRUCE KIRBY name and trademark, they have purported to

sue for infringement of those rights in Counts I through III of the complaint in this action.  There is

an actual controversy between Kirby and BKI and LP Europe and Quarter Moon regarding the

BRUCE KIRBY name and trademark because Kirby and BKI have sued LP Europe and Quarter

Moon and others in this action, alleging counterfeiting, infringement of the BRUCE KIRBY

trademark, unfair competition, false designation of origin and misappropriation of publicity rights.

Accordingly, defendants-counterclaim plaintiffs request a judgment declaring that plaintiffs Kirby

and BKI have no rights under the 1983 and 1989 Builder Agreements.

      3.    <u>Third Counterclaim By LaserPerformance and Quarter Moon Against Kirby, BKI,
Global Sailing And PSA:  Tortious Interference With Business Relations.</u>

      LP Europe and Quarter Moon have extensive business relationships with thousands of

customers to which they sell Lasers.  As long time participants in the sailing market, Kirby, BKI,

Global Sailing and PSA knew of the business relationships between LP Europe and Quarter Moon

and their customers.

      Kirby, BKI and Global Sailing intentionally interfered with the business relationships

between LP Europe and Quarter Moon and their customers by:  (1) engaging in the transfer to

Global Sailing of rights and obligations under the Builder Agreements and the BRUCE KIRBY

name and trademark; (2) causing Global Sailing to terminate the 1983 Builder Agreement; (3)

initiating and pursuing this baseless lawsuit; (4) launching a world-wide publicity campaign

wrongfully impugning the integrity of LP Europe and Quarter Moon and falsely accusing them of

building Lasers that require frequent repairs and of failing to make necessary parts available; and (4) creating and advertising the "Kirby Torch."

In all of the actions referred to above, Kirby, BKI, Global Sailing and PSA acted maliciously with the objective of destroying the business of LP Europe and Quarter Moon. As a result of the tortious interference by Kirby, BKI, Global Sailing and PSA, Laser Performance and Quarter Moon have been damaged in an amount to be established at trial in excess of $10 million.

4.    <u>Fourth Counterclaim By LaserPerformance And Quarter Moon Against Kirby, BKI, Global Sailing And PSA:  Conspiracy To Tortiously Interfere With Business Relations.</u>

Kirby, BKI, Global Sailing and PSA entered into a conspiratorial agreement to tortiously interfere with the business relationships between LP Europe and Quarter Moon and their customers. As a result of the conspiracy, LP Europe and Quarter Moon have been damaged in an amount to be established at trial in excess of $10 million.

5.    <u>Fifth Counterclaim By LaserPerformance And Quarter Moon Against Kirby, BKI, Global Sailing And PSA:  Violation Of The Connecticut Unfair Trade Practices Act.</u>

Kirby, BKI, Global Sailing and PSA have engaged in the following unfair trade practices in the advertising, sale, offering for sale and distribution of the Laser, the Kirby Sailboat and/or the Kirby Torch:

(a)    Kirby, BKI and Global Sailing intentionally interfered with the business relationships between Quarter Moon and its customers by engaging in the transfer to Global Sailing of rights and obligations under the 1989 Builder Agreement and the BRUCE KIRBY name and trademark.

(b)    Kirby and BKI intentionally interfered with the business relationships between Quarter Moon and its customers by initiating and pursuing this baseless lawsuit.

(c)     Kirby, BKI, Global Sailing and PSA intentionally interfered with the business relationships between Quarter Moon and its customers by creating and advertising the "Kirby Torch."

In all of the actions referred to above, Kirby's, BKI's, Global Sailing's and PSA's unfair and deceptive trade practices caused a substantial and unjustified injury to Quarter Moon, which could not have been avoided and is likely to mislead consumers. The injury to Quarter Moon is not outweighed by any countervailing benefits to consumers or by legitimate competition.

Kirby, BKI, Global Sailing and PSA have launched a world-wide publicity campaign wrongfully impugning the integrity of Quarter Moon and falsely accusing it of building Lasers that require frequent repairs and of failing to make necessary parts available.  The misleading misrepresentations are material, and likely to affect consumer decisions and conduct because the misrepresentations speak to the quality of the Lasers manufactured and sold by Quarter Moon.

