# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC., and<br>BRUCE KIRBY<br><br>      Plaintiffs,<br><br>        vs.<br><br>LASERPERFORMANCE (EUROPE) LIMITED,<br>QUARTER MOON, INCORPORATED,<br>KARAYA (JERSEY) LIMITED,<br>VELUM LIMITED ITM SA (ANTIGUA AND<br>BARBUDA),<br>INTERNATIONAL SAILING FEDERATION<br>LIMITED,<br>INTERNATIONAL LASER CLASS<br>ASSOCIATION, and<br>FARZAD RASTEGAR<br><br>      Defendants. | Civil Action No. 3:13-cv-00297-RNC |

LASERPERFORMANCE (EUROPE)
   LIMITED, and
QUARTER MOON, INCORPORATED,

      Defendants-Counterclaim Plaintiffs,

        vs.

BRUCE KIRBY, INC., and
BRUCE KIRBY,

      Plaintiffs-Counterclaim Defendants,

        and

GLOBAL SAILING LIMITED, and
PERFORMANCE SAILCRAFT PTY. LTD.,

      Additional Counterclaim Defendants.

## PLAINTIFFS' OPPOSITION TO DEFENDANT
## FARZAD RASTEGAR'S MOTION TO DISMISS PLAINTIFFS'
## AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM

**TABLE OF CONTENTS**

I.      INTRODUCTION .............................................................................................1

II.     BACKGROUND ..............................................................................................2

III.    THE COURT SHOULD DENY RASTEGAR'S MOTION TO
        DISMISS BECAUSE KIRBY HAS ASSERTED CLAIMS UPON
        WHICH THIS COURT CAN GRANT RELIEF ......................................................3

        A.    Legal Standard ......................................................................................3

        B.    Counts I-VII of the First Amended Complaint State Claims Upon
              which this Court Can Hold Rastegar Personally Liable. ..............................4

        C.    Kirby Relied on Documents in Bringing Its Suit That Support
              Piercing the Corporate Veil of the Companies ..........................................5

              1.    March/April 2010 Email Chain. ....................................................5

              2.    The January 2012 Email Chain.......................................................6

              3.    The Laser Performance Entities......................................................7

              4.    September 2011 Kirby/Rastegar Email ............................................8

              5.    October 2011 Kirby/Rastegar Email...............................................8

              6.    April 2011 Rastegar/Kirby Email ...................................................9

              7.    December 2010 Rastegar Email......................................................9

              8.    July 2010 Rastegar Email .............................................................9

              9.    November 2002 Email ..................................................................9

              10.   May 2007 Whitmyer Letter ........................................................10

              11.   April 2007 Rastegar Email..........................................................10

              12.   Dory Ventures LLC ...................................................................10

        D.    Kirby Identified Sufficient Facts in Its First Amended Complaint to
              State A Claim for Holding Rastegar Personally Liable .............................10

              1.    The First Amended Complaint Satisfies

the Instrumentality Test ...................................................................11

2.    The First Amended Complaint Satisfies
      the Identity Test. ..................................................................12

3.    The Pleading Threshold in this Case Is Necessarily
      Lower Because Many of the Underlying
      Facts Are Not Publically Available. ....................................13

E.    To the Extent the Court Determines that Kirby Has Not Sufficiently
      Plead a Claim Personally Against Farzad Rastegar,
      the Court Should Allow Kirby to Amend its Complaint ..............................13

IV.   CONCLUSION.........................................................................................15

# TABLE OF AUTHORITIES

<u>Cases</u>

*AEP Energy Services Gas Holding Co. v. Bank of Am.*
   626 F. 3d 699 (2d. Cir. 2010).............................................................................14

*Arista Records, LLC v. Doe 3*
   604 F. 3d 110 (2d Cir. 2010)..............................................................................13

*Bell Atlantic Corp. v. Twombly*
   745 F. Supp. 2d 53 (D. Conn. 2010)..............................................................passim

*Brass v. American Film Technologies, Inc.*
   987 F. 2d 142 (2d Cir.1993)..............................................................................4, 5

*CSX Transp., Inc. v. Blakeslee*
   3:11–cv–533 (SRU), 2012 WL 3985169 (D. Conn. September 11, 2013)...............4

*Foman v. Davis*
   371 U.S. 178 (1962)............................................................................................14

