## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

-----------------------------------------------------------------X

| | |
|---|---|
| BRUCE KIRBY, INC., and<br>BRUCE KIRBY, | : Civil Action No.: 3:13-cv-00297 (RNC)<br>: |
| Plaintiffs, | :<br>: |
| – against – | :<br>: |
| LASERPERFORMANCE (EUROPE) LIMITED,<br>QUARTER MOON, INCORPORATED,<br>KARAYA (JERSEY) LIMITED,<br>VELUM LIMITED ITM SA (ANTIGUA AND<br>    BARBUDA),<br>INTERNATIONAL SAILING FEDERATION<br>    LIMITED,<br>INTERNATIONAL LASER CLASS<br>    ASSOCIATION, and<br>FARZAD RASTEGARD, | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |
| Defendants. | : |

-----------------------------------------------------------------X

| | |
|---|---|
| LASERPERFORMANCE (EUROPE) LIMITED, and<br>QUARTER MOON, INCORPORATED, | :<br>: |
| Defendants- Counterclaim Plaintiffs, | :<br>: |
| – against – | :<br>: |
| BRUCE KIRBY, INC., and<br>BRUCE KIRBY, | :<br>: |
| Plaintiffs-Counterclaim Defendants, | :<br>: |
| – and– | :<br>: |
| GLOBAL SAILING LIMITED, and<br>PERFORMANCE SAILCRAFT PTY. LTD., | :<br>: |
| Additional Counterclaim Defendants. | : |

-----------------------------------------------------------------X

## DEFENDANT INTERNATIONAL SAILING FEDERATION LIMITED'S
## REPLY MEMORANDUM IN FURTHER SUPPORT OF ITS MOTION TO DISMISS

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

POINT I: THE COURT LACKS PERSONAL JURISDICTION OVER ISAF ............................ 1

    A.    Conn. Gen. Stat. Section 33-929 Does Not Provide Jurisdiction Over ISAF ................. 1

        1.    ISAF Does Not Produce, Manufacture, or Distribute Any Goods In Connecticut ...... 1

        2.    ISAF Has Not Committed a Tort in Connecticut ........................................................ 2

    B.    Conn. Gen. Stat. Section 52-59b Does Not Provide Jurisdiction Over ISAF ................ 2

        1.    Section 52-59b Does Not Apply to ISAF ................................................................... 2

        2.    Section 52-59b Does Not Provide Jurisdiction Over ISAF ......................................... 4

    C.    Jurisdiction Would Violate Due Process ......................................................................... 6

POINT II: THE AMENDED COMPLAINT FAILS TO STATE A CLAIM ............................... 7

    A.    Claims I and II Do Not State Claims for Trademark Counterfeiting and Infringing ....... 7

    B.    Claim III Does Not State a CUPTA Claim Against ISAF .............................................. 8

    C.    Claim IV Does Not State a Misappropriation of Rights of Publicity Claim ................... 9

    D.    Claim VII Does Not State A Tortious Interference Claim Against ISAF ...................... 10

CONCLUSION .......................................................................................................................... 10

i

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

1-800 Contacts, Inc. v. WhenU.com, Inc.,
    414 F.3d 400 (2d Cir. 2005)................................................................................8

A Slice of Pie Prods. v. Wayans Bros. Entmt.,
    392 F. Supp. 2d 297 (D. Conn. 2005)..............................................................9

Am. Wholesalers Underwriting Ltd. v. Am. Wholesale Ins. Group, Inc.,
    312 F. Supp. 2d 247 (D. Conn. 2004)..............................................................5

Amerbelle Corp. v. Hommel,
    272 F. Supp. 2d 189 (D. Conn. 2003).........................................................1, 2

Appleton v. Bd. of Educ.,
    254 Conn. 205 (2000) ......................................................................................10

Ashcroft v. Iqbal,
    556 U.S. 662 (2009)...........................................................................................9

Bank of Babylon v. Quirk,
    192 Conn. 447 (1984) ........................................................................................4

Bross Utils. Serv. Corp v. Aboubshait,
    489 F. Supp. 1366 (D. Conn. 1980)..................................................................4

Burkert v. Petrol Plus of Naugatuck, Inc.,
    216 Conn. 65 (1990) ..........................................................................................8

