UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC., and<br>BRUCE KIRBY (RNC)<br><br>　　　　Plaintiffs,<br><br>　vs.<br><br>LASERPERFORMANCE (EUROPE) LIMITED,<br>QUARTER MOON, INCORPORATED,<br>KARAYA (JERSEY) LIMITED,<br>VELUM LIMITED ITM SA (ANTIGUA AND<br>BARBUDA),<br>INTERNATIONAL SAILING FEDERATION<br>LIMITED,<br>INTERNATIONAL LASER CLASS<br>ASSOCIATION, and<br>FARZAD RASTEGAR<br><br>　　　　Defendants.<br><br>LASERPERFORMANCE (EUROPE) LIMITED,<br>and<br>QUARTER MOON, INCORPORATED,<br><br>　　　Defendants-Counterclaim Plaintiffs,<br><br>　vs.<br><br>BRUCE KIRBY, INC., and<br>BRUCE KIRBY,<br><br>　　　Plaintiffs-Counterclaim Defendants,<br><br>　　　and<br><br>GLOBAL SAILING LIMITED, and<br>PERFORMANCE SAILCRAFT PTY. LTD.,<br><br>　　　Additional Counterclaim Defendants. | Civ. Act. No. 3:13-cv-00297<br><br><br><br><br><br><br><br><br>**MEMORANDUM OF<br>LAW IN SUPPORT OF<br>MOTION TO<br>DISMISS** |

MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

I.　　INTRODUCTION

1

Counterclaim Defendant Performance Sailcraft Pty. Ltd., ("PSA") submits this Memorandum of Law in support of its Motion to Dismiss the Counterclaims (Doc. No. 40) filed by Defendants and Counterclaim Plaintiffs LaserPerformance Europe, Ltd. and Quarter Moon Incorporated ("Counterclaim Plaintiffs"), in the matter captioned above.  Defendant respectfully submits that its Motion to Dismiss must be granted for each of the following reasons:

- Under Section 33-929 of the Connecticut General Statutes, the long-arm statute that applies to foreign corporations, this Court lacks jurisdiction over PSA, because none of the tortious conduct alleged in the Counterclaims occurred in Connecticut; and

- Even if a Connecticut long-arm statute would permit this Court to exercise jurisdiction over PSA, the exercise of such jurisdiction would not comport with "traditional notions of fair play and substantial justice," because PSA does not have "minimum contacts" with Connecticut, and because submitting PSA to the jurisdiction of Connecticut courts would be unreasonable under the facts of this case.

Accordingly, for any of the foregoing reasons, PSA respectfully submits that the Counterclaims lodged against PSA should be dismissed.

## II. BACKGROUND

Plaintiffs Bruce Kirby and Bruce Kirby, Inc. initiated the instant case against, among other co-defendants, the present Counterclaim Plaintiffs. The claims against the Counterclaim Plaintiffs include, *inter alia*, counterfeiting and federal trademark infringement. *See* Complaint. The Counterclaim Plaintiffs answered the Complaint, asserting multiple counterclaims, including three against PSA, and served PSA, who was not an original party to the case. *See id.*

PSA, however, is an Australian corporation organized and operating under the laws of Australia, having a principal place of business at 2 Catamaran Road, Fountaindale NSW 2258, Australia. *See* Declaration of Chris Caldecoat ("Caldecoat Declaration"), attached hereto as Exhibit A, ¶ 4. PSA is engaged the manufacture and sale of racing sailboats, e.g., dinghies and catamarans, and component parts for the same in Australia. *See id.* ¶ 5. PSA operates manufacturing facilities in Australia, and does not have any facilities in the United States. *See id.* ¶¶ 5 – 7. Moreover, PSA has not owned, rented or maintained any property in the United States, and does not employ any workers in the United States. *See id.* ¶¶ 6, 10. Likewise, PSA does not directly advertise or market products in the United States. *See id.* ¶ 11. Over the past ten years, the vast majority of PSA's sales revenue, approximately 99.7%, has come from entities located outside the United States. *See id.* ¶ 12. PSA has never sold products of any kind in Connecticut. *See id.* ¶ 13.

