UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC., and<br>BRUCE KIRBY (RNC) | Civil Act. No. 3:13-cv-00297 (JAM) |
| Plaintiffs,<br>vs. | |
| LASERPERFORMANCE (EUROPE) LIMITED,<br>QUARTER MOON, INCORPORATED,<br>KARAYA (JERSEY) LIMITED,<br>VELUM LIMITED ITM SA (ANTIGUA AND BARBUDA),<br>INTERNATIONAL SAILING FEDERATION LIMITED,<br>INTERNATIONAL LASER CLASS ASSOCIATION, and<br>FARZAD RASTEGAR | **PERFORMANCE SAILCRAFT PTY. LTD.'S REPLY TO COUNTERCLAIM PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS** |
| Defendants. | |
| LASERPERFORMANCE (EUROPE) LIMITED, and<br>QUARTER MOON, INCORPORATED, | |
| Defendants-Counterclaim Plaintiffs, | |
| vs. | |
| BRUCE KIRBY, INC., and<br>BRUCE KIRBY, | |
| Plaintiffs-Counterclaim Defendants, | |
| and | |
| GLOBAL SAILING LIMITED, and<br>PERFORMANCE SAILCRAFT PTY. LTD., | |
| Additional Counterclaim Defendants. | April 17, 2014 |

1

<u>PERFORMANCE SAILCRAFT PTY. LTD.'S REPLY TO COUNTERCLAIM
PLAINTIFFS' OBJECTION TO ITS MOTION TO DISMISS</u>

I.  **INTRODUCTION AND PROCEDURAL BACKGROUND**

On January 23, 2014, Counterclaim Defendant Performance Sailcraft Pty. Ltd., ("PSA") filed a Motion to Dismiss the Counterclaims (Doc. No. 99) that were lodged by Defendants and Counterclaim Plaintiffs LaserPerformance Europe, Ltd. and Quarter Moon Incorporated ("Counterclaim Plaintiffs") (Doc. No. 40). On March 31, 2014, Counterclaim Plaintiffs filed their Objection to the Motion (Doc. No. 125). PSA now files its Reply to Counterclaim Plaintiffs' Objection.

PSA incorporates and reallages the facts and arguments in its Motion to Dismiss and accompanying Memorandum as if they were set forth herein. With respect to the Objection, PSA submits that the Counterclaim Plaintiffs have fallen far short of meeting their burden of providing actual evidence that the Court has personal jurisdiction over it, and PSA's Motion to Dismiss should be granted.

II.  **ARGUMENT**

A. **Counterclaim Plaintiffs Have Not Satisfied Connecticut's Long Arm Statute**

In their Objection, the Counterclaim Plaintiffs assert that they have satisfied Connecticut's Long Arm Statute, §33-929(f). More specifically, Counterclaim Plaintiffs rely primarily on a stream of commerce argument that PSA had a "reasonable expectation" that its goods would wind up in Connecticut. Alternatively, Counterclaim

2

Plaintiffs assert that PSA committed tortious acts in the state. To substantiate these arguments, they provide the following "evidence" via declarations of Scott Hardy, William Crane and Simon Allentuch:

- That PSA is "presumed" to have been aware of and "tacitly approved" the sale of 30 of its Laser blade sets in the summer of 2010 by an Australian man named "Kevlar" to The Boat Locker of Westport, CT, as the sale represented a substantial percentage of PSA's sales and Kevlar is an intermediary for PSA;

- That the Kirby Torch is a front for PSA to sell boats in the United States, as certain identified manufacturers of the Torch appear to not exist and Kirby Torch LLC has no known office or phone number; and

- That a 2008 statement by Chris Caldecoat of PSA from sail-world.com referring to PSA's increased manufacturing capacity evidences that they are attempting to sell Laser boats in Connecticut and that they are the manufacturer of the Torch for the United States.

The evidence provided by Counterclaim Plaintiffs, however, is wildly incorrect, improper and insufficient to confer personal jurisdiction over PSA. Indeed, the Counterclaim Defendants have filed herewith a Motion to Strike the Hardy and Crane Declarations, as they are replete with inadmissible hearsay and unsupported conclusions presented as fact. Assuming, however, that the improper declarations are admissible, they still fail to support Counterclaim Plaintiffs' jurisdiction arguments, as the pertinent statements contained therein are incorrect.

