# NEUBERT, PEPE & MONTEITH, P.C.
Attorneys At Law

| | | |
|---|---|---|
| Michael D. Neubert | Kevin M. Godbout | Brittany S. Cates |
| Gregory J. Pepe | Mark I. Fishman | Lindsay H. Sklar |
| Deborah Monteith Neubert | Simon I. Allentuch | Danielle I. Nicklas |
| Douglas S. Skalka | Gretchen G. Randall | Alison H. Weinstein |
| Judy K. Weinstein | James C. Graham | Vimala B. Ruszkowski |
| Peter T. Fay | Lucas B. Rocklin | |
| Andrew R. Lubin | Sandy T. Roussas | Of Counsel: |
| Robert T. Gradoville | Jane E. Ballerini | Patrick J. Lapera |
| Nancy Bohan Kinsella | Adam V. Maiocco | Gregory J. Spuches |
| Eric J. Stockman | Corey S. Fitzgerald | Sherman H. Krevolin (1929-2013) |

195 Church Street, 13th Floor
New Haven, Connecticut 06510
Telephone: (203) 821-2000
Facsimile:   (203) 821-2009
www.npmlaw.com

*Reply to New Haven Office*

Additional Locations:

2150 Post Road, Suite 201
Fairfield, CT 06824

1 Liberty Square #280
New Britain, CT 06050

777 Westchester Avenue, Suite 101
White Plains, NY 10604

August 29, 2014

Honorable Jeffrey Alker Meyer
United States District Court
District of Connecticut
915 Lafayette Boulevard, Suite 417
Bridgeport, CT  06604

Re:   Bruce Kirby v. LaserPerformance, Inc., et al.; 3:13-cv-00297-JAM

Dear Judge Meyer:

We represent defendants LaserPerformance (Europe) Limited ("LaserPerformance"), Quarter Moon, Incorporated ("Quarter Moon") and third party Farzad Rastegar. LaserPerformance, Quarter Moon and Mr. Rastegar submit this letter to assist the Court at the September 3, 2014 discovery conference.

While this appears to be a sleepy private dispute among boat manufacturers and an elderly man who originally designed the Laser in 1969, it is also a lawsuit that is closely followed in the sailing world. Every docket entity is immediately picked apart on sailing blogs.

There are a number of materially incorrect representations in plaintiff's letter to the Court. Chief among them is the status of discovery and the nature of the dispute. Counsel had a final in person meet and confer on Thursday morning with Andy Corea and resolved all of the remaining discovery disputes save four narrow issues. I understand from Mr. Corea that he has been sick so the letter sent to the Court does not reflect the substance of that meeting. Mr. Corea has offered to write a joint letter that corrects this error. However, because plaintiff has elected not to write a single paragraph letter describing these four issues and instead sent a five page

# NEUBERT, PEPE & MONTEITH, P.C.
Attorneys At Law

Honorable Jeffrey Alker Meyer
United States District Court
District of Connecticut
August 29, 2014
Page 2

single space letter, counsel is compelled to do the same. In the end however, based on the final meet and confer meeting only four narrow issues remain in contention.

## Background

This case is about a small boat known as the "Laser" which is raced competitively around the world and in the Olympics. LaserPerformance and Quarter Moon (through its subsidiaries) build and sell Lasers and have the right to use the trademarked brand name "Laser" throughout the world (except in Australia, New Zealand, Oceania, Japan and South Korea) pursuant to agreements with former defendants Karaya (Jersey) Limited ("Karaya"), Velum Limited ("Velum").[1] Former defendant International Sailing Federation Limited ("ISAF")[2] issues stickers known as plaques which are placed on each Laser. As Mr. Kirby admitted at his deposition, a Laser is a Laser because it has the right dimensions, it has an ISAF plaque and it has the brand name "Laser" on it. Every Laser has a plaque.

As alleged in the Counterclaims, this case arises out of a scheme by Plaintiffs and their foreign co-conspirators, Global Sailing Limited ("Global Sailing") and its affiliated entity, Performance Sailcraft Pty. Ltd. ("PSA"), to take over LaserPerformance and Quarter Moon's Laser sailboat business.[3] PSA and Global Sailing have the right to use the "Laser" trademark in Australia, New Zealand and Oceania. Global Sailing, PSA and eventually Kirby tried to stop LaserPerformance and Quarter Moon from building and selling the Laser throughout most of the world. Global Sailing bought all of Kirby's rights and contracts concerning the Laser, including royalty agreements with LaserPerformance and Quarter Moon. It then terminated the royalty agreements without cause.

