UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC. and BRUCE KIRBY,<br><br>    Plaintiffs,<br><br>v.<br><br>LASERPERFORMANCE (EUROPE)<br>LIMITED, QUARTER MOON,<br>INCORPORATED, KARAYA (JERSEY)<br>LIMITED, VERUM LIMITED ITM SA<br>(ANTIGUA AND BARBUDA),<br>INTERNATIONAL SAILING FEDERATION<br>LIMITED, INTERNATIONAL LASER<br>CLASS ASSOCIATION, and FARZAD<br>RASTEGAR,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)  CIVIL ACTION NO. 3:13-CV-00297-RNC<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## INTERNATIONAL LASER CLASS ASSOCIATION'S
## MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS

Defendant International Laser Class Association ("ILCA") respectfully submits this memorandum in support of its Motion to Dismiss plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction (under the Connecticut long-arm statute and the due process clause of the United States Constitution) over it, and pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

**Preliminary Statement**

This is a breach of contract case by plaintiffs Bruce Kirby and Bruce Kirby, Inc. (collectively "Kirby" or "plaintiffs") against defendants LaserPerformance (Europe) Limited ("LaserPerformance") and Quarter Moon, Incorporated ("Quarter Moon") regarding Laser Class sailboats. Kirby claims that he licensed a "Laser" sailboat design to defendants

LaserPerformance and Quarter Moon, and they continued to manufacture the sailboats after he terminated the license agreements.

At all relevant times, ILCA was a self-administered, self-funded, non-profit, international organization, providing coordination, organization and communication for owners of the Laser Class of sailboats worldwide. ILCA is similar to a worldwide sailing club specifically for owners of Laser sailboats and people interested in Laser sailboats. Similar to a board of directors of a company, the ILCA has an international world council, consisting of members from several countries, which is responsible for directing the work of the Association. The head office of the Association is located in Falmouth, Cornwall in the United Kingdom. ILCA is recognized by the world governing body for the sport of sailing known as ISAF (International Sailing Federation Limited) as an ISAF International Class. (ISAF is an Isle of Man company.) ISAF regulates sailing competitions, and ensures that particular classes of sailboats granted ISAF status meet the required approved specification for those classes. By agreement with ISAF, ILCA oversees the production and distribution of plaques (decals) that identify sailboats as conforming to the Laser Class Rules issued by ILCA and approved by ISAF and certifies that the boats are "class legal." ILCA collects fees from approved builders of sailboats and issues plaques to builders. By agreement, ILCA in turn pays a portion of those fees to ISAF.

This Court has already dismissed ISAF from the case for lack of personal jurisdiction, given its status as a foreign corporation with insufficient contacts with Connecticut. See Docket # 102, Minute Entry. For similar reasons, this Court does not have personal jurisdiction over ILCA at all times, a foreign voluntary association.[1]   Connecticut's long-arm statute does not

---

[1] After the plaintiffs filed the subject Amended Complaint, ILCA incorporated as a non-profit corporation in Texas. The new corporate name is "The Laser Class Association, Inc." but the corporation operates as the "International Laser Class Association." The incorporation was effective June 24, 2013. The registered address of the Texas corporation is located in Texas, whereas the headquarters remains in England.

reach ILCA, nor does ILCA have sufficient contacts with Connecticut that would satisfy due process concerns.

Furthermore, the plaintiffs' Amended Complaint does not state any claim upon which relief can be granted. The plaintiffs do not even allege that ILCA has breached any contract with them. Rather, plaintiffs vainly try to fit their breach of contract claims against LaserPerformance and Quarter Moon into claims against ILCA for Lanham Act violations, unfair competition, misappropriation of publicity rights, and inducement of breach of contract. However, none of the allegations states a proper claim against ILCA.

## FACTS[2]

ILCA is a self-administered, self-funded, non-profit international organization, which provides coordination, organization and communication for owners of the Laser Class of sailboat worldwide. ILCA's principal office is located in Falmouth, Cornwall in the United Kingdom. Affidavit of Tracy Usher, dated December 30, 2014 ("Usher Aff.") ¶¶ 2 & 3. ILCA does not have any offices in Connecticut. Usher Aff. ¶ 7. ILCA consists of hundreds of volunteers around the world who work year-round at the sailing clubs, offices and even sailing federations to organize Laser events spanning from club regattas to training camps to national and world championships for Laser sailors. Usher Aff. ¶ 8. On the international level, ILCA has an office in the United Kingdom, employs a staff that coordinates the international racing calendar, organizes Laser world championships, coordinates with national and international authorities, publishes an annual handbook and quarterly magazine, and provides builders with plaques to identify boats as within the class of boats. Usher Aff. ¶ 9.

---

[2] For the purposes of ILCA's motion under Fed. R. Civ. P. 12(b)(2) to dismiss for lack of personal jurisdiction, ILCA has included facts pertaining to jurisdiction. See Affidavit of Tracy Usher, dated December 30, 2014. ILCA does not rely on these facts for purposes of its motion under Fed. R. Civ. P. 12(b)(6) to dismiss for failure to state a claim.

ILCA has never maintained a bank account in Connecticut, had an agent for service of process in Connecticut, employed persons in Connecticut, solicited business in Connecticut, paid any income tax in Connecticut, or owned or leased any property in Connecticut. Usher Aff. ¶ 10. As part of ILCA's work, ILCA oversees the manufacture and distribution of plaques that identify sailboats as conforming to the Laser Class Rules issued by ILCA and approved by the International Sailing Federation Ltd. ("ISAF") and certifies whether a particular boat is class legal. Usher Aff. ¶ 12. ILCA receives a small fee for each plaque it distributes. Id. Critically, ILCA has not, and did not, distribute any plaques to, from or within Connecticut. Usher Aff. ¶ 24.

ILCA entered into an agreement known as the ISAF agreement with the plaintiffs, Bruce Kirby Inc. and Bruce Kirby, collectively ("Kirby"), Performance Sail Craft, Inc., Laser International Holdings Limited, and ISAF'S predecessor, the International Yacht Racing Union ("IYRU"). Usher Aff. ¶ 13. This agreement was not entered into or performed in Connecticut. Usher Aff. ¶ 14. It is governed by English law, and all disputes are subject to arbitration by a single arbitrator appointed (in default of agreement) by the Lloyd's Register of Shipping of London, England. Usher Aff. ¶ 15.

Kirby alleges that he is the designer of a 13 foot 10 inch Laser Class sailboat, which he refers to as the "Kirby Sailboat." Compl. ¶13. On November 30, 1983, Kirby entered into an Agreement (the "ISAF Agreement") with Performance Sailcraft, Inc., Laser International Holdings Limited, ILCA, and the International Yacht Racing Union ("IYRU"). IYRU is the predecessor to ISAF. Compl. ¶22. The ISAF Agreement states that defendant International Laser Class Association was formed by owners of the sailboats designed by Kirby, which are denominated "Laser Class boat[s]" in the agreement (attached as Ex. 3 to Compl.). However,

Kirby refers to them as the "Kirby Sailboat" in the Complaint. Compare ISAF Agreement with Compl. ¶20.

