UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC. and BRUCE KIRBY, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 3:13-CV-00297-RNC |
| | ) |
| LASERPERFORMANCE (EUROPE) LIMITED, QUARTER MOON, INCORPORATED, KARAYA (JERSEY) LIMITED, VERUM LIMITED ITM SA (ANTIGUA AND BARBUDA), INTERNATIONAL SAILING FEDERATION LIMITED, INTERNATIONAL LASER CLASS ASSOCIATION, and FARZAD RASTEGAR, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT INTERNATIONAL LASER CLASS
ASSOCIATION'S MEMORANDUM IN SUPPORT OF
ITS MOTION FOR SUMMARY JUDGMENT**

The plaintiffs' claims fail as a matter of law because they cannot establish the existence of the elements essential to their five claims against International Laser Class Association ("ILCA"): (1) counterfeiting of the "Kirby" sailboat; (2) trademark infringement; (3) unfair competition; (4) misappropriation of publicity rights; ad (5) inducement to default the builder agreements. Plaintiffs' complaint does not even state a claim, and even if it did, the plaintiffs have failed to introduce sufficient evidence for a reasonable fact-finder to conclude that the plaintiff is entitled to relief.

DEFENDANT RESPECTFULLY REQUESTS AN ORAL ARGUMENT
.

## INTRODUCTION[1]

This is a breach of contract case by plaintiffs Bruce Kirby and Bruce Kirby, Inc. (collectively "Kirby" or "plaintiffs") against defendants LaserPerformance (Europe) Limited ("LaserPerformance") and Quarter Moon, Incorporated ("Quarter Moon") regarding Laser Class sailboats. Kirby claims that he licensed a "Laser" sailboat design to defendants LaserPerformance and Quarter Moon, and they continued to manufacture the sailboats after he terminated the license agreements. Defendant ILCA is a self-administered, self-funded, non-profit international organization, which provides coordination, organization and communication for owners of the Laser Class of sailboat worldwide. Affidavit of Tracy Usher, dated December 30, 2014 ("Usher Aff.") ¶¶ 2 & 3. ILCA consists of hundreds of volunteers around the world who work year-round at the sailing clubs, offices and even sailing federations to organize Laser events spanning from club regattas to training camps to national and world championships for Laser sailors. Usher Aff. ¶ 8. "ILCA really only runs sailing events." See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p. 194.

Kirby alleges that he is the designer of a 13 foot 10 inch Laser Class sailboat, which he refers to as the "Kirby Sailboat." Compl. ¶13. On November 30, 1983, Kirby entered into an Agreement (the "ISAF Agreement") with Performance Sailcraft, Inc., Laser International Holdings Limited, ILCA, and the International Yacht Racing Union ("IYRU"). IYRU is the predecessor to ISAF. Compl. ¶22. The ISAF Agreement states that defendant International Laser Class Association was formed by owners of the sailboats designed by Kirby, which are denominated "Laser Class boat[s]" in the agreement (attached as Ex. 3 to Compl.). However,

---

[1] Pursuant to Local Rule 56.1, the defendants have filed herewith a concise statement of material facts as to which there is no genuine dispute, with page references to affidavits, depositions and other documentation.

Kirby refers to the boats as the "Kirby Sailboats" in the Complaint. Compare ISAF Agreement with Compl. ¶20.

The ISAF Agreement states that ILCA and others applied to the IYRU for International Status for the Laser Class sailboats, and that such status was obtained in 1974. ISAF Agreement, Introduction ¶¶1-6. The ISAF Agreement defines "Builders" of Laser Class boats as any manufacturer approved by the IYRU, licensed by Kirby, and licensed by the owner of the "LASER" trademark to use that trademark in association with the boats. See ISAF Agreement ¶1.[2] The ISAF Agreement states that the builders identified in Schedule 2 to the ISAF Agreement are authorized to manufacture and distribute Laser Class boats within certain specified territories. ISAF Agreement ¶9.1.[3] The ISAF Agreement also provides that each Builder would pay a small fee to an IYRU affiliate for each Laser Class boat manufactured by the Builder. ISAF Agreement ¶13.1. Kirby entered into a series of license agreements with manufacturers for the production of Laser Class boats (the "Builder Agreements"). See, e.g., Compl. ¶¶23-44. Quarter Moon and LaserPerformance are successors to two Builder Agreements. Compl. ¶¶28, 37. Kirby alleges that ISAF, in connection with ILCA, is responsible for issuing plaques to builders of Laser Class boats. Compl. ¶¶70-77. As part of its responsibilities regulating sailing competitions, ISAF ensures that particular classes of sailboats granted ISAF status meet the required approved specifications for those classes. Declaration of Jason Edward Thomas Smithwick, dated July 18, 2013, attached to ISAF's Motion to Dismiss ("Smithwick Decl.") ¶5. ILCA oversees the manufacture and distribution of plaques that

