UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| BRUCE KIRBY, INC. AND | : | Civil No. 3:13-cv-00297 (JAM) |
| BRUCE KIRBY, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LASERPERFORMANCE (EUROPE) LIMITED, | : | |
| QUARTER MOON, INCORPORATED, | : | |
| INTERNATIONAL SAILING FEDERATION LIMITED | : | |
| AND INTERNATIONAL LASER CLASS ASSOCIATION | : | |
| | : | |
| | : | |
| Defendants. | : | January 20, 2015 |

**QUARTER MOON, INC. AND LASERPERFORMANCE
(EUROPE) LIMITED'S MEMORANDUM OF LAW IN
<u>SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT</u>**

Simon I. Allentuch
Corey Fitzgerald
Neubert, Pepe & Monteith, P.C.
195 Church Street
 New Haven, CT 06510
(203) 821-2000


<u>Counsel for Defendants:</u>
Quarter Moon, Inc.
Laser Performance (Europe) Ltd.

# TABLE OF AUTHORITIES

## Cases

A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 579 A.2d 69 (1990) ....................... 28

Atl. Richfield Co. v. Arco Globus Int'l, 150 F.3d 189 (2d Cir. 1998) ................................. 16, 17

Blvd. Assocs. v. Sovereign Hotels, 72 F.3d 1029 (2d Cir. 1995) ................................. 27

Burberry Ltd. v. Designers Imps., Inc., No. 07 Civ. 3997 (PAC), 2010 U.S. Dist. LEXIS 3605
(S.D.N.Y. Jan. 19, 2010) ................................................................................. 25

Caravella v. City of N.Y., 79 F. App'x 452 (2d Cir. 2003) ................................. 31

Cartier Int'l B.V. v. Ben-Menachem, No. 06 Civ. 3917 (RWS), 2007 U.S. Dist. LEXIS 95366
(S.D.N.Y. Dec. 19, 2007) ................................................................................. 25

Coach, Inc. v. Allen, No. 11 Civ. 3590 (CM), 2012 U.S. Dist. LEXIS 100829 (S.D.N.Y. July 18,
2012) ................................................................................................................. 24

Coach, Inc. v. Melendez, No. 10 Civ. 6178 (BSJ) (HBP), 2011 U.S. Dist. LEXIS 116842
(S.D.N.Y. Sept. 2, 2011) ................................................................................. 24

Coach, Inc. v. Paula's Store Sportwear L.L.C., Civil Action No. 13-3263 (SRC), 2014 U.S. Dist.
LEXIS 12170 (D.N.J. Jan. 31, 2014) ................................................................ 24

Cosmetically Sealed Indus. v. Chesebrough-Pond's USA Co., 125 F.3d 28 (2d Cir. 1997) . 19, 21

Davis v. Conn. Cmty. Bank, 937 F. Supp. 2d 217 (D. Conn. 2013) ........................... 28

Dessert Beauty, Inc. v. Fox, 568 F. Supp. 2d 416 (S.D.N.Y. 2008) ..................... 19, 22

EMI Catalogue Pshp. v. Hill, Holliday, Connors, Cosmopulos Inc., 228 F.3d 56 (2d Cir. 2000)  23

Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc., 41 Conn. Supp. 575 (Super. Ct.
1991) ................................................................................................................. 28

Gleason v. Smolinski, No. NNHCV065005107S, 2009 Conn. Super. LEXIS 1982 (Conn. Super.
Ct. July 20, 2009) ............................................................................................. 29

Goodrich v. Waterbury Republican-Am., Inc., 188 Conn. 107 (1982) ....................... 29

Gucci Am. v. Guess?, Inc., 790 F. Supp. 2d 136 (S.D.N.Y. 2011) ........................... 16

Gucci Am., Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284 (S.D.N.Y. 2003) ................. 25

Hillside Metro Assocs. v. JPMorgan Chase Bank, Nat'l Ass'n, No. 10-CV-1772 (JG) (SMG),
2012 U.S. Dist. LEXIS 65375 (E.D.N.Y. May 9, 2012) ....................................... 31

JA Apparel Corp. v. Abboud, 568 F.3d 390 (2d Cir. 2009) ..................................... 20

Kelly-Brown v. Winfrey, 717 F.3d 295 (2d Cir. 2013) ........................................... 18

LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195 (2d Cir. 2005) .......... 31

PGA Mech. Contrs., Inc. v. GPNZ Realty Co., 37 Misc. 3d 1210 (?YEAR?) ........................... 33

Pace v. N. Haven Acad., No. CV096005922S, 2010 Conn. Super. LEXIS 980 (Conn. Super. Ct.
Apr. 23, 2010) ................................................................................................. 28

R&B Realty Group v. Heiser, 322 F. Supp. 2d 206 (D. Conn. 2004) ........................... 31

Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947 (7th Cir. 1992) ......................... 18

Scandaglia v. Transunion Interactive, Inc., No. 09 C 2121, 2010 U.S. Dist. LEXIS 91763 (N.D. Ill. Sept. 1, 2010) ......................................................................................................................... 20

Sciascia v. Rochdale Vill., 851 F. Supp. 2d 460 (E.D.N.Y. 2012) ............................................... 31

Sterling Drug v. Bayer AG, 14 F.3d 733 (2d Cir. 1994) ............................................................. 16

Totalplan Corp. of Am. v. Colborne, 14 F.3d 824 (2d Cir. 1994) ............................................... 16

Travel Servs. Network v. Presidential Fin. Corp., 959 F. Supp. 135 (D. Conn. 1997) .............. 27

Victor G. Reiling Assocs. v. Fisher-Price, Inc., 406 F. Supp. 2d 175 (D. Conn. 2005) ............. 26

**Statutes**

15 U.S.C. § 1.1 (2006) ................................................................................................................. 33

15 U.S.C. § 6.7 (2006) ................................................................................................................. 32

15 U.S.C. § 1115(b)(4) ................................................................................................................. 21

15 U.S.C. § 13.6 (2006) ............................................................................................................... 27

15 U.S.C. § 652C (2006) .............................................................................................................. 30

15 U.S.C. § 1051 (2006) .......................................................................................................... 4, 15

15 U.S.C. § 1114 (2006) ............................................................................................................... 15

15 U.S.C. § 1117 (2006) .......................................................................................................... 18, 23

15 U.S.C. § 1117(b) (2006) ......................................................................................................... 24

15 U.S.C. § 1115(b)(4) (2006) ..................................................................................................... 18

15 U.S.C. § 1116(d)(1)(B) (2006) ............................................................................................... 24

15 U.S.C. § 1116(d)(1)(B)(I) (2006) ........................................................................................... 23

15 U.S.C. § 1116(d)(1)(B)(i) (2006) ....................................................................................... 18, 23

Conn. Gen. Stat. § 42-110a .......................................................................................................... 4

Conn. Gen. Stat. § 42-110a(4) ...................................................................................................... 26

Conn. Gen. Stat. § 42-110b(a) ..................................................................................................... 26

**Other**

Restatement (Second) of Torts (1977) .......................................................................................... 29

## PRELIMINARY STATEMENT

Defendants LaserPerformance (Europe) Limited ("LaserPerformance") and Quarter Moon, Incorporated ("Quarter Moon") respectfully submit this Memorandum of Law in support of their Motion for Summary Judgment against the claims brought by plaintiffs Bruce Kirby Inc. ("BKI") and Bruce Kirby ("Kirby").

