# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC., and<br>BRUCE KIRBY<br><br>    Plaintiffs,<br><br>      vs.<br><br>LASERPERFORMANCE (EUROPE) LIMITED,<br>QUARTER MOON, INCORPORATED,<br>KARAYA (JERSEY) LIMITED,<br>VELUM LIMITED ITM SA (ANTIGUA AND<br>BARBUDA),<br>INTERNATIONAL SAILING FEDERATION<br>LIMITED,<br>INTERNATIONAL LASER CLASS<br>ASSOCIATION, and<br>FARZAD RASTEGAR<br><br>    Defendants. | Civil Action No. 3:13-cv-00297-JAM<br><br>REDACTED |

| |
|---|
| LASERPERFORMANCE (EUROPE)<br>    LIMITED, and<br>QUARTER MOON, INCORPORATED,<br><br>    Defendants-Counterclaim Plaintiffs,<br><br>      vs.<br><br>BRUCE KIRBY, INC., and<br>BRUCE KIRBY,<br><br>    Plaintiffs-Counterclaim Defendants,<br><br>      and<br><br>GLOBAL SAILING LIMITED, and<br>PERFORMANCE SAILCRAFT PTY. LTD.,<br><br>    Additional Counterclaim Defendants. |

## PLAINTIFFS' OPPOSITION TO ILCA'S MOTION TO DISMISS

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................1

II.   BACKGROUND ................................................................................................3

III.  THE COURT SHOULD DENY ILCA'S MOTION TO DISMISS
      BECAUSE ILCA FORFEITED ITS RIGHT TO CHALLENGE
      PERSONAL JURISDICTION ...........................................................................4

IV.   THE COURT HAS PERSONAL JURISDICTION OVER ILCA ...........................6

      A.    Legal Standard. ..........................................................................................6

      B.    Connecticut's Long Arm Statute Confers Jurisdiction Over ILCA..............7

            1.    ILCA Transacts Business in Connecticut .........................................7

            2.    ILCA Has Committed Tortious Acts in Connecticut........................12

            3.    Jurisdiction Over ILCA Does Not Violate Due Process...................14

V.    KIRBY HAS ASSERTED CLAIMS AGAINST ILCA UPON
      WHICH THIS COURT CAN GRANT RELIEF......................................................14

      A.    Legal Standard ..........................................................................................14

      B.    The Court Should Sustain Claims I-IV, VII Against ILCA...........................15

            1.    Claims I and II State Claims for Trademark Counterfeiting
                  and Infringement............................................................................15

            2.    Claim III States a CUTPA Claim Against ILCA..............................15

            3.    Claim IV States a Misappropriation of Rights of
                  Publicity Claim Against ILCA.........................................................17

            4.    Claim VII States a Tortious Interference Claim Against ILCA ........18

VI.   KIRBY'S CLAIMS SHOULD NOT BE DISMISSED WITH PREJUDICE ...........19

VII.  CONCLUSION...................................................................................................20

# TABLE OF AUTHORITIES

<u>Cases</u>

*AEP Energy Services Gas Holding Co. v. Bank of Am.*
    626 F. 3d 699 (2d. Cir. 2010)....................................................................19

*Amerbelle Corp. v. Hommel*
    272 F. Supp. 2d 189 (D. Conn. 2003)......................................................6

*Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*
    480 U.S. 102 (1987).................................................................................14

*Bell Atlantic Corp. v. Twombly*
    550 U.S. 544 (2007).................................................................................15

*Blake v. Levy*
    191 Conn. 257 (1983) .............................................................................16

*Brass v. American Film Technologies, Inc.*
    987 F. 2d 142 (2d Cir. 1993)..................................................................12

*City of New York v. Mickalis Pawn Shop, LLC*
    645 F.3d 114 (2d. Cir. 2011)....................................................................3

*Conn. Cmty. Bank v. Bank of Greenwich*
    2007 WL 1306547 (D. Conn. May 3, 2007).........................................17

*Cont'l Bank, N.A. v. Meyer*
    10 F.3d 1293 (7th Cir.1993) .................................................................4,5

*Dial Corp. v. Manghnani Investment Corp.*
    659 F. Supp. 1230 (D. Conn. 1987)......................................................17

*Distefano v. Carozzi N. Am., Inc.*
    286 F.3d 81 (2d Cir. 2001).......................................................................3

*Ensign-Bickford Co. v. ICI Explosives USA Inc.*
    817 F. Supp. 1018 (D. Conn. 1993).......................................................14

*Foman v. Davis*
    371 U.S. 178 (1962)................................................................................19

*Forschner Group, Inc. v. New Trends, Vrolixs J.-C.,*
　　No. B–89–531(JAC), 1994 WL 708129 (D. Conn. August 10, 1994) ....................12

*Gurary v. Winehouse*
　　235 F. 3d 792 (2d Cir. 2000)...................................................................................19

*Hamilton v. Atlas Turner, Inc.*
　　197 F.3d 58 (2d Cir.1999), *cert. denied*, 530 U.S. 1244 (2000)...............................4,5

*Helicopteros Nacionales de Colombia, S.A. v. Hall*
　　466 U.S. 408 (1984).................................................................................................14

