UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC. and BRUCE KIRBY, ) <br> ) <br>     Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> LASERPERFORMANCE (EUROPE) ) <br> LIMITED, QUARTER MOON, ) <br> INCORPORATED, KARAYA (JERSEY) ) <br> LIMITED, VERUM LIMITED ITM SA ) <br> (ANTIGUA AND BARBUDA), ) <br> INTERNATIONAL SAILING FEDERATION ) <br> LIMITED, INTERNATIONAL LASER ) <br> CLASS ASSOCIATION, and FARZAD ) <br> RASTEGAR, ) <br> ) <br>     Defendants. ) | CIVIL ACTION NO. 3:13-CV-00297-JAM |

**INTERNATIONAL LASER CLASS ASSOCIATION'S REPLY TO THE
PLAINTIFFS' OPPOSITION TO ILCA'S MOTION FOR SUMMARY JUDGMENT**

Defendant International Laser Class Association ("ILCA") hereby submits this Reply to the Plaintiffs' Opposition to ILCA's Motion for Summary Judgment.

**I.     INTRODUCTION**

The undisputed record confirms that summary judgment should enter in favor of ILCA. Plaintiffs' submissions do not dispute the material facts. Plaintiffs merely add immaterial facts and/or unnecessarily confuse the record. Plaintiffs' opposition memorandum and supporting exhibits confuse and obfuscate the record by conflating the Bruce Kirby trademark with the company named Bruce Kirby, Inc. Plaintiffs improperly cite to Connecticut case law creating common law personal privacy rights as support for the extension of such rights to an inanimate

corporation. Plaintiffs also conjure up an implausible and unsupportable conspiracy theory involving ILCA and the builder defendants.[1]

## II. ARGUMENT

### A. Claim I – ILCA is Not Liable for Counterfeiting the Kirby Sailboat

Plaintiff's opposition continues to ignore the undisputed fact that ILCA does not manufacture or sell any boats, counterfeit or otherwise. Plaintiffs claim that the boats are counterfeit, not that the plaques are counterfeit. Kirby attempts to confuse the issue by stating that the builders "together with ILCA Plaque suppliers continue to "manufacture and sell" Laser Class boats. See Compl. ¶96. However, as Kirby acknowledges elsewhere in the Complaint, ILCA does not actually manufacture or sell boats — its only role is in the distribution of the plaques. See Compl. ¶12. Kirby further acknowledges that the new ISAF plaque does not contain the plaintiffs' trademark. See Compl. ¶78. Kirby never alleges that ILCA had any role in the actual sale or transportation of the Laser Class boats in commerce as he is required to do to state a claim under 15 U.S.C. §§ 1114 & 1125(a). See, e.g., Andco Environmental Process, Inc. v. Niagara Environmental Associates, Inc., 1980 U.S. Dist. LEXIS 13795, 206 U.S.P.Q. (BNA) 656 (W.D.N.Y. 1980) (sale or transportation of goods or services is required to satisfy said requirement); Tubeco, Inc. v. Crippen Pipe Fabrication Corporation, 402 F. Supp. 838, 848 (S.D.N.Y. 1975); Blazon, Inc. v. DeLuxe Game Corp., 268 F. Supp. 416, 428-29 (S.D.N.Y. 1966). C.f. 1-800 Contacts, Inc. v. WhenU.com, Inc., 414 F.3d 400, 406-07 (2d Cir. N.Y. 2005).

ILCA merely provides plaques to builders to be affixed to Laser Class boats which are constructed in conformance with the requirements set forth in the Construction Manual, as contemplated by the 1983 and 1992 ISAF Agreements. ILCA is not a builder. ILCA does not

---

[1] Plaintiffs' claims do not include a conspiracy theory. Presumably plaintiffs are utilizing this new theory as support for Count VII, entitled "Inducement to Default the Builder Agreements."

affix plaques on boats and ILCA has never affixed a plaque bearing Bruce Kirby's name or Bruce Kirby, Inc. to any boat. The builder, not ILCA, decides whether to affix the ISAF plaque to its boat.  Plaintiffs have introduced no evidence in the record to establish that ILCA knew or should have known prior to service of the Complaint that the use of the company name, Bruce Kirby, Inc., on the ISAF plaques was somehow a trademark violation or might possibly cause confusion in the marketplace.  Therefore, plaintiffs cannot establish that ILCA knew or had reason to know that by issuing the plaques it was somehow engaging in counterfeiting of the boat.

