UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE KIRBY, INC. and BRUCE KIRBY, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 3:13-CV-00297-JAM |
| | ) | |
| LASERPERFORMANCE (EUROPE) | ) | |
| LIMITED, QUARTER MOON, | ) | |
| INCORPORATED, KARAYA (JERSEY) | ) | |
| LIMITED, VERUM LIMITED ITM SA | ) | |
| (ANTIGUA AND BARBUDA), | ) | |
| INTERNATIONAL SAILING FEDERATION | ) | |
| LIMITED, INTERNATIONAL LASER | ) | |
| CLASS ASSOCIATION, and FARZAD | ) | |
| RASTEGAR, | ) | |
| | ) | |
| Defendants. | ) | |

## INTERNATIONAL LASER CLASS ASSOCIATION'S OBJECTIONS TO PLAINTIFFS' LOCAL RULE 56(a)(2) STATEMENT

Pursuant to Fed. R. Civ. P. 56(c)(1)(B) & (2) Defendant, International Laser Class Association ("ILCA") hereby objects to the following "facts" submitted by plaintiffs as part of their Local Rule 56(a)(2) Statement on the grounds that the factual submissions fail to establish a genuine dispute, are immaterial to the summary judgment, are inadmissible in evidence and/or are otherwise unsupported by cited materials.

## I.     OBJECTIONS TO "PLAINTIFF'S STATEMENT OF FACTS SUPPORTING DENIAL OF DEFENDANTS' SUMMARY JUDGMENT MOTIONS INCLUDING PLAINTIFF'S DISPUTED ISSUES OF MATERIAL FACT."

**Bruce Kirby Marine Designs**

1.     Bruce Kirby is an independent designer of sailboats and yachts. PLT 72 at 2.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

2.      In his career, Kirby has designed sixty five boats.  Mr. Kirby intended about half of those boats for mass production. PLT 076 at 9; Kirby Decl., ¶ 3.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

3.      Kirby is best known for his boat designs that have been sold under the brand names LASER, SONAR, IDEAL 18, KIRBY 25, KIRBY 30, SAN JUAN 24, and SAN JUAN 30. PLT 076 at 10.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

4.      Four of Kirby's designs are currently being produced. PLT 076 at 10.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

5.      As a result of Kirby's extensive work in the field of boat design, Kirby has developed a reputation for high quality boat designs. The public has come to recognize the boats that bear his name are manufactured according to the most exacting standards.  This means the boats can be manufactured with a high degree of repeatability making them very desirable as "one-design" boats suitable for racing at the highest levels of the sport.  Not surprisingly, three different sailing medal events in the Olympics are sailed in boats designed by Bruce Kirby.  No other boat designer can boast more than one medal event. Kirby Decl., ¶ 4.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not

2

support by admissible evidence the facts alleged insofar as the statement includes

inadmissible hearsay regarding "public" recognition or perceptions.

6.      As a matter of standard practice, Kirby ensures that any boat authorized in

accordance with one of his designs prominently features his name BRUCE KIRBY, which he

has trademarked.  This is important not only as an indicia of quality and one-design manufacture

making the boats suitable for racing at the highest levels of the sport, but is also extra important

vis-à-vis the Laser because the owners of the Laser trademark sell many other boats (over a

dozen) using the Laser name but NOT designed by Bruce Kirby, and Bruce Kirby does not want

to be responsible for the quality of their design or construction.    This is the reason the

agreements have always required manufacturers of Bruce Kirby designed Laser sailboats to mark

and market them with Bruce Kirby's name. Kirby Decl., ¶ 5.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the
>
> materials cited do not establish the presence of a genuine dispute and/or do not
>
> support by admissible evidence the facts alleged insofar as the statement includes
>
> inadmissible hearsay regarding the contents of the "agreements" and fails to cite to
>
> the best evidence, the agreements themselves.  The failure to cite to the agreements
>
> is intentionally misleading because the agreements do not include the requirement
>
> for Bruce Kirby's name to appear on the Laser sailboat.

7.      Use of the BRUCE KIRBY name in direct association with his design, signifies to

the consumer that the boat was designed by Kirby and is of the highest quality, a "one-design"

sailboat suitable for racing at the highest levels of the sport. Kirby Decl., ¶ 6.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the
>
> materials cited do not establish the presence of a genuine dispute and/or do not

**support by admissible evidence the facts alleged insofar as the support for this statement is inadmissible hearsay regarding the hypothetical "consumer's" recognition or perceptions.**

8.      As a matter practice, Mr. Kirby ensures that trademark BRUCE KIRBY is only associated with boats manufactured in accordance with his designs by builders having his authorization. Kirby Decl., ¶ 5.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged insofar as the statement includes inadmissible hearsay regarding the contents of the "agreements" and fails to cite to the best evidence, the agreements themselves.  The failure to cite to the agreements is intentionally misleading because the agreements do not include the requirement for Bruce Kirby's name to appear on the Laser sailboat.**

9.      As a result of Kirby's exclusive and continuous use of the name BRUCE KIRBY, the BRUCE KIRBY mark has acquired strong common law trademark rights.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(A)&(B) insofar as the statement is unsupported by any materials.**

10.      The BRUCE KIRBY trademark is registered with the United States Trademark Office, Registration No. 3,532,451 and was used in commerce at least as early as July 1983. Kirby Decl., ¶ 5.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.**

**The Kirby Sailboat**

11.     The Kirby Sailboat is the 13 foot 10 ½ inch sailboat illustrated by the figure below. This is design defined as the "Kirby Sailboat" in the 1983 and 1989 Builder Agreements, the Head Agreement, and the ISAF Agreement.



PLT 072, at Schedule 2; PLT 030; PLT 031; PLT 032.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

12.     Bruce Kirby designed the Kirby Sailboat. PLT 076 at 11; Kirby Decl., ¶ 7.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

13.     The idea for the Kirby Sailboat originated in 1969 when Kirby sought to design a sailboat that could easily be transported on the top of a car. PLT 076 at 11-12.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited to not establish the presence of a genuine dispute.

14.     Kirby prepared an initial sketch of the Kirby Sailboat (shown below), which would form the basis for his final design. PLT 076 at 12-13.



PLT 076 at 11-12; PLT 83.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

15.     Several days after authoring the initial sketch, Kirby prepared formals plans, including a complete set of lines, plans, offsets, centerboard, rudder, mast, and sail. PLT 076 at 13.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.**

16.     Ian Bruce built the first Kirby Sailboats in accordance with Kirby's design and instruction. PLT 076 at 11.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.**

17.     Ian Bruce was the builder and had no role in designing the Kirby Sailboat. PLT 076 at 11; Kirby Decl., ¶ 9.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.**

18.     In November of 1970, Kirby and Ian Bruce decided to sell the boat under the name LASER.  PLT 076 at 17-18.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.**

19.     The Kirby Sailboat went on sale to the public in January 1971 at the New York Boat Show. PLT 076 at 19. The boat was an immediate success, selling more than 144 units on the show floor.  PLT 076 at 29; Kirby Decl., ¶ 10.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.**

20.     Shortly thereafter, a laser class association was formed to administer the sport of sailing Kirby Sailboats. PLT 032 at 2; PLT 076 at 30; Kirby Decl., ¶ 12.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

21.     Kirby, on behalf of this association, petitioned the International Yacht Racing Union ("IYRU"), the predecessor of the International Sailing Federation ("ISAF"), for international status as a further guarantee of one-design status making the boat suitable for equal high-level racing throughout the world.  PLT 076 at 30-31; Kirby Decl., ¶ 13.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

22.     The IYRU granted provisional International Status to the laser class on November 9, 1973 and final approval by agreement dated July 8, 1974. PLT 32; Kirby Decl., ¶ 13.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

**The Kirby Sailboat Agreements**

23.     The Kirby Sailboat quickly became an international success, being sailed and raced by enthusiasts all over the world. Since its introduction, more than 200,000 Kirby Sailboats have sold around the world. Kirby Decl., ¶ 11.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

24.     In the early 1980s, however, the continued success of the Kirby Sailboat and the Laser Class faced significant obstacles. . Kirby Decl., ¶¶ 14-15.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

25.    At that time, Performance Sailcraft Inc. ("PSI") of Quebec, Canada owned the LASER trademark in the United States and in many other important jurisdictions  around     the World. *See* PLT 72, Schedule B.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

26.    PSI was also licensed to manufacture and sell the Kirby Sailboat.  PLT 72; Kirby Decl., ¶ 14.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

27.    PSI declared bankruptcy and its assets, including the trademark rights, were placed in receivership, putting the future of the Laser Class and the Kirby Sailboat in danger. PLT 72; Kirby Decl., ¶ 15.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.

28.    To ensure the continued existence and success of the Kirby Sailboat and the Laser Class, the three stakeholders came together to reach a series of agreements controlling the continued manufacture and sale of the Kirby Sailboat throughout the world under the LASER trademark. PLT 72, "Head Agreement"; PLT 32, "ISAF Agreement"; PLT 30, "1983 Builder Agreement"; and "PLT 31, "1989 Builder Agreement"; Kirby Decl., ¶ 16.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not

**support by admissible evidence the facts alleged insofar as the Kirby Declaration contains inadmissible hearsay regarding the contents and purpose of the "agreements" which speak for themselves.**

29.    These stakeholders included: (1) Bruce Kirby, the designer of the Kirby Sailboat, (2) 124561 Canada Inc., the Trademark Owner, and (3) the governing bodies: ISAF and ILCA.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute.**

**The Head Agreement**

30.    First, on July 11, 1983, Kirby and the Trademark Owner entered into the Head Agreement. PLT 72; Kirby Decl., ¶ 16.