Kirby's, BKI's, Global Sailing's and PSA's unfair and deceptive trade practices demonstrate a reckless indifference to the rights of Quarter Moon, and reveal that Kirby, BKI, Global Sailing and PSA acted out of malice to injure Quarter Moon.  Quarter Moon has suffered an ascertainable loss in an amount to be determined at trial, but in excess of $1 million, as a result of Kirby's, BKI's, Global Sailing's and PSA's unfair and deceptive trade practices.

6.     <u>Sixth Counterclaim By LaserPerformance Against Kirby, BKI And Global Sailing: Breach Of The 1983 Builder Agreement.</u>

Pursuant to Section 2.3 of the 1983 Builder Agreement, Kirby, BKI and later Global Sailing granted to LP Europe's predecessor in interest the exclusive license of the "design rights" to manufacture, sell and market the "Kirby Sailboat" in the "Licensed Territory." This Licensed Territory is defined in the agreement as Europe, certain countries in Africa and the Middle East.  As

consideration for this exclusive license, LP Europe agreed to and did pay certain royalties to Kirby, BKI and later Global Sailing. Kirby, BKI and Global Sailing have breached Section 2.3 of the 1983 Builder Agreement by licensing the same "design rights" to a builder in the Netherlands to build the so-called "Kirby Torch" in LP Europe's License Territory. As a result, LP Europe has been damaged in an amount to be determined at trial, in excess of $1 million.

       7.      <u>Seventh Counterclaim By Quarter Moon Against Kirby, BKI And Global Sailing:</u> <u>Breach Of The 1989 Builder Agreement.</u>

       Pursuant to Section 2.1 of the 1989 Builder Agreement, Kirby, BKI and later Global Sailing granted to Quarter Moon's predecessor in interest the exclusive license of the "design rights" to produce, market and sell the "Kirby Sailboat" in the "Licensed Territory." This Licensed Territory is defined in the agreement as North America and certain countries in Central and South America. As consideration for this exclusive license, Quarter Moon agreed to and did pay certain royalties to Kirby, BKI and later Global Sailing a royalty for each sailboat built. Kirby, BKI and Global Sailing have breached Section 2.1 of the 1989 Builder Agreement by licensing the same "design rights" to a builder in Canada to build the so-called "Kirby Torch" in Quarter Moon's Licensed Territory. As a result, Quarter Moon has been damaged in an amount to be determined at trial, but in excess of $1 million.

       8.      <u>Eighth Counterclaim By LaserPerformance And Quarter Moon Against Kirby and BKI:  Breach Of The November 2005 Agreement.</u>

       Kirby, BKI, LP Europe and Quarter Moon are parties to the November 2005 Agreement. Pursuant to Section 4 of the November 2005 Agreement, the parties agreed to "keep all information contained in the Construction Manual strictly confidential." LP Europe and Quarter Moon performed their obligations under the November 2005 Agreement by keeping all information in the

Construction Manual confidential, and by manufacturing the Kirby Sailboat pursuant to the specifications in the Construction Manual.  Kirby and BKI have breached Section 4 of the November 2005 Agreement by depositing a copy of the Construction Manual with the U.S. Copyright Office with an application for copyright protection. On information and belief, the public therefore has access to the contents of the Construction Manual.  As a result of Kirby's, BKI's and Global Sailing's breach, LP Europe and Quarter Moon have been damaged because the public (and other builders not parties to the November 2005 Agreement) have access to the confidential specifications in the Construction Manual.  Accordingly, LP Europe and Quarter Moon have been damaged in an amount to be determined at trial, in excess of $1 million.

       9.     <u>Ninth Counterclaim By LaserPerformance And Quarter Moon Against Kirby, BKI And Global Sailing:  Unjust Enrichment.</u>

From about 2007, LP Europe and Quarter Moon overpaid Kirby, BKI and Global Sailing more than $250,000 in royalties. Accordingly, Kirby, BKI and Global Sailing have been unjustly enriched.  As a result, LP Europe and Quarter Moon have been damaged in an amount to be determined at trial in excess of $250,000.