*Gurary v. Winehouse*
   235 F. 3d 792 (2d Cir. 2000)...............................................................................14

*Macomber v. Travelers Property & Cas. Corp.*
   261 Conn. 620 (2002) ..........................................................................................4

*New York v. Green*
   420 F.3d 99 (2d Cir. 2005)..................................................................................14

*Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*
   102 F. 3d 660 (2d Cir.1996)) ...............................................................................4

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*
   550 U.S. 544 (2007)..............................................................................................3

*Pangburn v. Culbertson*
   200 F. 3d 65 (2d Cir. 1999).................................................................................14

*Tucker v. American Intern. Group, Inc.*
   595 F. 3d 86 (2d Cir. 2010).................................................................................3

*Williams v. Citigroup Inc.*
   659 F. 3d 208 (2d Cir. 2011)...............................................................................14

Statutes & Rules

Fed. R. Civ. P. 12.................................................................................................................3

Fed. R. Civ. P. 15...............................................................................................................14

Plaintiffs Bruce Kirby, Inc. and Bruce Kirby (collectively "Kirby" or "plaintiff") submit this Opposition to Defendant Farzad Rastegar's ("Rastegar" or "defendant") Motion to Dismiss Plaintiff's Amended Complaint for Failure to State a Claim. (Dkt. 39.)

## I.      INTRODUCTION.

Defendant Farzad Rastegar owns and controls Laser Performance, the largest Kirby Sailboat builder in the world, through a complex web of companies. In the First Amended Complaint, Kirby alleges that four of these Laser Performance companies, LP Europe, Quarter Moon, Karaya, and Velum, breached Kirby's contractual rights and infringed its intellectual property. Rastegar is personally liable to Kirby for the complained of breaches and infringements because he exercised his control and domination over Laser Performance, and specifically the named entities, to cause the injuries to Kirby.

Rastegar's control and domination is clearly illustrated through his correspondence to Bruce Kirby and others over the course of many years. For example, in one email Rastegar provided "formal instructions" to the president of Laser Performance that "all matters in respect of ILCA will have to be referred to and channelled (sic) via my office with immediate effect," and that the president of codefendant ILCA "should channel all communication to me personally at this email address," which was Rastegar's personal email address. Neither the president of Laser Performance, nor any other officer or executive of the Laser Performance companies, objected to Rastegar's formal instructions. On multiple occasions, Rastegar communicated with Kirby on behalf of Laser Performance. For example, Rastegar personally contacted Kirby in an effort to purchase Kirby's rights and in an attempt to schedule a personal meeting to facilitate this purchase. In view of this type of evidence, which is described in detail below, and in view of

the First Amended Complaint, Kirby respectfully requests that the Court deny Rastegar's Motion to Dismiss.

If Court determines that Kirby has not sufficiently supported its claims against Rastegar, Kirby requests that the Court delay ruling on the Rastegar's motion and provide Kirby an opportunity to conduct expedited discovery of confidential information regarding Rastegar's relationship with the officers of the Laser Performance companies and of his relationship with and control over those companies. Kirby's First Amended Complaint alleges certain facts on information and belief because many of the corporate records are not public. These claims will be proven once Kirby has an opportunity to discover confidential information regarding Rastegar's complex web of companies and his relationship thereto. In the alternative, Kirby seeks leave from the Court to amend its complaint as to Rastegar.

## II.    BACKGROUND.

Kirby seeks recovery of damages and equitable relief from Rastegar and Laser Performance for: (1) trademark counterfeiting, arising under the Lanham Act, 15 U.S.C. §1114; (2) trademark infringement, unfair competition, and false designation of origin arising under the Lanham Act, 15 U.S.C. §1114; (3) unfair trade practices under the Connecticut Unfair Trade Practices Act (CUTPA); (4) misappropriation of Bruce Kirby's publicity rights; (5) default of two contracts (the 1983 and 1989 Builder Agreements), and (6) inducement to default the 1983 and 1989 Builder Agreements. Kirby's claims against Laser Performance and Rastegar are described in detail in the First Amended Complaint. A summary of facts relevant to this opposition is provided below.