Goins v. JBC & Assocs., PC,
    352 F. Supp. 2d 262 (D. Conn. 2005)..............................................................9

Indiaweekly.com, LLC v. Nehaflix.com,
    2008 WL 687268 (D. Conn. Mar. 10, 2008) .................................................5

Inset Systems, Inc. v. Instruction Set, Inc.,
    937 F. Supp. 161 (D. Conn. 1996)....................................................................5

Knauss v. Ultimate Nutrition,
    514 F. Supp. 2d 241 (D. Conn. 2007)...............................................................7

Lis v. Delvecchio,
    2012 WL 3309384 (D. Conn. Aug. 13, 2012) ..............................................5

Marczeski v. Kamba,
    2001 WL 237204 (D. Conn. Feb. 23, 2001) .................................................6

Mashantucket Pequot Tribe v. Redican,
   309 F. Supp. 2d 309 (D. Conn. 2004).......................................................................5

Milne v. Catuogno Court Reporting Svs., Inc.,
   239 F. Supp. 2d 195 (D. Conn. 2002)...................................................................4, 5

Mozes v. Welch,
   638 F. Supp. 215 (D. Conn. 1986)...........................................................................6

Nat'l Football League v. Miller,
   2000 WL 335566 (S.D.N.Y. Mar. 30, 2000) ...........................................................5

New London County Mut. Ins. Co. v. Nantes,
   303 Conn. 737 (2012) ..............................................................................................4

Nusbaum & Parrino, PC v. Collazo De Colon,
   618 F. Supp. 2d 156 (D. Conn. 2009)......................................................................6

Ryan v. Cerullo,
   282 Conn. 109 (2007) ..............................................................................................4

Success Sys., Inc. v. Lynn,
   2013 WL 810540 (D. Conn. Mar. 5, 2013) ..............................................................4

Vertrue Inc. v. Meshkin,
   429 F. Supp. 2d 479 (D. Conn. 2006)...................................................................4, 6

Warren v. Conn. Cmty. for Addiction Recovery, Inc.,
   2010 WL 4342283 (Conn. Super. Ct. Sept. 15, 2010).........................................10


STATUTES

15 U.S.C. § 1114......................................................................................................8

Conn. Gen. Stat. § 33-639.......................................................................................3

Conn. Gen. Stat § 33-695........................................................................................3

Conn. Gen. Stat. § 33-929.............................................................................1, 2, 5

Conn. Gen. Stat. § 34-106.......................................................................................3

Conn. Gen. Stat. § 34-140.......................................................................................3

Conn. Gen. Stat. § 52-59b............................................................................. passim

iii

Defendant International Sailing Federation Limited ("ISAF") submits this reply memorandum of law in further support of its motion to dismiss the amended complaint of plaintiffs Bruce Kirby, Inc. and Bruce Kirby (collectively "Kirby").

## POINT I:  THE COURT LACKS PERSONAL JURISDICTION OVER ISAF

### A.   Conn. Gen. Stat. Section 33-929 Does Not Provide Jurisdiction Over ISAF

ISAF is a foreign corporation organized under the Isle of Man Companies Act 1931. Smithwick Decl. ¶ 2.  Conn. Gen. Stat. § 33-929 is the Connecticut long-arm statute which applies to foreign corporations such as ISAF.  See Amerbelle Corp. v. Hommel, 272 F. Supp. 2d 189, 194-95 (D. Conn. 2003).  Kirby alleges that the Court has jurisdiction under Conn. Gen. Stat. § 33-929(f)(3) and (4) because ISAF produces, manufactures, or distributes goods in Connecticut and because ISAF committed a tort in Connecticut.  These arguments must fail.

### 1.   ISAF Does Not Produce, Manufacture, or Distribute Any Goods In Connecticut

Kirby argues that the Court has jurisdiction over ISAF under Conn. Gen. Stat § 33-929(f)(3) because ISAF allows a plaque to be issued to Laser Sailboat manufacturers whose Laser Sailboats may subsequently be sold in Connecticut.  ISAF demonstrated in its Memorandum of Law in Support of its Motion to Dismiss ("ISAF MOL") that ISAF's involvement in the "issuing" of each plaque is extremely limited and does not constitute the production, manufacture or distribution of a good for the purposes of Connecticut's long-arm statute.  ISAF MOL at 8-9.  Kirby's entire response on this point consists of the conclusory statement that "the ISAF Plaque is an essential element of the Kirby sailboat," and that ISAF "receives a royalty for each plaque affixed to a Kirby Sailboat being sold in Connecticut."  Opp. at 10.  These conclusory assertions are far from sufficient to meet Kirby's burden of demonstrating that ISAF produced, manufactured or distributed goods in Connecticut.