On or about June 12, 2013, Counterclaim Plaintiffs filed the instant Counterclaims. As set forth in paragraph 8 of the Counterclaims, personal jurisdiction of this Court over PSA is invoked under Section §33-929 of the Connecticut General Statutes. More specifically, the Counterclaim Plaintiffs allege that the jurisdiction is proper under §33-929 as the "counterclaim

3

defendants…have engaged in tortious conduct in Connecticut with and through their co-conspirators Bruce Kirby and BKI." *See* Counterclaims, ¶ 8. The Counterclaim Plaintiffs have also asserted three specific counterclaims against PSA: Counterclaim 3 – Tortious Interference with Business Relations; Counterclaim 4 – Conspiracy to Tortiously Interfere with Business Relations; and Counterclaim 5 – Violation of Connecticut Unfair Trade Practices Act. *See* Counterclaims.

While the Counterclaims against PSA include hyperbolic allegations of an "End Game" and a vast "scheme to destroy" the Counterclaim Plaintiffs through a "worldwide publicity campaign," they do not allege a single tortious, unfair or otherwise improper act of PSA that occurred in the United States, much less in Connecticut. *Id*. ¶ ¶ 89 – 91, 94 and 97. Further, there is not a single allegation in Counterclaim Plaintiffs' Answer and Counterclaims describing <u>any</u> activity of PSA that occurred in the United States. *See id*. ¶ ¶ 26, 37, 43, 44, 47 – 49 and 53.

III.   STANDARD

  A. <u>Personal Jurisdiction</u>

Connecticut utilizes a familiar two-step analysis to determine if a court has personal jurisdiction over a foreign corporation. First, the court must determine if a long-arm statute reaches the corporation. Second, if a statute does reach the corporation, then the court must decide whether the exercise of jurisdiction would offend due process. *See Bensmiller v. E.I. Dupont De Nemours & Co.*, 47 F.3d 79, 81 (2d Cir. 1995).

The due process test for personal jurisdiction has two related components: the "minimum contacts" and "reasonableness" inquiries. A court must first determine whether the defendant has sufficient contacts with the forum state to

4

justify the court's exercise of personal jurisdiction.  *See Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996), citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).  "Specific" jurisdiction may be found in a suit arising out of the defendant's contacts with the forum, while "general" jurisdiction requires the plaintiff to demonstrate that the defendant has had "continuous and systematic" general business contacts with the forum.  *Id*. at 567-68, (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984)).

Next, the court must ask whether the assertion of personal jurisdiction comports with "traditional notions of fair play and substantial justice," i.e., whether it is reasonable under the circumstances of the particular case.  *Id*. at 568, (citing *International Shoe,* 326 U.S. at 316).  Factors considered in determining the "reasonableness" of the exercise of jurisdiction include the burden that would be imposed on the defendant; the interests of the forum state in adjudicating the case; the plaintiff's interest in obtaining convenient and effective relief; the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and the shared interest of the states in furthering substantive social policies.  *See id.* (citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113-16 (1987)).

On a motion to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff always bears the ultimate burden of showing that the court has jurisdiction over the defendant. *See Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994).

IV.  THE COUNTERCLAIMS SHOULD BE DISMISSED BECAUSE THIS COURT LACKS JURISDICTION OVER PSA

5

A. <u>The Court Lacks Jurisdiction Over PSA</u>

PSA respectfully submits that the Counterclaims should be dismissed because Section 33-929 does not provide a valid basis for this Court to exercise jurisdiction over it, in view of the allegations set forth in the Counterclaims.

Under Section 33-929, foreign corporations that are not authorized to transact business in Connecticut, such as PSA,[1] may only be sued in Connecticut by Connecticut residents or by persons having a usual place of business in Connecticut, and only for causes of action arising (1) out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed; or (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.  *See* CONN. GEN. STAT. § 33-929(f) (2011).

Section 33-929 does not authorize this Court to exercise jurisdiction over PSA in this matter, for at least two reasons.  First, neither of the Counterclaim Plaintiffs are "a resident of this state or . . . a person having a usual place of business in this state," as is required in order to file suit against a foreign corporation not authorized to transact business in Connecticut under Section 33-929.  *See* CONN. GEN. STAT. § 33-929(f) (2011).  Here, by its own admission,

---

[1] PSA is not licensed to transact business in the State of Connecticut, and is not required to be registered here.

6

Counterclaim Plaintiff LaserPerformance is incorporated under the laws of England and Wales and has a principal place of business in Northampton, England. *See* Counterclaims, ¶ 1. Similarly, Counterclaim Plaintiff Quarter Moon is a Rhode Island corporation having a principal place of business in Portsmouth, Rhode Island. *See id* at ¶ 2.