    *i.*    *PSA Had No Reasonable Expectation that Its Blade Sets Would Be Shipped Around The Globe to Connecticut*

With respect to the 2010 sale of 30 blade sets by "Kevlar" to The Boat Locker of Westport, Connecticut, PSA had absolutely no knowledge of this sale and had no

reasonable expectation that the blade sets would be resold by Kevlar and shipped 10,500 miles to Connecticut. "Kevlar," as understood, is Kevin Winchester, the former owner of NB Laser, a retail seller of Laser boats in Australia. *See* Exhibit A, Declaration of Chris Caldecoat, ¶ 8. In 2010, NB Laser had a retail store in New South Wales, Australia from which it sold Laser boats to Australian consumers that it purchased wholesale from PSA. *See id.* at ¶ 9.

In 2010, NB Laser ordered and purchased, in Australia, several blade sets from PSA and subsequently requested replacement blade sets. *See id.* ¶¶ 17, 18. At the time of the original sale and replacement, PSA had no knowledge that any of the blade sets were to be resold by NB Laser and shipped to a retail store in the United States. *See id.* ¶ 19. Indeed, throughout its working relationship with NB Laser, PSA has never been informed by NB Laser or Kevin Winchester, or been otherwise aware of, to whom and where NB Laser or Kevin Winchester sell Laser boats or parts purchased from PSA. *See id.* ¶ 12. Other than selling Laser boats and parts on a wholesale basis to NB Laser in Australia for retail sales through its Australian store, PSA has had no corporate, financial, or any other type of relationship or affiliation with, or control over, NB Laser or Kevin Winchester. *See id.* at ¶ 10.

Counterclaim Plaintiffs further state that there can be "no doubt" that PSA was aware of this "illegal act" as 30 blade sets represents "almost half of PSA's production of replacement blades." They bolster this by claiming that PSA only produces and sells about 200 Laser boats a year and that the market for Laser's in Australia and New Zealand is small. *See e.g.*, Crane Declaration ¶ 2. As set forth in its Motion to Strike,

4

these production and sales numbers are not based on personal knowledge and are not substantiated in the submitted Declarations. Indeed, the cited Laser production and sales numbers are significantly incorrect. *See* Ex. A, ¶¶ 15, 16.

Moreover, the Australian Laser market is quite robust with 3,500 Laser boats sailing each weekend in races organized by 179 registered sailing clubs. *See id.* ¶ 7. Again, Counterclaim Plaintiffs' allegations do not support the conclusion that PSA must have known the blade sets would be resold and shipped across the globe. PSA had no idea, much less a reasonable expectation, that the blades sold in Australia to NB Laser would end up in Connecticut.

In sum, given that NB Laser had a retail store location in Australia and the sales to NB Laser occurred in Australia, PSA has never had a corporate relationship or affiliation with NB Laser and Kevin Winchester, the fact that the Laser market in Australia is actually quite strong, that the blade sets did not represent a substantial portion of PSA's production of blades, and the extremely high costs associated with shipping sailboats and component parts 10,500 miles, PSA had a reasonable expectation that NB Laser and/or Kevin Winchester's sales of the Laser were to consumers in Australia and New Zealand, and *not* in Connecticut.

       ii.    *PSA Has Committed No Tortious Acts in Connecticut*

PSA is not "selling Laser parts in Connecticut" as Counterclaim Plaintiffs claim and has not committed any tortious acts in the state. Neither NB Laser nor Kevin Winchester have ever functioned as a middleman, distributor or intermediary for PSA.

*See id.* ¶¶ 10, 11. As stated, other than selling Laser boats and parts on a wholesale basis to NB Laser in Australia for retail sales through its Australian store, PSA has had no corporate, financial, or any other type of relationship or affiliation with, or control over, NB Laser or Kevin Winchester. *See id.* at ¶ 10. Indeed, PSA has never had a U.S. distributor for Laser boats and parts. *See id.* ¶ 23. The referenced 2010 resale of the 30 Laser blade sets had nothing to do with PSA.

Similarly, PSA is not affiliated with the Kirby Torch and Kirby Torch LLC and is not soliciting dealers in Connecticut. *See id.* ¶¶ 22, 23. PSA never contacted The Boat Locker, or any other entity about becoming a Torch dealer. *See id.* ¶ 24. PSA has never made, distributed or sold a Torch boat. *See id.* ¶¶ 22, 23. Indeed, as understood no Torch boat has been manufactured or sold by anyone. *See id.* ¶ 28. The Counterclaim Plaintiffs are attempting to create associations between PSA and Kirby Torch, LLC that do not exist. It is significant that they have provided no actual evidence of such a connection, only unsupported conclusions that are not based on personal knowledge.

Counterclaim Plaintiffs also rely on the fact that Scott Hardy has "spoken to" PSA about becoming a Torch dealer. *See* Hardy Declaration ¶ 6. What Mr. Hardy conveniently excludes from his declaration is that he contacted PSA about becoming a Torch dealer, not the other way around. *See Ex.* A at ¶ 24. That is, PSA did not reach out into Connecticut to establish a Torch dealership. It would have no reason to do so. As such, the fact that Mr. Hardy has "spoken to" PSA about the Torch is insufficient to confer personal jurisdiction in Connecticut.