In an effort to take control of the worldwide market, plaintiffs, PSA, and Global Sailing tried to convince ISAF and ILCA to stop issuing plaques to LaserPerformance and Quarter Moon. When that failed, they tried to convince ISAF to recognize a new boat called the "Kirby Torch" instead of the Laser. The Kirby Torch is identical to the Laser other than its name. Plaintiffs own the Kirby Torch trademark. ISAF continued to issue plaques to LaserPerformance and refused to recognize the Kirby Torch. Because ISAF refused to recognize the Torch, none have been built. PSA has apparently taken Lasers and outfitted them as Torch sailboats.

---

[1] Karaya and Velum were dismissed from the case on February 27, 2014. **See DE 117.**
[2] ISAF was dismissed from the case on February 27, 2014. **See DE 117**
[3] PSA and Global Sailing are owned by the Spencer family.

# NEUBERT, PEPE & MONTEITH, P.C.
Attorneys At Law

Honorable Jeffrey Alker Meyer
United States District Court
District of Connecticut
August 29, 2014
Page 3

Plaintiffs own the Kirby Torch trademark. ISAF continued to issue plaques to LaserPerformance and refused to recognize the Kirby Torch. Because ISAF refused to recognize the Torch, none have been built. PSA has apparently taken Lasers and outfitted them as Torch sailboats.

When ISAF refused to recognize the Kirby Torch and continued to issue Laser plaques, this litigation ensued. Plaintiffs' counsel, Wesley W. Whitmyer , Jr., Esq., represented Global Sailing, Kirby, PSA and BKI throughout the period described in the Amended Complaint and acted on behalf of these entities. As discussed below, he effectively controls Mr. Kirby's business and has a pecuniary interest in the outcome of this litigation.

**The Claims**

Although lengthy, the claims in this case are fairly simple. The Amended Complaint asserts a series of common law and statutory claims (counterfeiting and trademark infringement under the Lanham Act, CUTPA, misappropriation of publicity rights, and breaches of contract). However, the claims repackage the same two issues under different causes of action. All of the claims, except breach of contract, arise from the fact that the builder's plaque on Lasers contained the words, "designed by Bruce Kirby," until Kirby complained by filing this lawsuit. Mr. Kirby trademarked his name. The Laser was, of course, designed by Bruce Kirby. Mr. Kirby's name was taken off the plaque. In the remaining contract claims, Kirby seeks royalties from Quarter Moon and LaserPerformance on each Laser Sold. Kirby claims he is entitled to a percentage of the wholesale price for each Laser sold.

**The Discovery**

Since the claims are fairly simple, the only information one needs to adjudicate plaintiff's claims are a copy of the plaques (which is available on the internet), the number of boats sold during the relevant period and the wholesale price of each boat. The number of boats sold is publically available since each boat has an ISAF plaque number and the plaque numbers are publically available. In other words, the discovery in this case could have been very manageable.

It wasn't. Plaintiff served over two hundred document requests. Although largely academic at this point, the requests were so broad that they would have required defendants and Mr. Rastegar to literally produce every paper and electronic record or email in their care custody and control. In other words, attorney Whitmyer wanted to know about every business dealing and asset that Mr. Rastegar (who is not even a party to the case) owned or ever owned and the

# NEUBERT, PEPE & MONTEITH, P.C.
Attorneys At Law

Honorable Jeffrey Alker Meyer
United States District Court
District of Connecticut
August 29, 2014
Page 4

details of those businesses. Counsel has never seen a subpoena or requests this overbroad or abusive. The following examples show how broad and unworkable the requests are:

**Request No. 7**: All documents that relate to gross sales, gross profits, and net profits for sales and rentals of Kirby Sailboats, including but not limited to resultant service contracts, periodic reports (monthly, quarterly, or annual reports), planning reports, manufacturing cost reports, cost rollup reports, efficiency reports, inventory reports, profit and loss reports, and balance sheets.

**Request No. 8**: All documents that relate to any agreement or proposed agreement with respect to Kirby Sailboats, including but not limited to license agreements, indemnification agreements, sales agreements, agreements relating to trade secrets, and agreements relating to research and development, design, and/or distribution agreements.

**Request No. 23**: All documents that relate to PSA.

**Request No. 29**: All documents concerning customers of LP Europe and/or Quarter Moon who have purchased or who may purchase Kirby Sailboats.