The ISAF Agreement states that ILCA and others applied to the IYRU for International Status for the Laser Class sailboats, and that such status was obtained in 1974. ISAF Agreement, Introduction ¶¶1-6. The ISAF Agreement defines "Builders" of Laser Class boats as any manufacturer approved by the IYRU, licensed by Kirby, and licensed by the owner of the "LASER" trademark to use that trademark in association with the boats. See ISAF Agreement ¶1.[3] The ISAF Agreement states that the builders identified in Schedule 2 to the ISAF Agreement are authorized to manufacture and distribute Laser Class boats within certain specified territories. ISAF Agreement ¶9.1.[4] The ISAF Agreement also provides that each Builder would pay a small fee to an IYRU affiliate for each Laser Class boat manufactured by the Builder. ISAF Agreement ¶13.1. Kirby entered into a series of license agreements with manufacturers for the production of Laser Class boats (the "Builder Agreements"). See, e.g., Compl. ¶¶23-44.     Quarter Moon and LaserPerformance are successors to two Builder Agreements. Compl. ¶¶28, 37. Kirby alleges that ISAF, in connection with ILCA, is responsible for issuing plaques to builders of Laser Class boats. Compl. ¶¶70-77. As part of its responsibilities regulating sailing competitions, ISAF ensures that particular classes of sailboats granted ISAF status meet the required approved specifications for those classes. Declaration of Jason Edward Thomas Smithwick, dated July 18, 2013, attached to ISAF's Motion to Dismiss ("Smithwick Decl.") ¶5. ILCA oversees the manufacture and distribution of plaques that

---

[3] Although Kirby alleges that the Laser Class boats currently being manufactured by Quarter Moon and LaserPerformance do not comply with the ISAF Agreement, see Compl. ¶78, he has not alleged any breach of the ISAF Agreement. Notably, the ISAF Agreement is the only agreement to which ILCA is a party and it includes a mandatory arbitration provision requiring arbitration of any disputes in London. See ISAF Agreement ¶[14]. Kirby has not commenced any such arbitration, and his failure to include a claim for breach of the ISAF Agreement appears to be an attempt to avoid the parties' contractual arbitration agreement.
[4] Kirby did not include Schedule 2 in the copy of the ISAF Agreement attached as Exhibit 3 to the Complaint.

identify sailboats as conforming to the Laser Class rules issued by ILCA and approved by ISAF, and certify that a particular boat is "class legal." Usher Aff. ¶ 12; Smithwick Decl. ¶7.

In 1992, ILCA and IYRU entered into an agreement governing the issuance of the plaques and collection of fees.[5] See Agreement Relating to the Collection of IYRU Fees in Respect of the Laser Class Boat and the Issue of Plaques, dated Nov. 5, 1992 (attached as Ex. A to Smithwick Decl.) ("1992 Agreement"). Pursuant to the ISAF Agreement and the 1992 Agreement, ILCA collects fees from the builders and shares a portion of those fees with ISAF. ISAF Agreement ¶¶13.1, 13.2; 1992 Agreement ¶3.1.1. The plaques are not to be issued to any Builder until the Builder pays the full amount of the fee. 1992 Agreement ¶6.1.

When builders order plaques, ILCA reports the number of plaques ordered to ISAF. Usher Aff. ¶ 17; 1992 Agreement ¶7.3. The reports are delivered to ISAF's United Kingdom subsidiary company in England or the Isle of Man. Usher Aff. ¶ 18; Smithwick Decl. ¶9. The reports from ILCA identify the Builder ordering the plaques, but not specifically where any particular boats will be sold or used. Usher Aff. ¶ 19; 1992 Agreement ¶7.3. ISAF sends invoices to ILCA for the appropriate fees based on this report. Smithwick Decl. ¶9. ILCA collects the fees from the builders and distributes the appropriate amount to ISAF. Usher Aff. ¶ 20; Smithwick Decl. ¶10.

Builders place orders for plaques with the ILCA international office. Usher Aff. ¶ 21. The plaques themselves are manufactured in Europe. ILCA distributed the plaques from the United Kingdom until recently when ILCA began distributing the plaques from Texas. Usher Aff. ¶ 23. ILCA has not, and does not, distribute any plaques to builders in Connecticut. Usher Aff. ¶ 24. The builders are located outside of Connecticut. Id. Plaques previously included a

---

[5] The 1992 agreement was superseded by a new agreement between ILCA and ISAF in May 2013, but that is not relevant for purposes of this Motion to Dismiss.

reference to Bruce Kirby. Usher Aff. ¶ 25. References to Bruce Kirby were removed after Kirby notified ILCA and ISAF that Kirby took the position that certain builders were no longer authorized to use the Kirby's name or trademark. Usher Aff. ¶ 25. ILCA does not oversee, manufacture or distribute plaques from, or to, any location within Connecticut. Usher Aff. ¶ 26. ILCA's revenues are derived from persons or entities residing or doing business outside of Connecticut. Usher Aff. ¶ 24. ILCA does not solicit business in Connecticut. Usher Aff. ¶ 10. ILCA has derived only minimal revenue from persons or entities located in Connecticut. Usher Aff. ¶ 11.

Originally, the plaques issued to builders included text that indicated that a Laser Class boat was authorized "by Bruce Kirby Inc." See Ex. 16 to Compl. The Complaint defines these as "ISAF Plaques." Compl. ¶72. However, references to Bruce Kirby were removed from the plaques after Kirby notified ISAF that Kirby took the position that certain builders were no longer authorized to use the Kirby name or trademark. Usher Aff. ¶ 25; Smithwick Decl. ¶11. The Complaint defines plaques without Kirby's name as "New ISAF Plaques." Compl. ¶78.

**Plaintiffs' Claims**

Kirby asserts a total of seven claims, five of which are against ILCA as well as the other defendants. Claim I is for "counterfeiting of the Kirby Sailboat." Compl. ¶¶86-94. Kirby alleges that "terminated builders" Quarter Moon and LaserPerformance, "*together with* ISAF Plaque Suppliers ISAF and ILCA, and Laser trademark owners Karaya and Velum continue to manufacture and sell counterfeit Kirby Sailboats with ISAF Plaques bearing the federally registered BRUCE KIRBY trademark." Compl. ¶87 (emphasis added). Kirby does not claim that ILCA actually manufactured or sold any sailboats.