---

[2] Although Kirby alleges that the Laser Class boats currently being manufactured by Quarter Moon and LaserPerformance do not comply with the ISAF Agreement, see Compl. ¶78, he has not alleged any breach of the ISAF Agreement. Notably, the ISAF Agreement is the only agreement to which ILCA is a party and it includes a mandatory arbitration provision requiring arbitration of any disputes in London. See ISAF Agreement ¶[14]. Kirby has not commenced any such arbitration, and his failure to include a claim for breach of the ISAF Agreement appears to be an attempt to avoid the parties' contractual arbitration agreement.

[3] Kirby did not include Schedule 2 in the copy of the ISAF Agreement attached as Exhibit 3 to the Complaint.

identify sailboats as conforming to the Laser Class rules issued by ILCA and approved by ISAF, and certify that a particular boat is "class legal." Usher Aff. ¶ 12; Smithwick Decl. ¶7.

In 1992, ILCA and IYRU entered into an agreement governing the issuance of the plaques and collection of fees.[4] See Agreement Relating to the Collection of IYRU Fees in Respect of the Laser Class Boat and the Issue of Plaques, dated Nov. 5, 1992 (attached as Ex. A to Smithwick Decl.) ("1992 Agreement"). Pursuant to the ISAF Agreement and the 1992 Agreement, ILCA collects fees from the builders and shares a portion of those fees with ISAF. ISAF Agreement ¶¶13.1, 13.2; 1992 Agreement ¶3.1.1. The plaques are not to be issued to any Builder until the Builder pays the full amount of the fee. 1992 Agreement ¶6.1.

ILCA provides the plaques to builders, but does not affix the plaques on the boats. The right to affix the plaques on the hull of each boat belongs to the builders. See Plaintiff's First Amended Complaint, Introductory paragraph 2 on p. 2. Plaintiff does not allege that ILCA affixed any plaques bearing Bruce Kirby's name to any boat. See Plaintiff's First Amended Complaint.

Originally, the plaques issued to builders included text that indicated that a Laser Class boat was authorized "by Bruce Kirby Inc." See Ex. 16 to Compl. The Complaint defines these as "ISAF Plaques." Compl. ¶72. However, references to Bruce Kirby were removed from the plaques after Kirby notified ISAF that Kirby took the position that certain builders were no longer authorized to use the Kirby name or trademark. Usher Aff. ¶ 25; Smithwick Decl. ¶11. The Complaint defines plaques without Kirby's name as "New ISAF Plaques." Compl. ¶78.

The decision of the builder defendants, LaserPerformance Europe Limited, and Quarter Moon, Inc., with whom Kirby reached Builders Agreements, to stop paying royalties to Kirby

---

[4] The 1992 agreement was superseded by a new agreement between ILCA and ISAF in May 2013, but that is not relevant for purposes of this motion.

had nothing to do with ILCA. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 192. For instance, ILCA did not instruct LaserPerformance Europe Limited, and Quarter Moon, Inc. to stop paying royalties. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 193. ILCA also did not threaten LaserPerformance Europe Limited, and Quarter Moon, Inc. in any way to induce either of the builders to default on any Builders Agreements. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 193. Furthermore, ILCA did not make any promises to LaserPerformance Europe Limited, and Quarter Moon, Inc. in return for either company's promise to default on any Builders Agreements. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 193.