This case is about a small boat known as the "Laser" which is raced competitively around the world and in the Olympics. **Pp. 88-89, Crane Depo (Ex. 1, Allentuch Declaration)**. Laser Sailboats Limited manufacturers Laser sailboats in the United Kingdom and Laser Performance, LLC finishes the assembly of Lasers for the North American market. Laser Sailboats Limited is an affiliate of defendant LaserPerformance and Laser Performance, LLC is a subsidiary of Quarter Moon. **¶2, Crane Declaration**. They have the right to use the trademarked brand name "Laser" throughout the world (except in Australia, New Zealand, Oceania, Japan and South Korea) pursuant to agreements with former defendants Karaya (Jersey) Limited ("Karaya") and Velum Limited ("Velum").[1] **P. 54, Crane Depo (Ex. 1, Allentuch Declaration); ¶3, Crane Declaration.** Former defendant International Sailing Federation Limited ("ISAF")[2] issues stickers known as plaques which are placed on each Laser.[3] **P. 42, Kirby Depo (Ex. 2, Allentuch Declaration); ¶4, Crane Declaration; Exhibit 1, Crane Declaration.** A Laser contains a second plaque that identifies the builder known as the "Builder Plaque." **¶4, Crane Declaration; Exhibit 2, Crane Declaration.** As Mr. Kirby admitted, a Laser is a Laser because

---

[1] Karaya and Velum were dismissed from the case on February 27, 2014. **See DE 117.**
[2] ISAF was dismissed from the case on February 27, 2014. **See DE 117**
[3] Each Laser has two plaques. The first is an ISAF plaque and the second is a builder's plaque. Until he complained by commencing this action, the builder's plaque contained the words "designed by Bruce Kirby" on the bottom of the plaque. **¶4, Crane Declaration.**

it has the right dimensions, it has an ISAF plaque and it has the brand name "Laser" on it.
**Kirby Deposition, p. 39-40 (Ex. 2, Allentuch Declaration).**

For nearly forty years, Bruce Kirby and his company profited from a simple boat design (the Laser sailboat) he created with Ian Bruce in the late 1960s. Neither Mr. Kirby nor his company had any statutory protection for this boat design. However, they did have royalty contracts. In 2008, plaintiffs sold these rights to third party defendant Global Sailing Limited ("Global Sailing"), who then terminated the royalty contracts without cause and attempted to convince the world Laser sailing community (former defendant ISAF and co-defendant ILCA) to replace the Laser with an identical boat called the Kirby Torch. **P. 38, Crane Depo (Ex. 1, Allentuch Declaration); Ex. 3, Allentuch Declaration ; Ex. 13, Kirby Deposition; Exhibit 11, Kirby Deposition; Ex. 4, Allentuch Declaration; Kirby Deposition, p. 49, 56 (Ex. 2, Allentuch Declaration).** Mr. Kirby controls the trademark for the Torch but defendants control the trademark for the Laser brand. **See Ex. 5, Allentuch Declaration, ¶3, Crane Declaration.** ISAF continued to issue stickers or plaques on Laser sailboats thereby allowing the public to race them and refused to recognize the Kirby Torch. When Kirby failed to convince the sailing community to back his plan with the owners of Global Sailing and PSA[4], plaintiffs brought this lawsuit.

The Amended Complaint asserts a series of common law and statutory claims -- counterfeiting and trademark infringement under the Lanham Act (15 U.S.C. § 1051 et seq.), CUTPA (Conn. Gen. Stat. § 42-110a et seq.), misappropriation of publicity rights, and breaches of contract. The claims arise from two facts. The Builder's Plaque on Lasers contained the words, "designed by Bruce Kirby," until Kirby complained by filing this lawsuit, at which point

---

[4] **See Kirby Deposition, p. 118-119 (Exhibit 2, Allentuch Declaration).**

they were no longer included.  **<u>See</u> ¶¶86-119, Amended Complaint.**  Kirby also claims that

Quarter Moon and LaserPerformance built Lasers but failed to pay him royalties.  **<u>See</u> ¶¶120-**

**135, Amended Complaint.**  As set forth in detail in this memorandum of law, LaserPerformance

neither makes boats nor does it ship boats into the United States.  Its affiliate, Laser Sailboats,

Ltd., even if it were a defendant, would not be liable under the statutory or the common law tort

claims because it ships partially completed Lasers, without any marks, into Rhode Island.

Quarter Moon is not liable under the Lanham Act because (1) it does not make Lasers, (2) affix

plaques, or even (3) sell Lasers.  Even if it did, the brief use of the phrase "designed by Bruce

Kirby" constitutes a fair use under the Lanham Act.  The defendants did not commit any torts in

Connecticut.  For all of these reasons, summary judgment is appropriate.

## STATEMENT OF FACTS

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

REDACTED

## PROCEDURAL HISTORY

On April 30, 2013, Plaintiffs filed their First Amended Complaint (the "Complaint")

against defendants LaserPerformance, Quarter Moon, Karaya, Velum, ISAF, ILCA and Farzad

Rastegar.[5]  Plaintiffs seek recovery of damages and equitable relief from the Counterclaim

Plaintiffs for: (1) trademark counterfeiting, arising under the Lanham Act, 15 U.S.C. § 1114; (2)

trademark infringement, unfair competition and false designation of origin arising under the

Lanham Act, 15 U.S.C. § 1114; (3) unfair trade practices under the Connecticut Unfair Trade

Practices Act (CUTPA); (4) misappropriation of Bruce Kirby's publicity rights; (5) default of the

1983 builders agreement; (6) default of the 1989 builders agreement; and (7) inducement to

default under the 1983 and 1989 builder agreements.  Thereafter, on June 12, 2013, Laser

Performance and Quarter Moon filed their Answer and Counterclaims (the "Counterclaims")

against Plaintiffs and additional counterclaim defendants PSA and Global Sailing.

On February 24, 2014, the Court dismissed the claims against ISAF, Farzad Rastegar,

Velum Limited and Karaya Limited.  **See DE 117**.