*Indiaweekly.com, LLC. v. Netaflix.com*
　　No. 3:07–cv–194 (VLB), 2008 WL 687268 (D. Conn. Mar. 10, 2008)...................11

*Int'l Shoe Co. v. Washington*
　　326 U.S. 310 (1945).................................................................................................14

*Inset Sys., Inc. v. Instruction Set Inc.*
　　937 F. Supp. 161 (D. Conn. 1996)..........................................................................12

*Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*
　　456 U.S. 694 (1982)...................................................................................................4

*Lis v. Delvecchio*
　　No. 3:11CV1507(AWT), 2012 WL 3309384 (D. Conn. Aug.13, 2012)..................11

*Marine Midland Bank, N.A., v. Miller*
　　664 F.2d 899 (2d Cir. 1981).......................................................................................3

*Marlin Firearms Co. v. Wild West Guns, LLC*
　　No. 3:09-CV-921, 2013 WL 2405510 (D. Conn. May 21, 2013)..............................7

*Mashantucket Pequot Tribe v. Redican*
　　309 F. Supp. 2d 309 (D. Conn. 2004).....................................................................12

*Mattel, Inc. v. Barbie-Club.com*
　　310 F.3d 293 (2d Cir. 2002).......................................................................................4

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.*
　　84 F.3d 560 (2d Cir. 1996).........................................................................................7

*Nabisco Brands, Inc. v. Kaye*
　　760 F. Supp. 25 (D. Conn. 1991).............................................................................17

*National Football League v. Miller*
  2000 WL 335566 (S.D.N.Y. Mar. 30, 2000) ..........................................................12

*New York v. Green*
  420 F.3d 99 (2d Cir. 2005)......................................................................................19

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*
  595 F. 3d 86 (2d Cir. 2010)....................................................................................15

*Pangburn v. Culbertson*
  200 F. 3d 65 (2d Cir. 1999).....................................................................................19

*Peterson v. Highland Music, Inc.*
  140 F.3d 1313 (9th Cir. 1998), *cert. denied*, 525 U.S. 983 (1998)...........................4,5

*Rice v. Nova Biomed. Corp.*,
  38 F.3d 909 (7th Cir.1994), *cert. denied*, 514 U.S. 1111 (1995).............................5

*Robinson v. Overseas Military Sales Corp.*
  21 F.3d 502 (2d Cir. 1994)........................................................................................7

*Sportsmen's Boating Corporation v. Hensley*
  192 Conn. 747 (1984) .............................................................................................16

*Suisman, Shapiro, Wool, Brennan, Gray, & Greenberg, P.C. v. Suisman*
  2006 WL 387289 (D. Conn. Feb. 15, 2006) ...........................................................17

*Timex Corp. v. Stoller*
  961 F. Supp. 374 (D. Conn. 1997)...........................................................................17

*Tucker v. American Intern. Group, Inc.*
  745 F. Supp. 2d 53 (D. Conn. 2010)........................................................................14

*Whelen Engineering v. Tomar Electronics*
  672 F. Supp. 659 (D. Conn. 1987))..........................................................................12

*Whitaker v. American Telecasting, Inc.*
  261 F.3d 196 (2d Cir. 2001)......................................................................................7

*Williams v. Citigroup Inc.*
  659 F. 3d 208 (2d Cir. 2011).....................................................................................19

*Yeldell v. Tutt*
  913 F.2d 533 (8th Cir. 1990) .....................................................................................4

Statutes & Rules

15 U.S.C. §1114..................................................................................................................3

Conn. Gen. Stat. § 33-929...................................................................................................7

Conn. Gen. Stat. § 52-59b...................................................................................................7

Fed. R. Civ. P. 12(h) ..........................................................................................................4

Fed. R. Civ. P. 15(a)(2).....................................................................................................17

Plaintiffs Bruce Kirby and Bruce Kirby, Inc. (individually and collectively "Plaintiff" or "Kirby") submit this Opposition to Defendant International Laser Class Association's ("ILCA" or "Defendant") Motion to Dismiss. Dkt. 174.

## I.   INTRODUCTION.

ILCA forfeited its rights to challenge personal jurisdiction by failing to pursue its defense since it filed its answer in July of 2013. ILCA could have asserted its defense at any time during the past two years, but failed to do so, manifesting its intent to submit to the court's jurisdiction. In fact, ILCA represented to Plaintiff on at least five separate occasions that it did not anticipate filing a motion challenging personal jurisdiction. ILCA sat on the sideline while Plaintiff engaged in substantial and lengthy motion practice with defendants Velum, Karaya, and ISAF concerning personal jurisdiction. In March of 2014, after the Court dismissed those parties, ILCA failed to raise its objection, and, instead, continued to actively participate in the case. Counsel for ILCA has attended five depositions. ILCA also attended the two-day in-person mediation in June of 2014, and provided substantive answers to discovery requests. As a result of this course of conduct, ILCA has forfeited its right to challenge personal jurisdiction at this late date.