Moreover, Kirby has conceded that prior to filing his Amended Complaint, "ILCA and ISAF ... created a new version of the ILCA Plaque ... that *does not* feature the BRUCE KIRBY trademark and issued the New ILCA Plaques to the terminated builders." Compl. ¶78 (emphasis added).  As Kirby concedes, ILCA and ISAF stopped using his alleged trademark.  Thus, for this reason as well, Kirby cannot even state a claim for counterfeiting.

### B. Claim II:  Infringement of BRUCE KIRBY Trademark, Unfair Competition and False Designation of Origin

Claim II also alleges a violation of 15 U.S.C. § 1114. Compl. ¶¶97, 99.  In addition to repeating that defendants "continue to manufacture and sell counterfeit Kirby Sailboats with ILCA Plaques bearing the federally registered BRUCE KIRBY trademark," Compl. ¶96, Kirby also alleges that the "unauthorized Kirby Sailboats" are likely to confuse consumers because they are marked "BUILT BY LaserPerformance," which is likely to "confuse consumers into believing those Kirby Sailboats are manufactured by a company in the United States." Compl.¶99.

15 USC §1111 makes clear that:

> "[…] a Registrant of a mark registered in the Patent Office, may give notice that his mark is registered by displaying with the mark the words "Registered in U.S. Patent and Trademark Office or "Reg. U.S. Pat. & Tm. Off." Or the letter R enclosed within a circle, thus ®; and in any suit for infringement under this Act by such a registrant failing to give such notice or registration, no profits and no damages shall be recovered under the provision of this Act unless the defendant had actual notice of the registration."

Plaintiffs do not allege or establish in the record that any notice was ever provided to ILCA, prior to the service of the Complaint, regarding their trademark rights in BRUCE KIRBY or Bruce Kirby, Inc.[2] "Bruce Kirby, Inc.," is not a registered mark. The ISAF plaque issued by ILCA never utilized the BRUCE KIRBY trademark. Prior to the service of the Complaint, plaintiffs never objected to the inclusion of company name, Bruce Kirby, Inc., on the ISAF plaques distributed by ILCA. Upon receipt of plaintiffs' Complaint, ILCA ceased issuance of any plaques containing Bruce Kirby, Inc. and took immediate steps to order new plaques which omitted any reference to "Bruce Kirby, Inc." The record confirms that no additional plaques bearing the "Bruce Kirby, Inc." company name were issued to builders following ILCA's receipt of the Complaint.

The use of plaintiffs' company name on the plaque is simply a descriptive phrase and is in no way intended to identify the source of the boat. "A non-trademark use of a phrase is evident where the source of the defendant's product is clearly identified by the prominent display of the defendants' own trademarks." Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co., 125 F.3d 28, 30-31 (2nd Cir. 1997). The trademark for the Laser sailboat is the "Laser" name and the Starburst Logo, which appear all over the boat. ¶4, Declaration of William Crane. Plaintiffs do not dispute this fact nor could they. The key agreements define the "trademark holder" as the holder of the "LASER" trademark. None of the various agreements at issue in this

---

[2] ILCA was first served with the Complaint on May 8, 2013, as confirmed by the summons returned and recorded at Docket Entry # 30.

4

case ever mentions Bruce Kirby, Inc. as a trademark for the Laser sailboat.  In the case of the Laser, the trademarks are clear and unambiguous; Bruce Kirby, Inc. is not a trademark identifying the boat.