31.    The Head Agreement ensures the existence of sufficient qualified builders that are both licensed by Kirby to build the Kirby Sailboat and licensed by the Trademark Owner to use the LASER trademark in association with the Kirby Sailboat, thereby assuring the strict one-design qualities which make the boat suitable for high-level sailing competitions including the Olympics. PLT 72.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state the facts alleged.**

32.    To meet this objective, Kirby agreed to license certain persons to build Kirby Sailboats and the Trademark Owner agreed to license those authorized builders to sell the Kirby Sailboats under the LASER name. PLT 72; Kirby Decl., ¶ 18.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

33.     The Head Agreement explicitly identified a number of exclusive builders around the world, and provided a mechanism for selecting and licensing new builders. PLT 72, ¶ 2.6.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state the facts alleged.**

34.     The Head Agreement also requires ISAF approval of all authorized builders. PLT 72, ¶ 2.6(d).

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state the facts alleged.**

35.     In consideration for the agreement, the Trademark Owner agreed that it would not at any time question or contest, directly or indirectly, the validity of Kirby's design rights and that it would not knowingly do any act, directly or indirectly, which would or is likely to invalidate the design rights in any country of the world nor assists others in doing so. PLT 72, ¶ 4.1. That portion of the agreement is shown below:

```
ICLE 4 - PROPRIETORSHIP

   4.1  Trade Mark Owner shall not at any time question or
        contest directly or indirectly the validity of the
        Copyright or assist any other person so to do and
        shall not at any time knowingly do any act directly
        or indirectly which would or is likely to invalidate
        the Copyright in any country of the world nor assist
        any other person so to do.
```

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

11

36.     As a result of this provision, LaserPerformance Defendants QMI (through its fully-owned subsidiary Laserperformance LLC) and LPE, successors in interest to the trademark rights from the Trademark Owner in the Head Agreement, are precluded from contesting Kirby's design rights as they do in this case to excuse their continuing breach of the Builder Agreements.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.**

37.     In the Head Agreement, the Trademark Owner and Kirby agreed that Kirby was responsible for issuing and assigning hull numbers to builders. PLT 72, ¶ 8. Hull numbers are also referred to as serial numbers, and comprise the unique sail number permitted to be used by the boat in high level sailing competitions, together with information particular to each manufacturer.  Since the boats are "one-design" and identical, unique sail numbers are the only way results can be tabulated in sailing competitions.   They also allow Kirby to audit royalty payments as builders manufacture new boats. Kirby Decl., ¶ 19.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged insofar as the Kirby Declaration contains inadmissible hearsay regarding the contents and purpose of the Head Agreement, which speak for itself.**

38.     The Head Agreement allows Kirby to designate an agent to issue and assign hull numbers on its behalf. PLT 72, ¶ 8.

39.     Kirby has designated ILCA as its agent for the issuance and assignment of hull numbers. PLT 72, ¶ 8.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged.  The contents and purpose of the Head Agreement speaks for itself.**

40.     Under the Head Agreement, Kirby and the Trademark Owner agreed to negotiate with ISAF to amend and reconstitute the prior ISAF Agreement executed in 1974. PLT 72, ¶ 5.1.

41.     The Head Agreement remains in force today. For example, LaserPerformance's offshore trademark holding companies, Karaya (Jersey) Limited and Velum Limited ITM SA, asserted the Head Agreement against Kirby this past year in two trademark cancellation proceedings pending before the United States Trademark Trial and Appeal Board. PLT 84; PLT 85.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.**

**The ISAF Agreement**

42.     On November 30, 1983, Kirby, the Trademark Owner, ISAF, and ILCA entered the ISAF Agreement. PLT 32; Kirby Decl., ¶ 21.

43.     To this day, the ISAF Agreement governs the production, distribution, and management of Kirby Sailboats approved for officially sanctioned events worldwide.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.

44.     The ISAF Agreement identifies three criteria to become an authorized Kirby Sailboat builder:

- (1) The builder must have a license from Kirby to use the design,

- (2) The builder must have a license from the Trademark Owner to use the Laser trademark in the relevant jurisdiction,

- (3) The Builder must be approved by ISAF.

PLT 32, Definition of Builder.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state the facts alleged and fail to include that the definition of "builder" includes the "Trade mark Owner."

45.     These requirements remained unchanged and allowed the Laser sailboat to thrive at all levels of the sport from junior sailing to the Olympics for nearly thirty years, until April of 2013 when ISAF approved the illegal rule change concocted by Defendants QMI, LPE, and ILCA. PLT 93; Kirby Decl., ¶ 24.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state the facts alleged.

46.     The authorized builder requirements are incorporated into the Laser Class Rules promulgated by ILCA and approved by ISAF. *See* PLT 87, Part One.

47.    For example, ILCA's Fundamental Rule prior to April 2013 reflected this definition set forth by the ISAF Agreement, requiring that "the Laser shall be raced in accordance with these rules, with only the hull, equipment, fittings, spars, sail and battens manufactured by a licensed builder." PLT 87, Part One.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state the facts alleged and other documents submitted by the plaintiff contradict this statement, including but not limited to the Rules attached to the ISAF Agreement at PLT 032.**

48.     ILCA's Rules prior to April 2013 defined a licensed builder as a "manufacturer that has a building agreement from Bruce Kirby or Bruce Kirby, Inc. to build the Laser and has the rights to use a Laser trademark and has been approved as a Laser Builder by each of the international Sailing Federation and the International Laser Class Association." PLT 87, Part One.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state the facts alleged and other documents submitted by the plaintiff contradict this statement, including but not limited to the Rules attached to the ISAF Agreement at PLT 032.**

49.    Under the ISAF Agreement, ILCA is charged with the management and administration of the Laser Class, subject to the approval of ISAF in regard to certain fundamental matters, such as amendments to ILCA's rules, and amendment to Kirby Boat specifications. PLT 32.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not**

**support by admissible evidence the facts alleged.   The contents and purpose of the ISAF Agreement speaks for itself.**

50.     The ISAF Agreement specifies that it is to remain in force so long as International Status shall be accredited to the Laser Class boat by the ISAF. PLT 32, ¶ 18.

51.     The ISAF Agreement is still in force. PLT 32, ¶ 18.

52.     Kirby may assign its rights and obligations under the ISAF Agreement, but only with prior written approval of both ISAF and ILCA. PLT 32, ¶ 17. Specifically, Paragraph 17 of the ISAF Agreement states:

> This Agreement shall continue to be to the benefit of and binding upon the parties hereto, their successors and assigns, provided that none of Kirby Inc., Trade Mark Owner or the Builders set forth in Schedule 2 as amended from time to time, may assign their rights and obligations under this Agreement without the prior written approval of the IYRU and the Association, which approval shall not be unreasonably withheld.

 PLT 32, ¶ 17.

53.     The ISAF Agreement entitles ILCA to receive a royalty for each Kirby Sailboat sold by a builder in consideration of the services to be performed by ILCA. PLT 32, ¶ 13.2.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged.   The contents and purpose of the ISAF Agreement speaks for itself.**

**The 1983 Builder Agreement**

54.     Kirby entered the 1983 Builder Agreement with Brook Shaw Motor Services Ltd. ("Brook Shaw") pursuant to Kirby's rights under the Head Agreement. PLT 030; Kirby Decl., ¶ 20.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged.  The 1983 Builder Agreement speaks for itself.

55.     In the 1983 Builder Agreement, Kirby authorized Brook Shaw to manufacture and sell Kirby Sailboats in Europe, the United Kingdom and the Middle East. PLT 30; PLT 11, Counterclaim, ¶ 12.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged.  The 1983 Builder Agreement speaks for itself.

56.     LPE is the successor to all of Brook Shaw's rights and obligations under the 1983 Builder Agreement. PLT 11, Counterclaim, ¶ 14.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.

57.     Prior to Kirby's termination of the 1983 Builder Agreement, LPE and/or its related manufacturing arm sold boats under authority of the 1983 Builder Agreement. PLT 080 at 11.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts

17

are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.

58.     Kirby provided LPE with an exclusive license to manufacture and market the Kirby Sailboat in Europe, the United Kingdom and the Middle East. PLT 30; PLT 11, Counterclaim, ¶ 12.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.**

59.     In return, LPE agreed to pay Kirby a royalty equal to two (2%) percent of the wholesale price of each Kirby Sailboat. PLT 30.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.**

60.     Both ILCA and ISAF are third-party beneficiaries under the 1983 Builder Agreement because the builder is also required to pay a royalty payment to ISAF and a royalty payment to ILCA in consideration of the grant of license. PLT 30, ¶ 8.1.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.**

61.     Upon termination of the 1983 Builder Agreement for any reason, LPE is required to discontinue manufacturing Kirby Sailboats and discontinue use of the production tooling, moulds and plugs particularly associated with the manufacture of Kirby Sailboats. PLT 30, ¶ 10.9.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.**

62.     The 1983 Builder Agreement includes provisions to ensure that the BRUCE KIRBY trademark is only used in association with high quality boats.  PLT 30, ¶ 3.3. For example, paragraph 3.3 of the 1983 Agreement requires that:

> In order to maintain and protect the reputation of Bruce Kirby as a designer of sailboats and yachts, the reputation of Kirby Sailboats as quality sailboats and the status of Kirby Sailboats as a recognized international class of sailboats with the IYRU, Licensee undertakes and agrees that Licensee shall manufacture Kirby Sailboats only from the materials and only in accordance with the methods specified and described in the Construction Manual.