**IV.    Statement of Undisputed Facts**:

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute.  The parties state that the following material facts are undisputed:

      a.     On or about November 30, 1983, Kirby, the International Yacht Racing Union ("IYRU"), ILCA, IYRU Holdings Limited, and Laser International Holdings (1983) Limited entered into an agreement.

b.      On or about July 11, 1983, Kirby entered into a License Agreement ("1983 Builder Agreement") with Brook Shaw Motor Services Ltd. ("Brook Shaw").

c.      On or about August 30, 1995, Performance Sailcraft Europe Limited ("PSE") succeeded to all of Brook Shaw's rights and obligations under the 1983 Builder Agreement pursuant to a written amendment between PSE and Kirby.  On or about May 3, 2005, Kirby and PSE entered an Amendment to the 1983 Builder Agreement.  On or about June 16, 2005 Bruce Kirby and PSE entered into an Amendment to the 1983 Builder Agreement.

d.      On or about March 31, 1989, Kirby entered into a License Agreement ("1989 Builder Agreement") with PY Small Boat, Inc. ("PYSBI").  In or about 1991, Sunfish/Laser, Inc. succeeded to all of PYSBI's rights and obligations under the 1989 Builder Agreement.  On or about March 25, 1997, Kirby and Sunfish/Laser, Inc. entered into an Amendment by which Quarter Moon, Inc. d/b/a Vanguard Racing Sailboats ("QM Vanguard") succeeded to all Sunfish/Laser, Inc.'s rights and obligations in and to the 1989 Builder Agreement.

e.      The records of the United States Patent and Trademark Office ("USPTO") indicate that BKI is the owner of U.S. Trademark Registration No. 3532451 for the mark BRUCE KIRBY® for use in connection with "Boats."

f.      The records of the USPTO indicate that the current owner of the LASER trademark in the United States is Karaya (Jersey) Limited, with an address of 14 Conway Street, St. Helier, Jersey, Channel Islands.

g.      The records of the United Kingdom Intellectual Property Office ("UKIPO") indicate that the current owner of the LASER trademark in the United Kingdom is Velum Limited ITM SA (Antigua and Barbuda), with an office at 17 rue du Cendrier, PO Box 1699 CH-1211 Geneva 1, Switzerland.

h.      The records of the Office for Harmonization in the Internal Market ("OHIM")

indicate that the current owner of the LASER community trademark in Europe is Velum Limited

ITM SA (Antigua and Barbuda), with an office at 17 rue du Cendrier, PO Box 1699 CH-1211

Geneva 1, Switzerland.

**V.  Case Management Plan:**

The following proposed case management plan is subject to revision upon the service and

appearance of Global Sailing and PSA.

A.  Standing Order on Scheduling Civil Cases

The parties request modification of the deadlines in the Standing Order on Scheduling in

Civil Cases as follows:

Amended pleadings due:  August 15, 2013

Discovery due:  June 30, 2014

Dispositive motions due: August 29, 2014

B.  Scheduling Conference with the Court

The parties do not request a pretrial conference with the Court before entry of a scheduling

order pursuant to Fed. R. Civ. P. 16(b).

C.  Early Settlement Conference

1.      The parties certify that they have considered the desirability of

attempting to settle the case before undertaking significant discovery or

motion practice, but do not believe settlement can be achieved.

**Settlement may be enhanced by use of the following procedure: a**

**settlement conference with a master or magistrate.**

2.      The parties **do not request** an early settlement conference.

    3.    The parties prefer a settlement conference with **a magistrate judge.**

    4.    The parties **do not request** a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

C.  Joinder of Parties and Amendment of Pleadings

    1.    Plaintiffs should be allowed until August 15, 2013 to file motions to join additional parties and until August 15, 2013 to file motions to amend the pleadings.

    2.    Defendant should be allowed until August 15, 2013 to file motions to join additional parties and until August 15, 2013 to file motions to amend the pleadings.

D.  Discovery

    1.    The parties anticipate that discovery will include, but will not be limited to, the following subjects:

        **-default of contract**

        **-ownership and contractual obligations between corporate defendants**

        **-likelihood of confusion**

        **-damages**

        **-validity**

    2.    All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4) will be commenced immediately**.**

    3.    Discovery **will not** be conducted in phases.

    4.    Fact discovery will be completed by June 30, 2014**.**

5. The parties anticipate that the plaintiffs will require a total of 10-12 depositions of fact witnesses and that the defendants will require a total of 10-12 depositions of fact witnesses.  The depositions will commence immediately and be completed by June 30, 2014.

6. The parties **will not** request permission to serve more than 25 interrogatories.

7. Plaintiffs **intend** to call expert witnesses at trial.  Plaintiffs will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by June 30, 2014.