This case concerns the production, sale, and racing of sailboats designed and sold by Bruce Kirby. In order to establish the Kirby Sailboat as a standard class for international racing,

Kirby reached agreements with the various sailboat builders, including Laser Performance, as well as the international governing bodies that regulate competitive sailing. Under the terms of the agreements, the builders paid a royalty to Kirby and received the right to manufacture Kirby Sailboats and to affix a plaque on the hull of each boat featuring Bruce Kirby's name and trademark, and a unique hull/sail number issued by Kirby.  This brief sets forth Kirby's bases for alleging that the Laser Performance companies are owned and controlled by Rastegar, as illustrated in the chart below, and that he is personally liable for Kirby's injuries.



### III.  THE COURT SHOULD DENY RASTEGAR'S MOTION TO DISMISS BECAUSE KIRBY HAS ASSERTED CLAIMS UPON WHICH THIS COURT CAN GRANT RELIEF.

#### A.  Legal Standard.

On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor. *Tucker v. American Intern. Group, Inc.*, 745 F. Supp. 2d 53, 58 (D. Conn. 2010). In order to survive a motion to dismiss, a complaint must allege a plausible set of facts "sufficient to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*, 595 F. 3d 86, 91 (2d Cir. 2010).

In ruling on a Rule 12(b)(6) motion, a district court must consider facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint

by reference. *Tucker*, 745 F. Supp. 2d at 58 (*citing Newman & Schwartz v. Asplundh Tree Expert Co., Inc.*, 102 F. 3d 660, 662 (2d Cir.1996)). The court may also consider "matters of which judicial notice may be taken" and documents of which plaintiff "had knowledge and relied on in bringing suit." *Brass v. American Film Technologies, Inc.*, 987 F. 2d 142, 150 (2d Cir.1993).

**B.      Counts I-VII of the First Amended Complaint State Claims Upon which this Court Can Hold Rastegar Personally Liable.**

Kirby's Claims I – VII of the First Amended Complaint state claims against a number of Laser Performance companies upon which this Court can and should grant relief. Rastegar is personally liable for these claims because he controlled and caused the unlawful activity of the Laser Performance companies that forms the bases of Kirby's claims.

Rastegar misunderstands Kirby's theory of liability and argues that Kirby has failed to allege that Rastegar himself has met each of the underlying elements of the asserted claims. Kirby does not allege in its complaint, nor does it here, that Rastegar committed the underlying elements of the asserted claims. Rather, Kirby's asks the Court to pierce the veil of the Laser Performance companies and hold Rastegar personally liable because he exercised his control of the Laser Performance companies to cause the complained of injuries to Kirby.

An order piercing the corporate veil is an equitable determination allowing for the enforcement of a judgment against a party not primarily liable. *CSX Transp., Inc. v. Blakeslee*, 3:11–cv–533 (SRU), 2012 WL 3985169, at *5 (D. Conn. September 11, 2013) (*citing Macomber v. Travelers Property & Cas. Corp.*, 261 Conn. 620, 623 n. 3 (2002). In Connecticut, the concept of piercing the corporate veil is not itself treated as an independent cause of action. *Id*. In other words, Kirby is not required to establish that Rastegar himself committed each of the underlying elements of the claims. Instead, and as set forth in detail below, Kirby need only allege facts that if taken as true are sufficient to pierce the corporate veil of the Laser Performance companies.

**C.    Kirby Relied on Documents in Bringing Its Suit That Support Piercing the Corporate Veil of the Companies.**

In ruling on a motion to dismiss for failure to state a claim, the Court may rely on documents that the Plaintiff had knowledge of and relied on in bringing suit. *Tucker*, 745 F. Supp. 2d at 58 (*citing Brass*, 987 F.2d at 150). Kirby had knowledge and relied on the following documents in bringing suit against Rastegar.

1.    March/April 2010 Email Chain.

A March/April 2010 email chain between ICLA president, Mr. Heini Wellmann, and Farzad Rastegar, demonstrates that Rastegar dominated and controlled Laser Performance in the unlawful actions complained of in the First Amended Complaint. In the email chain, as with all of his correspondence, Rastegar uses a personal email address, farbcal@hotmail.com. (Ex. 1.) In one communication in the chain, Rastegar characterized himself as "by far the largest territory and participant in the [laser] class" and he threatened ILCA that to ignore substantive issues raised by Rastegar, "including outright breach of [Laser Performance's] trademarks and business goodwill is tantamount to negligence on the part of ILCA." (*Id.* at 4.)[1]

In that same email chain, Rastegar threatened that his companies, QM Vanguard/Quarter Moon and PSE/LP Europe, would not attend a conference unless certain issues were resolved. (*Id.* at 7 ("I think it is noteworthy that the issues involved are such that QMI and PSE will be unable to attend the forthcoming World Council meeting without addressing them. This is a situation that would very much bear on the future of Laser as a global class and on its stakeholders.").)