1

    2.    <u>ISAF Has Not Committed a Tort in Connecticut</u>

Kirby alleges personal jurisdiction is proper under Conn. Gen. Stat. § 33-929(f)(4) because ISAF "committed tortious conduct in Connecticut by issuing ISAF Plaques for Kirby Sailboats sold in Connecticut." Opp. at 10. This argument fails because "jurisdiction may be founded on § 33-929(f)(4) only if the tortious conduct occurred in Connecticut, regardless of whether the injury was felt in Connecticut," <u>Amerbelle Corp.</u>, 272 F. Supp. 2d at 194, and Kirby does not point to any action taken by ISAF in Connecticut. Kirby does not dispute that ISAF issues plaques in England or the Isle of Man to manufacturers outside of Connecticut. Absent conduct by ISAF in Connecticut, § 33-929(f)(4) cannot provide a basis for jurisdiction.

**B.    <u>Conn. Gen. Stat. Section 52-59b Does Not Provide Jurisdiction Over ISAF</u>**

    1.    <u>Section 52-59b Does Not Apply to ISAF</u>

Kirby apparently recognizes that jurisdiction is lacking under Conn. Gen. Stat. § 33-929, and thus argues that this Court should ignore the fact that ISAF is a corporation and apply Conn. Gen. Stat. § 52-59b, which governs jurisdiction over individuals, partnerships, and voluntary associations and which courts have also applied to limited liability companies ("LLCs"). Opp. at 4. Kirby cannot dispute the fact that ISAF is not actually an LLC since ISAF is a corporation formed under the Isle of Man Companies Act 1931 and not an LLC formed under the Isle of Man's Limited Liability Companies Act 1996 and 1999. Napier Decl. ¶ 2. Kirby's only rationale for his unique argument for applying Conn. Gen. Stat. § 52-59b is his claim that one aspect of ISAF's corporate structure is similar to a feature found in LLCs and that the Court should thus reclassify ISAF as an LLC despite the fact that it is not actually an LLC. <u>See</u> Opp. at 4. Not surprisingly, Kirby does not cite a single case for the proposition that courts may ignore a company's corporate structure and the governing statute under which a company is formed and

2

apply the long arm statute for partnerships to a corporation.[1]

The utter lack of case law support for Kirby's assertion that the Court can ignore ISAF's corporate structure and treat ISAF as an LLC even though it is not an LLC dooms Kirby's argument. Even if the Court considered whether to treat ISAF as an LLC, Kirby's argument still fails. The sole rationale Kirby provides for applying § 52-59b is his assertion that ISAF is similar to an LLC because it is a "limited by guarantee company in which members' liability is limited to the amount they have agreed to contribute to the company's assets." Opp. at 4.[2] Kirby does not dispute that ISAF acts like a corporation in all other respects. For instance, because it is organized under the Companies Act 1931, ISAF must have at least two directors who are charged with a duty to manage the company. See Bus. Forms Pt. 1 at 10. Similarly, under Connecticut law corporations are governed by directors, see Conn. Gen. Stat. § 33-639(a), whereas LLCs in both the Isle of Man and Connecticut are managed by their members, see Conn. Gen. Stat. § 34-140; Business Forms in the Isle of Man: Part 2 (attached as Ex. B to Napier Decl.) at 9. Additionally, ISAF must have one shareholders[3] meeting each calendar year. See Bus. Forms Pt. 1 at 9. Similarly, Connecticut corporations must generally hold an annual meeting, see Conn. Gen. Stat § 33-695, while Connecticut LLCs are only required to file an annual report, see Conn. Gen. Stat. § 34-106. As ISAF has many of the same characteristics as a Connecticut corporation and is organized under the Isle of Man Companies Act 1931 and not The Limited Liability Companies Act 1996 and 1999, Conn. Gen. Stat. § 52-59b does not apply.