Moreover, as stated, PSA is not registered to do business in Connecticut, is not required to be registered in Connecticut, is incorporated under the laws of Australia, and has a principal place of business in Australia. *See id* at ¶ 6. In view of the above, Counterclaim Plaintiffs may not avail themselves of Section 33-929 to serve process on an unregistered foreign corporation, such as PSA.

Second, the Counterclaims fail to allege any "tortious conduct in this state." Courts have established that "Connecticut law does not extend jurisdiction over foreign corporations … for tortious acts committed outside the state." *Potts v. Septic Heater Co.*, 632 F. Supp. 2d 190, 193 (D. Conn. 2009). Here, as stated, the Counterclaims include only wholly unsupported allegations of a "scheme to destroy" the Counterclaim Plaintiffs through a "worldwide publicity campaign," and do not allege a single tortious, unfair or otherwise improper act of PSA that occurred in Connecticut. *See id.* ¶ ¶ 89 – 91, 94 and 97.

For example, in the Third Counterclaim, PSA, along with the other Counterclaim defendants, is accused of launching a "world-wide publicity campaign wrongfully impugning the integrity" of Counterclaim Plaintiffs and of acting "maliciously." *Id.* PSA is also accused of having "intentionally interfered with the business relationships" by creating and advertising the "Kirby Torch." *Id*. The Fourth Counterclaim alleges that, "upon information and belief," PSA entered into a "conspiratorial agreement" to tortiously interfere with the

7

business relations of Counterclaim Plaintiffs. *Id*. The Fifth Counterclaim simply restates this alleged tortious conduct.

As will be readily appreciated, none of these specious allegations describe a single activity of PSA that occurred in the United States. *See id.* ¶ ¶ 26, 37, 43, 44, 47 – 49 and 53. Rather, the so-called tortious acts alleged in the Counterclaims are either so vague that they have no specific locus or appear to have occurred outside the United States. For example, PSA is alleged to have tried to "force" LaserPerformance to give up its lucrative territory in China for a new contract in Europe. *Id. at* ¶ 37. Similarly, PSA is alleged to have commenced a series of "predatory sales" of Australian-built Lasers "into territories in South America, Europe and Asia." *Id.* at ¶ 43. PSA is further accused of selling Australian-built Lasers in "Mexico, Chile, Argentina, Brazil, Belgium, Netherlands, China and Bali." *Id.* at 44. Again, not a single alleged activity occurs in the United States, much less Connecticut.

In view of the above, the Counterclaim Plaintiffs have failed to allege any tortious acts that would provide this Court with jurisdiction over Defendant pursuant to Section 33-929 of the Connecticut General Statutes, and the Counterclaims should be dismissed for at least this reason.

  B. <u>Even if a Connecticut Long-Arm Statute Could Reach Defendant, the Exercise of Jurisdiction over Defendant by this Court Would Offend Due Process</u>

As set forth above, the long-arm statute cited in the Counterclaims does not provide a valid statutory basis for exercising personal jurisdiction over PSA. For this reason, the Court need not consider whether the exercise of such jurisdiction would offend due process, because this Court cannot validly reach

PSA under Connecticut law. *See Frazer v. McGowan*, 198 Conn. 243, 246 (1986) (stating that a court need not consider due process inquiry if a long-arm statute cannot reach foreign corporation).

Nevertheless, even if the Counterclaim Plaintiffs had cited a long-arm statute that applied to PSA in view of the allegations of the Counterclaims, PSA respectfully submits that the exercise of jurisdiction over PSA by this Court would not comport with "traditional notions of fair play and substantial justice," because PSA does not have the mandatory "minimum contacts" with Connecticut, and because the exercise of jurisdiction by a Connecticut court over PSA would be unreasonable under the circumstances of this case.

1. Minimum Contacts

The first part of the due process test – i.e., whether minimum contacts exist between Defendant and Connecticut – requires the Court to consider "the relationship among the defendant, the forum, and the litigation." *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984). To satisfy its burden of establishing the Court's jurisdiction over PSA, Counterclaim Plaintiffs must show that PSA purposefully availed itself of the privilege of doing business in Connecticut, and that PSA could reasonably foresee being haled into court here. *See Kernan v. Kurz-Hastings*, 175 F.3d 236, 242-43 (2d Cir. 1999), citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). PSA respectfully submits that Counterclaim Plaintiffs cannot meet their burden.