Finally, the cited sail-world.com statement has nothing to do with PSA selling Torch or Laser boats in the United States. Indeed, the cited statement was made in 2008, well before the Torch, and it specifically refers to PSA "looking at further product and brands for manufacturing and distribution" in the United States, South America and Asia. *See id.* ¶ 22. At the time, PSA had a licensed builder agreement with RS Sailboats to manufacture and distribute RS Feva, RS400, RS200, RS100, RS Tera and Vision boats. *See id.* PSA also manufactured International Contender, International Opti and Formula 18 Capricorn boats. *See id.* PSA had no restrictions that precluded it from selling those boats outside Australia. *See id.* In view of the above, the 2008 statement does not does not support the conclusion that PSA is or has committed tortious acts in Connecticut.

### B. PSA's Conduct Does Not Satisfy the Minimum Contacts Requirement of the Due Process Clause

The Counterclaim Plaintiffs again rely on a stream of commerce theory to support their position that due process requirements are satisfied. As discussed above, however, PSA has never had a reasonable expectation that its goods would be purchased by consumers in Connecticut. PSA has never sold a product in Connecticut nor ever had a U.S. distributor for Laser boats or parts. *See id.* ¶ 23. Kevin Winchester/NB Laser has never functioned as a middleman or intermediary. *See id.* ¶ 11. PSA and NB Laser have no corporate relationship or affiliation with each other. *See id.* ¶ 10. PSA had no knowledge that Kevin Winchester/NB Laser would resell and ship

7

its products from Australia to Connecticut. *See id.* ¶ 19. Furthermore, PSA does not manufacture, distribute or sell the Kirby Torch boat. *See id.* ¶ 23. For at least these reasons, and those set forth in its original Motion, the minimum contacts requirement is not satisfied. *See e.g., UTC Fire & Sec. Americas Corp., Inc. v. NCS Power, Inc.*, 844 F. Supp. 2d 366 (S.D.N.Y. 2012) (due process satisfied by a high volume of U.S. sales in addition to an agency agreement between U.S. distributor and foreign manufacturer under which U.S. orders could not be fulfilled without explicit approval of the manufacturer).

### C. Counterclaim Plaintiffs Do Not Contest The Fact That, As Non-Resident Corporations, Section 33-929 Does Not Authorize this Court to Exercise Jurisdiction Over PSA

As stated, § 33-929 does not authorize this Court to exercise jurisdiction over PSA as neither of the Counterclaim Plaintiffs are "a resident of this state or . . . a person having a usual place of business in this state," as is required in order to file suit against a foreign corporation not authorized to transact business in Connecticut under Section 33-929. *See* CONN. GEN. STAT. § 33-929(f) (2009). Moreover, as stated, PSA is not registered to do business in Connecticut and is not required to be registered in the state. As such, counterclaim Plaintiffs may not avail themselves of Section 33-929 to serve process on an unregistered foreign corporation, such as PSA.

### III.   CONCLUSION

The Counterclaim Plaintiffs have fallen woefully short of meeting their burden of providing actual evidence that the Court has personal jurisdiction over PSA. The evidence provided by Counterclaim Plaintiffs is incorrect, improper and insufficient to confer personal jurisdiction. Counterclaim Plaintiffs have failed to provide any substantiated evidence that PSA had a reasonable expectation that its goods would end up in Connecticut or that it committed any tortious acts in the state. Moreover, Counterclaim Plaintiffs have again failed to allege an appropriate statutory basis for invoking the jurisdiction of this Court.

PSA respectfully requests that this Court dismiss all Counterclaims as to Counterclaim Defendant PSA, including Counterclaims 3, 4 and 5, for at least the foregoing reasons.

Dated: April 17, 2014

By: /s/ J. Kevin Grogan
J. Kevin Grogan, Esq.
   (CT Bar No. CT00331)
Kevin H. Vanderleeden
   *(pro hac vice)*
John C. Linderman, Esq.
   (CT Bar No. CT04291)
McCormick, Paulding & Huber, LLP
185 Asylum Street, CityPlace II
Hartford, CT 06103
Tel. (860) 549-5290
Facsimile: (413) 733-4543

## CERTIFICATE OF SERVICE

I hereby certify that on April 17, 2014, a copy of the NAME OF PERFORMANCE SAILCRAFT PTY. LTD.'S REPLY TO COUNTERCLAIM PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ J. Kevin Grogan
J. Kevin Grogan, Esq.