**Request No. 32**: All documents and things concerning Kirby or this litigation.

**Request No. 46**: All documents relating to the allocation of LP Europe, Quarter Moon, Karaya, and Velum's assets, including documents sufficient to identify any person or entity that has received assets from LP Europe, Quarter Moon, Karaya, and Velum's, whether directly or indirectly, including Rastegar.

**Request No. 48**: All documents relating to Spring Meadow Holdings, Ltd., Sina Holdco Ltd., Maclaren Europe Ltd. (UK), Full Moon Holdings Ltd., Laser Sailboats Ltd., Performance Sailcraft U.K., Karaya Holdings Limited, and/or Dory Ventures LLC, or your relationship with Spring Meadow Holdings, Ltd., Sina Holdco Ltd., Maclaren Europe Ltd. (UK), Full Moon Holdings Ltd., Laser Sailboats Ltd., Performance Sailcraft U.K., Karaya Holdings Limited, and/or Dory Ventures LLC.

**Request No. 49**: All communications with ISAF or ILCA or any related entity.

**Request No. 59**: All tax records of Quarter Moon, LP Europe, Karaya, and Velum.

18

# NEUBERT, PEPE & MONTEITH, P.C.
Attorneys At Law

Honorable Jeffrey Alker Meyer
United States District Court
District of Connecticut
August 29, 2014
Page 5

**Request No. 60**: All tax records of Spring Meadow Holdings, Ltd., Sina Holdco Ltd., Maclaren Europe Ltd. (UK), Full Moon Holdings Ltd., Laser Sailboats Ltd., Performance Sailcraft U.K., Karaya Holdings Limited, and/or Dory Ventures LLC, or your relationship with Spring Meadow Holdings, Ltd., Sina Holdco Ltd., Maclaren Europe Ltd. (UK), Full Moon Holdings Ltd., Laser Sailboats Ltd., Performance Sailcraft U.K., Karaya Holdings Limited, and/or Dory Ventures LLC.

**Request No. 68:** All documents relating to the financial assets of Farzad Rastegar.

**Request No. 69:** All tax records of Farzad Rastegar.

Counsel has no idea what the vast majority of these documents sought has to do with this case. The requests were not limited to time and many of them, to the extent that they pertained to the case, were not even limited to the boat at issue. Defendants sell a full line of different boats.

## Meet and Confer

Predictably, the initial telephonic meet and confer sessions did not result in a resolution. The gulf between the substance of the claims and the materials sought was so dramatic that it was difficult to reach a compromise. After multiple meet and confer sessions, counsel had a face to face meeting about discovery at the June 18 – June 19, 2014 mediation. That meeting led to a tentative agreement which plaintiffs subsequently rejected. After more aborted attempts to figure out some path forward and threatening letters from plaintiff, counsel had a second meet and confer session, this time with the associate handling discovery (Walter Welsh, Esq.) for plaintiff.

This meeting led to a potential agreement. Plaintiff agreed to essentially abandon its document request in exchange for a potential agreement to produce certain items and do certain email searches. These are discussed below. With some caveats, it is memorialized in a letter dated August 1, 2014. While client ratification of the agreement was delayed by counsel's two week vacation and client vacations, defendants essentially agreed to produce the items on the August 1, 2014 letter.

Finally, counsel met with Andy Corea, Esq. yesterday to finalize the scope of the production set. Counsel met for ninety minutes. The results of this meeting were omitted from plaintiff's letter to the Court.

## NEUBERT, PEPE & MONTEITH, P.C.
Attorneys At Law

Honorable Jeffrey Alker Meyer
United States District Court
District of Connecticut
August 29, 2014
Page 6

**The Agreed Upon Production Set**

 First, defendants agreed to run searches on various email servers (defendants have several locations throughout the world). These still include incredibly broad searches like Bruce* (the * represents a wildcard). The complete list is located on Mr. Welsh's August 1, 2014 letter (pp. 44-47 of plaintiff's submission. The parties agreed on a date restriction as well. These searches will likely result in tens of thousands of pages of emails and documents, many of which will be privileged or completely unrelated to this case. Counsel is going to review the production, remove the privileged documents, and for certain terms, remove the unrelated emails (it is unlikely that any of the Bruce* emails concern Mr. Kirby since he is generally referred to as 'Kirby'). Mr. Corea has agreed to this approach. Defendants have agreed to produce sponsorship agreements. For an agreed upon period, defendants have agreed to provide the number of boats sold, the plaque numbers, a single copy of the plaques used, and the average wholesale price.