7

Claim II is for infringement of the Bruce Kirby trademark, unfair competition and false designation of origin. Compl. ¶¶95-103. As in the first claim, Kirby alleges that that "terminated builders" Quarter Moon and LaserPerformance, "*together with* ISAF Plaque Suppliers ISAF and ILCA, and Laser trademark owners Karaya and Velum, continue to manufacture and sell Kirby Sailboats with ISAF Plaques bearing the federally registered BRUCE KIRBY trademark." Compl. ¶96 (emphasis added). ILCA does not manufacture or sell any boats, and the plaintiffs do not allege otherwise. In Claim II, Kirby also alleges that the some of the sailboats at issue are "marked 'BUILT BY LaserPerformance' which is likely to confuse consumers into believing those Kirby sailboats are manufactured by a company in the United States." Compl. ¶99.

Claim III is for unfair competition under the Connecticut Unfair Trade Practices Act. Compl. ¶¶104-111. Kirby alleges that "[b]y continuing to issue ISAF Plaques and New ISAF Plaques," ISAF, Quarter Moon, LaserPerformance, ILCA, Karaya and Velum have "tortuously interfered with Kirby's rights under the Builder Agreements." Compl. ¶106. He also alleges that ISAF and ILCA have tortuously interfered with Kirby's rights under the Builder Agreements by enacting and approving a change to ILCA's by-laws. Compl. ¶107.

Claim IV is for misappropriation of Bruce Kirby's publicity rights. Compl. ¶¶112-119. Similar to Claims I and II, Kirby alleges that ISAF and ILCA have used Bruce Kirby's name without authorization on the plaques. Compl. ¶115.

Claims V and VI are breach of contract claims against LaserPerformance and Quarter Moon. Compl. ¶¶120-135. These claims are premised on the Builder Agreements to which ILCA is not a party.

Claim VII is for inducement to default the Builder Agreements. Compl. ¶¶136-143. Kirby alleges that "ISAF and ILCA have continued to issue ISAF plaques" to Quarter Moon and

LaserPerformance, thereby enabling them to "manufacture and sell unauthorized Kirby Sailboats bearing ISAF Plaques," Compl. ¶137, and that this somehow induced Quarter Moon and LaserPerformance to breach contracts with Kirby.

## ARGUMENT

### I.    THE COURT LACKS PERSONAL JURISDICTION OVER ILCA

Kirby, as the plaintiff, bears the burden of demonstrating that the Court has jurisdiction over ILCA, a nonresident defendant. Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996).  In an attempt to satisfy its burden, Kirby alleges that "ILCA regularly conducts business in Connecticut and throughout the United States by issuing plaques placed on Kirby Sailboats entering Connecticut and the stream of interstate commerce in the United States, and by sending reports of issued plaques to Kirby."  (See Paragraph 2 of Amended Complaint.) To evaluate personal jurisdiction, the Court must apply Connecticut's personal jurisdiction rules. See PDK Labs, Inc. v. Friedlander, 103 F.3d 1105, 1108 (2d Cir. 1997).  When a defendant moves to dismiss for lack of personal jurisdiction, "a two part inquiry is required. The trial court must first decide whether the applicable state long-arm statute authorizes the assertion of jurisdiction over the [defendant]. If the statutory requirements [are] met, its second obligation [is] then to decide whether the exercise of jurisdiction over the [defendant] would violate constitutional principles of due process." Knipple v. Viking Communications, 236 Conn. 602, 606, 674 A.2d 426 (1996). Due process is satisfied if there are no direct constitutional limitations, and if requiring the defendant to appear in this Court does not violate "traditional notions of fair play and substantial justice." Int'l Shoe Co v. Washington, 326 US 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945).  In the present case, the Connecticut long-arm statute does not reach ILCA and the exercise of jurisdiction over ILCA would violate the due process clause

because ILCA does not distribute the plaques to or from Connecticut or otherwise have sufficient contacts with Connecticut.

A.   **The Court Lacks Personal Jurisdiction Over ILCA Under the Connecticut Long-Arm Statute**

Plaintiffs contend that this Court has personal jurisdiction over ILCA pursuant to Conn. Gen. Stat. § 52-59b(a). Subsections (1), (2), and (3) of § 52-59b(a), provide for jurisdiction over a "foreign partnership or foreign voluntary association" only under certain circumstances. In relevant part, the statute states: provides:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual, or foreign partnership, or his or its executor or administrator, who in person or through an agent: (1) Transacts any business within the state; or (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from such act: or (3) commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from such act, if he (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . .

Conn.Gen.Stat. § 52-59b(a).

Here, none of the three bases for personal jurisdiction applies.

1.   **ILCA Does Not Transact Any Business Within Connecticut**

Conn. Gen. Stat. § 52-59b(a)(1) provides that "a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state." The General Statutes do not define the phrase "transacts any business," but the Connecticut Supreme Court has interpreted it "to embrace a single purposeful

business transaction." Zartolas v. Nisenfeld, 184 Conn. 471, 474, 440 A.2d 179 (1981).

The test for determining whether a defendant has transacted business in Connecticut involves a variety of factors, including, among other things: (1) whether the defendant entered into an ongoing contractual relationship with a Connecticut-based plaintiff; (2) whether the contract was negotiated in Connecticut; (3) whether, after executing a contract with the defendant, the defendant visited Connecticut to meet with the plaintiff or communicated with the plaintiff as part of the contractual relationship; (4) and whether the contract contains a Connecticut choice-of-law provision. See Finnimore v. Jobel, No. CV075002925S, 2007 Conn. Super. LEXIS 2120, 2007 WL 2390818, at *2 (Conn. Super. Aug. 10, 2007); see also Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp., 98 F.3d 25, 29 (2d Cir. 1996). "[C]ourts generally do not apply a rigid formula but balance considerations of public policy, common sense, and the chronology and geography of the relevant factors." Vertrue Inc. v. Meshkin, 429 F. Supp. 2d 479, 490 (D. Conn. 2006) (internal quotation omitted). The inquiry focuses on "the nature and quality" of the contacts with Connecticut "in connection with the matter in suit," rather than the number of Connecticut contacts. Id.

There must be some definitive act taken by the defendant that evinces a purposeful availment of the privileges of conducting the subject activity within the forum state and that subsequently invokes the benefits and protections of its laws. See Ryan v. Cerullo, 282 Conn. 109, 120 (Conn. 2007), citing Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). In Ryan, the court found that the defendants, a New York accountant and associated accounting firm, had not transacted any business in Connecticut because the nexus between the defendants' activities and the state was too attenuated. Id. at 121. The court based its decision on the following factors: the defendants derived only minimal income from

Connecticut, did not solicit business in Connecticut, did not promote their services in Connecticut, performed their services exclusively in New York, met with the plaintiff in New York and were hired to prepare tax returns on income earned in New York. Id. at 120. Further, the court concluded that even if the defendants had transacted business in Connecticut, the plaintiff's claim of negligent preparation of his New York tax returns did not arise from such activity. Id. at 122-23.