## **SUMMARY OF PLAINTIFFS' ALLEGATIONS**[5]

Kirby asserts seven claims, five of which are against ILCA as well as the other defendants. Claim I is for "counterfeiting of the Kirby Sailboat." Compl. ¶¶86-94. Kirby alleges that "terminated builders" Quarter Moon and LaserPerformance, "*together with* ISAF Plaque Suppliers ISAF and ILCA, and Laser trademark owners Karaya and Velum continue to manufacture and sell counterfeit Kirby Sailboats with ISAF Plaques bearing the federally registered BRUCE KIRBY trademark." Compl. ¶87 (emphasis added). Kirby does not claim that ILCA actually manufactured or sold any sailboats.

Claim II is for infringement of the Bruce Kirby trademark, unfair competition and false designation of origin. Compl ¶¶95-103. As in the first claim, Kirby alleges that that "terminated builders" Quarter Moon and LaserPerformance, "*together with* ISAF Plaque Suppliers ISAF and

---

[5] Pursuant to Local Rule 56.1, the defendants have filed herewith a concise statement of material facts as to which there is no genuine dispute, with page references to affidavits, depositions and other documentation.

ILCA, and Laser trademark owners Karaya and Velum, continue to manufacture and sell Kirby Sailboats with ISAF Plaques bearing the federally registered BRUCE KIRBY trademark." Compl. ¶96 (emphasis added). ILCA does not manufacture or sell any boats, and the plaintiffs do not allege otherwise. In Claim II, Kirby also alleges that the some of the sailboats at issue are "marked 'BUILT BY LaserPerformance' which is likely to confuse consumers into believing those Kirby sailboats are manufactured by a company in the United States." Compl. ¶99.

Claim III is for unfair competition under the Connecticut Unfair Trade Practices Act. Compl. ¶¶104-111. Kirby alleges that "[b]y continuing to issue ISAF Plaques and New ISAF Plaques," ISAF, Quarter Moon, LaserPerformance, ILCA, Karaya and Velum have "tortuously interfered with Kirby's rights under the Builder Agreements." Compl. ¶106. He also alleges that ISAF and ILCA have tortiously interfered with Kirby's rights under the Builder Agreements by enacting and approving a change to ILCA's by-laws. Compl. ¶107.

Claim IV is for misappropriation of Bruce Kirby's publicity rights. Compl. ¶¶112-119. Similar to Claims I and II, Kirby alleges that ISAF and ILCA have used Bruce Kirby's name without authorization on the plaques. Compl. ¶115.

Claims V and VI are breach of contract claims against LaserPerformance and Quarter Moon. Compl. ¶¶120-135. These claims are premised on the Builder Agreements to which ILCA is not a party.

Claim VII is for inducement to default the Builder Agreements. Compl. ¶¶136-143. Kirby alleges that "ISAF and ILCA have continued to issue ISAF plaques" to Quarter Moon and LaserPerformance, thereby enabling them to "manufacture and sell unauthorized Kirby Sailboats bearing ISAF Plaques," Compl. ¶137, and that this somehow induced Quarter Moon and LaserPerformance to breach contracts with Kirby.

6

## ARGUMENT

### A.   Claim I:  Counterfeiting of the Kirby Sailboat

Claim I alleges that defendants "continue to manufacture and sell counterfeit Kirby Sailboats with ILCA Plaques bearing the federally registered BRUCE KIRBY trademark" in violation of 15 U.S.C. § 1114. Compl. 87-88. Fatal to plaintiff's counterfeiting claim is the undisputed fact that ILCA does not manufacture or sell any boats, counterfeit or otherwise. In order to state a claim under 15 U.S.C. §1114, Kirby must allege that he "(1) has a valid mark that is entitled to protection under the Lanham Act; and that (2) the defendant used the mark, (3) in commerce, (4) in connection with the sale or advertising of goods or services, (5) without the plaintiff's consent." 1-800 Contacts Inc. v. WhenU.com. Inc., 414 F.3d 400, 406-07 (2d Cir. 2005) (internal alterations and quotations omitted).

Kirby claims that the boats are counterfeits, not that the plaques are counterfeit. Kirby attempts to confuse the issue by stating that the builders "together with ILCA Plaque suppliers continue to "manufacture and sell" Laser Class boats. See Compl. 196. However, as Kirby acknowledges elsewhere in the Complaint, ILCA does not actually manufacture or sell boats - its only role is in the distribution of the plaques. See Compl. 12. Kirby never alleges that ILCA has any role in the *sale or advertising* of the Laser Class boats as he is required to do to state a claim under 15 U.S.C. § 1114. 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-07 (2d Cir. N.Y. 2005); cf. Bosley Med. Inst., Inc. v. Kremer, 403 F.3d 672, 674 (9th Cir. 2005) (dismissing Lanham Act claim where defendant used trademark to create website providing negative information about trademark owner).