## ARGUMENT

**I.**   **The Lanham Act does not Apply to LaserPerformance**

While the Lanham Act[6] governs federal trademark law and forms the basis for plaintiffs'

first two claims, it does not apply to the alleged conduct of LaserPerformance because: (1) the

conduct of LaserPerformance occurred outside of the United States and under these

circumstances extraterritorial application of the statute is inappropriate; and (2) even if the

statute did apply, LaserPerformance did not use the "mark" in question.  LaserPerformance

shipped partially completed Lasers, without any marks, to Laser Performance, LLC in Rhode

Island where final assembly was completed.  **¶2, Crane Declaration**.   Because

LaserPerformance did not put the Builders Plaque containing the name Bruce Kirby on any boat,

much less boats going to the United States, it cannot be liable for trademark infringement.  This

---

[5] Farzad Rastegar was also dismissed from the case on February 27, 2014.  **See DE 117.**
[6] 15 U.S.C. §§ 1051 et seq.

is no different from a contract manufacturer shipping partially completed boats or parts of boats

into Rhode Island.  For the forgoing reasons, summary judgment should be granted as to

LaserPerformance on Counts One and Two.

**A.      Extraterritorial Application of the Lanham
         Act is Inappropriate under These Circumstances**

Absent exceptional circumstances, American law does not apply to a British company

building part of a boat in England without trademarks for the American market.  While the

Second Circuit has found that "the Lanham Act may reach allegedly infringing conduct that

occurs outside the United States when necessary to prevent harm to commerce in the United

States," the Act applies to foreign actions in very limited circumstances.  Atlantic Richfield Co.

v. Arco Globus Int'l Co., 150 F.3d 189, 191 (2d Cir. 1998).  In order to determine if the Lanham

Act applies to firms that do not have a physical presence in the United States, courts examine

three factors: (1) whether the defendant is a United States citizen; (2) whether there is a conflict

with trademark rights established under foreign law; and (3) whether the defendant's conduct has

a substantial effect on United States commerce.  See Totalplan Corp. of Am. v. Colborne, 14

F.3d 824, 830 (2d Cir. 1994) (absence of any two factors is fatal).  Congress sought to limit

extraterritorial application of the Lanham Act to "foreign uses that have significant trademark-

impairing effect upon American commerce." Sterling Drug, Inc. v. Bayer AG, 14 F.3d 733, 746

(2d Cir. 1994) (instructing district court, on remand, to craft injunction that prohibits only those

uses of mark abroad that have substantial effect on U.S. commerce); Gucci Am., Inc. v. Guess?,

Inc., 790 F. Supp. 2d 136, 143 (S.D.N.Y. 2011) ("[A] showing of consumer confusion or harm to

plaintiff's goodwill in the United States is sufficient to demonstrate a 'substantial effect on

United States commerce'").

Plaintiffs admit in their Amended Complaint that LaserPerformance is not a United States corporation.  **¶6, First Amended Complaint.**  LaserPerformance is incorporated and is located in England and Wales.  **¶6, First Amended Complaint.**  Its principal place of business is StationWorks, Long Buckby, Northhampton, NN6 7PF, England.  **¶6, First Amended Complaint.**  This weighs heavily against extraterritorial application of the Lanham Act.

Furthermore, LaserPerformance does not even affix any marks to the parts of Lasers shipped to the United States so it cannot have an effect on United States commerce, let alone a *substantial effect*.  See <u>Atlantic Richfield Co.</u>, 150 F.3d at 192 ("we have never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce").  Laser Sailboats Limited manufacturers Laser sailboats in the United Kingdom and Laser Performance, LLC finishes the assembly of Lasers for the North American market.  **¶2, Declaration of William Crane.**   Laser Performance, LLC affixes the plaques to the boats.  **¶4, Declaration of William Crane.**  While Mr. Kirby has designed boats, he does not manufacture or sell boats.  **P. 9, Kirby Depo (Ex. 2, Allentuch Declaration).**  Plaintiffs have no product of their own that a consumer could become confused about.  Plaintiffs cannot establish that there has been *any* effect on United States commerce.  Accordingly, extraterritorial application of the Lanham Act is inappropriate and therefore summary judgment should be granted as to Laser Performance on Counts One and Two of the Complaint.

**B.      At no Point in Time Did LaserPerformance Use the
Trademark "Bruce Kirby" in the United States**

LaserPerformance did not counterfeit or infringe any trademarks in the United States.  As stated above, LaserPerformance does not manufacture Laser sailboats.  **¶ 2,  Declaration of William Crane.**  For North American boats, LaserPerformance does not affix anything to the Laser parts it produces, including the phrase "designed by Bruce Kirby."   Laser Performance,

LLC affixes the plaques to the boats.  **¶ 4, Declaration of William Crane.**  Without using the

mark at issue, LaserPerformance could not have violated the Lanham Act.  See 15 U.S.C. §

1117; 15 U.S.C. § 1116(d)(1)(B)(i).  Accordingly, summary judgment should be granted as to

LaserPerformance on Counts One and Two of the Complaint.

## II.    The North American Use of the Phrase "Bruce Kirby" was Fair Use

In the few months starting at the end of 2012[7] and the beginning of 2013, when Laser

Performance, LLC (not Quarter Moon) continued to put builder plaques on the Lasers it

produced which said "designed by Bruce Kirby" at the bottom, Laser Performance, LLC[8] did not

violate the Lanham Act by including those words on the plaque.  Laser Performance, LLC's use

of the "Bruce Kirby" phrase fits squarely within the contours of the fair use defense.  Laser

Performance, LLC has the right to use the phrase "designed by Bruce Kirby" to communicate

truthful and accurate information to consumers, namely, that the Laser was designed by Bruce

Kirby.

In order to make a successful fair use defense to a trademark infringement claim, the

defendant must prove three elements: that the use was made (1) other than as a mark, (2) in a

descriptive sense, and (3) in good faith. See 15 U.S.C. § 1115(b)(4); Kelly-Brown v. Winfrey,

717 F.3d 295, 305 (2d Cir. N.Y. 2013).  The mere fact that someone owns a mark that contains a

particular word or phrase does not grant the holder the exclusive right to use that word or phrase

commercially.  See Sands, Taylor & Wood Co. v. Quaker Oats Co., 978 F.2d 947, 951 (7th Cir.

1992).  As set forth below, Quarter Moon's use of the phrase clearly meets the criteria for fair

---

[7] Defendants were authorized to use the words "Bruce Kirby" on a Laser until Mr. Kirby terminated the agreements that applied to LaserPerformance and Quarter Moon in October and November, 2012.  **Ex. 18, Allentuch Declaration.**  Once Kirby complained by filing this lawsuit, defendants immediately removed the words "designed by Bruce Kirby" from the builder plaque.  They were removed in the beginning of 2013.  **¶ 5, Crane Declaration.**

[8] Laser Performance, LLC is a subsidiary of Quarter Moon.

use.  Accordingly, summary judgment is appropriate as to Count One and Two of the Amended Complaint.