To the extent the Court finds that ILCA did not forfeit its defense, personal jurisdiction exists based on ILCA's many purposeful and substantial acts directed toward and occurring in Connecticut. ILCA has infringed Kirby's rights by selling unauthorized and infringing plaques to LaserPerformance. ILCA's correspondence regarding such unauthorized sales in the U.S. is with LaserPerformance's headquarters in Norwalk, Connecticut, as confirmed by ILCA's document production. LaserPerformance sends requests to purchase plaques to ILCA through emails having following standard signature:

**LaserPerformance Group**
25 Van Zant Street
Norwalk, CT 06855

ILCA decides whether to accept the purchase order sent from the Connecticut address, and sends subsequent correspondence regarding the order to the Connecticut office. LaserPerformance's Connecticut office instructs a transfer of payment to ILCA's bank in England. As a result of this purposeful and specific conduct directed toward and in Connecticut, ILCA has availed itself of the privilege of conducting business in this state and is therefore subject to personal jurisdiction in our courts.

The Court additionally has personal jurisdiction over ILCA because the plaques sold by ILCA are affixed to boats that ILCA knows are sold in Connecticut. The ILCA plaque confirms that a boat is manufactured in accordance the Kirby sailboat[1] design through a compliance program promulgated and administered by ILCA. ILCA's endorsement of the boat adds substantial commercial value and allows LaserPerformance to charge a premium over unendorsed boats because ILCA's endorsement is a prerequisite for participation in class events. ILCA regularly inspects the factory, tooling, and manufactured boats to ensure they meet its strictly defined standards. ILCA regularly organizes sailing events in Connecticut and attends these events to ensure that boats participating in the events are in accordance with defined standards. Defending a lawsuit in Connecticut should come as no surprise to ILCA given its active role in endorsing and regulating Kirby sailboats sold and raced in Connecticut.

Plaintiff's complaint also alleges that ILCA tortiously interfered with Kirby's contracts with the builders based on ILCA's activity in Connecticut and its activity purposely directed toward Connecticut. In October of 2010, ILCA principles traveled to Connecticut at

---

[1] In accordance with the terms and language of the contracts asserted in this case, Plaintiff uses the term "Kirby sailboat." Defendants use the term Laser.

LaserPerformance's expense for a two-day meeting at LaserPerformance headquarters in Norwalk, Connecticut.  At that meeting, ILCA and LaserPerformance agreed on a plan to eliminate Bruce Kirby from the Kirby sailboat business and to render his builder agreements worthless. The direct result of this scheme hatched at the Norwalk meeting enabled LaserPerformance to continue building plaqued boats without authorization of Bruce Kirby.

The Court should likewise deny ILCA's motion to dismiss for failure to state a claim because Kirby has asserted actionable claims against ILCA for trademark infringement, unfair competition, misappropriation of rights of publicity, and tortious interference with contractual relations. ILCA improperly attempts to transform Kirby's pleading burden to a substantive determination of the claims.  In the determination of both 12(b)(2) and 12(b)(6) motions, the court construes the pleadings and affidavits in the light most favorable Kirby and resolves all doubts in Kirby's favor. Accordingly, the Court should deny ILCA's motion to dismiss, and defer substantive determination of claims to ILCA's motion for summary judgment.[2]

## II.    BACKGROUND.

Kirby seeks to hold ILCA liable for: (1) trademark counterfeiting, arising under the Lanham Act, 15 U.S.C. §1114; (2) trademark infringement, unfair competition, and false designation of origin arising under the Lanham Act, 15 U.S.C. §1114; (3) unfair trade practices under the Connecticut Unfair Trade Practices Act ("CUTPA"); (4) misappropriation of Bruce Kirby's publicity rights; and (5) inducement to default the 1983 and 1989 Builder Agreements. Kirby's claims against ILCA and the facts supporting these claims are set forth in detail in Kirby's First Amended Complaint. *See* Dkt. 23. Kirby will submit a comprehensive statement of

---

[2] At a minimum, Kirby requests that the Court concurrently consider Kirby's opposition to ILCA's Motion to Dismiss and Kirby's forthcoming opposition to ILCA's Motion for Summary Judgment.

acts in support of its forthcoming opposition to ILCA's motion for summary judgment. That statement of facts is incorporated for reference. Specific facts relevant to personal jurisdiction are additionally cited below.

## III.   THE COURT SHOULD DENY ILCA'S MOTION TO DISMISS BECAUSE ILCA FORFEITED ITS RIGHT TO CHALLENGE PERSONAL JURISDICTION.

ILCA forfeited its rights to challenge personal jurisdiction because it failed to do anything to pursue the defense since filing its Answer in July of 2013. *See* Dkt. 51 at 18. A defendant that asserts a personal jurisdictional defense in its answer, but fails to actively litigate that defense until after the close of discovery, forfeits its defense. *Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 60-62 (2d Cir.1999), *cert. denied*, 530 U.S. 1244 (2000); *accord Cont'l Bank, N.A. v. Meyer*, 10 F.3d 1293, 1297 (7th Cir.1993); *Yeldell v. Tutt*, 913 F.2d 533, 538-39 (8th Cir. 1990).

Personal jurisdiction, unlike subject-matter jurisdiction, can be forfeited. *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d. Cir. 2011) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982)). In determining whether forfeiture of objections to personal jurisdiction has occurred, a court considers all relevant circumstances. *Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 307 (2d Cir. 2002) (quoting *Hamilton*, 197 F.3d at 61). It is well established that a party waives its defense of lack of personal jurisdiction by failing to timely raise the defense in its initial responsive pleading. *See* Fed. R. Civ. P. 12(h). But there are "various [additional] reasons a defendant may be estopped from raising the issue." *Ins. Corp. of Ireland*, 456 U.S. at 704. A court will obtain, through implied consent, personal jurisdiction over a defendant if "[t]he actions of the defendant [during the litigation] . . . amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Id.* at 704-05; *see also Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir.