The word "plaque" does not even appear in the builder agreements. The purpose of the plaque is to provide a unique identifying sail number and to certify that the boat is class legal and capable of being sailed in ISAF and ILCA sanctioned events.  The plaque serves no other purpose.  The Bruce Kirby, Inc. company name was never an essential element of the plaque.  As discussed above, Kirby concedes that ILCA did not manufacture or sell any boats, and that ILCA and ISAF stopped issuing plaques with the Kirby name.   The record reflects that the first notice ILCA received of plaintiffs' trademark rights occurred when the Complaint was served.  Notably, in this action the plaintiffs have not pled a breach of contract claim against ILCA for any alleged breach of the 1983 ISAF Agreement, the only agreement in which plaintiffs and ILCA are parties.[3]

Kirby's alternative rationale for imposing liability under 15 U.S.C. §1114, fails as it is nonsensical on its face.  Kirby offers no basis for why an item accurately marked as being manufactured by a *particular manufacturer* will confuse consumers into believing that an item was manufactured in a *particular location*. Moreover, this claim is based on a "manufacturer plate" which is affixed to a Laser Class boat.  Compl. ¶99.  Kirby has not alleged any involvement by ILCA with the issuance of these "manufacturer plates."  For this reason too, plaintiffs have failed to state a cause of action.

---

[3] The 1983 ISAF Agreement is, "construed in accordance with the laws of England," and provides that, "<u>Any dispute arising out of or by virtue of this Agreement shall be submitted to a single arbitrator </u>to be appointed in default of agreement by Lloyds Register of Shipping and this shall be a submission to arbitration under the provisions of the Arbitration Act 1979 or any reenactment, modification or extension thereof for the time being in force. The parties hereto agree that the right of appeal to the High Court under Section 2 of said Act are hereby excluded in accordance with the provisions of Section 3 of said Act."

The trademark infringement claims also fail insofar as the record is devoid of any evidence of actual or even likely confusion in the marketplace. As the Second Circuit has held, "[t]he Lanham Act seeks to prevent consumer confusion that enables a seller to pass off his goods as the goods of another….. [T]rademark infringement protects only against mistaken purchasing decisions and not against confusion generally." Lang v. Ret. Living Publ'g Co., Inc., 949 F.2d 576, 582-83 (2nd Cir. 1991) (internal quotation marks and citation omitted) (Summary Judgment for a publisher in trade name infringement case where an author failed to raise a genuine issue of fact on the existence of the likelihood that the publisher's mark would confuse reasonably prudent purchasers.) For this additional reason, the trademark claims must be dismissed.

    **C.**    **Claim III: Unfair Competition under the Connecticut Unfair Trade Practices Act**

As Judge Chatigny noted during the hearing on ISAF's Motion to Dismiss, the distribution of plaques is not the production, manufacture or distribution of goods. "It doesn't appear to me that issuing a plaque constitutes the production, manufacture or distribution of goods." "We haven't found a case that suggests this theory is a valid one under Connecticut law." See copy of transcript of hearing, attached as Exhibit 5 to Memorandum in Support of ILCA's Motion for Summary Judgment. Moreover, ILCA does not distribute the plaques to any builders in Connecticut. Therefore, it is undisputed that ILCA does not advertise, sell, rent, lease or distribute any goods in Connecticut.

Although Kirby has alleged "willful" infringement under the Lanham Act, the record does not support this claim. Furthermore, the record does not support "any sort of fraud, deception, or violation of public policy" by ILCA as required under CUPTA. See A Slice of Pie

Prods. LLC v. Wayans Bros. Entm't, 392 F. Supp. 2d 297, 312 (D. Conn. 2005); accord Cheshire Mortgage Serv., Inc. v. Montes, 223 Conn. 80, 106 (1992).

As discussed below, ILCA did not tortuously interfere in any way with the relationship between the plaintiffs and the builders. Notably, the builder agreements do not even mention the word plaque. The builder agreements do not mention sail numbers, which is the principal information contained on the ISAF plaques issued by ILCA. The plaintiffs' own narrative describes the builders as bullies who strong-armed ILCA to issue plaques and change class rules after the builders stopped paying royalties, and after plaintiffs purportedly terminated the builder agreements. If ILCA was the victim as described by the plaintiffs, then one can hardly argue in the same breath that ILCA intentionally interfered with and/or induced the builders to do anything.