PLT 30, ¶ 3.3.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state anything about the purported BRUCE KIRBY trademark.**

**1989 Builder Agreement**

63.     Kirby entered into the 1989 Builder Agreement with PY Small Boats, Inc. pursuant to Kirby's rights under the Head Agreement. PLT 31; Kirby Decl., ¶ 23.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not**

**support by admissible evidence the facts alleged. The 1989 Builder Agreement speaks for itself.**

64.     The 1989 Builder Agreement authorized PY Small Boats to manufacture and sell Kirby Sailboats in North America. PLT 31; PLT 11, Counterclaim, ¶ 16.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged. The 1989 Builder Agreement speaks for itself.**

65.     Quarter Moon is a successor to the rights and obligations of PY Small Boats under the 1989 Builder Agreement. PLT 11, at 2.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged. The 1989 Builder Agreement speaks for itself.**

66.     Prior to Kirby's termination of the 1989 Builder Agreement, QMI (and/or its subsidiary) sold boats under authority of the 1989 Builder Agreement. PLT 011, Counterclaim, ¶ 17.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged. The 1989 Builder Agreement speaks for itself.**

67.     Under the 1989 Builder Agreement, Kirby provided QMI an exclusive license to manufacture and market the Kirby Sailboat in North America and certain countries in Central and South America. PLT 31; PLT 11, Counterclaim, ¶ 16.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged.  The 1989 Builder Agreement speaks for itself.

68.     In return, QMI agreed to pay Kirby a royalty equal to two (2%) percent of the wholesale price of each Kirby Sailboat. PLT 31.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or do not support by admissible evidence the facts alleged.  The 1989 Builder Agreement speaks for itself.

69.     Both ILCA and ISAF are both third-party beneficiaries under the 1989 Builder Agreement. Under the agreement, QMI is required to pay a royalty payment to ISAF and a royalty payment to ILCA for each boat sold in consideration of the grant of license. PLT 31, ¶ 8.1.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.

70.     Upon termination of the 1989 Agreement for any reason, QMI is required discontinue manufacturing Kirby Sailboats and discontinue the use of the production tooling, moulds and plugs particularly associated with the manufacture of Kirby Sailboats. PLT 31, ¶ 10.9.d.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.  Furthermore, this is a conclusion of law and not a material fact of consequence to ILCA's Motion for Summary Judgment.

71.     The 1989 Agreement includes provisions to ensure that the BRUCE KIRBY trademark is only used in association with high quality boats.  PLT 31, ¶ 3.3. For example, paragraph 3.3 of the 1989 Agreement requires that:

> In order to maintain and protect the reputation of Bruce Kirby as a designer of sailboats and yachts, the reputation of Kirby Sailboats as quality sailboats and the status of Kirby Sailboats as a recognized international class of sailboats with the IYRU, Licensee undertakes and ·agrees that Licensee shall manufacture Kirby Sailboats only from the materials and only in accordance with the methods specified and described in the Construction Manual.

PLT 31, ¶ 3.3.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state anything about the purported BRUCE KIRBY trademark.

## ISAF Plaques

72.     ISAF issues plaques to authorized builders that are affixed to the hull of each Kirby Sailboat. PLT 089.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

73.     The ISAF plaque confirms the boat was built according to the Kirby sailboat design and that the builder was authorized by Bruce Kirby. PLT 089.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

74.     The ISAF plaque also confirms that that builder is entitled to use the Laser trademark in association with the boat and that the builder is authorized by ILCA and ISAF. PLT 089.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

75.     In practice, ISAF has delegated the authority and responsibility to issue ISAF Plaques to builders and to collect royalty fees from the builders due under the respective Builder Agreements to ILCA. PLT 86.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the facts are not supported by admissible evidence.**

76.     At all relevant times prior to April 23, 2013, ILCA's Fundamental Class Rule stated the following:

> **FUNDAMENTAL RULE**
>
> The Laser shall be raced in accordance with these rules, with only the hull, equipment, fittings, spars, sail and battens manufactured by a licensed builder in accordance with the Laser design

23

specification (known as the Construction Manual) which is registered with ISAF.

No addition or alteration may be made to the hull form, construction, equipment, type of equipment, placing of equipment, fittings, type of fittings, placing of fittings, spars, sail and battens as supplied by the builder except when such an alteration or change is specifically authorised by Parts 2 or 3 of these Rules.

**HULL IDENTIFICATION**

All Lasers shall have an identification number moulded into the deck under the bow eye or into the transom, which shall be either the sail number or a unique production number.

Lasers with sail numbers from 148200 shall display a unique ISAF Building Plaque that has been purchased by the builder from the International Laser Class Association. The plaque shall display the sail number of the boat issued by the International Laser Class Association and shall be permanently fixed in the rear of the cockpit by the builder.

**DEFINITION OF BUILDER**

A Builder is a manufacturer that has a building agreement from Bruce Kirby or Bruce Kirby Inc. to build the Laser and has rights to use a Laser trademark and has been approved as a Laser Builder by each of the International Sailing Federation and the International Laser Class Association.

PLT 087, Part One.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state the facts alleged and other documents submitted by the plaintiff contradict this statement, including but not limited to the Rules attached to the ISAF Agreement at PLT 032.**

77.     In accordance with the Rules, at all relevant times prior to April 23, 2013, ISAF issued the following ISAF Plaques:

24



PLT 89.

   **OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not state the facts alleged and other documents submitted by the plaintiff contradict this statement, including but not limited to the Rules attached to the ISAF Agreement at PLT 032.**

78.     The number 199980 shown on the ISAF plaque above is the unique sail number authorized to be used with this hull in sailing competitions.

79.     Under the ISAF Agreement, Kirby is responsible for issuing sail numbers.  PLT 032.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the facts are not supported by the cited materials, which only mention hull numbers.**

80.     Each and every Kirby Sailboat sold by QMI and LPE between at least as early as March 1, 2009 and April 23, 2013 included an ISAF Plaque. PLT 078 at 92-93.

81.     Each ISAF Plaque affixed to a Kirby Sailboat sold by either QMI or LPE prior to April 23, 2013 included the BRUCE KIRBY trademark. PLT 078 at 92-93.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the facts are not supported by the cited materials.**

82.     In addition to the ISAF Plaque shown above, QMI and LPE affix a Builder Plaque to the each Kirby Sailboat that they sell.  PLT 090.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

83.     The Builder Plaques used by QMI and LPE at all times prior to April 23, 2013 included the BRUCE KIRBY trademark.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

84.     A copy of the Builder Plaque used by QMI and LPE prior to April 23, 2013 is shown below.



PLT 90.

85.    Each and every Kirby Sailboat sold by QMI and LPE between at least as early as March 1, 2009 and April 23, 2013 included a Builder Plaque affixed thereto. PLT 078 at 92-93.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

86.    Each Builder Plaque affixed to a Kirby Sailboat sold by either QMI or LPE prior to April 23, 2013 included the BRUCE KIRBY trademark. PLT 078 at 92-93.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

**LaserPerformance Offered to Buy Kirby's Rights Under the Builder Agreements**

87.     In 2006, Kirby began exploring the potential to sell his rights in the Kirby Sailboat design and in the Head Agreement, the ISAF Agreement, the 1983 Builder Agreement, the 1989 Builder Agreement, and other agreements not directly at issue in this litigation. Kirby Decl., ¶ 28.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

88.     Farzad Rastegar, through LaserPerformance Group Company, Gavel Securities Limited, made an offer to acquire Kirby's intellectual property and design rights, including all rights in the Head Agreement, the ISAF Agreement, the 1983 Builder Agreement, the 1989 Builder Agreement, and other agreements not directly at issue in this litigation. PLT 26; PLT 104; Kirby Decl., ¶ 29.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

89.     LaserPerformance offered to acquire Kirby's rights in the Kirby Sailboat for $2.5 million in cash. PLT 26; Kirby Decl., ¶ 29.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

90.     Kirby believed this was a fair offer, but took some time to consider merits of the offer and make his decision to get out of the Laser business all together. Kirby Decl., ¶ 30.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

91.     After some consideration, Kirby decided that he would accept the offer from LaserPerformance. Kirby Decl., ¶ 30.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

92.      Kirby subsequently attended an in-person meeting with LaserPerformance principles William Crane, and Baham Kia in Norwalk, Connecticut. Farzad Rastegar was notably absent from this meeting. Kirby Decl., ¶ 31.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

93. During that meeting, the parties generally discussed the LASER business and the Kirby Sailboat.   At the end of the meeting, LaserPerformance informed Kirby, without explanation, that it had dropped its offer to purchase Kirby's rights in the Kirby Sailboat by $1 million, to $1.5 million. Kirby Decl., ¶ 31.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

94.     Kirby thought this was a setback and that LaserPerformance's reduced offer severely undervalued his rights in the Kirby Sailboat, including his contractual design rights as embodied in the Head Agreement, the ISAF Agreement, the 1983 Builder Agreement, and the 1989 Builder Agreement. Kirby Decl., ¶ 31-32.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

95.     Kirby began exploring other potential buyers to acquire his rights.  Kirby reached out to Global Sailing to gauge its interest. Kirby Decl., ¶ 32.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

**Kirby Did Not Transfer His Right Under the Builder Agreements to Global Sailing**

96.     In the spring of 2008, Kirby reached a tentative agreement with Global Sailing under which Kirby agreed to transfer his rights in the Kirby Sailboat design to Global Sailing for $2.6 million. Kirby Decl., ¶ 33; Allentuch Decl., ¶ 7.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

97.     Kirby and Global Sailing entered an intellectual property purchase and license agreement, having an effective date of June 25, 2008, through which Kirby attempted to transfer his rights under the Head Agreement, the ISAF Agreement, 1983 Builder Agreement, and the 1989 Builder Agreement to Global Sailing. PLT 074, schedule 2.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

98.     Official notice of the alleged transfer of rights was provided to QMI and LPE on January 19, 2009, although they deny receiving such notice. PLT 038-039.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

99.     Kirby's attempted sale of his rights and obligations under the Head Agreement, the ISAF Agreement, the 1983 Builder Agreement and the 1989 Builder Agreement was not effective, because Kirby failed to satisfy several conditions precedent required for transfer.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

100.    Kirby failed to transfer his rights and obligations under the Head Agreement because he failed to obtain the prior written consent of the Trademark Owner as expressly required by the Head Agreement.  PLT 72, ¶ 10.1.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of**

**a genuine dispute and/or the facts are immaterial. ILCA further objects insofar as**

**this statement contains a conclusion of law and is therefore not a material fact.**

101.    Paragraph 10.1 of the Head Agreement, shown below, requires prior written consent of the other party as a precondition of transfer:

> 10.1 Each of Bruce Kirby, Kirby Inc. and Trade Mark Owner shall have the right to assign his or its interest in this Agreement to any person upon the prior written consent of the other parties hereto, which consent shall not be unreasonably withheld and provided that such person agrees to be bound by the terms of this Agreement. This Agreement shall enure to the benefit of and shall be binding upon the parties themselves and their respective successors and permitted assigns.