8. Defendants **intend** to call expert witnesses at trial.  Defendants will designate all trial experts and provide opposing counsel with reports from retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by June 30, 2014.

9. Plaintiffs and defendants will designate rebuttal trial experts (if any) and provide opposing counsel with reports from retained rebuttal experts by August 11, 2014.

10. Depositions of all experts will be completed by September 22, 2014.

11. A damages analysis will be provided by August 29, 2014 by any party who has a claim or counterclaim for damages.

10. The undersigned have discussed the disclosure and preservation of electronically stored information, including, but not limited to, the form in which such data shall be produced, search terms to be

applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information.  The parties agree to the following procedures for the preservation, disclosure and management of electronically stored information or the parties:

- all electronic documents, including all email, documents, archives, and webpages, of either party relating to the parties' businesses and activities in issue in the action shall be retained.

11. Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures for asserting claims of privilege after production or the parties have been unable to reach agreement on the procedures for asserting claims of privilege after production:

(a) the party claiming privilege shall give written notice of the privilege;

(b) the party who has received the document shall return or delete all copies of the document within ten (10) days;

(c) If the party who received the document believes the claim of privilege is improper, it shall promptly institute a telephonic

discovery conference with chambers and can adjourn return and deletion of the document until after the a telephonic discovery conference is held.

E.  Dispositive Motions

Dispositive motions will be filed on or before August 29, 2014.

F.  Joint Trial Memorandum

The joint trial memorandum required by the Standing Order on Trial Memoranda in Civil Cases will be filed by September 15, 2014, unless there is a pending motion for summary judgment, in which case the Joint Trial Memorandum will be due 60 days after an Order is entered with respect to such pending motion for summary judgment.

## V.      TRIAL READINESS

The case will be ready for trial by October 20, 2014.  As officers of the Court, undersigned counsel agree to cooperate with each other and the Court to promote the just, speedy and inexpensive determination of this action.

Respectfully submitted,

July 12, 2013

/s/ Andy I. Corea
Wesley W. Whitmyer, Jr., ct03509
Andy I. Corea, ct25925
Brian L. Repper, ct28225
ST. ONGE STEWARD JOHNSTON & REENS LLC
986 Bedford Street
Stamford, Connecticut  06905-5619
Telephone: (203) 324-6155
Facsimile: (203) 327-1096
Email: wwhitmyer@ssjr.com; acorea@ssjr.com;
litigation@ssjr.com

*ATTORNEYS FOR PLAINTIFFS*


/s/ Turner P. Smith
Turner P. Smith, ct24359
Curtis, Mallet-Prevost, Colt & Mosle LLP
101 Park Avenue
New York, NY  10178
Telephone: (212) 696-6121
Facsimile: (917) 368-8821
Email: tsmith@curtis.com

*ATTORNEYS FOR DEFENDANTS*
*LASERPERFORMANCE (EUROPE) LIMITED;*
*QUARTER MOON, INCORPORATED;*
*KARAYA (JERSEY) LIMITED; VELUM LIMITED;*
*FARZAD RASTEGAR*

/s/ Kevin C. Cain
Kevin C. Cain, Esq.
ZIZIK, POWERS, O'CONNELL,
        SPAULDING & LAMONTAGNE, P.C.
690 Canton Street, Suite 306
Westwood, MA 02090
(781) 320-5441
kcain@zizikpowers.com

*ATTORNEYS FOR DEFENDANT*
*INTERNATIONAL LASER CLASS ASSOCIATION*

/s/ Judith A. Lockhart
Judith A. Lockhart
CARTER LEDYARD & MILBURN LLP
2 Wall Street
New York, NY  10005
(212) 732-3200
lockhart@clm.com

*ATTORNEYS FOR DEFENDANT*
*INTERNATIONAL SAILING FEDERATION LIMITED*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on July 15, 2013, a copy of foregoing REPORT OF PARTIES'

PLANNING MEETING PURSUANT TO FED. R. CIV. P. 26(f) was filed electronically and

served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by

e-mail to all parties by operation of the court's electronic filing system or by mail to anyone

unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may

access this filing through the court's CM/ECF System.


July 12, 2013                                            */s/ Joan M. Burnett*
Date                                                     Joan M. Burnett