---

[1] The pinpoint citations herein refer to page numbers assigned by the Court's electronic filing system and printed on the header of each document.

5

In one communication included in the April/March 2010 email chain, Rastegar formally

instructed the then president of Laser Performance (Ex. 2), Devin Kelly, to refer all ILCA

matters directly through Rastegar for immediate effect:

> Dear Devin,
> **Please note this as your formal instructions that all matters in respect of ILCA will have to be referred to and channelled via my office with immediate effect.** In the meantime all discussions, initiatives, programs and relationship with ILCA needs to be suspended until cleared by my office. In order to facilitate this, I am asking Bill Crane to take the responsibility of acting on behalf of my office working with me directly. To this effect, **I am copying Mr Wellmann for his information and respectfully request that he should channel all communication equally to me personally at this email address**. No direct contact would be possible without passing through my office until all issues in respect of the relationship with ILCA have been addressed, hopefully in a constructive and progressive manner.
> Whilst I understand that this would be a procedural inconvenience for everybody, it is important to note that the allegations of ILCA against LP are most disturbing and are simply unhelpful to a relationship that should otherwise be based on support and collaboration.
> Kind regards,
> Farzad

(Ex. 1 at 13 (emphasis added).)

> 2.    The January 2012 Email Chain.

In a subsequent January 2012 email chain between Rastegar and ICLA president, Mr.

Wellmann, Rastegar offered, vis-à-vis his alter ego Laser Performance, to sponsor a regatta that

ILCA was planning in Buenos Aires, Argentina. (Ex. 3 at 11.) The chain of correspondence

became strained when Rastegar's tentative agreement to supply one hundred boats for the regatta

was called into question. Rastegar's response to questions raised by ILCA further demonstrates

his control over Laser Performance. Rastegar wrote:

> Dear Heini:
> I find this exchange incredibly unfortunate. In a sense, it is also offensive. I do believe that you seeking a sponsorship is confused with you demanding financial support. The attitude, the form and the substance are all regrettable. It is equally unfortunate that you were not disposed to participate in the long telephone conversation with Jeff Martin on this topic. Let me just remind you for the avoidance of doubt: **any attempts to violate LP or any group intellectual property by way of any scheme that ILCA or its agents**

**would devise would be vigorously defended and anyone who perpetrates any initiative to violate our rights would be equally challenged.** I hope this is very clear and unlike your message, there are no veiled threats in there.
This all surreal. If I were you, I would be lining up behind the doors of Maclaren to get a sponsorship rather than embark on threats and demands.
Be guided accordingly.
Respectfully
Farzad

(Ex. 3.)

3.    The Laser Performance Entities.

Prior to filing the complaint, Kirby performed an extensive, and sometimes inconclusive, investigation of Rastegar's companies. Much of the information regarding these companies is confidential and will only be available to Kirby through discovery. On information and belief, Rastegar owns and controls the following entities, which were summarized in a June 2012 blog publication:

300 Highpoint Avenue, Portsmouth, RI 02871
LaserPerformance LLC

200 Highpoint Avenue, Portsmouth, RI 02871
SailLaser LLC
LaserPerformance Sail & Sport LLC
Quarter Moon, Incorporation
Vanguard Sailing Center
Vanguard Sailboats
Vanguard Racing Sailboats
Garda Company LLC

4 Testa Place, S. Norwalk, CT 06854
American Baby Products, Inc. f/k/a Maclaren USA, Inc. (in bankruptcy)
Excelsior Testa LLC
Excelsior Property Holdings LLC

25 Van Zant Street, Norwalk, CT 06854
Maclaren N.A., Inc.
Maclaren Services, Inc.
Dory Ventures LLC

Station Works Station Road, Long Buckby, Northampton, Northamptonshire NN6 7PF
LaserPerformance (Europe) Limited

> SailLaser Limited
> Maclaren Europe Limited
> Ronson Limited
> Ronson International Limited
> Full Moon Holdings Limited
> Sina Holdco Limited

(Ex. 4.) Kirby's ability to plead specific facts is constrained by these complex corporate arrangements. Rastegar should not be permitted to shield himself if he is in fact exercising control and domination of these entities.