---

[1] All of the cases Kirby cites stand for the proposition that § 52-59b applies to companies denominated and formed as LLCs. See Opp. at 4.

[2] The Isle of Man Companies Act 1931 provides for companies limited by shares, limited by guarantee, limited by guarantee and having a share capital, and having a share capital with unlimited liability. See Business Forms in the Isle of Man: Part 1 (attached as Ex. A to Napier Decl.) at 4. Under Kirby's approach, different companies organized under the same law could be subject to different long-arm statutes and different jurisdictional standards.

[3] Under the Isle of Man Companies Act 1931 shareholders of public companies are called "members," highlighting the dangers of relying on superficial labels or one of a company's characteristics in determining whether it is more similar to a corporation or LLC. See Bus. Forms Pt. 1 at 4, 9; Isle of Man Companies Act 1931, p. 29 (Definition of Member), available at: http://www.gov.im/lib/docs/ded/companies/acts/companiesact1931_1.pdf.

2.     <u>Section 52-59b Does Not Provide Jurisdiction Over ISAF</u>

Even if the Court were to apply Conn. Gen. Stat. § 52-59b, jurisdiction is still lacking. Kirby alleges that this Court has jurisdiction over ISAF under § 52-59b(a)(2) because ISAF has committed a tort in Connecticut and under § 52-59b(a)(1) because ISAF transacts business in Connecticut.  Opp. at 4.  First, as explained above in section I(A)(2), ISAF has not committed a tort in Connecticut, and thus is not subject to personal jurisdiction under § 52-59b(a)(2).  <u>See, e.g.</u>, <u>Success Sys., Inc. v. Lynn</u>, 2013 WL 810540, at *4 (D. Conn. Mar. 5, 2013) (dismissing complaint for lack of jurisdiction where "there is no allegation or evidence that [defendant] himself committed a tortious act in Connecticut, which would provide a basis for personal jurisdiction under … § 52-59b(a)(2)"); <u>Bross Utils. Serv. Corp v. Aboubshait</u>, 489 F. Supp. 1366, 1373-74 (D. Conn. 1980) ("[T]he court's determination that the tortious conduct of the corporate defendants occurred outside of Connecticut leads inexorably to the conclusion that Conn. Gen. Stat. § 52-59b(a)(2) has no application here.").

Second, Kirby fails to allege that ISAF transacts business in Connecticut.  "The term 'transacting business,' as used in § 52-59b(a)(1), 'is not broadly interpreted in Connecticut.'" <u>Vertrue Inc. v. Meshkin</u>, 429 F. Supp. 2d 479, 489-90 (D. Conn. 2006) (quoting <u>Milne v. Catuogno Court Reporting Svs., Inc.</u>, 239 F. Supp. 2d 195, 198 (D. Conn. 2002)) (additional quotation omitted).  Additionally, § 52-59b(a)(1) provides jurisdiction over "nonresidents who transact any business within" Connecticut only if "the cause of action arises out of such transaction." <u>New London County Mut. Ins. Co. v. Nantes</u>, 303 Conn. 737, 745 (2012) (quoting <u>Bank of Babylon v. Quirk</u>, 192 Conn. 447, 449 (1984)); <u>accord</u> <u>Ryan v. Cerullo</u>, 282 Conn. 109, 118 (2007).

Kirby alleges that ISAF engages in three activities which constitute "transacting

4

business" for the purposes of Connecticut's long-arm statute: 1) issuing plaques; 2) maintaining a website; and 3) organizing and sponsoring races in Connecticut.  Opp. at 5-8.  None of these activities allow for jurisdiction under § 52-59b(a)(1).

Kirby's allegations that ISAF operates an interactive website and organizes and sponsors races are insufficient to subject ISAF to jurisdiction because they are unrelated to the causes of action Kirby asserts against ISAF.  See Opp. at 7-8.  The cases Kirby cites in support of his argument that the mere operation of a website confers jurisdiction deal with claims arising out of the website and discuss different sections of the long-arm statute.[4]  As Kirby does not allege that his claims "arise out of" ISAF's website or its alleged organization or sponsorship of races in Connecticut,[5] these activities do not provide for jurisdiction under § 52-59b(a)(1).