PSA is an Australian corporation that does not own or rent any property, maintain any facilities, or employ any workers anywhere in the United States. *See* Exhibit A ¶¶ 3 - 13. PSA has made a *de minimis* amount of sales into the

United States and has never sold a product of any kind in Connecticut. *See id.* Further, PSA does not have any agents authorized to accept service of process in the United States, does not have bank accounts or personal property in the United States and does not directly advertise or market in the United States. *See id.*

Accordingly, Defendant respectfully submits that based on the allegations in the Counterclaims and the facts set forth in the Caldecoat Declaration, that minimum contacts do not exist between PSA and Connecticut, and that the exercise of jurisdiction by this Court would violate the Due Process Clause of the Fourteenth Amendment to the Unites States Constitution.

2. Reasonableness

If a plaintiff demonstrates that the requisite "minimum contacts" exist between a defendant and the forum state, the court must continue to the "reasonableness" stage of the inquiry and apply the five-factor test set forth in *Asahi* to assess whether exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Metropolitan Life Ins. Co.*, 84 F.3d at 573, citing *Asahi*, 480 U.S. at 113. A review and analysis of the five Asahi factors – (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in convenient and effective relief; (4) the interstate judicial system's interest in efficiently resolving the controversy; and (5) the shared interest of the states in furthering substantive social policies – indicates that the exercise of jurisdiction over the PSA by Connecticut courts would be both unreasonable and improper under the circumstances.

First, the exercise of jurisdiction by a Connecticut court would impose a significant burden on PSA. PSA's Australian headquarters are located

approximately ten thousand miles (10,000) from the District Court in Hartford. PSA has no employees or facilities in Connecticut, and none of PSA's records, files, witnesses or information regarding the nefarious "End Game" and "scheme to destroy" alleged by Counterclaim Plaintiffs – i.e., see Counterclaims ¶¶ 89 – 91, 94 and 97 – are located in Connecticut. *See e.g., Metropolitan Life Insurance Co.*, 84 F.3d at 574.

Additionally, Connecticut has minimal interest in the outcome of the Counterclaims against PSA. The alleged conduct serving as the basis for the Counterclaims appears to have occurred, if at all, outside Connecticut, and neither PSA nor Counterclaim Plaintiffs are authorized to transact business in Connecticut. Notably, because PSA has never sold any products in Connecticut and does not directly market/advertise products in Connecticut, there is no potential for Connecticut residents to be harmed.

Finally, this Court's interests in the efficient administration of justice and policy considerations do not favor its exercise of jurisdiction over Defendant. As none of the allegedly tortious acts occurred in the United States, it is unlikely that any witnesses or evidence would be located in Connecticut. *Metropolitan Life Insurance Co.*, 84 F.3d at 574-75 (in efficient administration of justice inquiry, courts generally consider where evidence and witnesses are likely located). Moreover, PSA knows of no legitimate policy consideration which would favor subjecting a Australian corporation that does not own or rent any property in the United States, or employ any workers in the United States, to the jurisdiction of Connecticut courts based on alleged torts that have no tie to the United States, much less Connecticut.

Accordingly, because each of the "reasonableness" factors militates in its favor, PSA submits that the exercise of jurisdiction by this Court would be improper in this case.

## V.	CONCLUSION

Counterclaim Plaintiffs have failed to allege an appropriate statutory basis for invoking the jurisdiction of this Court.  Because no such valid basis exists, and because the exercise of jurisdiction over PSA would violate the "traditional notions of fair play and substantial justice," PSA respectfully requests that this Court dismiss all Counterclaims as to Counterclaim Defendant PSA, including Counterclaims 3, 4 and 5, for at least the foregoing reasons.

COUNTERCLAIM DEFENDANT
PERFORMANCE SAILCRAFT PTY. LTD.,


Dated:  January 23, 2014	By:/s/John C. Linderman
	John C. Linderman
		(CT Bar No. CT04291)
	J. Kevin Grogan
		(CT Bar No. CT00331)
	Richard J. Twilley
		(CT Bar No. CT26736)
	McCormick, Paulding & Huber, LLP
	185 Asylum Street, Cityplace II
	Hartford, CT 06103
	Tel. (860) 549-5290
	Facsimile: (413) 733-4543