 Defendants will produce all agreements with Kirby allowing defendants or their predecessors to manufacture the Laser. Defendants agreed to produce all historical studies, formal projections or formal evaluations of Laser sales. They agreed to produce non-privileged documents responsive to request 13. They agreed to produce non-privileged documents responsive to request 14.[4] Defendants will provide documents concerning Mr. Kirby's breach of the ISAF Agreement. Defendants will produce documents in response to request 27. Defendants will provide a warranty log for the Lasers sold. Defendants will disclose the owner of Quarter Moon and LaserPerformance. Defendants will produce a documents destruction policy if one exists. Defendants will produce documents in response to request 27. Counsel will revise its initial disclosures and produce documents, if any, described in the initial disclosures that are not otherwise produced.

 While many of these documents do not concern the claims in this case, defendants have nonetheless agreed to produce documents so that the case can move forward.

**Outstanding Issues**

 There are two main categories of documents that defendants have not agreed to disclose. Plaintiffs want defendants to disclose the amount of profit on each Laser boat. Defendants do not know that number so it cannot be produced. Second, plaintiffs have demanded every

---

[4] Counsel is not going to do an email search for responsive documents to this request because it is unclear how one can be performed. Counsel will ask people if they know of any such emails and make related inquiries for responsive documents.

# NEUBERT, PEPE & MONTEITH, P.C.
Attorneys At Law

Honorable Jeffrey Alker Meyer
United States District Court
District of Connecticut
August 29, 2014
Page 7

customer invoice during the agreed upon period March, 2009 to present. Instead of every invoice, defendants believe they can generate a report that would show each boat sold and the price but they are verifying that information. They propose to produce this report in lieu of all invoices.

Defendants have not agreed to produce documents responsive to request 9 concerning the copyright to the brand name "Laser." This has nothing to do with this case. Finally, with respect to request 12, defendants are willing to produce historical projections of boats sold but not future projections.

There are minor differences between the above summary and Mr. Welsh's letter or what was discussed at the last meet and confer and these issues may need to be discussed. Counsel is hopeful that to the extent those exist, they can be resolved before the conference.

**Attorney Whitmyer**

Attorney Wes Whitmyer's role in this lawsuit causes some concern to Defendants in terms of producing confidential or attorneys eyes only information. Mr. Kirby is nearing his 86th birthday. Mr. Whitmyer has essentially litigated this case and another related trademark case on a contingency basis. He set up the Kirby Torch website. Mr. Kirby knew nothing about it. Mr. Kirby testified that Mr. Whitmyer wrote the Torch construction manual. He basically runs Mr. Kirby's business and is probably the only person who will benefit from it given his accruing legal bills. He has been the key figure doing everything for Mr. Kirby for many years and has accrued all of his legal fees. Mr. Whitmyer also represented the third party defendants up until this litigation. He is a player in this business An attorneys eyes only designation is therefore meaningless. All of the other parties have marked any document produced that could possibly be relevant as "attorneys eyes only" including documents signed by defendants.

Defendants need a solution to this problem before they produce documents. Plaintiff has been unable to offer any options.

**Timing of Production**

Due to the sheer number of pages that need to reviewed, and the likelihood that there will be many privileged communications and unrelated emails that need to be removed, it is impossible to produce the documents and information by September 10, 2014. I am informed that the searches are ongoing. Counsel needs at least forty-five days to complete production but

# NEUBERT, PEPE & MONTEITH, P.C.
Attorneys At Law

Honorable Jeffrey Alker Meyer
United States District Court
District of Connecticut
August 29, 2014
Page 8

is willing to produce documents on a rolling basis. Had plaintiffs not delayed so long to offer a workable solution, this could have been accomplished earlier.

**Response to Plaintiff's Letter**

With respect to interrogatories, they have not been the subject of a meet and confer and are therefore not properly before the Court. Defendants did answer many of the interrogatories. Counsel is willing to review the responses as part of this production process and see if they can be answered in greater detail. However, many of them have nothing to do with this case.

Given the unworkable nature of plaintiffs' request, and the many attempts that defendants' counsel has orchestrated to try to resolve this issue, including multiple in person meetings organized by defendants' counsel, a discovery sanction is not appropriate.

With respect to the balance of the plaintiff's letter, to the extent it is not discussed above, counsel looks forward to addressing these issues at the conference.

Respectfully submitted,

Simon I. Allentuch (CT21094)

cc:   All Counsel (via ECF)