The present case is analogous insofar as the defendant's services were performed exclusively outside of Connecticut. Plaintiffs baldly assert that "ILCA regularly conducts business in Connecticut, and throughout the United States by issuing plaques placed on Kirby Sailboats entering Connecticut and the stream of interstate commerce in the United States, and by sending reports of issued plaques to Kirby." Compl. ¶12. However, the nature and quality of ILCA's contacts with Connecticut are indirect and incidental, and do not amount to transacting business in Connecticut within the meaning of the long-arm statute. ILCA does not actually do any business in Connecticut. It distributes plaques from Europe (and Texas) to builders, but none of those builders are located in Connecticut. ILCA does not distribute any plaques to Connecticut builders. Plaintiff alleges that some boats, which are affixed with plaques distributed by ILCA, "enter" Connecticut, but not that ILCA distributes the plaques to Connecticut builders. Thus, ILCA's transaction (the distribution of the plaques) does not occur in Connecticut, and therefore is not a purposeful business transaction within Connecticut. ILCA does not distribute any plaques to anyone within Connecticut. Usher Affidavit ¶24.

Plaintiffs also allege that ILCA sends reports to Kirby in Connecticut but that is also insufficient. "The transmission of communications between an out-of-state defendant and a [party] in the jurisdiction does not, by itself, constitute the transaction of business within the

forum state." <u>Bross Util. Serv. Corp. v. Aboubshait</u>, 489 F. Supp. 1366, 1371-72 (D. Conn. 1980) (internal quotations omitted); <u>see</u>, <u>e.g.</u>, <u>Coan v. Bell Atl. Sys. Leasing Int'l, Inc.</u>, 813 F. Supp. 929, 946 (D. Conn. 1990) (finding that a nonresident's transmission of a draft tax opinion to a Connecticut corporation is insufficient to confer jurisdiction under § 52-59b(a)(1)).  Courts have in other cases found that minimal contacts with Connecticut by a nonresident defendant, such as mail, phone, and fax communications, occasional visits, and even *pro hac vice* admission to Connecticut courts will not constitute transaction of business within the state.   <u>See</u>, <u>e.g.</u>, <u>Rosenblit v. Danaher</u>, 206 Conn. 125, 140-41, 537 A.2d 145 (1988) (no personal jurisdiction over Massachusetts attorney hired by two Connecticut residents and one Massachusetts resident to pursue lawsuit that "arose out of a series of contacts by the plaintiffs with Massachusetts residents in the main [and] out of the plaintiffs' efforts to rehabilitate real property situated in Massachusetts [and] also involved a number of the potential witnesses from Massachusetts," notwithstanding that a key player in the dispute was a Connecticut resident, some witnesses resided in Connecticut, and defendant was present in Connecticut on one occasion); <u>Fiedler v. First City Nat'l Bank of Houston</u>, 807 F.2d 315, 317 (2d Cir. 1986) (personal jurisdiction under New York long-arm statute, which is virtually identical to Connecticut's, not established where defendants made two or three telephone calls and one mailing to Connecticut); <u>Rasmussen v. Scinto</u>, 2006 U.S. Dist. LEXIS 63411, 06CV99 (MRK), 2006 WL 2567862, *3 (D. Conn. Sept. 5, 2006) ("The transmission of communications between an out-of-state defendant and a [party] within the jurisdiction does not, by itself, constitute the transaction of business in the forum state."); <u>Irwin v. Mahnke</u>, 2006 U.S. Dist. LEXIS 25906, 05cv976 (AHN), 2006 WL 691993, at * 3-4 (D. Conn. Mar. 16, 2006) (no transaction of business in Connecticut even though defendant was admitted *pro hac vice* in District of Connecticut); <u>Baker v. Abrams</u>, 929 F. Supp. 617, 620

(D. Conn. 1996) (defendant Maine attorneys did not transact business in Connecticut where their firm was not involved in any contract with the plaintiff in Connecticut, agreement of one defendant with a Connecticut attorney was made by mail, and there was no indication that any of the defendants solicited business in Connecticut); Greene v. Sha-Na-Na, 637 F. Supp. 591, 596 (D. Conn. 1986) ("The individual defendants' October 15, 1984 telephone call, October 16, 1984 telegram, and October 22, 1984 letter, all directed to the plaintiff in Connecticut, are insufficient to constitute the transacting of business in Connecticut.").

Thus, the mere allegation that ILCA has sent reports to Kirby in Connecticut is also insufficient to show that ILCA transacts business in Connecticut.

## 2.   ILCA Has Not Committed a Tortious Act Within Connecticut

For similar reasons, ILCA has not committed a tortious act within Connecticut. Jurisdiction may be founded on §52-59b(a)(2) only if the tortious conduct occurred *in* Connecticut, regardless of whether the injury was felt in Connecticut from tortious activity occurring outside Connecticut. Here, the allegedly wrongful acts of ILCA, i.e., the distribution of plaques to terminated builders, occurred outside of Connecticut. Therefore, the acts do not support jurisdiction under this section of the long-arm statute. Greene v. Sha-Na-Na, 637 F. Supp. 591 (D. Conn. 1986); Marvel Prods. v. The Fantastics, 296 F. Supp. 783, 787 (D. Conn. 1968).[6] ILCA's allegedly tortious act was its wrongful distribution of plaques. However, ILCA

---

[6] In Marvel Products, Inc. v. Fantastics, Inc., 296 F. Supp. 783 (D. Conn. 1968), an unfair competition action, the Court quoting from the Second Circuit stated that "'the wrong takes place . . . where the passing off occurs, i.e., where the deceived customer buys the defendant's product in the belief that he is buying the plaintiff's,'" and concluded that the basis for determining the place of the wrongful conduct comes down to the question: Where were the wrongful acts performed? Id. at 787 (quoting Vanity Fair Mills, Inc. v. T. Eaton Co., 234 F.2d 633, 639 (2 Cir.), cert. denied, 352 U.S. 871, 1 L. Ed. 2d 76, 77 S. Ct. 96 (1956)).

On this basis, the Court held that the defendant's sale of its product to retailers outside Connecticut did not satisfy Section 33-411(c)(4) of Connecticut's corporate long-arm statute, despite any subsequent resale by such retailers in Connecticut, and that therefore personal jurisdiction did not exist. Like Section 52-59b(a)(2), the corporate long-arm

distributed the subject plaques from Europe (and now Texas) and never distributed them to builders within Connecticut. As is clear from the allegations of the plaintiffs' Amended Complaint, it was not until *after* ILCA issued the plaques (to builders outside of Connecticut) that the boats affixed with the plaques entered Connecticut. Therefore, ILCA's allegedly tortious conduct occurred *outside* of Connecticut and *before* the boats entered Connecticut. The only relevant Connecticut conduct is the conduct of the boat owners, who may bring the boats into Connecticut. ILCA however, does not manufacture or sell boats, or bring boats into Connecticut.