The undisputed fact is that ILCA merely provides plaques to builders. ILCA does not provide plaques to consumers. ILCA does not affix the plaques on the boats and ILCA has never

7

affixed a plaque bearing Bruce Kirby's name to any boat. The right to affix the plaques on the hull of a boat belongs to the builders. The builder, not ILCA, decides whether to affix the plaque to its boat. To the extend Kirby and the builders have disputes, ILCA is not the arbitrator and is no position to resolve those disputes.

Moreover, Kirby has conceded that prior to his filing the Amended Complaint, "ILCA and ISAF ... created a new version of the ILCA Plaque ... that *does not* feature the BRUCE KIRBY trademark and issued the New ILCA Plaques to the terminated builders." Compl. 78 (emphasis added). As Kirby concedes, ILCA and ISAF stopped using his trademark. Thus, for this reason as well, Kirby cannot even state a claim for counterfeiting.

### B.   Claim II:  Infringement of BRUCE KIRBY Trademark, Unfair Competition and False Designation of Origin

Claim II also alleges a violation of 15 U.S.C. § 1114. Compl.  197, 99.  In addition to repeating that defendants "continue to manufacture and sell counterfeit Kirby Sailboats with ILCA Plaques bearing the federally registered BRUCE KIRBY trademark," Compl. 196, Kirby also alleges that the "unauthorized Kirby Sailboats" are likely to confuse consumers because they are marked "BUILT BY LaserPerformance," which is likely to "confuse consumers into believing those Kirby Sailboats are manufactured by a company in the United States." Compl.¶199.

As discussed above, Kirby concedes that ILCA did not manufacture or sell any boats, and that ILCA and ISAF stopped issuing plaques with the Kirby name. Accordingly, Claim II, like Claim I, fails for the same reasons.

Again, ILCA merely provides plaques to builders. ILCA does not provide plaques to consumers. ILCA is no way involved in any sales to consumers. Therefore, ILCA has done nothing that is likely to confuse consumers. Furthermore, ILCA has done nothing to confuse the

builders to which it supplies the plaques. The builders are certainly not confused about the origin or manufacturer of the boats they build. The builder, not ILCA, decides whether to affix the plaque to its boat.

Kirby's alternative rationale for imposing liability under 15 U.S.C. §1114, fails as it is nonsensical on its face. Kirby offers no basis for why an item marked as being accurately described as manufactured by a *particular manufacturer* will confuse consumers into believing that an item was manufactured in a *particular location*. Moreover, this claim is based on a "manufacturer plate" which is affixed to a Laser Class boat. Compl., 99. Kirby has not alleged any involvement by ILCA with the issuance of these "manufacturer plates." For this reason too, plaintiffs have failed to state a cause of action.

### C. Claim III: Unfair Competition under the Connecticut Unfair Trade Practices Act

Kirby alleges that ILCA has violated the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b by issuing plaques despite Kirby's disputes with LaserPerformance and Quarter Moon. See Compl., 105-06. The unfair trade practices statute provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices *in the conduct of any trade or commerce*." (Emphasis added.) General Statutes § 42-110b(a). The statute further defines "trade or commerce," in § 42-110a(4), as "the advertising, the sale or rent or lease, the offering for sale or rent or lease, or the distribution of any services and any property . . . or thing of value *in this state*." (Emphasis added.) The statute thus applies, by its terms, only to parties that have engaged in the advertising, selling, renting, leasing or distribution of goods in Connecticut. Burkert v. Petrol Plus of Naugatuck, Inc., 216 Conn. 65, 85 (1990). Here, as previously discussed, ILCA merely distributes the plaques to builders, and does not advertise, sell, rent, lease or distribute *any* goods. ILCA's role is limited

to the promotion and governance of sailing as a sport generally, and the enforcement of certain rules and regulations to further that goal. ILCA's issuance of a plaque acts as a mere receipt that ISAF has approved the boat. Whether Kirby's name appears on the sticker is irrelevant to ILCA and those who race the boats. Kirby's name does not have any value apart from the sticker itself.