**A.      Laser Performance, LLC Did not Use the Phrase "Bruce Kirby" as a Mark**

There is no dispute that Kirby designed the Laser.  The words "designed by Bruce Kirby" are merely descriptive.   Rather than feature the words "Bruce Kirby," the phrase "designed by Bruce Kirby" appears in small letters at the bottom of a small sticker (the Builder Plaque) on the Laser.  **Exhibit 1, Crane Declaration.**  Mr. Crane testified that the Builder Plaque "is located on the forward-facing bulhead of the cockpit beneath the hiking strap.  So it's visible, but it's not in a, you know, high visibility area."  **P. 88, Crane Depo (Ex. 1, Allentuch Declaration)**.  In other words, "designed by Bruce Kirby" is placed in an out of the way location on the Laser because it is meant to give Mr. Kirby credit for designing the Laser, not profit from the copyrighted brand name "Bruce Kirby."

To determine if a defendant is using the challenged term or phrase "as a trademark," courts examine whether a defendant's use is designed to "indicate[] the source or origin of consumer products."  <u>Dessert Beauty, Inc. v. Fox</u>, 568 F. Supp. 2d 416, 424 (S.D.N.Y. 2008). Thus, "[a] non-trademark use of [a] phrase is evident where the source of the defendant's product is clearly identified by the prominent display of the defendants' own trademarks."  <u>Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co</u>., 125 F.3d 28, 30-31 (2d Cir. 1997).  Here, there is no question that the sailboat is a Laser.  It has Laser trademarks all over the boat.   **¶4, Crane Declaration.**  The sail of the Laser contains a large Starburst logo which is part of the Laser trademark.  **¶4, Crane Declaration.**  The port and starboard of the hull also have the Laser

and Starburst logo.  **¶4 Crane Declaration.**  There are also Laser stickers along the mast sections, boom, rudder, centerboard and rudder head of the boat.  **¶4 Crane Declaration.**

When Laser Performance, LLC  included "designed by Bruce Kirby" on its plaque, and then added the Laser brand and trademark to various parts of the sailboat, the words "Bruce Kirby" were not used as a trademark.  Instead, the mark, which is Bruce Kirby's name, was used solely to explain to the consumer who designed the boat.  See Scandaglia v. Transunion Interactive, Inc., 2010 U.S. Dist. LEXIS 91763 (N.D. Ill. Sept. 1, 2010) (Phrase in question not used as a mark where used in conjunction with numerous other phrases).  If Laser Performance, LLC sold a "Bruce Kirby" brand boat that would potentially violate the act, but that is not what happened here.  Given the nature and context of the phrase's use on the plaques, along with the litany of Laser related markings on the boat, it is clear that Laser Performance, LLC intended to use the Laser trademark and the ISAF mark to identify the source of the boat; not the "Bruce Kirby" mark.

Courts also consider the "physical nature of the use in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks,' as well as the 'presence or absence of precautionary measures such as labeling or other devices designed to minimize the risk that the term will be understood in its trademark sense."  See JA Apparel Corp. v. Abboud, 568 F.3d 390 (2d Cir. N.Y. 2009).  Neither the Builder's Plaque nor the ISAF Plaque (which referenced "Bruce Kirby, Inc." not "Bruce Kirby") use Bruce Kirby's name as a trademark.  A viewer of the Builders Plaque is immediately drawn to the large, colored font that consumes nearly half of the plaque in which the duly authorized trademark, "Laser," is displayed.  **Ex. 1, Kirby Depo (Ex. 4, Allentuch Declaration).**  This "Laser" trademark is displayed in various other locations throughout the plaque and the boat.  It

is prominently displayed at the top right hand portion of the plaque.  Meanwhile, the words "Bruce Kirby" appear only at the very bottom right hand of the plaque in a font that is significantly smaller and takes up a very tiny portion of the plaque.  The Builders Plaque is not in a prominent position.  It is clear from the design and setup of the plaque, and the boat itself, that the phrase "Bruce Kirby" is far from the focal point of the plaque or the boat.  It is not positioned in such a way as to attract significant public attention.  The focus of the plaque, and nearly every other part of the boat, is the "Laser" trademark and the associated Starburst logo.

The same can be said for the ISAF Plaque.  Nearly the entire left half of the plaque is consumed by a large "International Sailing Federation" trademark.  **Ex. 2, Kirby Depo (Ex. 4 Allentuch Declaration).**  Once again, the "Laser" trademark is also prominently displayed at the top right hand portion of the plaque.  In fact, the "Bruce Kirby" phrase does not even appear on this plaque.  Instead, it is the phrase "Authorized By . . . Bruce Kirby Inc."  Regardless of whether that mark is even trademarked, it is clear that the phrase is not used as a mark.  The words "Bruce Kirby" in both plaques appear in the context of a complete sentence that is merely informational and constitute a minor aspect of the plaque - which in turn represents a minor portion of the boat.  Indeed, the plaques are the only location on the entire boat that Bruce Kirby's name appears.  Laser Performance, LLC did not use the phrase "Bruce Kirby" as a mark.

**B.      The Phrase Bruce Kirby was Used Merely in a Descriptive Sense**

A use of a mark is descriptive where "the name or term is used 'to describe the goods.'" Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30 (2d Cir. 1997) (quoting 15 U.S.C. § 1115(b)(4)).  The Second Circuit has not limited the phrase "to describe the goods" to the description of a characteristic of the goods, but rather, allows for the use of words or images "in their descriptive sense."  See id.  "Descriptive use is evident in such

situations [w]here a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods." Dessert Beauty, Inc. v. Fox, 568 F. Supp. 2d 416, 426 (S.D.N.Y. 2008).

As discussed above, the phrase "designed by Bruce Kirby" merely alerts the consumer that Bruce Kirby, the individual, was the designer of the Laser. Bruce Kirby is in fact the individual who designed the Laser. **P. 43-44 Kirby Depo (Ex. 2 Allentuch Declaration).** The use of Bruce Kirby's name is the only "reasonably available means" by which Laser Performance, LLC can inform potential customers and users of the Laser that Bruce Kirby designed the Laser. See Dessert Beauty, 568 F. Supp. 2d at 426. Furthermore, as discussed in the previous section, the design and layout of the plaques and the boat itself, namely, the prominent display of the "Laser" trademark, demonstrate that the inclusion of Bruce Kirby's name is not intended to be a focal point. It is not used to promote the boat or draw the consumer's attention. Instead, the inclusion of "Designed by Bruce Kirby" is merely meant to relay necessary and factual information to the consumer. Accordingly, it is clear that Laser Performance, LLC's use of the name "Bruce Kirby" in the Builder's plaque is a descriptive, non-trademark use.