1998) ("Most defenses, including the defense of lack of personal jurisdiction, may be waived as a result of the course of conduct pursued by a party during litigation."), *cert. denied*, 525 U.S. 983 (1998); *see also Rice v. Nova Biomed. Corp.*, 38 F.3d 909, 914-15 (7th Cir.1994), *cert. denied*, 514 U.S. 1111 (1995); Peterson, 140 F.3d at 1318 (describing this strategy as "sandbagging").

In *Hamilton,* the Second Circuit held that a defendant forfeited its lack of personal jurisdiction defense when the defendant's answer asserted the court's lack of personal jurisdiction, but the defendant did not move to dismiss on those grounds until four years later. *See Hamilton*, 197 F.3d at 62. The court found that "[c]onsiderable pretrial activity," including discovery and settlement conferences, had occurred since the defendant filed its answer and that the defendant had "several clear opportunities" to make its motion earlier. *Id.* at 61-62.

In *Continental Bank*, a decision positively cited by the Second Circuit in *Mickalis Pawn Shop*, the Seventh Circuit held that while the defendant literally complied with Rule 12(h), it waived its objection to personal jurisdiction because it participated in litigation on the merits for over two-and-a-half years without actively contesting personal jurisdiction. *Cont'l Bank*, 10 F.3d at 1297 ("While the defendants literally complied with Rule 12(h), they did not comply with the spirit of the rule, which is to expedite and simplify proceedings in the Federal Courts.") (internal citations and quotations omitted). The Court reasoned that the defendant's delay in urging this threshold issue manifests an intent to submit to the court's jurisdiction. *Id.*

In the present case, ILCA could have asserted its defense on many occasions during the past two years, but failed to do so, manifesting its intent to submit to the Court's jurisdiction. ILCA sat on the sideline while Plaintiff engaged in substantial and lengthy motion practice with defendants Velum, Karaya, and ISAF concerning personal jurisdiction. In March 2014, after the

Court dismissed those parties based on a lack of personal jurisdiction, ILCA failed to pursue its objection to jurisdiction. Instead, ILCA continued to participate in discovery. Counsel for ILCA attended five depositions and a two-day in-person mediation in June of 2014, and provided substantive responses to discovery requests.

In fact, ILCA represented to Plaintiff on at least five occasions that it did not intend to challenge personal jurisdiction. Pursuant to the Court's scheduling order the parties were required to submit quarterly joint status reports including an identification of any anticipated motions. *See* Dkt. 65, ¶ 18.  Despite the fact that the parties submitted five such reports, ILCA failed to inform the Court (or Plaintiff) even once that it anticipated filing a motion on personal jurisdiction. *See* Dkts. 77, 95, 115, 135, 155.

 Moreover, if ILCA is permitted to pursue its personal jurisdiction defense at this late date, Plaintiff Bruce Kirby will be irreparably harmed. Although discovery in this matter confirms that personal jurisdiction is proper, Plaintiff is precluded from amending its complaint. Moreover, ILCA has played a central role in the infringement of Kirby's rights. ILCA's decision to repudiate its contractual relationship with Kirby, its interference with Kirby's rights under the Builder Agreements, and its infringement of Kirby's trademarks is material to Plaintiff's case. Mr. Kirby, who is in his mid-eighties, has been pursuing parties for nearly five years.  He has invested substantial resources in this matter, and he should be entitled to pursue ILCA along with the LaserPerformance builders in the same action, especially given ILCA's failure to bring its jurisdictional motion until after the close of discovery.

## IV.    THE COURT HAS PERSONAL JURISDICTION OVER ILCA.

### A.    Legal Standard.

When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant. *See Amerbelle*

*Corp. v. Hommel*, 272 F. Supp. 2d 189, 192 (D. Conn. 2003). When considering a motion to dismiss, the court construes the pleadings and affidavits in the light most favorable to the plaintiff and resolves all doubts in the plaintiff's favor. *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001); *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994) (the court "construes jurisdictional allegations liberally and takes as true uncontroverted factual allegations") (internal citations omitted). A plaintiff can make this showing through his "own affidavits and supporting materials" (*Marine Midland Bank, N.A., v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)), containing "an averment of facts that, if credited . . . would suffice to establish jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996). ILCA's motion should be denied given these governing principles.