### D. Claim IV:  Misappropriation of Bruce Kirby's Publicity Rights

Bruce Kirby, Inc. is not the actual or assumed name of a living or deceased individual that is intended or used to identify the individual. Kirby claims he owns the publicity rights to his name by virtue of the trademark he has for the mark BRUCE KIRBY. See Compl. ¶¶14-15. He fails to assert a similar right to the company name, Bruce Kirby, Inc. With respect to the company name, he has no claim for misappropriation of his name because his surname is not "Inc." Plaintiffs do not claim a misappropriation of his likeness. The cases cited by the plaintiffs do not support their position that the use of a company name, Bruce Kirby, Inc. can support an invasion of privacy claim for his actual name. Here, the record is undisputed that the ISAF plaque issued by ILCA includes only the company name, Bruce Kirby, Inc.

### E. Claim VII:  Inducement to Default the Builder Agreements[4]

---

[4] The Head Agreement and the Builder Agreements are void *ab initio* for lack of consideration. The designs which Kirby sought to license were designs capable of being registered under the Canadian Industrial Design Act, R.S.C.

7

Plaintiffs concede in their Opposition Memorandum that, "in 2009, the builders decided that they no longer wanted to pay Plaintiff royalties or acknowledge his rights under the contracts." (emphasis added.)  Plaintiff's Memo In Opposition to ILCA's Motion for Summary Judgment at p. 1 (hereinafter "PL's Memo. at __").  Nonetheless, the plaintiffs argue that ILCA representatives met with the builder defendants in October 2010, to, "develop a plan to cut off Plaintiff's rights to royalties on the sale of Kirby Sailboats by removing any requirement that plaintiff license a 'builder' under ILCA rules."  PL's Memo at p. 28.  Plaintiffs also assert that ILCA's actions, "obliterated Plaintiff's rights under the '83 and '89 Builder Agreements and permitted LPE and QMI to violate those agreements by refusing to pay Plaintiff a royalty without consequence."[5]  Id.

---

1970, c. I-8, within the meaning of section 46 of the Copyright Act of Canada and were not excluded from the operation of that provision by section 11 of the Industrial Design Rules.  Bayliner Marine Corporation v. Doral Boats Ltd., (1986) 10 C.P.R. (3d) 289 (F.C.A.) [Bayliner (F.C.A.) cited to C.P.R.], leave to appeal to S.C.C. denied (1986), 14 C.P.R. (3rd) 446.  The plans themselves are not, therefor, subject of copyright protection in Canada.  Id.  The Industrial Design Act provides a maximum ten year monopoly in a design to its author and section 14(1) of the Act requires that a design be registered within one year of a design's publication in Canada.  Id.

The Head Agreement and the 1983 and 1989 Builder Agreements purport to license Bruce Kirby's "copyrights" and "industrial design rights."  In the Head Agreement and the 1983 Builder Agreement, Bruce Kirby expressly warrants that he has both copyrights and industrial design rights under Canadian law.  However, the record confirms that Bruce Kirby, "completed the Kirby Sailboat design at least as early as December of 1970;" and, "[t]he first Kirby Sailboat was sold […] in January of 1971." KSMF, ¶¶ 9 & 10.  Publication of the design to the builder and the general public occurred, at the latest, in January of 1971.  Therefore, any industrial design rights Bruce Kirby may have held would have expired in 1981, long before he signed the 1983 and 1989 Builder Agreements.  Therefore, he had no intellectual property rights to license and the contracts fail for lack of consideration.