PLT 72, ¶ 10.1

102.    The Trademark Owner never consented to Kirby's attempted transfer of his rights and obligations under the Head Agreement to Global Sailing, and the Trademark Owner never provided prior written consent as required by the Head Agreement.

103.    The ISAF Agreement provides that Kirby cannot assign his rights and obligations under the ISAF Agreement, and his related rights under the builder agreements, without the prior written consent of ISAF.  PLT 032, ¶ 17.

104.    Specifically, the ISAF Agreement requires that:

> 17. This Agreement shall continue to be to the benefit of and be binding upon the parties hereto, their successors and assigns, provided that none of Kirby Inc., Trade Mark Owner or the Builders set forth in Schedule 2 as amended from time to time, may assign their rights and obligations under this Agreement without the prior written approval of the IYRU and the Association, which approval shall not be unreasonably withheld.

PLT 032, ¶ 17.

105.    ISAF never consented to Kirby's attempted transfer of his rights and obligations under the ISAF Agreement and the 1983 and 1989 Builder Agreements to Global Sailing, and ISAF never provided prior written approval as required by the ISAF Agreement.

106.    In addition to the precondition of transfer of the 1983 and 1989 Builder Agreements required under the ISAF Agreement, the builder agreements further required, as a condition of transfer, that:

> 11.4 Neither Bruce Kirby nor Kirby Inc. shall assign any rights in the Licensed Design save to an assignee who shall enter into an agreement with Licensee on terms and conditions identical with the terms and conditions of this Agreement.

PLT 30, ¶ 11.4; PLT 31, ¶ 11.4.

## LaserPerformance, and ISAF, and ILCA Refused to Recognize Kirby's Attempted Transfer

107.    LaserPerformance, ISAF, and ILCA have repeatedly and consistently refused to recognize Kirby's attempted transfer of his rights under the Builder Agreements to Global Sailing, citing Kirby's failure to obtain the required written authorizations prior to transfer. *See, e.g.*, PLT 040, 043-045, 047, 094, 096-097.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

108.    By letter of May 28, 2010, LPE informed Kirby that it had failed to had failed to comply with Article 11.4 of the Agreement, requiring an assignee of Kirby's rights to 'enter into an agreement with Licensee on terms and conditions identical with the terms and conditions of [the] Agreement.'" PLT 94.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

109.     By letter of December 13, 2010, QMI informed Kirby that it had failed to verify that Global Sailing was the lawful successor and assignee to Mr. Kirby's rights under the 1989 Builder Agreement. PLT 43.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

110.     QMI also informed Kirby that Global Sailing "had failed to comply with Article 11.4 of the Agreement requiring an assignee of Kirby's rights to 'enter into an agreement with Licensee on terms and conditions identical with the terms and conditions of [the] Agreement." PLT 43.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

111.     By letter of December 15, 2010, LPE unequivocally stated that LPE "does not recognise (sic) Global Sailing as having any rights pursuant to the [1983 Builder] Agreement." PLT 44.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

112.     LPE cited two factors supporting its conclusion that LPE "does not recognise (sic) Global Sailing as having any rights pursuant to the [1983 Builder] Agreement." First, LPE explained that it did not recognize the rights because it never received proof of the transfer, stating: "It is not and never has been clear to us on what basis [Global Sailing] makes this claim

of ownership of Kirby's rights under the 1983 Agreement as [LPE] has never received any notice of assignment of rights from Bruce Kirby or Bruce Kirby, Inc. (together referred to as "Kirby") or from [Global Sailing]." PLT 44.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

113.    LPE further explained that Kirby failed to comply with Clause 11.4 of the 1983 Builder Agreement, stating:

> In order for any assignment of the Licensed Design to be effective, therefore, Kirby, Inc (Bruce Kirby having already assigned his rights to Kirby, Inc) has to procure and ensure that the assignee entered into an agreement with PSE (the Licensee) on the same terms as the Agreement. We understand from your letter that your [Global Sailing] allegedly acquired the copyright and design rights in the Licensed Design in early 2008, nearly two years ago. We are instructed that neither Kirby, Inc nor Global Sailing has ever approached PSE requesting it to enter into a contract on the same terms and conditions as those set out in the Agreement.

PLT 44 at 2.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

114.    LPE concluded its letter by stating that "[u]ntil these issues are settled, therefore, [LPE] does not recognise Global Sailing as having any rights pursuant to the Agreement." PLT 44 at 2.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.

115.    By letter of March 1, 2011, QMI again wrote to Kirby and refused to recognize any transfer of rights in the 1989 Builder Agreement from Kirby to Global Sailing. PLT 96.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

116.    QMI denied ever receiving the notice of transfer of January 19, 2009, and QMI explained that such notice was another prerequisite of transfer pursuant to paragraph 14.3 of the 1989 Builder Agreement that Kirby failed to meet. PLT 96.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

117.    QMI explained that it "has by no means acquiesced to any assignment and has in fact continuously and consistently reserved its right in respect of Article 11.4 of the [1989 Builder] Agreement" and enclosed copies of its prior correspondence evidencing its prior positions.  PLT 96.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

118.    On March 1, 2011, Kirby wrote to ISAF President, Jerome Pels, to provide notice of attempted transfer of rights. PLT 98.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

119.   Mr. Pels, on behalf of ISAF, responded to Kirby on March 24, 2011 and refused to approve Kirby's attempted assignment of his design rights to Global Sailing. PLT 46 at 2 (stating that ISAF "cannot give approval for the assignment of the design rights in the Laser class boat, as required by Clause 17 of the [ISAF] Agreement.")

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

120.   LaserPerformance continued to refuse to recognize Kirby's attempted transfer to Global Sailing.  LaserPerformance continued to send royalty checks to Kirby, and ultimately ended up placing the royalty payments due to Kirby under the Agreements in escrow. PLT 45; PLT 47; PLT 97.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

121.   Having failed to transfer his rights under the Head Agreement, the ISAF Agreement, the 1983 Builder Agreement, and the 1989 Builder Agreement to Global Sailing, Kirby and Global sailing entered an agreement on September 22, 2011 to formally address the failed transfer in a way that did not require Kirby to return the whole purchase price for the attempted sale. Specifically, the agreement required Kirby repay GSL $1 million and GSL would receive 50% of all future royalty payments for Kirby Sailboats. PLT 48; Kirby Decl., ¶ 35.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

122.    That agreement explained that:

Because of the failure to obtain all required consents and approvals to transfer the Contracts and certain of the Kirby Sailboat Rights to Global Sailing, the Contracts and certain of the Kirby Sailboat Rights to be conveyed to Global Sailing remained and still remain in the possession of Kirby. The parties acknowledge and agree that, unless and until the Contracts and all such Kirby Sailboat Rights are transferred to Global Sailing, the IP Agreement has entirely failed to accomplish the Intent of the parties.

PLT 48.

**<u>OBJECTION:</u> ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

123.    By letter of September 29, 2011, Kirby wrote to LaserPerformance principle and owner, Farzad Rastegar, to confirm that the "2008 transaction between Global and Kirby . . . never did happen." PLT 4; Kirby Decl., ¶ 36.

**<u>OBJECTION:</u> ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

124.    Kirby asked Rastegar to "confirm that you and I are now back to the same business relationship that we had before the 2008 attempted transfer. As my effort to transfer the rights did not happen the cancellation of the PSE building rights did not happen either, and we are back to the former Kirby / PSE contract." PLT 4.

**<u>OBJECTION:</u> ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

125.    Rastegar responded to Kirby later that day, and refused to recognize his statement. PLT 4.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

126.    Several minutes after sending his note to Kirby, Rastegar sent an email to his staff and instructed them not to speak with Kirby or Global Sailing.  Rastegar stated:

> Under the circumstances, this is to formally instruct that NO conversations including private and personal conversations could be had by yourselves or any member of the company, direct or indirect, with Bruce Kirby or with Global Sailing, or with anyone in respect to or in connection with the matters between Kirby/GS and LP, past or present or future. This relates to the business of the companies and the arrangements historically in respect to these matters. PLEASE ensure that NO person would do so either on your behalf. If you are in any way subject to solicitation by Kirby/GS/ILCA etc, you should simply decline comment AND offer NO personal views either.

PLT 8.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not establish the presence of a genuine dispute and/or the facts are immaterial.**

**LaserPerformance Conspired with ILCA to Eliminate Kirby from the Laser Business in Violation of the Head Agreement and the ISAF Agreement.**

127.    During the time that Kirby was attempting clarify his contractual position, LaserPerformance was secretly colluding with ILCA to eliminate Kirby from the Laser business in direct violation of the ISAF Agreement and the Head Agreement.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as no materials are cited in support of this statement.**

128.    During 2010, Farzad Rastegar hatched a plan under which LaserPerformance threatened destruction of the Laser class unless ILCA agreed to push through an illegal rule

change eliminating the requirement that builders be authorized by Kirby.  *See* PLT 071, 021, 009-010, 017-018, 041.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

129.    The illegal rule change was a violation of the Head Agreement, the ISAF Agreement, the 1983 Builder Agreement, and the 1989 Builder Agreement. *See* PLT 030-032, 072.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.  Indeed, the cited materials make no mention of ILCA rules, whatsoever.