4.    September 2011 Kirby/Rastegar Email.

In a September 2011 email exchange, Kirby asked Rastegar to confirm that Kirby and PSE/LP Europe were back to the business relationship they had in 2008. (Ex. 5 at 4.) In response, Rastegar, using his personal email, informed Kirby that neither he, nor any of the former Laser Performance parties to the Builder Agreements, would accept Kirby's request. (*Id.* at 2.)

5.    October 2011 Kirby/Rastegar Email.

In a 2011 email exchange, Bruce Kirby wrote to Rastegar via his personal hotmail address to explain that a purchase of certain assets by a third party was never completed and that the arrangement between Kirby and Rastegar had not changed. (Ex. 6 at 3.) Kirby asked Rastegar to instruct his people on this point and to have them resume the royalty arrangement set forth in the Builder Agreements. (*Id.*)

In a response to Kirby sent via his personal email account, Rastegar informed Kirby that the requests in the email were rejected and without basis. (Ex. 6. at 2.) Rastegar again asked Kirby "to refrain from direct communication with me or any of the LP team." (*Id.*) This response further illustrates Rastegar's control over Laser Performance, and more specifically his control

8

over the claims in suit, namely his decision to stop paying royalties to Kirby under the Builder

Agreements.

        6.     April 2011 Rastegar/Kirby Email.

      In an April 2011 email to Kirby, Rastegar, again using his personal email account, spoke

on behalf of Laser Performance entities PSE/LP Europe and Quarter Moon, Inc. (Ex. 7.)

Rastegar stated to Kirby that "I came to you with a pleading and proposal that you should do

something to protect the legacy of the class and its future. You chose not to despite many long

years of pursuit on my part." (*Id.*)

        7.     December 2010 Rastegar Email.

      In December 2010 email to Kirby, Rastegar, again using his personal email account,

informed Bruce Kirby that "[y]ou must absolutely refrain from contacting members of the

LaserPerformance team . . .." (Ex. 7.)

        8.     July 2010 Rastegar Email.

      In a July 2010 email from Rastegar to a representative of Global Sailing, Rastegar

informed Global Sailing to be aware that post July 11th, there would be no negotiation as to what

would happen next with Laser Performance. Rastegar further stated that "July 11th would be the

date from which we will be seeking to protect and optimize the outcome for us . . .," the use of

"us" being in reference to Laser Performance. (Ex. 9.)

        9.     November 2002 Email.

      In a November 2002 email to Kirby, a third party Kirby Sailboat dealer in the UK stated

that "[w]e are also moving from Banbury to Farzads (sic) premises near Northampton ( about 21

miles away) and down sizing the current structure of the Company to become a sales, and

distribution organization." (Ex. 10 at 2.)  The Third party further stated that "Farzad is telling me

that he also sees me as a solid part of the future so lets see what happens!" (*Id.*)

10.    <u>May 2007 Whitmyer Letter.</u>

In a May 2007 letter to Rastegar's counsel, Kirby's counsel stated that Kirby had met with Rastegar and Rastegar expressed his frustration that the transaction had not moved along more quickly. (Ex. 11 at 2.)

11.    <u>April 2007 Rastegar Email.</u>

In an April 2007 email to Kirby, Rastegar requested a two hour meeting to facilitate a more simple agreement under which Rastegar could acquire Kirby's rights. (Ex. 12 at 1.)

12.    <u>Dory Ventures LLC.</u>

The public records of the Secretary of the State of Connecticut show that Dory Ventures LLC is a limited liability company registered in Connecticut. (Ex. 13 at 1.) The records further show that Rastegar is the managing member of Dory Ventures. (*Id.*) The records of the United States Patent and Trademark Office indicate that Karaya's current domestic representative for the LASER trademarks is Ilan Nordmann, DORY VENTURES, c/o Mr. Thomas von Urbisch, 25 Van Zant Street, Norwalk, CT 06855. (FA Compl. ¶ 46.) Rastegar has a place of business at 25 Van Zant Street, Norwalk, CT 06855. (FA Compl. ¶ 10.)