Kirby also alleges that ISAF transacted business in Connecticut because "[t]he ISAF Plaque is an essential element of the Kirby sailboat" which is sold in Connecticut, and ISAF receives a royalty for each boat sold in Connecticut.  Opp. at 5-6.  ISAF receives a fee when the builders (who are located outside of Connecticut) order plaques when they build the boats, not when a boat is sold.[6]  ISAF MOL at 4; Smithwick Decl. ¶ 9.  Kirby does not allege that any boats

---

[4] See Opp. at 8 citing Lis v. Delvecchio, 2012 WL 3309384 (D. Conn. Aug. 13, 2012) (discussing website in context of Conn. Gen. Stat. § 52-59b(a)(2) and (3)); Indiaweekly.com, LLC v. Nehaflix.com, 2008 WL 687268 (D. Conn. Mar. 10, 2008) (whether tortious conduct on website provided jurisdiction under Conn. Gen. Stat. § 33-929(f)(4) or § 52-59b(a)(2)); Mashantucket Pequot Tribe v. Redican, 309 F. Supp. 2d 309 (D. Conn. 2004) (jurisdiction under Conn. Gen. Stat. § 52-59b(a)(3)); Nat'l Football League v. Miller, 2000 WL 335566 (S.D.N.Y. Mar. 30, 2000) (section of New York long-arm statute based on tort committed outside of New York). Kirby also cites Inset Systems, Inc. v. Instruction Set, Inc., 937 F. Supp. 161 (D. Conn. 1996), which suggests that online advertising might confer jurisdiction under an old version of Connecticut's corporate long-arm statute based on business "solicitation." See id. at 164.  More recent decisions have distinguished Inset and held that internet advertisement, without more, is insufficient to confer jurisdiction. See, e.g., Am. Wholesalers Underwriting Ltd. v. Am. Wholesale Ins. Group, Inc., 312 F. Supp. 2d 247, 258-59 (D. Conn. 2004); Milne, 239 F. Supp. 2d at 201.
[5] Despite Kirby's claim, ISAF does not actually organize or sponsor races in Connecticut, although information concerning races in Connecticut may be available on ISAF's website. Napier Decl. ¶¶ 3, 5. Each boat class chooses its own location for its events and the class then works directly with local yacht clubs to organize the race.  Napier Decl. ¶ 4.  ISAF has no role in the organization or conduct of the races.  Id.  ISAF does have an active role in sponsoring a limited number of races, but none of these races have ever been held in Connecticut. Napier Decl. ¶ 5.
[6] Revenue from plaques is a miniscule portion of ISAF's total revenue.  For example, in 2012, ISAF received just £17,000 from all of the Laser class plaques it issued, or 0.9% of its annual income. Napier Decl. ¶ 6.

are manufactured in Connecticut.  Opp. at 5-6.  Moreover, regardless of where the boats are built or sold, all of ISAF's activities concerning the plaques take place outside of Connecticut, and thus ISAF has not transacted business in Connecticut for the purposes of § 52-59b.  See ISAF MOL at 4, 10;  Marczeski v. Kamba, 2001 WL 237204, at *3 (D. Conn. Feb. 23, 2001) ("There is no allegation that any of these three defendants ever personally transacted business in Connecticut, as contemplated by § 52-59b(a)(1)."); cf. Mozes v. Welch, 638 F. Supp. 215, 223 (D. Conn. 1986) (no jurisdiction over corporate directors where contacts were "based solely on allegations of symbiotic relationship rather than individual contacts").

In determining whether a foreign defendant transacts business in Connecticut, courts do not "apply a rigid formula but balance[] considerations of public policy, common sense, and the chronology and geography of the relevant factors."  Nusbaum & Parrino, PC v. Collazo De Colon, 618 F. Supp. 2d 156, 161 (D. Conn. 2009) (quotation omitted).  Some factors which courts consider are:

> (1) 'whether the defendant has an on-going contractual relationship with a Connecticut corporation;' (2) 'whether the contract was negotiated or executed in Connecticut and whether, after executing a contract with a Connecticut business, the defendant visited Connecticut for the purpose of meeting with the parties to the contract regarding the relationship'; (3) 'what the choice of law clause is in any such contract,' and (4) 'whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.'