Plaintiffs allege that ILCA has engaged in trademark infringement and tortious inducement of breach of contract. Neither alleged tort provides this Court with personal jurisdiction over ILCA.

"Trademark infringement can be a 'tort' for the purpose of determining long-arm jurisdiction, but the infringement must be *the act of selling products* that infringe upon the plaintiff's trademark, and the infringement must take place in the forum state." Am. Wholesalers Underwriting, Ltd. v. Am. Wholesale Ins. Group, Inc., 312 F. Supp. 2d 247, 253 (D. Conn. 2004) (emphasis added). Here, ILCA merely distributes plaques (decals) to boat builders, who in turn place them on boats, (not manufactured or sold by ILCA) which the builders then sell. These plaques are not products or goods. [7] Thus, ILCA does not sell any products or goods. Moreover, even if ILCA had sold a product, it did not do so in Connecticut as none of the transactions between ILCA and the boat builders took place in Connecticut. Indeed, none of the boat builders to whom ILCA distributes certificates are located in Connecticut. See Usher Aff. ¶ 24. Accordingly, ILCA has not committed trademark infringement in Connecticut.

statute extends jurisdiction over a foreign corporation, where the cause of action arises out of that corporation's tortious conduct in this state.

[7] As Judge Chatigny noted during the hearing on ISAF's Motion to Dismiss, the distribution of plaques is not the production, manufacture or distribution of goods. "It doesn't appear to me that issuing a plaque constitutes the production, manufacture or distribution of goods." "We haven't found a case that suggests this theory is a valid one under Connecticut law." See copy of transcript of hearing, attached as Exhibit A.

Similarly, Kirby's allegations of tortious inducement of breach of contract do not provide this Court with personal jurisdiction over ILCA. It is not enough that Kirby alleges to have been injured in Connecticut; rather he must allege that ILCA committed a tort within Connecticut. See Bross Utilis. Serv. Corp. v. Aboubshait, 489 F. Supp. 1366, 1373 (D. Conn. 1980). Here, Kirby alleges that boats with affixed plaques entered Connecticut after ILCA's distribution of the plaques. Accordingly, ILCA's "wrongful acts" were not performed in Connecticut, and there is no jurisdiction under this subsection of Connecticut's long-arm statute.

### 3. ILCA Has Not Committed a Tortious Act Outside of Connecticut Causing Injury to the Plaintiffs Within Connecticut

Conn. Gen. Stat. § 52-59b(a)(3) confers jurisdiction over defendants who, among other things, commit a tortious act outside of Connecticut which causes injury in the state. As the discussion above demonstrates, the tortious conduct alleged was committed outside Connecticut. Therefore, "the threshold question . . . is whether any injury to the plaintiff occurred in Connecticut." Greene v. Sha-Na-Na, 637 F. Supp. 591, 597 (D. Conn. 1986). In relevant part, the statute provides:

> [A] court may exercise personal jurisdiction over any nonresident individual. . . who in person or through an agent. . . (3) commits a tortious act outside the state causing injury to person or property within the state. . . if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Conn. Gen. Stat. § 52-59b(a).

In determining the place of injury caused by a commercial tort committed in the course of interstate or international business transactions, Connecticut courts draw upon a substantial body of relevant case law decided under the nearly identical New York statute, N.Y.C.P.L.R.

§ 302(a)(3), 38 upon which Conn. Gen .Stat. § 52-59b(a)(3) is based. See Bross Utils. Serv. Corp. v. Aboubshait, 489 F. Supp. 1366 (D.Conn.), aff'd, 646 F.2d 559 (2d Cir.1980) (adopting the "critical events" test applied in Greene).

The mere fact that a plaintiff that is domiciled or incorporated in Connecticut, loses profits or suffers some other pecuniary injury, does not necessarily mean it suffered direct economic injury in Connecticut. "Rather, in the context of commercial torts, the place of injury is generally the place where the critical events associated with the dispute took place." Bross Util. Serv. Corp., 489 F. Supp. at 1374. Here, the critical events of distributing the plaques took place outside of Connecticut.   Therefore, the plaintiffs did not suffer direct economic injury in Connecticut.

Under the similar New York long-arm statute, it has repeatedly been held that the fact that a plaintiff who has lost profits or suffered other pecuniary injury is domiciled or incorporated in that state or that New York is the plaintiff's principal place of business, does not necessarily make New York the situs of the plaintiff's injury. See, e.g., Lehigh Valley Industries, Inc. v. Birenbaum, 527 F.2d 87, 94 (2d Cir. 1975) (N.Y.C.P.L.R. § 302(a)(3) "is not satisfied by remote or consequential injuries . . . which occur in New York only because the plaintiff is domiciled or doing business here"); American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp., supra, 439 F.2d at 433-34; Friedr. Zoellner (New York) Corp. v. Tex Metals Co., 396 F.2d 300, 303 (2d Cir. 1968); Xedit Corp. v. Harvel Industries Corp., Fidelipac, 456 F. Supp. 725, 728 n.3 (S.D.N.Y.1978); G.S.C. Associates, Inc. v. Rogers, 430 F. Supp. 148, 150 (E.D.N.Y.1977); Security National Bank v. Ubex Corp. Ltd., 404 F. Supp. 471, 474-75 (S.D.N.Y.1975); Chemical Bank v. World Hockey Association, 403 F. Supp. 1374, 1380 (S.D.N.Y.1975); Spectacular Promotions, Inc. v. Radio Station WING, 272 F. Supp. 734, 737

(E.D.N.Y.1967) (Weinstein, J.); Fantis Foods, Inc. v. Standard Importing Co., 49 N.Y.2d 317, 326-27, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 126 (1980). Rather, in the context of commercial torts, the place of injury is generally "the place where the critical events associated with the dispute took place." American Eutectic Welding Alloys Sales Co., Inc., et al. v. Dytron Alloys Corp., supra, 439 F.2d at 433, quoting Spectacular   Promotions, Inc. v. Radio Station WING, supra, 272 F. Supp. at 737.