As Judge Chatigny noted during the hearing on ISAF's Motion to Dismiss, the distribution of plaques is not the production, manufacture or distribution of goods. "It doesn't appear to me that issuing a plaque constitutes the production, manufacture or distribution of goods." "We haven't found a case that suggests this theory is a valid one under Connecticut law." See copy of transcript of hearing, attached as Exhibit 5. Moreover, ILCA does not distribute the plaques to any builders in Connecticut. See Usher affidavit. Therefore, it is undisputed that ILCA does not advertise, sell, rent, lease or distribute any goods in Connecticut.

Additionally, Kirby has failed to allege "any sort of fraud, deception, or violation of public policy" by ILCA as required under CUPTA. See A Slice of Pie Prods.. LLC v. Wayans Bros. Entm't, 392 F. Supp. 2d 297, 312 (D. Conn. 2005); accord Cheshire Mortgage Serv., Inc. v. Montes, 223 Conn. 80, 106 (1992) (violation of CUPTA established by showing actual deceptive practice or practice amounting to violation of public policy). Kirby attempts to show a violation of CUPTA by alleging that ILCA has "tortiously interfered" with Kirby's rights under the Builder Agreements. Compl., 106. However, as further discussed below, Kirby has failed to prove any tortious conduct, e.g., "that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously." Blake v. Levy, 191 Conn. 257, 261 (1983) (quoting Kecko Piping Co. v. Monroe, 172 Conn. 197, 201-02 (1977)) (alteration in original). (An action for intentional interference with business relations . . . requires the plaintiff to plead and prove at least some improper motive or improper means. . .

. Blake v. Levy, supra, 262). Kirby has made no such allegations or presented any such evidence against ILCA, therefore he cannot prove a violation of CUPTA. In fact, as evidenced by the testimony of the builder defendants, ILCA did nothing to induce them to terminate their agreements with Kirby (See deposition of William Crane, pp. 192-193), and Kirby has offered no evidence to the contrary.

### D. Claim IV: Misappropriation of Bruce Kirby's Publicity Rights

Kirby's claim for misappropriation of publicity rights is duplicative of his claims for trademark infringement. Kirby alleges, without any specification or justification, that he "owns the publicity rights to his name," Compl. 114, and that "[t]he unauthorized use of Bruce Kirby's name on the ILCA Plaques and on unauthorized Kirby Sailboats is likely to cause damage to the commercial value of Bruce Kirby's persona because it falsely implies that the unauthorized Kirby Sailboats are in fact authorized, sponsored, or approved by Bruce Kirby." Compl. 118. However, Kirby claims he own the publicity rights to his name by virtue of the trademark he has for the mark BRUCE KIRBY. See Compl. 14-15. Accordingly, this claim is duplicative of the trademark infringement claims, which are also based on the defendants' alleged use of his "BRUCE KIRBY" trademark on the ILCA plaques. See Compl. ¶¶87-89, 96-97; cf. A Slice of Pie Prods., 392 F. Supp. 2d at 316 (dismissing idea misappropriation claim as preempted by virtually synonymous copyright claim).

In addition, ILCA has never traded on the commercial value of Brue Kirby's persona. Whether Kirby's name appears on the ILCA's plaques is irrelevant to ILCA and those who race these boats. Kirby's name does not have any independent value. The plaque, whether with or without Kirby's name has value when it is affixed to a boat because it qualifies the boat to enter certain races.

Furthermore, as previously discussed, Kirby concedes that ILCA is now using a new plaque that *"does not* feature the BRUCE KIRBY trademark." Compl. 78 (emphasis added). Thus, as Kirby admits that ILCA is no longer using his name and is no longer placing it on the Laser Class boats, he has failed to establish a necessary element of his claim for misappropriation of publicity rights.