**C.     Laser Performance, LLC's Use of the Phrase was Not in Bad Faith**

Mr. Kirby cannot contend that Laser Performance, LLC (or Quarter Moon) acted in bad faith. Bruce Kirby designed the Laser. **P. 43-44 Kirby Depo (Ex. 2, Allentuch Declaration).** The inclusion of the phrase "designed by Bruce Kirby" merely conveyed that information to the consumer. This information has been included in the plaques for approximately twenty five years prior to Mr. Kirby's registration of the phrase "Bruce Kirby." **¶ 4, Crane Declaration.** Indeed, as stated by Mr. Kirby, prior to the termination at the end of 2012 it was a requirement

23

that his name be used and he still wants ISAF, LaserPerformance and Quarter Moon to use his name on Lasers.  **Pp. 41-42, 86-87, Kirby Depo (Ex. 2 Allentuch Declaration).**  Once Laser Performance, LLC was notified that the phrase was registered as a trademark by Mr. Kirby (by this lawsuit), it immediately stopped including that information in the plaque.  **¶ 4, Crane Declaration.**

Court's typically "equate a lack of good faith with the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship."  <u>EMI Catalogue P'ship v. Hill, Holiday, Connors, Cosmopulos Inc.</u>, 228 F.3d 56, 66 (2d Cir. 2000). Initially Laser Performance, LLC merely included Bruce Kirby's name because pursuant to the builders agreement it was required to. **P. 86-87 Kirby Depo (Ex. 2, Allentuch Declaration).**  In fact, Mr. Kirby himself stated that he still wants his name on the plaques.  **p. 41-42 Kirby Depo (Ex. 2 Allentuch Declaration).**  It had nothing to do with "good will" or trying to take advantage of commercial value.  Indeed, Plaintiffs have no "good will" as boat sellers.  Plaintiffs do not sell boats.  For more than a decade, Laser Performance, LLC has been the only Laser manufacturer in all of North America.  This clearly demonstrates that despite the window dressing of federal statutory claims, the case is essentially a claim that Quarter Moon breached post-termination obligations in the license agreements with Kirby and BKI.

**III.     The Undisputed Facts Demonstrate that Plaintiffs**
**          <u>Cannot Support a Claim for Counterfeiting</u>**

To establish counterfeiting, a plaintiff must establish four elements beyond mere infringement or false advertising: first, the mark must be "counterfeit," meaning "a spurious mark which is identical with, or substantially indistinguishable from, a registered mark."  15 U.S.C. § 1117; <u>see</u> <u>also</u> id. § 1116(d)(1)(B)(i).  Second, the mark must be registered on the U.S. Patent and Trademark Office's principal register for use on the same goods or services for which

the defendant uses the mark.  See id. § 1116(d)(1)(B)(I).  Third, the defendant must not have been authorized to use the mark at the time the goods or services were manufactured or produced.  Id § 1116(d)(1)(B). Finally, the defendant must have acted with knowledge and intent. See id. § 1117(b).  As demonstrated above, the phrase "Bruce Kirby" was not used as a mark.  For the same reasons the trademark claim fails, the counterfeiting claim fails as well.

This claim is not like any other counterfeiting case.  In nearly every counterfeiting case, a defendant makes a copy, often a cheap copy, of a plaintiff's product and sticks plaintiff's mark on it.  The defendant then tries to pass off the knock-off as an original.  Consumers are then mislead to believe they can buy a genuine item, such as a Coach handbag, a Rolex watch or a Burberry jacket for a mere thirty dollars.  See, e.g., Coach, Inc. v. Paula's Store Sportwear LLC, 2014 U.S. Dist. LEXIS 12170, 5-6 (D.N.J. Jan. 31, 2014) (Coach owns various registered marks which were used by Defendants in connection with the sale of counterfeit items in a way that caused a likelihood of confusion between the counterfeit wallets and handbags and the authentic Coach products. ); Coach, Inc. v. Allen, 2012 U.S. Dist. LEXIS 100829, 4 (S.D.N.Y. July 18, 2012) (Defendants used their website to promote and offer the sale of handbags, duffle bags, wristlets, wallets, scarves, hats, umbrellas, shoes, key chains and sunglasses.  The products distributed on the Website were explicitly identified as Coach handbags and accessories and had the Coach trademarks); Coach, Inc. v. Melendez, 2011 U.S. Dist. LEXIS 116842 (S.D.N.Y. Sept. 2, 2011) (Subsequent to Coach's adoption, use and registration of the Coach Registered Trademarks, defendants began selling, offering for sale and distributing, promoting and advertising in interstate commerce merchandise bearing counterfeits and infringements of the Coach Registered Trademarks as those marks appear on Coach's products); Burberry Ltd. v. Designers Imps., Inc., 2010 U.S. Dist. LEXIS 3605, 16-17 (S.D.N.Y. Jan. 19, 2010) ("Defendant

offered for sale and has sold merchandise displaying spurious designations that are identical to, or substantially indistinguishable from, Burberry's famous, registered trademarks on goods for which Burberry trademarks are registered, including: a bikini; a jacket; a coat; shirts; and scarves"); Cartier Int'l B.V. v. Ben-Menachem, 2007 U.S. Dist. LEXIS 95366, 4 (S.D.N.Y. Dec. 19, 2007) (Plaintiff spent millions of dollars in advertising, promoting, and developing Plaintiffs' Marks throughout the world.  As a result, products bearing Plaintiffs' Marks are closely associated with Plaintiffs' reputation in the eyes of the public, customers, and the luxury goods industry.  Defendants guilty of counterfeiting where they imported, exported, distributed, advertised, offered for sale and sold watches bearing Plaintiffs' Marks without its authorization); Gucci America, Inc. v. Duty Free Apparel, Ltd., 286 F. Supp. 2d 284, 287 (S.D.N.Y. 2003) (retailer and supplier sold accessories bearing the designer's trademark and in the style of the designer's authentic accessories without the designers authorization).

Here, Plaintiffs do not have a product and the Laser brand sailboat is not a knock off. The Bruce Kirby mark is not used and has never been used.  To the extent that Mr. Kirby's renamed Laser is a competitor (the "Kirby Torch"), he claims that not a single Kirby Torch has been built.  According to Mr. Kirby, it is nothing more than an idea at this point.  **p. 48, 51, Kirby Depo (Ex. 2, Allentuch Declaration).**  There is nothing to counterfeit.