**B.     Connecticut's Long Arm Statute Confers Jurisdiction Over ILCA.**

Connecticut has two long arm statutes: Conn. Gen. Stat. § 52-59b, conferring jurisdiction over individuals, partnerships, and voluntary associations, and Conn. Gen. Stat. § 33-929, conferring jurisdiction over foreign corporations. Conn. Gen. Stat. § 52-59b applies here because ILCA was a voluntary association at the time it committed infringing and tortious acts. § 52-59b provides in pertinent part:

> (a) As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nonresident individual . . .who in or through an agent:
>
> > (1) Transacts any business in the state;
> >
> > (2) commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act;
> >
> > (3) commits a tortious act outside the state causing injury to person or property within the state . . . if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services

7

rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce;

    1.    <u>ILCA Transacts Business in Connecticut.</u>

ILCA transacts business in Connecticut by selling plaques to LaserPerformance in Norwalk, Connecticut. *See generally* Ex. A.  The sale of ILCA plaques, both and old and new, and the subsequent use in direct association with Kirby sailboats underpin all of Plaintiff's claims against ILCA. The ILCA Plaque is an essential element of the Kirby Sailboat because it informs the purchasing public, competitors, and the relevant governing bodies that a boat complies with ILCA's fundamental rule, namely that it is manufactured by a licensed builder in accordance with the ILCA's strict guidelines. Ex. B, at 31 (Class Rules, One Design, Part One); FA Compl. ¶ 72. As ILCA explained in a letter dated November 12, 2010 addressed to LaserPerformance's directors and sent by FedEx to its Norwalk, Connecticut address:



These requirements stem from a series of agreements executed between the relevant parties. Ex. D, Head Agreement; Ex. E, ISAF Agreement; Ex. F, 1992 Agreement; Ex. G, 2005 Agreement. ILCA is a party to the ISAF Agreement, the 1992 Agreement, and the 2005 Agreement. These requirements are enforced through builder agreements, two of which Kirby is

asserting against LaserPerformance in this action. FA Compl. ¶ 23, 1983 Builder Agreement;

1989 Builder Agreement, FA Compl. ¶ 34.

An ILCA Plaque from a Kirby Sailboat being offered for sale in Connecticut is shown

below:



FA Compl. ¶ 72.

ILCA began issuing plaques in 2013 without the Kirby trademark pursuant to an illegal

rule change made by ILCA. FA Compl. ¶¶ 80-85. As discussed in detail below, ILCA's illegal

rule change and ILCA's subsequent issuance of new plaques is a basis for Kirby's claims that

ILCA tortiously interfered with Kirby's contractual rights under the Builder Agreements.

ILCA's sale of plaques to builders satisfies the first prong of the long arm statute. First,

ILCA sells the plaques to LaserPerformance's headquarters in Norwalk, Connecticut. The

LaserPerformance group consists of companies all over the world.  This group is run from

LaserPerformance's headquarters in Norwalk, CT.  Norwalk is also the home of Dory Ventures

LLC, Farzad Rastegar's consulting company that provides nearly all executive services to the companies of the LaserPerformance Group.

ILCA's correspondence regarding the unauthorized sales of plaques is through LaserPerformance's headquarters in Norwalk, Connecticut. Examples of such correspondence are provided in Exhibit A. The Connecticut office sends requests to purchase plaques to ILCA through emails with the following standard signature:

**LaserPerformance Group**
25 Van Zant Street
Norwalk, CT 06855

*Id*.

ILCA decides whether to accept the purchase order sent from the Connecticut address, and all subsequent correspondence regarding the order is made through the Connecticut office. *Id*. If ILCA accepts the request, LaserPerformance's Connecticut office instructs transfer of payment to ILCA. *Id*. As a result of this purposeful and specific conduct directed toward and in Connecticut, ILCA has availed itself of the privilege of conducting business in this state and is therefore subject to personal jurisdiction in our courts.

After the infringing plaques are sold to LaserPerformance's headquarters in Norwalk, Connecticut, they are transferred to Rhode Island and affixed to Kirby boats, a substantial number of which are sold in Connecticut with the infringing plaques. There are at least three Kirby Sailboat dealers in Connecticut that sell and have sold Kirby Sailboats having ILCA Plaques. Dkt. 72-3, Laser Performance Dealer Locator. During at least the past ten years, these, and other dealers, have continuously marketed and sold plaqued Kirby Sailboats in Connecticut. ILCA receives a royalty for each plaqued Kirby Sailboat sold in Connecticut. Exs. E-G. The ILCA plaque confirms that a boat is manufactured in accordance with the Kirby sailboat design through a compliance program promulgated and administered by ILCA. ILCA's endorsement of

10

the boat adds substantial commercial value and allows LaserPerformance to charge a premium over unendorsed boats because ILCA's endorsement is a prerequisite for participation in class events. Defending a lawsuit in Connecticut should come as no surprise to ILCA given its active role in endorsing and regulating Kirby sailboats sold and raced in Connecticut.

In addition, ILCA has a long contractual relationship with Bruce Kirby, the inventor of the Kirby Sailboat and a longtime resident of Rowayton, Connecticut. Mr. Kirby designed the sailboat in Connecticut in the 1970s, and it has been sold in Connecticut ever since. Under the 1983 Head Agreement, Kirby is responsible for issuing and assigning hull numbers. Ex. D, ¶ 8.1. Kirby designated ILCA as its agent to issue and assign such numbers. Ex. F, Recital E.

In addition to contracting with a Connecticut resident, ILCA transacts business in Connecticut by operating two interactive websites publically accessible to Connecticut residents via www.laserinternational.org and www.laser.org, through which ILCA publishes information regarding races in Connecticut among other things. ILCA's website, for example, markets and reports on ILCA sailing events that are held in Connecticut. ILCA appoints a person to attend these races to ensure that the boats comply with the Laser design specification. *See* Ex. B, ILCA By-Law 4: District Measures.