[5] If the court finds that Head Agreement and/or the Builder Agreements are not void *ab initio* and that ILCA is somehow bound by the terms of those agreements, ILCA submits that plaintiffs' prior material breaches of those agreements and the associated agreements excuse ILCA's performance.  See, Bernstein v. Nemeyer, 213 Conn. 665, 670, 570 A.2d 164 (1990); Jorian Properties Ltd. V. Zellenrath (1984), 10 D.R. (4th) 458, 46 O.R. (2D) 775.  Plaintiffs admit that prior to the October 2010 meeting between ILCA representatives and builder defendants, plaintiffs had materially breached the Head Agreement, the Builder Agreements, and the ISAF agreement by selling their "rights to royalties" to Global Sailing Limited ("Global Sailing") without first seeking written approval of the trademark holder, ISAF, and ILCA.  KSMF ¶¶ 96 – 106 and PLT *047*.  In April of 2011, Kirby confirmed this transaction by actually refusing to accept royalty payments from defendant, Quarter Moon, Inc.  Attorney Wesley Whitmeyer, in his dual role as counsel to the plaintiffs and Global Sailing, wrote to ILCA on March 8, 2010 that, "Global Sailing purchased Kirby's rights as licensor of the design and copyright to the Kirby sailboat in 2008."  *Exhibit 10 attached to Declaration of Simon Allentuch, filed on 01/21/15 and listed as Document 189 on the docket.*

Plaintiffs' own timeline destroys their inducement claim. ILCA cannot possibly have induced a decision made prior to the inception of the alleged conspiracy. The plaintiffs do further harm to their argument by introducing a copy of ILCA's rules in effect when Kirby signed the 1983 and 1989 Builder Agreements. PLT 032, Bates' # BK1002707. This version of ILCA's rules defined a "builder" as, "any manufacturer duly authorized or licensed to build the Laser by The International Yacht Racing Union (IYRU) with the approval of Performance Sailcraft International Company Limited (PSI)." Id. Noticeably absent from ILCA's definition of "builder," in effect in 1983 and 1989, is any requirement of a license from the plaintiffs. Id. ILCA's rules, including later amendments, could not have modified or amended in any way the terms of the Builder Agreements. Furthermore, ILCA's rules have never granted any "rights" to the plaintiffs.

Plaintiffs repeatedly describe ILCA's rule change as "illegal" but offer no evidence of ILCA's unlawful conduct. Plaintiffs also fail to explain how this rule change has anything to do with the enforcement of plaintiffs' "rights" under the Builder Agreements. Plaintiffs have repeatedly demanded ILCA withhold plaques from builders in order that Kirby can enforce compliance with the Builder Agreements. However, ILCA is neither a party to the Builder Agreements nor the designated arbiter of disputes under those agreements. Plaintiffs nonetheless refuse to admit these incontestable facts. KSMF at p. 47 Response No. 5 and PLT 032.

ILCA did not instruct LaserPerformance Europe Limited, and Quarter Moon, Inc. to stop paying royalties. See, Deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p. 193. In addition, ILCA did not threaten LaserPerformance Europe Limited, and Quarter Moon, Inc. in any way to induce either of the builders to default on any Builders Agreements. Id.

Furthermore, ILCA did not make any promises to LaserPerformance Europe Limited, and Quarter Moon, Inc. in return for either company's promise to default on any Builders Agreements.  Id.  These facts are not in dispute.

## CONCLUSION

For all these reasons, ILCA respectfully requests that the Court grant its motion for summary judgment with respect to all claims of the plaintiffs against ILCA.

>The defendant,
>INTERNATIONAL LASER CLASS ASSOCIATION,
>By its attorneys,
>
>
>*/s/ Kevin C. Cain*
>Kevin C. Cain, Esq.
>ZIZIK POWERS, P.C.
>690 Canton Street, Suite 306
>Westwood, MA  02090
>Direct Dial:  (781) 320-5441
>Fax:  (781) 320-5444
>kcain@zizikpowers.com

## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of April, 2015, a true and correct copy of the foregoing Defendant International Laser Class Association's Reply to the Plaintiffs' Opposition to ILCA's Motion for Summary Judgment was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

>/s/ *Kevin C. Cain*
>Kevin C. Cain