130.    In April of 2010, ILCA President Heini Wellman sent LaserPerformance an email stating that ILCA would not "take sides in any way" in the dispute between LP and Kirby.  PLT 070.

131.    In response, Farzad Rastegar and LaserPerformance threatened ILCA to "pick [a side] because the class is in complete jeopardy of losing everything" in an email dated June 15, 2010.  PLT 071.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

132.    By email of September 23, 2010, LaserPerformance chairman, William Crane, then invited ILCA President, Heini Wellman, and his second in command, Jeff Martin, to join

Crane and Rastegar in Norwalk, Connecticut, at LaserPerformance's expense, to discuss the relationship between ILCA and LaserPerformance in view of the pending situation with Kirby and Global Sailing. PLT 21 at 2.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

133.    ILCA agreed to attend the meeting in Norwalk, Connecticut on October 25-26, 2010.  PLT 021 at 1-2.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

134.    By email of September 28, 2010, Mr. Rastegar then stated to ILCA that "[s]o far as you gentlelmen (sic) understand that this is LP's last and final attempt to reach agreements in all material respects whether in connection with the future of the class or in connection with ILCA and the GS situation. **After this meeting, there will be no other meetings that LP can afford and therefore be guided accordingly."** PLT 21 at 1 (emphasis added).

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

135.    Crane reiterated the not-so-veiled threat later that day, stating that "I really want it to be clear to you and the class that this is our final attempt at not only a resolution to the issues facing both the ILCA and LaserPerformance, but a definitive plan to move forward together."

PLT 21 at 1. Crane further stated "[t]he future relationship between LaserPerformance and the class is at stake. We will only have one shot at this as we are out of time." PLT 21 at 1.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

136.    Kirby was not invited to the illegal rule change meeting.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

137.    LaserPerformance and ILCA met in Norwalk, Connecticut and Rastegar proposed the illegal rule change.  PLT 009, 017-018. Rastegar threatened to withhold sponsorship of ILCA to the extent it did not go along.  PLT 010, 017, 020.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

138.    Soon after the meeting, ILCA agreed to move forward with the illegal rule change. PLT 009 ("The ILCA will move forward with the plan, (essentially your plan), immediately.").

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

Shortly after ILCA notified LaserPerformance it would implement the illegal rule change, Crane and Rastegar discussed sponsoring an ILCA event in San Francisco "in light of the

last          call          with          Heini."                    PLT          010.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

139.

140.     In early January, 2011, ILCA's legal team gave it the go ahead to implement the illegal rule change. PLT 017.  As noted in Crane's email to Rastegar, "ILCA [was] following the plan we all agreed upon in October" at the meeting in Norwalk, CT.  PLT 017.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

141.     Thereafter, on January 11, 2012, LaserPerformance sent Heini Wellman letter expressing LaserPerformance's and Maclaren's "very exciting plans" for sponsoring Laser sailing on a global level. PLT 003.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

142.     Although not mentioned in the letter, LaserPerformance's and Maclaren's offer of sponsorship was contingent on ILCA first drafting and obtaining approval of the illegal rule change. PLT 003.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

143.    Approving the rule change required three things: (1) approval by the World Counsel, (2) approval by the Class, and (3) ratification by ISAF.  *See* PLT 100

144.    In a January 23, 2011 email, Heini Wellman confirmed ILCA's intention to move forward with Rastegar's plan to implement the illegal rule change and cut out Bruce Kirby's royalty right, enclosing a draft for Rastegar's review before ever proposing the illegal rule change to the ILCA constituency—the world counsel and, ultimately, the sailors.  PLT 018.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

145.    Mr. Wellman's email also notes Rastegar's frustration with "the slow progress regarding the agreed rule change," states ILCA is "finally moving forward as agreed during our meeting in Norwalk" in October 2010, and expresses his "hope that this also clears the way for resolving other outstanding issues between Laser Performance and the class" regarding sponsorship.  PLT 018.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

146.    ILCA proposed the illegal rule change to the World Council on February 12, 2011. PLT 41. The illegal rule change proposal is shown below:

## International Laser Class Association



### Rule change

It is proposed that the following two rule changes be adopted. The changes are marked in red and underlined. They are:

**1. Class Rules, PART ONE**

**FUNDAMENTAL RULE**

Proposal: the expression licensed builder is replaced by approved builder:

**Present:**

The Laser shall be raced in accordance with these rules, with only the hull, equipment, fittings, spars, sail and battens manufactured by a licensed builder in accordance with the Laser design specification known as the Construction Manual which is registered with ISAF

**Proposed:**

The Laser shall be raced in accordance with these rules, with only the hull, equipment, fittings, spars, sail and battens manufactured by an approved builder in accordance with the Laser design specification known as the Construction Manual which is registered with ISAF.

**2. Class Rules, PART ONE**

**DEFINITION OF BUILDER**

Proposal: the expression "has a building agreement from Bruce Kirby or Bruce Kirby Inc. to build the Laser and" is eliminated:

**Present:**

A builder is a manufacturer that has a building agreement from Bruce Kirby or Bruce Kirby Inc. to build the Laser and has the rights to use a Laser trademark and has been approved as a Laser Builder by each of the International Sailing Federation and the International Laser Class Association.

**Proposed:**

A builder is a manufacturer that has the rights to use a Laser trademark and has been approved as a Laser Builder by each of the International Sailing Federation and the International Laser Class Association.

PLT 041.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

147.    The ILCA World Counsel approved the illegal rule change on March 7, 2011. *See* PLT 100 at 2 ("After approval by the World Council and the Advisory Council on March 7[th] 2011 . . .").

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

148.   Despite the ILCA World Council's passage of the illegal rule change, LaserPerformance was upset that the illegal rule change had not yet been approved by the ILCA members and ISAF and thereby completed, and responded by holding up its decision to provide boats for an ILCA class event in San Francisco. PLT 25.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

149.   By email of April 28, 2011, from Crane to Heini Wellman, LaserPerformance stated "In October we agreed that if the rule change took place we could go back to business as usual. That has not happened - so everything we have done to date has been done by exception." PLT 020. LaserPerformance then threatened to stop working with ILCA unless it continued down the path of eliminating Kirby from the Laser business. PLT 020.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

150.   On or around October 19, 2011, the ILCA membership voted to pass the illegal rule change, leaving only ISAF approval as the final step to implementation.  PLT 100.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

151.   By email of January 13, 2012, ILCA sought additional sponsorship from LaserPerformance, stating, "Its been some time since we have discussed LP's sponsorship of ILCA-NA . . . the last time you indicated we needed to wait until after the vote on the rule change after which you might have a better idea about where this might stand." PLT 22.  With the member approval of the illegal rule change in place, ILCA knew LaserPerformance would be willing to provide it sponsorship and support once again.  *See* PLT 025 ("For as long as I have been here, LaserPerformance has supported ILCA-NA through an annual sponsorship.  This year I have held up this sponsorship for all the well known reasons." (email by Crane to Rastegar).

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

**Kirby Terminated the 1983 Builder Agreement**

152.   LPE has failed to pay royalties to Kirby due on the 1983 Builder Agreement on boats sold since October 1, 2009.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

153.   On October 11, 2012, and again on November 15, 2012, Kirby gave written notice to LPE of its default under the 1983 Builder Agreement. PLT 050; PLT 052; PLT 073, ¶ 61.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

154.    On November 15, 2012 and again on March 1, 2013, Kirby gave written notice to LPE of termination of the 1983 Builder Agreement pursuant to article 10.2 due to failure to cure the default for nonpayment of royalties pursuant to article 10.2. PLT 052; PLT 053; PLT 073, ¶ 62.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

155.    Kirby provided written notice to ISAF and ILCA that Kirby had terminated LPE under the 1983 Builder Agreement and told ILCA and ISAF that they were no longer authorized to issue ISAF Plaques to LPE. PLT 101, 102.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

156.    Despite Kirby's instruction, ISAF and ILCA continued to issue ISAF Plaques to LPE in violation of the Head Agreement, the ISAF Agreement, and the 1983 Builder Agreement. Kirby Decl., ¶ 39.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

**Kirby Terminated the 1989 Builder Agreement**

157.    QMI has failed to pay royalties to Kirby due on the 1989 Builder Agreement on boats sold since September 1, 2009.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

158.    On July 17, 2012, Kirby gave written notice to QMI of default under the 1989 Builder Agreement pursuant to article 10.2 for nonpayment of royalties pursuant to article 10.1(e). PLT 049; PLT 073, ¶ 51.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

159.    On October 11, 2012, Kirby gave written notice to QMI of termination of the 1989 Builder Agreement pursuant to article 10.2 due to failure to cure the default for nonpayment of royalties pursuant to article 10.2. PLT 051; PLT 073, ¶ 52.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

160.    Kirby provided written notice to ISAF and ILCA that Kirby had terminated QMI under the 1989 Builder Agreement and informed ILCA and ISAF that they were no longer authorized to issue ISAF Plaques to QMI. PLT 101, 102,

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

161.    Despite Kirby's instruction, ISAF and ILCA continued to issue ISAF Plaques to QMI in violation of the Head Agreement, the ISAF Agreement, and the 1989 Builder Agreement. Kirby Decl., ¶ 39.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

**ISAF Ratified the Illegal Rule Change**

162.    On March 4, 2013, Kirby filed this lawsuit. As of that date, ISAF had not approved the illegal rule change eliminating the requirement of builder authorization by Kirby.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

163.    On April 8, 2013, LaserPerformance's Chairman sent a written request to ISAF's President, Jerome Pels, again requesting ISAF's ratification of the illegal rule change promulgated by ILCA nearly two years earlier. PLT 91

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

164.    On April 19, 2013, LaserPerformance ordered the new plaques omitting the trademark BRUCE KIRBY.  PLT 65.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

165.   On April 23, 2013, ISAF approved the illegal rule change, in violation of Kirby's contractual rights under the Head Agreement, the ISAF Agreement, the 1983 Builder Agreement, and the 1989 Builder Agreement. PLT 93.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.**

166.   ILCA's new rule deleted the requirement that an authorized builder have a builder agreement from Bruce Kirby or Bruce Kirby Inc. to build the Laser, while it retained the requirements for a trademark license and approval of both ISAF and ILCA. PLT 87; PLT 88; PLT 93:

> **DEFINITION OF BUILDER**
>
> A Builder is a manufacturer that has ~~a building agreement from Bruce Kirby or Bruce Kirby Inc. to build the Laser and has~~ the rights to use a Laser trademark, <u>is manufacturing the hull, equipment, fittings, spars, sails and battens in strict adherence to the Construction Manual,</u> and has been approved as a Laser Builder by each of the International Sailing Federation and the International Laser Class Association.
>
> A Builder is a manufacturer that has the rights to use a Laser trademark, is manufacturing the hull, equipment, fittings, spars, sails and battens in strict adherence to the Construction Manual, and has been approved as a Laser Builder by each of the International Sailing Federation and the International Laser Class Association.