**D.    Kirby Identified Sufficient Facts in Its First Amended Complaint to State A Claim for Holding Rastegar Personally Liable.**

In addition to the evidence described above, which Kirby relied upon in filing its claims, Kirby's First Amended Complaint states a claim for holding Rastegar personally liable. In determining whether to pierce the corporate veil, the Connecticut Supreme Court employs two separate tests: (1) the "instrumentality" test; and (2) the "identity" test. *Tucker*, 745 F. Supp. 2d at 70 (citations omitted). The plaintiff needs to prevail under only one of the tests to pierce the veil. *See id.* at 69 (denying a motion to dismiss where plaintiff had "pled sufficient facts to make a plausible claim that piercing [defendant's] corporate veil is warranted under the instrumentality

rule."). In the instant case, the First Amended Complaint provides sufficient bases for piercing the corporate veil under either standard.

        1.    <u>The First Amended Complaint Satisfies the Instrumentality Test.</u>

The First Amended Complaint meets the "instrumentality test" by alleging facts that satisfy the three requisite elements.

> (1) control by the parent of the finances, policies and business practices relating to the transaction at issue to such an extent that the subsidiary "had at the time no separate mind, will or existence of its own"; (2) that the parent exercised that control over the subsidiary in order to commit a fraudulent, wrongful, or otherwise unlawful act; and (3) the control and breach of duty must have proximately caused the plaintiff's injury.

*Tucker*, 745 F. Supp. 2d at 70.

The First Amended Complaint addresses each of these elements with factual support. The first element, that Rastegar "had at the time no separate mind, will or existence of [his] own" apart from the Laser Performance companies, is evidenced by the fact that Rastegar owns and/or controls Laser Performance, which include LP Europe, Quarter Moon, Karaya, and Velum. (FA Compl. ¶¶ 10, 49.)

The First Amended Complaint also details how Rastegar used his domination of the Laser Performance companies to commit the unlawful acts complained of in Kirby's pleading. For example, "Rastegar directs and controls the counterfeiting by Quarter Moon/QM Vanguard and Karaya, and by PSE/LP Europe and Velum." (Count I)(FA Compl. ¶ 94; *see also* FA Compl. ¶¶ 33, 39, 44, 49, 53, 60, 63, 69, 70.) In regard to the federal and state unfair competition claims, the First Amended Complaint alleges that "Rastegar directs and controls the trademark infringement, unfair competition and false designation of origin by Quarter Moon/QM Vanguard and Karaya, and by PSE/LP Europe and Velum." (Counts II and III)(FA Compl. ¶¶ 103, 111; *see also* FA Compl. ¶¶ 33, 39, 44, 49, 53, 60, 63, 69, 70.) Kirby also alleged that Rastegar directs and controls Quarter Moon/QM Vanguard, PSE/LP Europe, Karaya and Velum's unauthorized

use of Bruce Kirby's name and encourages ISAF and ILCA's unauthorized use of Bruce Kirby's name. (Counts IV)(FA Compl. ¶ 117; *see also* FA Compl. ¶¶ 33, 39, 44, 49, 53, 60, 63, 69, 70.)

In regard to the breach of the 1983 Builder Agreement, Kirby alleged that Rastegar directs and controls PSE/LP Europe's default of the 1983 Builder Agreement. (Counts V)(FA Compl. ¶ 126; *see also* FA Compl. ¶¶ 63, 69.) In regard to the breach of the 1989 Builder Agreement, Kirby alleged that Rastegar directs and controls Quarter Moon/QM Vanguard's default of the 1989 Builder Agreement. (Counts VI)(FA Compl. ¶ 134; *see also* FA Compl. ¶¶ 63, 69.) In regard to the tortious interference claim, Kirby alleged that Rastegar is a sponsor of ILCA and ISAF and that Rastegar paid or encouraged ILCA to enact the ILCA Rule Change and paid or encouraged ISAF to approve it. (Count VII)(FA Compl. ¶ 85.)

Finally, Rastegar's control of the Laser Performance companies proximately caused Kirby's injuries. The complaint alleges that Kirby was injured by each of the actions complained of in the seven counts alleged against the companies. Rastegar proximately caused the injuries because he controlled the unlawful acts by intentionally causing the companies to infringe Kirby's rights and breach the contracts. Thus, each of the requisite elements exists to justify piercing the corporate veil under the instrumentality test.