Vertrue Inc., 429 F. Supp. 2d at 490 (quotation and alterations omitted).  None of these factors are dispositive, courts "examine 'the nature and quality,' rather than the amount of Connecticut contacts to determine whether there was purposeful activity."  Id.  None of these factors are present here, so ISAF is not subject to personal jurisdiction under§ 52-59b(a)(1).

**C.    Jurisdiction Would Violate Due Process**

"[D]ue process requires that there be some act by which the defendant purposefully

availed itself of the privilege of conducting activities within Connecticut, thus invoking the benefits and protections of its laws." Knauss v. Ultimate Nutrition, 514 F. Supp. 2d 241, 248 (D. Conn. 2007) (quotation and alteration omitted).  This requirement may be met "by either specific jurisdiction (if the suit arises from the defendant's contacts with the forum) or general jurisdiction (based on defendant's 'continuous and systematic' contacts with the forum state)." Id. (quotation omitted).  Kirby alleges that the Court has specific jurisdiction over ISAF because ISAF knew that Connecticut dealers were selling Laser class boats and "ISAF controlled the determination of whether plaques were issued for boats entering the state of Connecticut."  Opp. at 10.  Kirby also claims that ISAF intentionally directed its activities at Connecticut residents by issuing "plaques confirming the certification of Kirby Sailboats sold to residents of the State of Connecticut."  Opp. at 11.  ISAF does not control where builders sell their boats and does not have any direct contacts when a builder purchases plaques.  Napier Decl. ¶ 7.  ISAF's contacts with ILCA regarding plaques do not occur in Connecticut, and the plaques are issued to builders outside of Connecticut *before* the boats are built or sold.  Napier Decl. ¶¶ 8, 9.  Accordingly, this Court lacks specific jurisdiction over ISAF, and Kirby has failed to meet his burden of showing that jurisdiction over ISAF would not violate due process.

### POINT II:  THE AMENDED COMPLAINT FAILS TO STATE A CLAIM

**A.**     **Claims I and II Do Not State Claims for Trademark Counterfeiting and Infringing**

Kirby acknowledges that ISAF stopped issuing plaques containing the Kirby trademark at his request.  Opp. at 5-6, 13.  This is fatal to Kirby's claims for trademark counterfeiting and infringing.  In an attempt to salvage his claims, Kirby asserts that his complaint alleges that ISAF "continues to issue the infringing ISAF Plaques bearing the Kirby trademark."  Opp. at 13. Kirby cannot disavow his own recognition that ISAF is not infringing his trademark because

7

ISAF stopped using that mark after Kirby's request.  Moreover, even if Kirby has alleged that ISAF continues to issue plaques with his trademark, he has failed to allege that ISAF has any role in the *sale or advertising* of the Laser class boats as he is required to do to state a claim under 15 U.S.C. § 1114.  See Opp. at 13; ISAF MOL at 13 (citing 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-07 (2d Cir. 2005)).

## B.   Claim III Does Not State a CUPTA Claim Against ISAF

CUPTA only applies "to parties that have engaged in the advertising, selling, renting, leasing or distribution of goods."  Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 85 (1990).  Kirby does not attempt to rebut ISAF's argument that it does not engage in the "advertising, renting, leasing or distribution of goods" for the purposes of CUPTA.  See ISAF MOL at 14-15; Opp. at 13-15.  As Kirby fails to allege that ISAF has engaged in the advertising, renting, leasing or distribution of goods, he fails to state a claim that ISAF has violated CUPTA.

Instead, Kirby assumes that CUPTA applies to ISAF and claims that he has sufficiently alleged that ISAF has tortiously interfered with his contractual rights with the builders by continuing to issue plaques, approving ILCA's rule change, and failing to obtain Kirby's authorization for a "2002 Olympic Sailing Agreement."[7]  He also argues that ISAF's alleged Lanham Act violations are an automatic CUPTA violation.  Opp. at 13-15.  These arguments fail as Kirby has failed to state a claim for tortious interference with contract or violation of the Lanham Act, as explained more fully in sections II(A) and II(D).