The "critical events" in this case such as the ordering, manufacturing and distributing of the plaques, all occurred outside of Connecticut.  Accordingly, plaintiff's injury occurred outside of Connecticut and Conn. Gen. Stat. § 52-59b(a)(3) does not apply to this case. See, e.g., G.S.C. Associates, Inc. v. Rogers, supra, 430 F. Supp. at 150 (injury suffered by New York plaintiff whose former Illinois sales representative wrongfully solicited plaintiff's Illinois customers in breach of a duty not to compete had its situs in Illinois, not New York); Chemical Bank v. World Hockey Association, supra, 403 F. Supp. at 1380 (in New York corporation's action for conversion, the plaintiff suffered injury not in New York, but in the states where the defendants performed acts to convert the property); Fantis Foods, Inc. v. Standard Importing Co., supra (New York corporation could not maintain conversion action there under C.P.L.R. § 302(a)(3) where the conversion occurred overseas); Sybron Corp. v. Wetzel, 46 N.Y.2d 197, 205, 413 N.Y.S.2d 127, 131, 385 N.E.2d 1055, 1058 (1978) (Breitel, C. J.) (New York plaintiff's action against former employee who allegedly appropriated its trade secrets could be brought in New York under C.P.L.R. § 302(a)(3), because New York was where the relevant product was manufactured, where the plaintiff's trade secrets were acquired by the defendant, and where the plaintiff lost customers); cf. Harem-Christensen Corp. v. M. S. Frigo Harmony, 477 F. Supp. 694, 696-97 (S.D.N.Y.1979).

ILCA distributes plaques from the UK (and now Texas), not Connecticut, and thus the question becomes whether defendant caused "injury to person or property within Connecticut." Because Connecticut's long-arm statute is modeled after New York's, Connecticut courts look to New York courts' interpretations of that statute. Zartolas v. Nisenfeld, 184 Conn. 471, 440 A.2d 179, 181 (Conn. 1981); see also Ryan v. Cerullo, 282 Conn. 109, 918 A.2d 867, 877 (Conn. 2007) (examining New York courts' interpretations of "their identically worded long-arm statute" in construing Conn. Gen. Stat. § 52-59(b)). When deciding in which state an injury was caused, courts applying the New York statute generally apply a "situs-of-injury" test. Whitaker v. American Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001).  "A Connecticut court would also apply the situs-of-injury test in applying § 52-59b(a)(3).  LaPrade v. Peyton, 2014 U.S. Dist. LEXIS, 85540 (D. Conn. June 24, 2014)."  Under the situs-of-injury test, whether the injury occurred "within" a state is determined by the location of the "original event that caused the injury," "not the location where the resultant damages are felt by the plaintiff."  Whitaker, 261 F.3d at 209. The location where resultant damages are felt by the plaintiff is irrelevant to this analysis. Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990).

Even if plaintiff had satisfied the first requirement of the long-arm statute, they would not meet the other requirements of subsection (3). There is no allegation that defendant "does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered" in Connecticut. Conn. Gen. Stat. § 52-59b(a)(3)(A). Thus, subsection (3)(A) is inapplicable, as is subsection (3)(B). That subsection contains two requirements: (1) that defendant expects or should reasonably expect her act to have consequences in the state; and (2) that defendant derives substantial revenue from interstate or international commerce. Conn. Gen. Stat. §52-59b(a)(3)(B). Plaintiff's allegations do not satisfy

either of these requirements. In order to assert jurisdiction under § 52-59b(a)(3), it must next be determined whether defendant "(A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce . . . ." The Connecticut Supreme Court has interpreted the phrase "substantial revenue" as meaning "'enough revenue to indicate a commercial impact in the forum, such that a defendant fairly could have expected to be haled into court there.'" Ryan, 918 A.2d at 877 (quoting Fogle v. Ramsey Winch Co., 774 F. Supp. 19, 23 (D.D.C. 1991)). Plaintiffs do not address the long-arm statute's substantial revenue requirement in the Complaint, nor do they allege any facts that would permit the inference that defendant derives any revenue, let alone a "substantial" amount, from interstate or international commerce.

## II.    ILCA HAS INSUFFICIENT CONTACTS WITH CONNECTICUT SUCH THAT THE EXERCISE OF JURISDICTION OVER ILCA WOULD VIOLATE DUE PROCESS

As shown above, there is no jurisdiction over ILCA under Connecticut's long-arm statute. Therefore, this Court need not consider whether an exercise of jurisdiction would comport with the Due Process Clause. In re Helicopter Crash near Wendle Creek, B.C. on August 8, 2002, 485 F. Supp. 2d 47, 54 (D. Conn. 2007) ("Because this court lacks personal jurisdiction under the Connecticut long-arm statute, there is no need to consider whether an exercise of personal jurisdiction would comport with the Due Process Clause."). Regardless, even if the Court were to find that there is jurisdiction under the long-arm statute, the exercise of personal jurisdiction over ILCA would violate the due process clause. ILCA's contacts with Connecticut are negligible and indirect. According to the Complaint, ILCA's contacts consist of

"sending reports of issued plaques to Kirby" and distributing plaques to boat makers outside of Connecticut, some of which later "enter" Connecticut. Compl. ¶12. The lawsuit does not arise out of these contacts, nor are the contacts so continuous and systematic as to confer general jurisdiction over ILCA. ILCA is a voluntary organization based in the United Kingdom. Although it has an interest in issuing plaques to sailboats that may enter Connecticut, ILCA does not have "continuous and systematic" contacts with Connecticut. See Savage v. Scripto-Tokai Corp., 147 F. Supp. 2d 86, 94 (D. Conn. 2001) ("The 'mere fact' that a defendant is a "designer of the subject product is insufficient to create personal jurisdiction.") Kirby's claims against ILCA are based on actions ILCA has taken outside of Connecticut, in the United Kingdom. ILCA is not analogous to an out-of-state manufacturer whose product is marketed or sold in the forum state. As Judge Chatigny noted during the hearing on ISAF's Motion to Dismiss, the distribution of plaques is not the production, manufacture or distribution of goods. "It doesn't appear to me that issuing a plaque constitutes the production, manufacture or distribution of goods." "We haven't found a case that suggests this theory is a valid one under Connecticut law." See copy of transcript of hearing, attached as Exhibit A. ILCA distributes plaques to boat makers outside of Connecticut.

The due process analysis consists of two components: whether the defendant has certain "minimum contacts" with the forum state and, if so, whether the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985); Milne, 239 F. Supp. 2d at 203. There are two types of personal jurisdiction: specific and general jurisdiction. Specific jurisdiction is based on a connection between the forum and the defendant's conduct at issue, and is case-specific, whereas general jurisdiction is broader and based on the defendant being "at

home" in the forum state.  "Either 'specific' jurisdiction or 'general' jurisdiction can satisfy the constitutional requirement of sufficient minimum contacts between the defendant and the forum." Thomason v. Chemical Bank, 234 Conn. 281, 287-88, 661 A.2d 595 (1995). "Minimum contacts" are established when a defendant "purposefully avails himself of the privileges and benefits" of the forum state. Hanson v. Denckla, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958). The purposeful availment requirement protects defendants from being haled into court based on "random, fortuitous or attenuated contacts," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985), and also ensures that defendants have "fair warning" if their conduct could subject them to suit in the forum state, Bensmiller v. E.I. DuPont de Nemours & Co., 47 F.3d 79, 85 (2d Cir. 1995).