### E.   Claim VII: Inducement to Default the Builder Agreements[6]

Connecticut courts recognize "a cause of action for tortious interference with contract rights or other business relations." Blake, 191 Conn. at 260. To prevail on a claim for tortious interference with contractual relations, a plaintiff must show:"(1) the existence of a contractual or beneficial relationship, (2) the defendants' knowledge of that relationship, (3) the defendants' intent to interfere with the relationship, (4) the interference was tortious, and (5) a loss suffered by the plaintiff that was caused by the defendants' tortious conduct." Appleton v. Bd. of Educ., 254 Conn. 205, 212-13 (2000). In order to prove that "the defendant's conduct was in fact tortious," the plaintiff must show "that the defendant was guilty of fraud, misrepresentation, intimidation or molestation ... or that the defendant acted maliciously." Blake, 191 Conn. at 261 (quotation omitted) (alteration in original); accord Daley v. Aetna Life & Casualty Co., 249 Conn. 766, 806 (1999) ( "plaintiff in a tortious interference claim must demonstrate malice on the part of the defendant, not in the sense of ill will, but intentional interference without

---

[6] ILCA is not a party to the Builder Agreements, but even if ILCA was, the agreements are invalid for lack of consideration. Kirby does not have a protectable interest in the design of the boat, and therefore is not owed any royalties. See *Brulotte v. Thys Co.*, 379 U.S. 29 (1964). In *Brulotte*, the Supreme Court found a licensing agreement unenforceable because it required royalty payments beyond the expiration date of the underlying patent. Following *Brulotte*, the Ninth Circuit as well as several other circuit courts have held that a contract requiring royalty payments for an invention after a patent expires is unenforceable unless the contract provides a discount from rate collected while the patent was in force. See *Zila, Inc. v. Tinnell*, 502 F.3d 1014 (9th Cir.2007); *Meehan v. PPG Indus., Inc.*, 802 F.2d 881 (7th Cir.1986); *Boggild v. Kenner Prods.*, 776 F.2d 1315 (6th Cir.1985); *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365 (11th Cir.1983); *Aronson v. Quick Point Pencil Co.*, 440 U.S. 257 (1979). Similarly, a contract requiring royalty payments for a design that is not protectable is unenforceable.

justification.") (Quotation omitted). As Kirby has neither alleged nor offered any evidence of any fraud, misrepresentation or malice on the part of ILCA, this claim fails as a matter of law.

Additionally, there is no evidence that ILCA has induced Quarter Moon or LaserPerformance to breach the Builder Agreements. Kirby alleges that ILCA continued to issue the plaques *after* Quarter Moon and LaserPerformance breached the Builder Agreements by failing to pay royalties. Compl. 137,139. The Complaint does not allege that ILCA caused or induced Quarter Moon and LaserPerformance to breach the Builder Agreements. As all of the allegedly wrongful acts undertaken by ILCA occurred *after* the alleged breach, Kirby has failed to allege how ILCA induced Quarter Moon or LaserPerformance to breach the contracts.

Furthermore, the undisputed evidence is that ILCA did not induce Quarter Moon or LaserPerformance to default or stop paying royalties. Indeed, the only evidence regarding this allegation is the testimony of William Crane, who unequivocally testified that ILCA did nothing to influence the builder's action.

The decision of defendant sailboat builders, LaserPerformance Europe Limited, and Quarter Moon, Inc., with whom Kirby reach Builders Agreements, to stop paying royalties to Kirby had nothing to do with ILCA. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 192.

ILCA did not instruct LaserPerformance Europe Limited, and Quarter Moon, Inc. to stop paying royalties. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 193. In addition, ILCA did not threaten LaserPerformance Europe Limited, and Quarter Moon, Inc. in any way to induce either of the builders to default on any Builders Agreements. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 193.

Furthermore, ILCA did not make any promises to LaserPerformance Europe Limited, and Quarter Moon, Inc. in return for either company's promise to default on any Builders Agreements. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 193.

## CONCLUSION

For all these reasons, ILCA respectfully requests that the Court grant its motion for summary judgment with respect to all claims of the plaintiffs against ILCA.

The defendant,
INTERNATIONAL LASER CLASS ASSOCIATION,
By its attorneys,

*/s/ Kevin C. Cain*
Kevin C. Cain, Esq.
ZIZIK, POWERS, O'CONNELL,
SPAULDING & LAMONTAGNE, P.C.
690 Canton Street, Suite 306
Westwood, MA 02090
(781) 320-5441
kcain@zizikpowers.com

## CERTIFICATE OF SERVICE

This is to certify that on this 20th day of January, 2015, a true and correct copy of the Foregoing Defendant International Laser Class Association's Memorandum in Support of its Motion For Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

*/s/ Kevin C. Cain*
Kevin C. Cain