Certainly then, there can be  and isn't any evidence that domestic consumers have been misled or have come to view the "Bruce Kirby" mark less favorably as a result of these alleged infringing activities. This is especially true the Bruce Kirby mark is not used and has never been used.  A google search for the mark "Bruce Kirby" does not reveal a single product with that brand.  Laser sailboats are all the same and have to be the same so that there is a level playing field when they are raced together.  **¶7. Crane Declaration.**  The Laser boats produced last week

26

or last year are the same.  This is not a case where a $5 knockoff Rolex watch has been made to look like the $5,000 real Rolex watch.  Plaintiffs have no product of their own that a consumer could become confused about and the Laser sailboat remains the Laser sailboat.  Accordingly, Plaintiffs cannot support a claim for counterfeiting.[9]

## IV.    CUTPA Does Not Apply

CUTPA provides in relevant part that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42-110b(a).  CUTPA does not apply to a violation occurring outside Connecticut unless the violation is "tied to a form of trade or commerce intimately associated with Connecticut."  Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc., 406 F. Supp. 2d 175, 200 (D. Conn. 2005).  There is no evidence that Quarter Moon's business is a form of trade or commerce intimately associated with Connecticut.  It has no employees or bank accounts; it's a holding company.  **P. 6, 49. Crane Depo (Ex. 1, Allentuch Declaration)**

The CUTPA statute is limited in application to unfair "trade" or "commerce" that is "in this state."  Conn. Gen. Stat. § 42-110a(4).  Plaintiffs have not alleged any trade or commerce in Connecticut or any conduct by Quarter Moon or LaserPerformance that took place in

---

[9] Plaintiffs licensed the design of their boat.  Indeed, when asked "what damages you've suffered as a result of the words designed by Bruce Kirby appearing on Exhibit one and on boats . . . in Connecticut?" (Deposition Exhibit 1 is a builder plaque that is affixed to a Laser that used to say on the bottom "Designed by Bruce Kirby").  Mr. Kirby responded "No harm in that, it's supposed to be that way."  **p. 135-136, Kirby Depo (Ex. 2 Allentuch Declaration).**  Bruce Kirby wants his name and the BKI name on the plaques that are attached to the Laser.  **p. 41-42 Kirby Depo (Ex. 2 Allentuch Declaration).**  Of course, this is not surprising.  Bruce Kirby designed the Laser almost fifty years ago.  **p. 43-44, Kirby Depo (Ex. 2 Allentuch Declaration).**  As discussed above, Mr. Kirby claims that not a single Torch has been built to date.  **p. 48, Kirby Depo (Ex. 2 Allentuch Declaration).**  He said the Torch is nothing more than an idea at this point in time.  Mr. Kirby stated that "there is no torch" and that "it does not exist."  **p. 49, 51, Kirby Depo (Ex. 2, Allentuch Declaration).**  Furthermore, prior to the alleged termination of the Builders Agreement, Quarter Moon had to put Bruce Kirby's name on the Laser.  **p. 86-87, Kirby Depo (Ex. 2 Allentuch Declaration).**  Accordingly, the only time period in which Quarter Moon could even conceivably be liable for counterfeiting is after the termination and before they took the names off of the plaques.  Mr. Kirby has admitted this much. **p. 87-88, Kirby Depo (Ex. 2 Allentuch Declaration).**

Connecticut.[10]   In fact, Quarter Moon has no trade or commerce. **P. 6, 49. Crane Depo (Ex. 1 Allentuch Declaration).**   Indeed, the CUTPA claim barely mentions conduct by Laser Performance or Quarter Moon.   **Complaint, Count Three, generally.**   It is difficult to imagine how a holding company like Quarter Moon which has no employees, no bank accounts and has no business other than holding the stock of its subsidiaries could violate CUTPA.

Furthermore, the basis for the alleged CUPTA violation appears to stem from rights grounded in the Builders Agreements or perhaps the alleged trademark violations.   As discussed above, defendants did not violate the Lanham Act.   The 1983 Builder Agreement does not contain a Connecticut choice of law provision.   The 1983 Builder Agreement reads as follow: "The validity, construction and enforcement of this Agreement shall be governed in accordance with the laws of the Province of Ontario, Canada."   **§ 13.6 1983 Builder Agreement, Exhibit 4, Amended Complaint**.   The specific choice of law provision in that agreement to enforce any rights arising out of that agreement precludes any CUTPA claim.   See Travel Servs. Network, Inc. v. Presidential Fin. Corp. of Mass., 959 F. Supp. 135, 146 (D. Conn. 1997) ("A broadly-worded choice-of-law provision in a contract may govern not only interpretation of the contract in which it is contained, but also tort claims arising out of or relating to the contract").

Even if Connecticut law were to apply, the CUTPA claim is not viable.   To pursue a CUTPA claim, a plaintiff must demonstrate aggravating circumstances beyond a simple breach of contract.[11]   See Boulevard Assocs. v. Sovereign Hotels, Inc., 72 F.3d 1029, 1038-39 (2d Cir. 1995); A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215, 579 A.2d 69 (1990) (holding that CUTPA addresses practices that "offend[] public policy"; are "immoral, unethical,

---

[10] Furthermore, Plaintiffs suffered no harm from Quarter Moon's alleged CUTPA violation.   When asked "what damages you've suffered as a result of the words Laser sailboat designed by Bruce Kirby appearing on Exhibit one and on boats . . .  in Connecticut?" Mr. Kirby responded "No harm in that, it's supposed to be that way."   **p. 135-136, Kirby Depo (Ex 2. Allentuch Declaration).**
[11] As set forth below, there is no breach of contract claim.

oppressive, or unscrupulous"; and cause "substantial injury to consumers").  Connecticut courts have held that a "[a] simple breach of contract, even if intentional, does not amount to a violation of the Act; a [claimant] must show substantial aggravating circumstances attending the breach to recover under the Act...." Emlee Equip. Leasing Corp. v. Waterbury Transmission, Inc., 41 Conn.Supp. 575, 580 (1991).  Connecticut courts have therefore permitted a CUTPA cause of action based on a breach of contract where there are aggravating circumstances attending the breach such as where there has generally "been some type of fraudulent behavior accompanying the breach or aggravating circumstances." Pace v. North Haven Academy, LLC, 2010 Conn. Super. LEXIS 980, 3 (Conn. Super. Ct. April 23, 2010).

Here the trademark claims lack any merit.  At best, plaintiffs' allegations in their CUTPA count can be construed to assert a CUTPA violation predicated on their breach of contract claims.   There are no significant aggravating circumstances here.  Plaintiffs may argue that they have demonstrated significant aggravating circumstances attending the breach of contract because the defendants made boats and did not pay plaintiffs.  However, that argument asserts nothing more than a simple breach of contract, which cannot support a CUTPA claim. There is simply no evidence that the defendants' alleged breaches of contract were accompanied by some type of fraudulent behavior as is necessary under Connecticut law.  Davis v. Conn. Cmty. Bank, N.A., 937 F. Supp. 2d 217, 237-238 (D. Conn. 2013).  Accordingly, summary judgment should be granted as to the CUTPA claim.