Courts in this District have consistently held that operation of an interactive website, by itself, is sufficient basis to confer personal jurisdiction over a defendant. *See e.g., Lis v. Del Vecchio*, No. 3:11CV01057 (AWT), 2012 WL 3309384, at *2-3 (August 13, 2012 D. Conn.) (holding that operation of a website in Nevada from which Connecticut residents could query hotel availability in Nevada and purchases tickets to a night club in Nevada was sufficient to confer personal jurisdiction in a trademark infringement action) (citing *Indiaweekly.com, LLC. v. Netaflix.com,* Civil Action No. 3:07–cv–194 (VLB), 2008 WL 687268, at *2 (D. Conn. Mar. 10,

11

2008)); *see also Mashantucket Pequot Tribe v. Redican*, 309 F. Supp. 2d 309, 317 (D. Conn.

2004) (quoting *National Football League v. Miller*, 2000 WL 335566 (S.D.N.Y. Mar. 30, 2000)

("[O]ne . . . who uses a website to make sales to customers in a distant state can thereby become

subject to the jurisdiction of that state's courts.")); *Inset Sys., Inc. v. Instruction Set Inc.*, 937 F.

Supp. 161, 163-65 (D. Conn. 1996) (holding advertising via internet web site is solicitation of

sufficient repetitive nature to confer personal jurisdiction).

## 2.     ILCA Has Committed Tortious Acts in Connecticut.

ILCA's issuance of plaques for boats sold in Connecticut also satisfies the second prong

of the Connecticut long arm statute because it constitutes tortious conduct in Connecticut.

Specifically, Kirby alleges that ILCA's issuance of the plaques constitutes trademark

counterfeiting (Count I), trademark infringement and false designation of origin (Count II),

unfair trade practices (Count III), misappropriation of rights of publicity (Count IV), and tortious

interference with contractual rights (Count VII).[3] These claims have been recognized as

constituting a tortious act within the meaning of the Connecticut long arm statute. *Forschner

Group, Inc. v. New Trends, Vrolixs J.-C.*, No. B–89–531(JAC), 1994 WL 708129, *3 (D.Conn.

Aug. 10, 1994) (citing *Whelen Engineering v. Tomar Electronics*, 672 F. Supp. 659, 663 (D.

Conn. 1987)) ("There is no dispute that the advertisement constitutes trademark infringement in

Connecticut, nor that trademark infringement constitutes a tortious act within the meaning of

Connecticut's long-arm statute.").

ILCA's directors traveled to Norwalk, Connecticut for a two-day meeting with

LaserPerformance principles Farzad Rastegar and Bill Crane.  At the meeting, the parties

conspired to rewrite the Laser rules—in violation of the Head Agreement and the ISAF

Agreement—by eliminating the requirement that approved builders have a contract with Bruce

---

[3] Counts V and VI are not asserted against ILCA.

Kirby, violating Kirby's rights under the Head Agreement, the ISAF Agreement, the 2005

Agreement, the 1983 Builder Agreement, and the 1989 Builder Agreement. This tortious

conduct, including the illegal rule change, is a basis for Plaintiff's tortious interference claim

against ILCA.  For example, Claim VII against ILCA alleges:

> ILCA purports to have lawfully changed the ILCA rules to permit ILCA to
> appoint non-licensed builders of the Kirby Sailboat.  ISAF purports to have
> lawfully sanctioned and approved the ILCA Rule Change.  On information and
> belief, neither of these actions was lawfully executed, but they created a false
> impression in the sailing community that the unauthorized and counterfeit Kirby
> Sailboats are officially sanctioned, authentic, legitimate, and comply with the
> ISAF Agreement and the Construction Manual.  As a result, the terminated
> builders have been able to continue to manufacture and sell unauthorized Kirby
> Sailboats, in violation of the termination provisions of the 1983 and 1989 Builder
> Agreements.   Therefore, the actions of ISAF and ILCA induced Quarter
> Moon/QM Vanguard and PSE/LP Europe to default on the termination provisions
> of the 1983 and 1989 Builder Agreements.

FA Compl., ¶ 140.

 The tortious activity occurred in

Connecticut because that is where the ILCA and LaserPerformance agreed to the illegal rule

change.  Even if the Court finds the tortious activity occurred outside Connecticut—for example

because the rule change became effective afterward—it still satisfies prong 3 of the long arm

statute because it causes injury to Bruce Kirby, a resident of Connecticut, and ILCA derives

substantial revenue from interstate or international commerce.

3.      Jurisdiction over ILCA Does Not Violate Due Process.

Jurisdiction over ILCA does not violate due process because ILCA purposefully availed itself of Connecticut courts' jurisdiction by intentionally selling plaques for Kirby Sailboats to a company based in Connecticut and knowing they would be sold through dealers in Connecticut. In addition, ILCA traveled to Connecticut and tortiously interfered with a Connecticut resident's contractual rights.

Due process requirements are satisfied when a nonresident defendant has minimum contacts with the state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Specific jurisdiction exists where the suit arises from the defendant's contacts with the forum. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 & n. 8-9 (1984).