*Compare* PLT 087, Part One, *and* PLT 088, Part One.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support or establish the presence of a genuine dispute and/or the facts are immaterial.

167.    The existing rules already required the builder to manufacture in accordance with the Laser design specification (known as the Construction Manual). PLT 087.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support or establish the presence of a genuine dispute and/or the facts are immaterial.

168.    As of the date of this document, LP is selling Laser sailboats, they are paying ILCA and ISAF a royalty, and sponsoring the operation of both entities, but they refuse to pay Bruce a very modest royalty for the worlds' favorite racing sailboat.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not support the factual assertion and/or establish the presence of a genuine dispute and/or the facts are immaterial.

## II.    ILCA's OBJECTIONS TO PLAINTIFF'S RESPONSES TO ILCA'S LOCAL RULE 56(a)(1) STATEMENT.

ILCA's Objections to Plaintiffs' Local Rule 56(a)(2) Statement are as follows:

**ILCA's Material Fact No. 1:**

ILCA is a self-administered, self-funded, non-profit international organization that provides coordination, organization and communication for owners of the Laser Class of sailboats worldwide.  See Affidavit of Tracy Usher, ¶3; attached hereto as Ex. 1.

**Plaintiff's Response:**

Plaintiff admits that ILCA provides coordination, organization and communication for owners of the Laser Class of sailboats worldwide.

Plaintiff denies that ILCA is self-administered to the extent that that phrase is ambiguous. ILCA is administered and managed through a paid staff.  Plaintiff denies that ILCA is a non-profit organization as it has developed an alternate sail for the laser which is contrary to the builder agreement and which it hopes to commercialize and has purchased boats which it has or intends to charter for profit.

Plaintiff denies that ILCA is self-funded.  ILCA receives royalties from the sale of each Kirby Sailboat from the builder and therefore continues to provide plaques to the builder even though they violate Kirby's rights under the builder agreement.  ILCA receives sponsorship from related LP corporate entities such as Maclaren.  *See* PLT 077 at 72:21-73:25; PLT 078 84:21-85:3.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not dispute the facts asserted by ILCA.**

**ILCA's Material Fact No. 2:**

ILCA consists of hundreds of volunteers around the world who work all year-round at the sailing clubs, offices, and even sailing federations to organize Laser events spanning from club regattas to training camps to national, world, and Olympic championships for Laser sailors.  See Affidavit of Tracy Usher, ¶8, attached hereto as Exhibit 1.

**Plaintiff's Response:**

Admitted.

**ILCA's Material Fact No. 3:**

As part of ILCA's work, ILCA oversees the manufacture and distribution of plaques (decals) which identify sailboats as conforming to the Laser Class rules issued by ILCA and approved by the International Sailing Federation Ltd. ("ISAF") and certify whether a particular boat is class legal.  ILCA receives a small fee for each plaque it distributes and collects a fee on behalf of ISAF.  See Affidavit of Tracy Usher, ¶12, attached hereto as Ex. 1.

**Plaintiff's Response:**

Plaintiff denies ILCA's characterization that the royalty fee is "small."  ILCA's budget is derived in large part from the royalties it receives from plaque sales, in addition to sponsorships. *See* PLT 077 at 72:21-73:25; PLT 078 84:21-85:3.  Plaintiff admits the remainder of ILCA's Material Fact No. 3.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the materials cited do not dispute the facts asserted by ILCA.   Plaintiffs' denial is based upon a subjective characterization of relative size.

**ILCA's Material Fact No. 4:**

ILCA provides the plaques to builders, but does not affix the plaques on the boats.  The right to affix the plaques on the hull of each boat belongs to the builders.  See Plaintiff's First Amended Complaint, Introductory paragraph 2 on p. 2, attached hereto as Ex. 2.  Plaintiff does not allege that ILCA affixed any plaques bearing Bruce Kirby's name to any boat.  See Plaintiff's First Amended Complaint, attached hereto as Ex. 2.

**Plaintiff's Response:**

Plaintiff admits that ILCA provides plaques to builders and that ILCA dictates, subject to the approval of ISAF and the authority of Kirby, the content of the plaques. Plaintiff notes that ILCA receives a royalty for all Laser boats sold in exchange for providing plaques under

authority of Kirby. PLT 078 at 84:21-85:3. Plaintiff also notes that ILCA grants the right to the builders to affix the plaques on the hull of authorized boats. PLT 078 at 89:10-16. Each of these are solely within Kirby's rights, and ILCA acts merely as his agent. *See* PLT 086.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement. Furthermore, the materials cited do not establish the presence of a genuine dispute regarding the factual statement.

**ILCA's Material Fact No. 5:**

ILCA really only runs sailing events. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p. 194, attached hereto as Ex. 3.

**Plaintiff's Response:**

Denied. Inadmissible testimony. ILCA, for example, is responsible for authorizing builders and ensuring that boats are manufactured in strict accordance with the construction manual as a precondition of issuing plaques. *See* PLT 087; PLT 088. ILCA is only supposed to run events—in fact they aided the builder to subvert Kirby's rights by providing them plaques for money and changing their rules to cut Kirby out of his own boat. *See supra* KSMF ¶¶ 127-151.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement. Furthermore, the materials cited do not establish the presence of a genuine dispute regarding the factual statement.

**ILCA's Material Fact No. 6:**

ILCA entered into an agreement known as the ISAF Agreement with the plaintiffs, Bruce Kirby Inc. and Bruce Kirby, collectively ("Kirby"), Performance Sail Craft, Inc., Laser International Holdings Limited, and ISAF'S predecessor, the International Yacht Racing Union ("IYRU"). See Affidavit of Tracy Usher, ¶12 , attached hereto as Ex. 1.

**Plaintiff's Response:**

Plaintiff admits that it is a party to an agreement dated November 30, 1983 commonly referred to as the ISAF Agreement. PLT 032. Plaintiff admits that ILCA is a party to that agreement, as are ISAF and the trademark owners. PLT 032.

**ILCA's Material Fact No. 7:**

ILCA is not a party to any Builders Agreements.   See Plaintiff's First Amended Complaint,  ¶¶ 23 and 34, attached hereto as Ex. 2.

**Plaintiff's Response:**

Denied.  At a minimum, ILCA is a third beneficiary under the 1983 Builder Agreement and the 1989 Builder Agreement.

Under the 1983 Builder Agreement, the builder is obligated to pay ILCA a fee "for each Kirby Sailboat sold by Licensee." PLT 30, ¶ 8.2(c). Under the 1983 Agreement, Kirby is obligated to issue hull/sail numbers to the builder for each boat sold; Kirby delegated this authority to ILCA. PLT 30, ¶ 6.2.

Under the 1989 Builder Agreement, the builder is obligated to pay ILCA a fee for each Kirby Sailboat sold by Licensee. PLT 31, ¶ 8.2(c). Under the 1989 Agreement, Kirby is

obligated to issue hull numbers to the builder for each boat sold; Kirby delegated this authority to ILCA. PLT 31, ¶ 6.2.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement. The materials cited do not establish the presence of a genuine dispute regarding the factual statement. The agreements speak for themselves and establish beyond a reasonable doubt that ILCA is not a party to either PLT 30 or PLT 31.

**ILCA's Material Fact No. 8:**

In 1992, ILCA and IYRU entered into an agreement governing the issuance of the plaques and collection of fees. See Affidavit of Tracy Usher , ¶16, attached hereto as Ex. 1.

**Plaintiff's Response:**

Admitted. Under that Agreement, ILCA and IYRU affirmatively recognized Kirby's authority to issue plaques and that he had "appointed ILCA its agent for the issue of serial sail number for each LASER Class Boat (sic)." PLT 086, Recital (E).

**ILCA's Material Fact No. 9:**

Builders order plaques from ILCA and ILCA reports the number of plaques ordered to ISAF (f/k/a IYRU). See Affidavit of Tracy Usher, ¶17, attached hereto as Ex. 1.

**Plaintiff's Response:**

Denied. ILCA's authority to issue plaques and assign sail numbers thereto is subject to Kirby's delegation of such authority to ILCA. PLT 086, ¶ 9.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not

**respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.**

**ILCA's Material Fact No. 10:**

ILCA collects fees from the builders and distributes an appropriate portion of such amounts to ISAF. See Affidavit of Tracy Usher, ¶20, attached hereto as Ex. 1.

**Plaintiff's Response:**

Denied.  Under the 1992 Agreement, ISAF appointed ILCA as its agent for the collection of ISAF Fee from the builders. PLT 086.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.**

**ILCA's Material Fact No. 11:**

The plaques previously included a reference to Bruce Kirby.  References to Bruce Kirby were removed after Kirby notified ILCA and ISAF that Kirby took the position that certain builders were no longer authorized to use the Kirby's name or trademark. See Affidavit of Tracy Usher, ¶25, attached hereto as Ex. 1.