2.    The First Amended Complaint Satisfies the Identity Test.

The identity test requires the plaintiff to demonstrate "that there was such a unity of interest and ownership that the independence of the corporations had in effect ceased or had never begun." *Tucker v*, 745 F. Supp. 2d at 70 (D. Conn. 2010) (citations omitted). The First Amended Complaint easily satisfies this standard. Laser Performance's lack of independence, and that of its underlying companies LP Europe, Quarter Moon, Karaya, and Velum, is self evident by that fact that Rastegar dominates and controls these companies.

3.     <u>The Pleading Threshold in this Case Is Necessarily Lower Because Many of the Underlying Facts Are Not Publically Available.</u>

Finally because the "veil-piercing inquiry is necessarily fact-specific," and "presents a question of fact" specific to the "circumstances of a particular case," it is ill-suited to be resolved by a motion to dismiss. *Tucker*, 745 F. Supp. 2d at 70. This is especially true in this case, where the dominating party shielded himself from liability behind a number legal entities registered in off shore locations and/or being immune from even the most routine mandatory public disclosure obligations. *See Arista Records, LLC v. Doe 3*, 604 F. 3d 110, 120 (2d Cir. 2010) (a plaintiff need not plead specific evidence, nor is it barred from pleading facts on information and belief, particularly where the relevant facts are "peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible.")

In this case, even the most basic information regarding Rastegar's corporations is not publically available. To the extent that the Court determines that the information relied upon by Kirby and set forth in its First Amended Complaint is insufficient to support its claims against Rastegar, Kirby requests that the Court delay ruling on the 12(b)(6) motion to dismiss and grant Kirby an opportunity to conduct expedited discovery of Rastegar and his companies in order to further support its claims.

**E.     To the Extent the Court Determines that Kirby Has Not Sufficiently Plead a Claim Personally Against Farzad Rastegar, the Court Should Allow Kirby to Amend its Complaint.**

Although Kirby contends that it has sufficiently set forth a claim to hold Farzad Rastegar personally liable, Kirby respectfully requests that the court allow it to file an amended claim if this Court determines that Kirby has not sufficiently set forth a claim.

13

Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2) (2013). District courts "ha[ve] broad discretion to decide whether to grant leave to amend." *Gurary v. Winehouse*, 235 F. 3d 792, 801 (2d Cir. 2000). *See also AEP Energy Services Gas Holding Co. v. Bank of Am.*, 626 F. 3d 699, 725 (2d. Cir. 2010)(rule in Second Circuit is to grant leave to amend in the absence of showing by nonmovant of prejudice or bad faith).

The standard governing motions to amend is informed by a "strong preference for resolving disputes on the merits." *See Williams v. Citigroup Inc.*, 659 F. 3d 208, 212–13 (2d Cir. 2011) (*citing New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see also Pangburn v. Culbertson*, 200 F. 3d 65, 70 (2d Cir. 1999) (referring to the "relaxed standard" for motion to amend). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." *Foman v. Davis*, 371 U.S. 178 (1962).

In this case, personal claims against Rastegar are the proper subject of relief because Rastegar has dominated and controlled the Laser Performance companies to unlawfully harm Kirby. Kirby, therefore, should accordingly be given an opportunity to hold Rastegar liable for his actions. Therefore, to the extent the Court determines that Kirby's claim is insufficient; the Court should permit Kirby an opportunity to refile its claim.

**IV.     CONCLUSION.**

For the foregoing reasons, Kirby respectfully requests that the Court deny Rastegar's

Motion to Dismiss.

July 15, 2013                                              _____/s/ *Wesley W. Whitmyer, Jr.*_____
                                                          Wesley W. Whitmyer, Jr., ct03509
                                                          Andy I. Corea, ct25925
                                                          Brian L. Repper, ct28225
                                                          St. Onge Steward Johnston & Reens LLC
                                                          986 Bedford Street
                                                          Stamford, Connecticut  06905-5619
                                                          Telephone: (203) 324-6155
                                                          Facsimile: (203) 327-1096
                                                          Email:  litigation@ssjr.com

                                                          ATTORNEYS FOR PLAINTIFFS

<u>**CERTIFICATE OF SERVICE**</u>

This is to certify that on this 15th day of July, 2013, a true and correct copy of the foregoing **PLAINTIFFS' OPPOSITION TO DEFENDANT FARZAD RASTEGAR'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM and Exhibits 1 – 13** were filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

<u>July 15, 2013</u>                        *<u>/s/ Joan M. Burnett                        </u>*
Date                                     Joan M. Burnett