Kirby claims that ISAF's approval of ILCA's rule change is tortious interference with his contract rights because "ISAF and ILCA made [the] rule change without the authorization of Kirby and in violation of the ISAF agreement."  Opp. at 14.  Although he now claims that the rule change violates the ISAF agreement, Kirby did not allege this in the complaint and has not

---

[7]  It appears that "2002" is a typo and this should be a reference to the 2016 Olympics.

8

brought a claim against either ISAF or ILCA for breach of the ISAF agreement.  Notably, that agreement is the only contract between ISAF and Kirby, and it contains a mandatory arbitration provision requiring all disputes to be arbitrated in London.  If Kirby believes that ISAF has violated the ISAF agreement, his remedy is to bring an arbitration in London as provided for by the contract.  Moreover, the ILCA rule change does not affect any of Kirby's contracts with the builders.  Any obligations the builders had towards Kirby remain.  Moreover, as explained below in Section II(D), Kirby has not alleged that ISAF intended to interfere with his contractual rights.

In an attempt to save his CUPTA claim, Kirby makes a new allegation that ISAF violated his rights by failing to obtain his authorization for the Olympic Agreement.  Kirby's complaint does not mention the Olympic Agreement, accordingly it cannot be considered in determining whether Kirby has stated a claim for relief.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## C.     Claim IV Does Not State a Misappropriation of Rights of Publicity Claim

Kirby alleges that "ISAF's infringement of Kirby's trademark and their misappropriation of his publicity rights have separately violated Kirby's rights to his trademark and his rights to his personal name and public image."  Opp. at 15-16.  This argument ignores that Kirby's trademark and publicity rights claims *are the same*: both allege that ISAF has allowed the use of Kirby's name on the Laser class boats without his permission.  Claims are properly dismissed as duplicative when the elements of the claims are premised on the same conduct and contain the same elements.  See A Slice of Pie Prods. v. Wayans Bros. Entmt., 392 F. Supp. 2d 297, 316 (D. Conn. 2005); cf. Goins v. JBC & Assocs., PC, 352 F. Supp. 2d 262, 266 (D. Conn. 2005) ("a suit is duplicative, and claims would be precluded, where the same or connected transactions are at issue and the same proof is needed to support the claims in both suits") (quotation omitted).

Additionally, the plaques are produced and distributed by ILCA, and ISAF has no interest

9

in how many sailboats of one class are sold as compared to sailboats of other classes. <u>See</u> ISAF
MOL at 8-9.  ISAF's role in the issuance of plaques and subsequent sale of Laser class boats is
too tenuous to support a claim for misappropriation of publicity rights. <u>Warren v. Conn. Cmty.</u>
<u>for Addiction Recovery, Inc.</u>, 2010 WL 4342283, at * 21 (Conn. Super. Ct. Sept. 15, 2010).

## D.   <u>Claim VII Does Not State A Tortious Interference Claim Against ISAF</u>

In his complaint Kirby alleges merely that ISAF continued to issue the plaques *after*
Quarter Moon and LaserPerformance breached the Builder Agreements.  Compl. ¶¶ 137, 39.
Kirby does not rebut ISAF's contention that all of Kirby's allegations relate to actions taken by
ISAF *after* the Builder Agreements were allegedly breached.  <u>See</u> Opp. at 16-17; ISAF MOL at
17.  In order to prevail on a claim for tortious interference with contractual relations, a plaintiff
must show "the defendants' intent to interfere with the [contractual] relationship." <u>Appleton v.</u>
<u>Bd. of Educ.</u>, 254 Conn. 205, 212-12 (2000).  As all of Kirby's allegations concern actions by
ISAF *after* the builders had allegedly breached their contracts with Kirby, he has failed to allege
that ISAF intended to interfere with Kirby's contractual relationship with the builders.

## CONCLUSION

ISAF respectfully requests that the Court grant its motion to dismiss pursuant to Fed. R.
Civ. P. 12(b)(2) and (6).

Dated:  September 12, 2013
        New York, New York

CARTER LEDYARD & MILBURN LLP

By _____
    Judith A. Lockhart
    Two Wall Street
    New York, NY 10005
    Telephone: 212-732-3200
    Facsimile: 212-732-3232
    Lockhart@clm.com
    Attorneys for Defendant International
    Sailing Federation Limited
    10

7271190.6