When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the relationship between the defendant, the forum and the litigation is the foundation for *in personam* jurisdiction, and the Court is said to exercise "specific jurisdiction" over the defendant. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 & n.8, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984).  A court may have "specific jurisdiction" over a nonresident defendant only if the defendant "has 'purposefully directed' [its] activities at residents of the forum, . . . and the litigation [has] resulted from alleged injuries that 'arise out of or relate to' those activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472-73, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)(alterations in original)(citations omitted). Neither type of jurisdiction exists in this case.

Here, this Court may not exercise specific jurisdiction over ILCA because plaintiffs' alleged claims do not arise out of any contacts by ILCA with Connecticut.  Plaintiffs' claims arise out of other parties' contacts with the state – boat owners bringing their plaque-affixed boats into Connecticut.  ILCA merely distributed the plaques to manufacturers outside of

Connecticut. The plaintiffs have not alleged that ILCA distributed any plaques to, or within Connecticut. Therefore, there is no specific jurisdiction. See Anderson v. Bedford Assocs., 1997 U.S. Dist. LEXIS 15844 (D. Conn. Sept. 19, 1997) (finding no specific jurisdiction where "No contacts by defendant . . . with Connecticut have been alleged by plaintiff that could give rise to the causes of action asserted"). See Savage v. Scripto-Tokai Corp., 147 F. Supp. 2d 86, 91 (D. Conn. 2003) ("[T]o justify specific jurisdiction, the plaintiffs must show that their claims arise out of or relate to the defendant's contracts with the forum state.") (citing Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 480 (1984)).

There is also no general jurisdiction over ILCA. When the court exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, due process will not be offended by the court's exercising jurisdiction over a foreign defendant where there are sufficient contacts between the defendant and the state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. at 414. The court is said to exercise "general jurisdiction" in that instance. Id. at 415, n.9. Where the court exercises general jurisdiction over a nonresident defendant, the required contacts are far more significant than in a case of specific jurisdiction. The Court has required "continuous and systematic general business contacts." Id. at 416. See also Thomason v. Chemical Bank, 234 Conn. 281, 287, 661 A.2d 595 (1995). Thus, plaintiff must attempt to establish "general jurisdiction" by alleging that ILCA had "continuous and systematic general business contacts" with the state such that the defendant should reasonably have anticipated being haled into court in the forum state. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 287, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980); Hanson v. Denckla, 357 U.S. 235, 251, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958).

23

Here, nothing has been alleged concerning the activities of ILCA to establish sufficient contacts with Connecticut such that ILCA could reasonably anticipate being subject to suit in Connecticut. Plaintiffs merely allege that ILCA sent reports to Kirby in Connecticut. Critically, ILCA does not oversee, manufacture or distribute plaques from, or to, any location within Connecticut. ILCA does not solicit business in Connecticut. ILCA has derived only minimal revenue from persons or entities located in Connecticut. ILCA does not regularly engage in providing services in Connecticut. Because ILCA did not, and does not, have "continuous and systematic general business contacts" with Connecticut, this Court may not exercise general jurisdiction over it.

## III.   PLAINTIFF HAS FAILED TO STATE A CLAIM

Even if the Court were to find that it has personal jurisdiction over ILCA, the claims against ILCA must be dismissed for failure to state a claim. "Under Federal Rules of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009). "A complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (quoting Bell Atlantic, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Bell Atlantic, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id. (quoting Bell Atlantic, 550 U.S. at 557). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face."' Id. (quoting Bell Atlantic, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atlantic, 550 U.S. at 570).

Kirby has asserted five causes of action against ILCA: (1) counterfeiting of the "Kirby" sailboat; (2) trademark infringement, unfair competition and false designation of origin; (3) unfair competition; (4) misappropriation of publicity rights; and (5) inducement to default the builder agreements.  Claims I through IV and VII do not meet the applicable pleading standards, and therefore should be dismissed.

### A.    Claim I:  Counterfeiting of the Kirby Sailboat

Claim I alleges that defendants "continue to manufacture and sell counterfeit Kirby Sailboats with ILCA Plaques bearing the federally registered BRUCE KIRBY trademark" in violation of 15 U.S.C. § 1114.  Compl. 87-88.  In order to state a claim under 15 U.S.C. §1114, Kirby must allege that he "(1) has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent." 1-800 Contacts Inc. v. WhenU.com. Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (internal alterations and quotations omitted).

Even assuming that Kirby has a validly registered mark for the subject boats, ILCA does not sell or advertise any boats.  ILCA does not manufacture, advertise or sell any products whatsoever.   ILCA merely distributes plaques; it does not sell or advertise the allegedly counterfeit Laser Class boats.  Therefore, Kirby has failed to state a claim.  Furthermore, Kirby

claims that the boats are counterfeits, not that the plaques are counterfeit. Kirby attempts to obfuscate the issue by stating that the builders "together with ILCA Plaque suppliers continue to "manufacture and sell" Laser Class boats. See Compl. 196. However, as Kirby acknowledges elsewhere in the Complaint, ILCA does not actually manufacture or sell boats - its only role is in the distribution of the plaques. See Compl. 12. Kirby never alleges that ILCA has any role in the *sale or advertising* of the Laser Class boats as he is required to do to state a claim under 15 U.S.C. § 1114. 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-07 (2d Cir. N.Y. 2005); cf. Bosley Med. Inst., Inc. v. Kremer, 403 F.3d 672, 674 (9th Cir. 2005) (dismissing Lanham Act claim where defendant used trademark to create website providing negative information about trademark owner). Therefore, Claim I must be dismissed because Kirby has failed to allege that ILCA used his trademark in commerce in connection with the sale or advertising of goods.

Moreover, Kirby has conceded that prior to his filing the Amended Complaint, "ILCA and ISAF ... created a new version of the ILCA Plaque ... that *does not* feature the BRUCE KIRBY trademark and issued the New ILCA Plaques to the terminated builders." Compl. 78 (emphasis added). As Kirby concedes, ILCA and ISAF stopped using his trademark, therefore, he fails to state a claim for counterfeiting under 15 U.S.C. §1114.

### B.    Claim II: Infringement of BRUCE KIRBY Trademark, Unfair Competition and False Designation of Origin

Claim II also alleges a violation of 15 U.S.C. § 1114. Compl.  197, 99.  In addition to again alleging that defendants "continue to manufacture and sell counterfeit Kirby Sailboats with ILCA Plaques bearing the federally registered BRUCE KIRBY trademark," Compl. 196, Kirby also alleges that the "unauthorized Kirby Sailboats" are likely to confuse consumers because they are marked "BUILT BY LaserPerformance," which is likely to "confuse consumers into

26

believing those Kirby Sailboats are manufactured by a company in the United States."
Compl.¶199.