**V.      The Undisputed Facts Demonstrate that Plaintiffs Cannot State a Claim for Misappropriation of Publicity Rights**

Although there is almost no precedent, a misappropriation of publicity rights claim is actionable under Connecticut as the tort of appropriation of an individual's name or likeness. "Although the Supreme Court has never provided the courts with the elements required to state a

claim sounding in appropriation of name or likeness, it has acknowledged the tort's existence

under the law of Connecticut."  Gleason v. Smolinski, 2009 Conn. Super. LEXIS 1982, 9-10

(Conn. Super. Ct. July 20, 2009); see also Goodrich v. Waterbury Republican-American, Inc.,

188 Conn. 107 (Conn. 1982).

      However, Connecticut has adopted the Restatement's definition of the misappropriation

of name or likeness.  Pursuant to 3 Restatement (Second), Torts § 652C, "[o]ne who appropriates

to his own use or benefit the name or likeness of another is subject to liability to the other for

invasion of his privacy."  The restatement also provides, however, that:

> [t]he value of the plaintiff's name is not appropriated by mere
> mention of it, or by reference to it in connection with legitimate
> mention of his public activities; nor is the value of his likeness
> appropriated when it is published for purposes other than taking
> advantage of his reputation, prestige, or other value associated with
> him, for purposes of publicity.  No one has the right to object
> merely because his name or his appearance is brought before the
> public, since neither is in any way a private matter and both are
> open to public observation.  It is only when the publicity is given
> for the purpose of appropriating to the defendant's benefit the
> commercial or other values associated with the name or the
> likeness that the right of privacy is invaded.  The fact that the
> defendant is engaged in the business of publication, for example of
> a newspaper, out of which he makes or seeks to make a profit, is
> not enough to make the incidental publication a commercial use of
> the name or likeness.  Thus a newspaper, although it is not a
> philanthropic institution, does not become liable under the rule
> stated in this Section to every person whose name or likeness it
> publishes.

Id., § 652C, comment (d).  Bruce Kirby designed the Laser.  **p. 43-44, Kirby Depo (Ex. 2,**

**Allentuch Declaration).**  This is a well-known fact within the sailing community.  In fact, Mr.

Kirby himself stated that he wants his name on the plaques.  **p. 41-42, Kirby Depo (Ex. 2,**

**Allentuch Declaration).**  This information was provided on the plaques for many years prior to

Mr. Kirby's registration of the phrase "Bruce Kirby."  **¶ 4Crane Declaration.**  Indeed, as stated

by Mr. Kirby, prior to the termination it was a requirement that his name be used. **p. 86-87**

**Kirby Depo (Ex. 2, Allentuch Declaration).** Laser Performance, LLC did not "misappropriate" Bruce Kirby's publicity rights. Laser Performance, LLC merely stated a fact.[12] An individual cannot object to the use of his name merely because it has been brought before the public. As discussed in the commentary to § 652C, a newspaper article that uses a picture of someone, or makes a factual statement regarding that person, is not improperly appropriating that individual's likeness or name. There was no commercial purpose. Accordingly, it cannot be said that Bruce Kirby's name was used by Laser Performance, LLC for "commercial value" and therefore summary judgment is appropriate.

## VI.   This Court Does Not Have Subject Matter Jurisdiction Over the Breach of Contract Claims as Plaintiffs Do Not Have Standing to Sue

Neither Plaintiff has standing to sue on either of the Builder Agreements. In June, 2008, Plaintiffs assigned all of their rights under any agreements they entered into relating to the Kirby Sailboat to Global Sailing. **See Intellectual Property Purchase and License Agreement, Ex. 7, Allentuch Declaration;**[13] **P. 99, 105, Kirby Depo (Ex. 2, Allentuch Declaration).** This included the rights under the Builders Agreements. As non-parties to the Builder Agreements, plaintiffs have no standing to enforce those agreements or sue based on an alleged breach. See Caravella v. City of New York, 79 Fed. Appx. 452, 453 (2d Cir. N.Y. 2003) ("Plaintiff also has no individual standing to bring a breach of contract claim as he was not a party to the construction contract"); R&B Realty Group v. Heiser, 322 F. Supp. 2d 206, 210 (D. Conn.

---

[12] Furthermore, during the few months between the termination of the Builder's Agreement and the date Laser Performance, LLC started using new Builders Plaques without the phrase "designed by Bruce Kirby," Laser Performance, LLC did not ship any Lasers into Connecticut.   **¶ 5 Crane Declaration.** Thus, even if one was to assume the use of the phrase during that time would amount to misappropriation, no such acts of misappropriation were committed.

[13] More specifically, the transfer included "all intellectual property rights owned by [Bruce Kirby and Bruce Kirby Inc.] and "rights under agreements entered into between [Bruce Kirby and Bruce Kirby Inc.] and third parties relating to the Kirby Sailboat." **See Intellectual Property Purchase and License Agreement, Ex. 7, Allentuch Declaration).**

2004).  Plaintiffs suggest that a subsequent agreement they entered into with Global Sailing in September of 2011 "unwound" the 2008 Agreement.  Plaintiffs will likely attempt to render the contracts ambiguous by resorting to extrinsic evidence in the form of various emails and other communications.  This is improper.  A simple review of these two agreements demonstrates that they are clear, unambiguous contracts which stand on their own and the 2011 Agreement does not transfer back the rights of the Builder Agreements.  The 2011 Agreement is merely an attempt by Global Sailing to mitigate the effects of a deal with which it is no longer satisfied.  Plaintiffs have not been parties since 2008 to the Builder Agreements and accordingly have no standing to sue based on an alleged breach of those agreements.