As is evident from the section analyzing Connecticut's long arm statute, ILCA has intentionally directed its activities at and in Connecticut. In fact, it is precisely these activities— the issuance of plaques confirming the compliance of Kirby Sailboats sold to residents of the State of Connecticut and the illegal rule change—which form the basis of Kirby's claims against ILCA. *Ensign-Bickford Co. v. ICI Explosives USA Inc.*, 817 F. Supp. 1018, 1029 (D. Conn. 1993) (quoting *Asahi Metal Indus. Co. v. Sup. Ct. of Cal.*, 480 U.S. 102, 117 (1987)) ("as long as a participant in the process is aware that the final product is being marketed in the forum State, the possibility of a lawsuit there cannot come as a surprise"). Specific jurisdiction is satisfied.

## V.      KIRBY HAS ASSERTED CLAIMS AGAINST ILCA UPON WHICH THIS COURT CAN GRANT RELIEF.

### A.      Legal Standard.

On a motion to dismiss pursuant to Rule 12(b)(6), the court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor.

*Tucker v. American Intern. Group, Inc.*, 745 F. Supp. 2d 53, 58 (D. Conn. 2010). In order to survive a motion to dismiss, a complaint must allege a plausible set of facts "sufficient to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Management LLC*, 595 F. 3d 86, 91 (2d Cir. 2010). ILCA has filed a motion for summary judgment on essentially the same grounds as its motion to dismiss for failure to state a claim. *See* Dkt. 183. Plaintiff incorporates its forthcoming Opposition papers by reference.

**B.     The Court Should Sustain Claims I-IV, VII Against ILCA.**

   1.     <u>Claims I and II State Claims for Trademark Counterfeiting and Infringement.</u>

Kirby adequately alleges a claims for federal trademark counterfeiting and federal trademark infringement upon which this Court can grant relief. FA Compl. ¶¶ 86-94. ILCA's argument that Kirby failed to state a claim because ILCA stopped using the Kirby trademark is without merit. ILCA is liable to Kirby for its past infringement regardless of whether ILCA continues to infringe after this suit was initiated.

ILCA alternatively argues that Kirby's claim fails because ILCA does not sell the boats, but merely distributes the plaques.  Contrary to ILCA's assertion, ILCA's role is crucial to the sale of boats.  ILCA sells the plaques to the builders and receives a royalty therefrom.  ILCA inspects the builders' factories and tools to ensure they comply with the strict design guidelines. ILCA can withhold plaques from the builders to the extent they do not comply with the regulations. ILCA receives a royalty for each boat sold. Moreover, the plaque is an essential component of the boat, without which it cannot be used in any ILCA sanctioned event.

2.        Claim III States a CUTPA Claim Against ILCA.

Claim III asserts a state unfair competition claim against ILCA upon which this Court can grant relief. ILCA's continued issuance of plaques to the terminated builders has and continues to tortiously interfere with Kirby's contractual relations with the terminated builders. On numerous occasions, Kirby demanded that ILCA stop issuing plaques to the terminated builders in violation of its post termination contractual rights. ILCA continued to issue plaques to the terminated builders, inducing the terminated builders to further violate their post termination covenants. FA Compl. ¶¶ 136-143. ILCA's tortious interference with the Kirby's contractual rights under the builder agreements is a violation of CUTPA. FA Compl. ¶¶ 108-110; *see Sportsmen's Boating Corporation v. Hensley*, 192 Conn. 747, 757 (1984) ("[I]t is difficult to conceive of a situation where tortious interference would be found but a CUTPA violation would not.").

In addition, ILCA interfered with Kirby's contractual rights under the Builder Agreements by colluding with LaserPerformance to pass the illegal rule change that removed the requirement that builders be authorized by Kirby.  FA Comp. ¶ 140. Prior versions of the class rules defined a builder as "a manufacturer <u>that has a building agreement from Bruce Kirby or Bruce Kirby Inc. to build the Laser</u> and has rights to use a Laser trademark and has been approved as a Laser Builder by each of the International Sailing Federation and the International Laser Class Association." Ex. B at 2, 2008 Laser Class Rules. In April of 2013, ILCA issued new Laser class rules, approved by ISAF, which removed the requirement that an authorized builder have an agreement with Kirby. Ex. K ("A Builder is a manufacturer that has the rights to use a Laser trademark, is manufacturing the hull, equipment, fittings, spars, sails and battens in strict adherence to the Construction Manual, and has been approved as a Laser Builder by each of the

International Sailing Federation and the International Laser Class Association."). ILCA made this rule change without the authorization of Kirby and in violation of the ISAF agreement to which ILCA is a party. Although Kirby has not asserted the ISAF Agreement in this matter, ILCA's willful violation of Kirby's rights under the ISAF agreement constitutes tortious interference with Kirby's contractual rights under the Builder Agreement. FA Compl. ¶ 140.