**Plaintiff's Response:**

Denied.  Kirby terminated Defendants LPE and QMI for failure to pay royalties due under the Builder Agreements. PLT 030-031.  At least as early as February 2011, Defendants QMI, LPE, and ILCA hatched and implemented a scheme to change the ILCA rules requiring Kirby's approval of builders and cut out Plaintiff's right to a royalty under the agreements.  *See*

*supra* KSMF ¶¶ 127-151. The relevant agreements required use of Kirby's names on the plaques. This changed on April 23, 2013 when ISAF ratified the illegal rule change.

> **OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.**

**ILCA's Material Fact No. 12:**

ILCA merely issues plaques for sailboats; it does not manufacture, advertise or sell any sailboats. See Plaintiff's First Amended Complaint, ¶12, attached hereto as Ex. 2.

**Plaintiff's Response:**

Plaintiff denies that "ILCA merely issues plaques for sailboats." ILCA, for example, is responsible, per authority of Kirby, for authorizing builders and ensuring that boats are manufactured in strict accordance with the construction manual as a precondition of issuing plaques. *See* PLT 087; PLT 088.

> **OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement that ILCA does not manufacture, advertise or sell any sailboats.  These facts are not in dispute.**

**ILCA's Material Fact No. 13:**

Kirby alleges that he is the designer of a 13 foot 10 inch Laser Class sailboat, which he refers to as the "Kirby Sailboat."  See Plaintiff's First Amended Complaint, ¶13, attached hereto as Ex. 2.

**Plaintiff's Response:**

Plaintiff admits that Kirby designed the Kirby Sailboat, currently sold and sailed worldwide under the trademark LASER. PLT 078 23:17-19. This is an established fact and is accepted by ISAF.

**ILCA's Material Fact No. 14:**

On November 30, 1983, Kirby entered into an Agreement (the "ISAF Agreement") with Performance Sailcraft, Inc., Laser International Holdings Limited, ILCA, and the International Yacht Racing Union ("IYRU"). IYRU is the predecessor to ISAF. See Plaintiff's First Amended Complaint, ¶22, attached hereto as Ex. 2. The ISAF Agreement states that defendant International Laser Class Association was formed by owners of the sailboats designed by Kirby, which are denominated "Laser Class boat[s]" in the agreement (attached as Ex. 3 to Compl.). However, Kirby refers to them as the "Kirby Sailboat" in the Complaint. Compare ISAF Agreement Plaintiff's First Amended Complaint, ¶20, attached hereto as Ex. 2.

**Plaintiff's Response:**

Admitted that Kirby is a party to the ISAF Agreement. Admitted that IYRU is the predecessor to ISAF and has succeeded to all of IYRU rights and obligations under the ISAF Agreement. Admitted that the ISAF Agreement refers to Laser Class Sailboats and that the Builder Agreements refer to Kirby Sailboats.

**ILCA's Material Fact No. 15:**

The ISAF Agreement states that ILCA and others applied to the IYRU for International Status for the Laser Class sailboats, and that such status was obtained in 1974. ISAF Agreement, Introduction ¶¶1-6. The ISAF Agreement defines "Builders" of Laser Class boats as any manufacturer approved by the IYRU, licensed by Kirby, and licensed by the owner of the

"LASER" trademark to use that trademark in association with the boats. <u>See</u> ISAF Agreement ¶1.   The ISAF Agreement states that the builders identified in Schedule 2 to the ISAF Agreement are authorized to manufacture and distribute Laser Class boats within certain specified territories.   ISAF Agreement ¶9.1.[1]   The ISAF Agreement also provides that each Builder would pay a small fee to an IYRU affiliate for each Laser Class boat manufactured by the Builder.   ISAF Agreement ¶13.1.   Kirby entered into a series of license agreements with manufacturers for the production of Laser Class boats (the "Builder Agreements").   <u>See</u>, <u>e.g.</u>, Plaintiff's First Amended Complaint, ¶¶23-44, attached hereto as Ex. 2.     Quarter Moon and LaserPerformance are successors to two Builder Agreements.  Compl. ¶¶28, 37.  Kirby alleges that ISAF, in connection with ILCA, is responsible for issuing plaques to builders of Laser Class boats. Compl. ¶¶70-77.   As part of its responsibilities regulating sailing competitions, ISAF ensures that particular classes of sailboats granted ISAF status meet the required approved specifications for those classes.  Declaration of Jason Edward Thomas Smithwick, dated July 18, 2013, attached to ISAF's Motion to Dismiss ("Smithwick Decl.") ¶5, attached hereto as Exhibit 4.   ILCA oversees the manufacture and distribution of plaques that identify sailboats as conforming to the Laser Class rules issued by ILCA and approved by ISAF, and certify that a particular boat is "class legal."  Usher Aff. ¶ 12, attached hereto as Ex. 1; Smithwick Decl. ¶7, attached hereto as Exhibit 4.

**Plaintiff's Response:**

*The ISAF Agreement states that ILCA and others applied to the IYRU for International Status for the Laser Class sailboats, and that such status was obtained in 1974.   ISAF Agreement, Introduction ¶¶1-6.*

- Admitted.

---

[1] Kirby did not include Schedule 2 in the copy of the ISAF Agreement attached as Exhibit 3 to the Complaint.

*The ISAF Agreement defines "Builders" of Laser Class boats as any manufacturer approved by the IYRU, licensed by Kirby, and licensed by the owner of the "LASER" trademark to use that trademark in association with the boats. See ISAF Agreement ¶1.*

- Admitted. The ISAF Agreement defines Builder as follows:

```
"Builder" means any manufacturer::

(a)   approved by the IYRU to manufacture the Laser class boat;

(b)   licensed by Bruce Kirby and Kirby Inc. to manufacture,
      sell and market Laser class boats in a specified
      territory; and

(c)   licensed by Trade Mark Owner to use the trade mark
      "LASER" in association with such boats in such specified
      territory.

For the purpose of this Agreement, Builder may include Trade
Mark Owner.
```

PLT 32, ¶ 1.

*The ISAF Agreement states that the builders identified in Schedule 2 to the ISAF Agreement are authorized to manufacture and distribute Laser Class boats within certain specified territories. ISAF Agreement ¶9.1.*

- Admitted. The ISAF Agreement provides in relevant part that:

> 9.1   It is understood and agreed by IYRU and Holdings that the Builders set forth in Schedule 2 as amended from time to time are authorized to manufacture the Laser class boat and to distribute the same within a Licensed Territory and that further Builders may only be appointed with the prior written approval of Kirby Inc., Trade Mark Owner and the IYRU in accordance with the following principles, unless otherwise agreed:
>
> (a)  the proposed marketing territory shall not at such time be adequately served by any Builder;
>
> (b)  the market potential shall be sufficient to sustain minimum production of not less than 300 Laser class boats per year for a minimum of five years;
>
> (c)  all contractual agreements are entered into as are necessary to permit the control of manufacture in accordance with Clauses 5, 6 and 7 hereof, the payment of all royalties and fees and the protection of the Licensed Territories of other Builders;
>
> (d)  the proposed Builder has an established ability to manufacture, sell and market first quality watercraft; and
>
> (e)  the proposed Builder has sufficient net worth, working capital and bank lines of credit to enable such Builder to manufacture Laser class boats.

*The ISAF Agreement also provides that each Builder would pay a small fee to an IYRU affiliate for each Laser Class boat manufactured by the Builder.  ISAF Agreement ¶13.1.*

- Denied.  Paragraph 13.1 of the ISAF Agreement states that:

> 13.1   In consideration of the services to be performed by the IYRU herein set forth, there shall be paid to Holdings by each builder manufacturing the Laser class boat, a fee of such amount as is established from time to time with the approval of all the parties hereto, such fee is presently $e.00 Canadian for each Laser class boat manufactured by such Builder. Such payments shll be computed monthly.  Payment of all sums due shall be made by the Builder within 30 days from the end of the month with respect to all Laser class boats sold or otherwise disposed of during such month.

PLT 32, ¶ 13.1.

*Kirby entered into a series of license agreements with manufacturers for the production of Laser Class boats (the "Builder Agreements").*  See, e.g., Plaintiff's First Amended Complaint, ¶¶23-44, attached hereto as Ex. 2.

- Admitted.

*Quarter Moon and LaserPerformance are successors to two Builder Agreements. Compl. ¶¶28, 37.*

- Admitted that LPE is the successor to the rights and obligations of Brook Shaw Motor Services Ltd. under the 1983 Builder Agreement. Admitted that QMI is the successor to the rights and obligations of PY Small Boats, Inc. under the 1989 Builder Agreement. Otherwise, Kirby denies the statements of this subsection.

*As part of its responsibilities regulating sailing competitions, ISAF ensures that particular classes of sailboats granted ISAF status meet the required approved specifications for those classes. Declaration of Jason Edward Thomas Smithwick, dated July 18, 2013, attached to ISAF's Motion to Dismiss ("Smithwick Decl.") ¶5, attached hereto as Exhibit 4.*

- Admitted. However, ISAF has delegated the control and exercise of this authority to ILCA with respect to the Kirby Sailboat, currently sold and sailed worldwide under the trademark LASER.

*ILCA oversees the manufacture and distribution of plaques that identify sailboats as conforming to the Laser Class rules issued by ILCA and approved by ISAF, and certify that a particular boat is "class legal." Usher Aff. ¶ 12, attached hereto as Ex. 1; Smithwick Decl. ¶7, attached hereto as Exhibit 4.*

- Admitted to the extent that ILCA has usurped Kirby's contractual rights via the illegal rule change. Noted that ILCA does a lot more than just run sailing events per the testimony of William Crane cited by LP above.