As discussed above, Kirby concedes that ILCA and ISAF stopped issuing plaques with
the Kirby trademark and fails to allege that ILCA has used the mark in commerce in connection
with the sale or advertising of goods or products. Accordingly, Claim II, like Claim I, must fail
on these grounds.

Kirby's alternative rationale for imposing liability under 15 U.S.C. §1114, fails as it is
nonsensical on its face. Kirby offers no basis for why an item marked as being accurately
described as manufactured by a *particular manufacturer* will confuse consumers into believing
that an item was manufactured in a *particular location*. Moreover, this claim is based on a
"manufacturer plate" which is affixed to a Laser Class boat. Compl., 99. Kirby has not alleged
any involvement by ILCA with the issuance of the "manufacturer plates." Accordingly, Claim II
must be dismissed for failure to state a cause of action.

## C. Claim III: Unfair Competition Under the Connecticut Unfair Trade Practices Act

Kirby alleges that ILCA has violated the Connecticut Unfair Trade Practices Act
("CUTPA"), Conn. Gen. Stat. § 42-110b by issuing plaques despite Kirby's disputes with
LaserPerformance and Quarter Moon. See Compl., 105-06. However, "by its terms," the
CUTPA only applies "to parties that have engaged in the advertising, selling, renting, leasing or
distribution of goods." Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 85 (1990). As
previously discussed, ILCA merely distributes the plaques and does not advertise, sell, rent, lease
or distribute *any* goods. (As Judge Chatigny noted, the plaques are not goods.) ILCA's role is
limited to the promotion and governance of sailing as a sport generally, and the enforcement of

27

certain rules and regulations to further that goal. ILCA's issuance of a plaque acts as a mere receipt that ISAF has approved the boat.

Additionally, Kirby has failed to allege "any sort of fraud, deception, or violation of public policy" by ILCA as required under CUPTA. See A Slice of Pie Prods.. LLC v. Wayans Bros. Entm't, 392 F. Supp. 2d 297, 312 (D. Conn. 2005); accord Cheshire Mortgage Serv., Inc. v. Montes, 223 Conn. 80, 106 (1992) (violation of CUPTA established by showing actual deceptive practice or practice amounting to violation of public policy). Kirby attempts to show a violation of CUPTA by alleging that ILCA has "tortiously interfered" with Kirby's rights under the Builder Agreements. Compl., 106. However, as further discussed below, Kirby has failed to state a claim for tortious interference against ILCA. In order to state a claim for tortious interference, Kirby must allege "that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously." Blake v. Levy, 191 Conn. 257, 261 (1983) (quoting Kecko Piping Co. v. Monroe, 172 Conn. 197, 201-02 (1977)) (alteration in original). Kirby has made no such allegations against ILCA, nor does he claim that ILCA has engaged in any particular deceptive practices or violated any public policy, therefore his claim for violation of CUPTA must be dismissed for failure to state a claim.

### D.    Claim IV: Misappropriation of Bruce Kirby's Publicity Rights

Kirby's claim for misappropriation of publicity rights is duplicative of his claims for trademark infringement. Kirby alleges, without any specification or justification, that he "owns the publicity rights to his name," Compl. 114, and that "[t]he unauthorized use of Bruce Kirby's name on the ILCA Plaques and on unauthorized Kirby Sailboats is likely to cause damage to the commercial value of Bruce Kirby's persona because it falsely implies that the unauthorized Kirby Sailboats are in fact authorized, sponsored, or approved by Bruce Kirby." Compl. 118. However,

Kirby owns the publicity rights to his name by virtue of the trademark he has for the mark BRUCE KIRBY. See Compl. 14-15. Accordingly, this claim must be dismissed as duplicative of the trademark infringement claims which are also based on the defendants' alleged use of his "BRUCE KIRBY" trademark on the ILCA plaques. See Compl. ¶¶87-89, 96-97; cf. A Slice of Pie Prods., 392 F. Supp. 2d at 316 (dismissing idea misappropriation claim as preempted by virtually synonymous copyright claim).

Moreover, as previously discussed, Kirby concedes that ILCA is now using a new plaque that *"does not* feature the BRUCE KIRBY trademark." Compl. 78 (emphasis added). Thus, as Kirby alleges that ILCA is no longer using his name and is no longer placing it on the Laser Class boats, he has failed to state a claim for misappropriation of publicity rights.

### E.   Claim VII: Inducement to Default the Builder Agreements

Connecticut courts recognize "a cause of action for tortious interference with contract rights or other business relations." Blake, 191 Conn. at 260. To prevail on a claim for tortious interference with contractual relations, a plaintiff must show:"(1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct." Appleton v. Bd. of Educ., 254 Conn. 205, 212-13 (2000). In order to prove that "the defendant's conduct was in fact tortious," the plaintiff must show "that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously." Blake, 191 Conn. at 261 (quotation omitted) (alteration in original); accord Daley v. Aetna Life & Casualty Co., 249 Conn. 766, 806 (1999) ( "plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without

justification.") (quotation omitted). As Kirby has failed to allege any fraud, misrepresentation or malice on the part of ILCA, this claim must be dismissed for failure to state a cause of action.

Additionally, this cause of action must be dismissed because Kirby has failed to allege how ILCA has induced Quarter Moon or LaserPerformance to breach the Builder Agreements. Kirby alleges that ILCA continued to issue the plaques *after* Quarter Moon and LaserPerformance breached the Builder Agreements by failing to pay royalties. Compl. 137,139. The Complaint does not allege that ILCA caused or induced Quarter Moon and LaserPerformance to breach the Builder Agreements. As all of the allegedly wrongful acts undertaken by ILCA occurred *after* the alleged breach, Kirby has failed to allege how ILCA induced Quarter Moon or LaserPerformance to breach the contracts. Thus, the cause of action for inducement to default the Builder Agreements must be dismissed for failure to state a cause of action.

## CONCLUSION

For all these reasons, ILCA respectfully requests that the Court grant its motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2) or failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

The defendant,
INTERNATIONAL LASER CLASS ASSOCIATION,
By its attorneys,


*/s/ Kevin C. Cain*
Kevin C. Cain, Esq.
ZIZIK, POWERS, O'CONNELL,
SPAULDING & LAMONTAGNE, P.C.
690 Canton Street, Suite 306
Westwood, MA  02090
(781) 320-5441
kcain@zizikpowers.com

## CERTIFICATE OF SERVICE

This is to certify that on this 30th day of December, 2014, a true and correct copy of the foregoing International Laser Class's Memorandum in Support of its Motion to Dismiss, was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/ *Kevin C. Cain*
Kevin C. Cain