The threshold question in a contract dispute is whether the language of the contract is ambiguous.  When interpreting a contract under New York law,[14] "words and phrases should be given their plain meaning, and the contract should be construed so as to give full meaning and effect to all of its provisions."  LaSalle Bank Nat'l Ass'n v. Nomura Asset Capital Corp., 424 F.3d 195, 206 (2d Cir. 2005); see also Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat'l Ass'n,  2012 U.S. Dist. LEXIS 65375, 3 (E.D.N.Y. May 9, 2012) ("[W]here the language of [a contract] is unambiguous on its face, it must be enforced according to the plain meaning of its terms" in order to give effect to the parties' intent).   "Only when provisions are ambiguous may courts look to extrinsic factors . . . to interpret the language in question."  Sciascia v. Rochdale Vill., Inc., 851 F. Supp. 2d 460 (E.D.N.Y. 2012)

The 2008 agreement clearly provides for the transfer of rights under the Builder Agreements.  More specifically, the agreement states all "rights under agreements entered into between [Bruce Kirby and Bruce Kirby, Inc.] and third parties relating to the Kirby Sailboat"

---

[14] Both the 2008 agreement and the 2011 agreement have New York choice of law provisions.

shall be transferred to Global Sailing.  Furthermore, section 6.7 of the 2008 agreement, entitled

Entire Agreement and Modification, reads as follows:

> This Agreement supersedes all prior agreements between the
> parties with respect to its subject matter and constitutes a complete
> and exclusive statement of the terms of the agreement between the
> parties with respect to its subject matter.  This Agreement may not
> be amended except by a written agreement executed by the party to
> be charged with the amendment.

**§ 6.7 Intellectual Property Purchase and License Agreement (Ex. 7, Allentuch Declaration).**

No amendment has been entered into between Plaintiffs and Global Sailing.

Furthermore, plaintiffs repeatedly confirmed that the 2008 Agreement included their

rights under the 1983 and 1989 Builders Agreement.  Plaintiffs told LaserPerformance and

Quarter Moon that all future royalty payments should be made to Global Sailing.  **1/19/09 Letter**

**to LaserPerformance (BKI 5224); 1/19/09 Letter to Quarter Moon (BKI 5222) (Ex. 8,**

**Allentuch Declaration).**  Likewise, on or about January 19, 2009, Global Sailing informed

LaserPerformance and Quarter Moon that "Global Sailing Limited acquired all rights to the

Laser sailboat from Kirby Inc.  All extant agreements with Kirby Inc., including rights and

obligations have been assigned to Global Sailing."  **1/19/09 Letter to LaserPerformance (BKI**

**5224); 1/19/09 Letter to Quarter Moon (BKI 5222) (Ex. 8, Allentuch Declaration).**  The

letters further directed that all royalty fees pursuant to the Builder Agreements should be paid to

Global Sailing.  **1/19/09 Letter to LaserPerformance (BKI 5224); 1/19/09 Letter to Quarter**

**Moon (BKI 5222) (Ex. 8, Allentuch Declaration).**  Indeed, the sale of the rights from Plaintiffs

to Global Sailing was common knowledge amongst all relevant parties.  On March 31, 2010,

ILCA circulated an email seeking formal approval to replace Bruce Kirby's name in the

Construction Manual with Global Sailing.  **BKI 5427-5428 (Ex. 9, Allentuch Declaration)**.  On

February 17, 2011, Plaintiffs wrote a letter to LaserPerformance indicating that

LaserPerformance made a royalty payment to Mr. Kirby but that this was improper since plaintiffs assigned their rights to Global Sailing approximately two years earlier. **BKI 5670. (Ex. 15, Allentuch Declaration).** The letter further stated that "[y]ou have made payments to Global Sailing consistently since the time of the assignment and we request that you continue to do so under the terms of the Agreement." **BKI 5670. (Ex. 15 Allentuch Declaration)** Global Sailing was accepting royalty payments for over three years. **¶ 1 Crane Declaration.** Plaintiffs were returning royalty payments and directing that future payments be made to Global Sailing.

Then in September of 2011, plaintiffs and Global Sailing entered into the "Agreement Relating to Kirby Sailboat." **BKI 6651-6661, (Ex. 14, Allentuch Declaration).** The 2011 Agreement between Plaintiffs and Global Sailing clearly delineates what the parties agreed to. A transfer *back* of the rights under the Builder Agreements is not included. There is a "background" section of the agreement which contemplates that certain terms of the 2008 agreement now appear less favorable to Global Sailing; however, recitals of that nature are not binding obligations. See PGA Mech. Contrs., Inc. v GPNZ Realty Co., LLC, 37 Misc. 3d 1210(A) (N.Y. Sup. Ct. 2012) ("recitals in a contract, such as 'whereas' clauses, are merely explanations of the circumstances surrounding the execution of the contract, and are not binding obligations unless referred to in the operative provisions of the contract"). Global Sailing did not "sell back" everything it had obtained in the 2008 sale. Nor did Plaintiffs and Global Sailing merely cancel the 2008 sale. Indeed, Plaintiffs were paid $2.6 million by Global Sailing in the 2008 sale whereas Plaintiffs paid Global Sailing $1 million in the 2011 sale. **p. 97 Kirby Declaration (Ex. 2, Allentuch Declaration); § 1.1, Agreement Relating to Kirby Sailboat BKI 6651-6661. (Ex. 14, Allentuch Declaration).** That transaction does not restore the "status quo." Furthermore, a comparison of the two agreements demonstrates the vast difference in the

substance and depth of the rights that are discussed.  The 2011 Agreement focuses almost

exclusively on payment terms for various royalties and how they will be dispersed between the

parties to the agreement.  **BKI 6651-6661 (Ex. 14, Allentuch Declaration).**  At no point do the

terms of the agreement contemplate the assignment or reassignment of rights under any of the

contracts relating to the Kirby Sailboat.

## VII.   The Fraudulent Inducement Cause of Action Does not State a Claim Against Laser Performance, LLC

Count Seven of the Complaint is entitled "Inducement to Default the Builder

Agreements."  **<u>See</u> Complaint, Count Seven**.  The Count does not allege that Quarter Moon or

Laser Performance did anything wrong.  The Count focuses solely on the allegedly improper

behavior of non-parties and former defendants.  Indeed, when asked, Mr. Kirby himself could

not explain what Count Seven alleges Laser Performance or Quarter Moon did wrong.  **p. 89-91,**

**(Ex. 2, Allentuch Declaration).**  Instead, he merely stated "[w]ell they build boats without my

name on them."  **p. 90 (Ex. 2, Allentuch Declaration).**  Accordingly, summary judgment is

appropriate as to Count Seven of the Complaint.

## CONCLUSION

For the foregoing reasons, Quarter Moon and Laser Performance respectfully request that

this Court grant their Summary Judgment Motion on its entirety.

THE DEFENDANTS,
LASERPERFORMANCE (EUROPE) LIMITED
QUARTER MOON, INCORPORATED

/s/  Simon I. Allentuch
Simon I. Allentuch, Esq. (ct21094)
Corey S. Fitzgerald, Esq. (ct29479)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT  06510
Tel: (203) 821-2000
Fax:  (203)821-2009
Sallentuch@npmlaw.com

## CERTIFICATION

I hereby certify that on January 20, 2015, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.


_____/s/Simon I. Allentuch_____
Simon I. Allentuch
NEUBERT, PEPE & MONTEITH, P.C.