In addition to tortious interference, ILCA's violations of Kirby's rights under the Lanham Act (Claims I and II) are also a CUTPA violation. *Conn. Cmty. Bank v. Bank of Greenwich*, 2007 WL 1306547 at *3 (D. Conn. May 3, 2007) (citing *Suisman, Shapiro, Wool, Brennan, Gray, & Greenberg, P.C. v. Suisman*, 2006 WL 387289 (D. Conn. Feb. 15, 2006); *Timex Corp. v. Stoller*, 961 F. Supp. 374, 381 (D. Conn. 1997); *Nabisco Brands, Inc. v. Kaye*, 760 F. Supp. 25, 29 (D. Conn. 1991); *Dial Corp. v. Manghnani Investment Corp.*, 659 F. Supp. 1230, 1239 (D. Conn. 1987)).

        3.     <u>Claim IV States a Misappropriation of Rights of Publicity Claim Against ILCA.</u>

Claim IV asserts a misappropriation of publicity rights claim against ILCA, a claim upon which this Court can grant relief based on ILCA's unauthorized use of Bruce Kirby's name on the plaques. FA Compl. ¶¶ 112-119. ILCA does not provide any legal justification to support its argument that the Court should dismiss Kirby's right of publicity claim as being duplicitous of Kirby's trademark infringement claim. The case law relied upon by ILCA is related to a claim for misappropriation of an idea and a claim for copyright infringement, and is unrelated to a claim for rights of publicity. ILCA's infringement of Kirby's trademark and their misappropriation of his publicity rights have separately violated Kirby's rights to his trademark and his rights to his personal name and public image.  These actions properly give rise to two distinct causes of action.  Moreover, similar to the claim for trademark infringement, ILCA is

liable to Kirby for its past misappropriation regardless of whether ILCA continues its

misappropriation after Kirby filed suit. In any event, Kirby's complaint alleges that ILCA

continues to issue the infringing plaques bearing Kirby's name. FA Comp. ¶ 87.

    4.    <u>Claim VII States a Claim for Tortious Interference Claim Against ILCA.</u>

Claim VII asserts a claim for tortious interference against ILCA, a claim upon which this

Court can grant relief based on ILCA's continued issuance of plaques to the terminated builders.

ILCA continues to issue plaques to the terminated builders.  ILCA's issuance of the plaques

facilitates the builders continued breach of the builder agreements.  Without ILCA's actions, the

builders could not continue to build and sell plaqued Kirby Sailboats in violation of the builder

agreements. ILCA's argument that Kirby has failed to allege that ILCA's action was tortious

fails to consider that ILCA had actual knowledge of the contractual rights between Kirby and the

builders, that ILCA is inducing the continued breach of the builder agreements, that it

misrepresented its actions in this regard to Kirby, and that it made the illegal rule change.

ILCA's activity is unquestionably tortious.  *See Blake v. Levy*, 191 Conn. 257, 261 (1983)

("tortious conduct may be satisfied by proof that the defendant was guilty of fraud,

misrepresentation, intimidation or molestation . . . or that the defendant acted maliciously."

Additional bases for ILCA's tortious interference are set forth above in regard to the CUTPA

claim and are incorporated herein by reference.

ILCA also neglects to recognize that the builder agreements include specific provisions

under which the builders agreed to stop manufacturing Kirby Sailboats upon termination of the

agreements for any reason. FA Compl. Ex. 4 ¶ 10.9; Ex. 8 ¶ 10.9. ILCA's continued issuance of

plaques enables the builders to continue selling plaqued Kirby Sailboats in continued violation of

the agreements.

## VI.    KIRBY'S CLAIMS SHOULD NOT BE DISMISSED WITH PREJUDICE.

Although Kirby contends that it has sufficiently set forth claims against ILCA, Kirby respectfully requests that the Court allow it to amend its complaint if it is determined that Kirby did not sufficiently set forth one or more claims. Under the Federal Rules of Civil Procedure, leave to amend should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2) (2013). District courts "ha[ve] broad discretion to decide whether to grant leave to amend." *Gurary v. Winehouse*, 235 F. 3d 792, 801 (2d Cir. 2000); *see also AEP Energy Services Gas Holding Co. v. Bank of Am.*, 626 F. 3d 699, 725 (2d. Cir. 2010) (rule in Second Circuit is to grant leave to amend in the absence of showing by nonmovant of prejudice or bad faith). The standard governing motions to amend is informed by a "strong preference for resolving disputes on the merits." *See Williams v. Citigroup Inc.*, 659 F. 3d 208, 212–13 (2d Cir. 2011) (*citing New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see also Pangburn v. Culbertson*, 200 F. 3d 65, 70 (2d Cir. 1999) (referring to the "relaxed standard" for motion to amend). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits." *Foman v. Davis*, 371 U.S. 178 (1962).

## VII.    CONCLUSION.

For the foregoing reasons, Kirby respectfully requests that the Court deny ILCA's

Motion to Dismiss.

Respectfully submitted,


January 28, 2015                    */s/ Andy I. Corea*
                                    Wesley W. Whitmyer, Jr., ct03509
                                    Andy I. Corea, ct25925
                                    Walter B. Welsh, ct01220
                                    ST. ONGE STEWARD JOHNSTON & REENS LLC
                                    986 Bedford Street
                                    Stamford, Connecticut 06905-5619
                                    Telephone: (203) 324-6155
                                    Facsimile: (203) 327-1096
                                    Email: acorea@ssjr.com; litigation@ssjr.com

                                    ATTORNEYS FOR PLAINTIFFS
                                    BRUCE KIRBY and  BRUCE KIRBY, INC.