- **<u>OBJECTION:</u> ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's lone denial in this response is not responsive to the statement of material fact and does not respond to that statement. The**

**materials cited do not establish the presence of a genuine dispute regarding the factual statement and no explanation is given for the denial beyond a citation to the ISAF agreement, the terms of which are not in dispute.**

**ILCA's Material Fact No. 16:**

In 1992, ILCA and IYRU entered into an agreement governing the issuance of the plaques and collection of fees.  See Agreement Relating to the Collection of IYRU Fees in Respect of the Laser Class Boat and the Issue of Plaques, dated Nov. 5, 1992 (attached as Ex. A to Smithwick Decl.) ("1992 Agreement").  Pursuant to the ISAF Agreement and the 1992 Agreement, ILCA collects fees from the builders and shares a portion of those fees with ISAF.  ISAF Agreement ¶¶13.1, 13.2; 1992 Agreement ¶3.1.1.  The plaques are not to be issued to any Builder until the Builder pays the full amount of the fee.  1992 Agreement ¶6.1.

**Plaintiff's Response:**

Denied. The 1992 Agreement related to the collection of ISAF Fees in respect to the Laser Class Boat and the Issue of Plaques. PLT 086. ISAF delegates responsibility to issue plaques, subject to approval of Kirby, to ILCA and further delegates the responsibility to collect ISAF's fees from the builder.  PLT 086. The issuance of plaques and collections of fees is governed by the 1983 ISAF Agreement. PLT 032; PLT 086.

Denied that ILCA collects fees from the builders and shares a portion of those fees with ISAF.  Under the 1992 Agreement, ISAF appointed ILCA as its agent for the collection of ISAF Fees from the builders.  PLT 086, ¶ 3.1.1.

Plaintiff admits that Paragraph 6.1 of the Builder Agreement is reproduced below, otherwise, Plaintiff denies the remaining ILCA's statement thereon.

> 6.1   ILCA shall not issue any Plaque to any Builder whose name is set out or is deemed to be set out in Schedule 2 until such time as ILCA has received from such Builder the full amount of the IYRU Fee.

PLT 86, ¶ 6.1.

**OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.  ILCA and the plaintiffs agree to the contents of the 1992 ISAF Agreement.

**ILCA's Material Fact No. 17:**

When builders order plaques, ILCA reports the number of plaques ordered to ISAF. See Usher Aff. ¶17, attached hereto as Ex. 1; 1992 Agreement ¶7.3. The reports are delivered to ISAF's United Kingdom subsidiary company in England or the Isle of Man.  See Usher Aff. ¶18, attached hereto as Ex. 1; Smithwick Decl. ¶9, attached hereto as Exhibit 4.  The reports from ILCA identify the Builder ordering the plaques, but not specifically where any particular boats will be sold or used.  See Usher Aff. ¶19, attached hereto as Ex. 1; 1992 Agreement ¶7.3.  ISAF sends invoices to ILCA for the appropriate fees based on this report.  Smithwick Decl. ¶9, attached hereto as Exhibit 4.   ILCA collects the fees from the builders and distributes the appropriate amount to ISAF. See Usher Aff. ¶20, attached hereto as Ex. 1; Smithwick Decl. ¶10, attached hereto as Exhibit 4.

**Plaintiff's Response:**

Plaintiff denies ILCA's statements in paragraph 17 to the extent they indicate ILCA was unaware that Defendant QMI was ordering plaques and sending them to LPE after LPE had been allegedly terminated, as ILCA not only knew but actually suggested it. PLT 099.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement. The materials cited do not establish the presence of a genuine dispute regarding the factual statement.**

**ILCA's Material Fact No. 18:**

Builders place orders for plaques with the ILCA international office. See Usher Aff. ¶21, attached hereto as Ex. 1. The plaques themselves are manufactured in Europe. Plaques previously included a reference to Bruce Kirby. See Usher Aff. ¶25, attached hereto as Ex. 1. References to Bruce Kirby were removed after Kirby notified ILCA and ISAF that Kirby took the position that certain builders were no longer authorized to use the Kirby's name or trademark. See Usher Aff. ¶25, attached hereto as Ex. 1.

**Plaintiff's Response:**

Denied. All plaques issued by ILCA and or ISAF prior to April 23, 2013 included the BRUCE KIRBY trademark. ILCA removed the BRUCE KIRBY trademark from the plaques only after ISAF approved the illegal rule change in April of 2013. *See supra* KSMF ¶¶ 162-168. Moreover, Defendants QMI, LPE and ILCA hatched and implemented their scheme to remove Kirby's royalty right and reference from the plaques at least as early as February of 2011. *See supra* KSMF ¶¶ 127-151.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.**

**ILCA's Material Fact No. 19:**

Originally, the plaques issued to builders included text that indicated that a Laser Class boat was authorized "by Bruce Kirby Inc."  <u>See</u> Ex. 16 to Plaintiff's First Amended Complaint, attached hereto as Ex. 2. The Complaint defines these as "ISAF Plaques." Plaintiff's First Amended Complaint, ¶72, attached hereto as Ex. 2.  However, references to Bruce Kirby were removed from the plaques after Kirby notified ISAF that Kirby took the position that certain builders were no longer authorized to use the Kirby name or trademark.  See Usher Aff. ¶25; Smithwick Decl. ¶11, attached hereto as Exhibit 4.  The Complaint defines plaques without Kirby's name as "New ISAF Plaques." Plaintiff's First Amended Complaint, ¶78, attached hereto as Ex. 2.

**Plaintiff's Response:**

The Complaint speaks for itself.  Kirby denies the remaining allegation of Statement 19.  *See* Kirby Response to ILCA's Statement 18.

**OBJECTION:** **ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.**

**ILCA's Material Fact No. 20:**

The decision of defendant sailboat builders, LaserPerformance Europe Limited, and Quarter Moon, Inc., with whom Kirby reach Builders Agreements, to stop paying royalties to Kirby had nothing to do with ILCA.  See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 192, attached hereto as Ex. 3.

**Plaintiff's Response:**

Denied. The decision of defendant sailboat builders, LaserPerformance Europe Limited, and Quarter Moon, Inc., to stop paying royalties to Kirby was the direct result of ILCA's express agreement to continue issuing plaques to the builders in willful violation of the ISAF Agreement, and further based on ILCA's express agreement to rewrite the ILCA rules to remove the requirement of Kirby's approval, also a willful violation of the ISAF Agreement.  Defendants ILCA, LPE, and QMI hatched and implemented their scheme at least as early as February of 2011. *See supra* KSMF ¶¶ 127-151.

> **OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.**

**ILCA's Material Fact No. 21:**

ILCA did not instruct LaserPerformance Europe Limited, and Quarter Moon, Inc. to stop paying royalties. See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., pp. 192-193, attached hereto as Ex. 3.

**Plaintiff's Response:**

Denied. The decision of defendant sailboat builders, LaserPerformance Europe Limited, and Quarter Moon, Inc., to stop paying royalties to Kirby was the direct result of ILCA's express agreement to continue issuing plaques to the builders in willful violation of the ISAF Agreement, and further based on ILCA's express agreement to rewrite the ILCA rules to remove the requirement of Kirby's approval, also a willful violation of the ISAF Agreement.  Defendants ILCA, LPE, and QMI hatched and implemented their scheme at least as early as February of 2011. *See supra* KSMF ¶¶ 127-151.

**OBJECTION: ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.**

**ILCA's Material Fact No. 22:**

ILCA did not threaten LaserPerformance Europe Limited, and Quarter Moon, Inc. in any way to induce either of the builders to default on any Builders Agreements.  See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p 193, attached hereto as Ex. 3.

**Plaintiff's Response:**

Denied.  The decision of defendant sailboat builders, LaserPerformance Europe Limited, and Quarter Moon, Inc., to stop paying royalties to Kirby was the direct result of ILCA's express agreement to continue issuing plaques to the builders in willful violation of the ISAF Agreement, and further based on ILCA's express agreement to rewrite the ILCA rules to remove the requirement of Kirby's approval, also a willful violation of the ISAF Agreement.  Defendants

70

ILCA, LPE, and QMI hatched and implemented their scheme at least as early as February of 2011. *See supra* KSMF ¶¶ 127-151.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.

## ILCA's Material Fact No. 23:

ILCA did not make any promises to LaserPerformance Europe Limited, and Quarter Moon, Inc. in return for either company's promise to default on any Builders Agreements.  See deposition of William S. Crane, as 30(b)(6) designee for LaserPerformance Europe Limited, and Quarter Moon, Inc., p. 193, attached hereto as Ex. 3.

## Plaintiff's Response:

Denied. The decision of defendant sailboat builders, LaserPerformance Europe Limited, and Quarter Moon, Inc., to stop paying royalties to Kirby was the direct result of ILCA's express agreement to continue issuing plaques to the builders in willful violation of the ISAF Agreement, and further based on ILCA's express agreement to rewrite the ILCA rules to remove the requirement of Kirby's approval, also a willful violation of the ISAF Agreement.  Defendants ILCA, LPE, and QMI hatched and implemented their scheme at least as early as February of 2011. *See supra* KSMF ¶¶ 127-151.

> **OBJECTION:** ILCA objects pursuant to Fed. R. Civ. P. 56(c)(1)(B) insofar as the plaintiff's response is not responsive to the statement of material fact and does not respond to that statement.  The materials cited do not establish the presence of a genuine dispute regarding the factual statement.

The defendant,
INTERNATIONAL LASER CLASS ASSOCIATION,
By its attorneys,


/s/ Kevin C. Cain
Kevin C. Cain, Esq.
ZIZIK POWERS, P.C.
690 Canton Street, Suite 306
Westwood, MA  02090
Direct Dial:  (781) 320-5441
Fax:  (781) 320-5444
kcain@zizikpowers.com

## CERTIFICATE OF SERVICE

This is to certify that on this 7th day of April, 2015, a true and correct copy of the foregoing Defendant International Laser Class Association's Objections to Plaintiffs' Local Rule 56(a)(2) Statement was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.


/s/ Kevin C. Cain
Kevin C. Cain