UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRUCE KIRBY, INC., *et al.*,
    *Plaintiffs*,

v.

LASERPERFORMANCE (EUROPE)
LIMITED, *et al.*,
    *Defendants*.

No. 3:13-cv-00297 (JAM)

# SUPPLEMENTAL RULING GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

This case concerns a dispute about contract and intellectual property rights involving the building and sale of the popular "Laser" racing sailboat. Now before me is a motion for summary judgment by defendants LaserPerformance (Europe) Limited (LPE) and Quarter Moon, Inc. (QMI) to dismiss four of the claims alleged by plaintiffs Bruce Kirby and Bruce Kirby, Inc. For the reasons set forth below, I will grant in part and deny in part the motion for summary judgment.

## BACKGROUND

The facts of this case are set forth at length in my earlier ruling on the parties' motions for summary judgment. *See Bruce Kirby, Inc. v. Laserperformance (Europe) Ltd*., 2016 WL 4275576, at *1 (D. Conn. 2016). In 1969, Bruce Kirby designed a small sailboat that became very popular for racing competitions. During the early 1980s, plaintiffs entered into an agreement, called the Head Agreement, with two international sailing bodies—the International Sailing Federation (ISAF, formerly known as the International Yacht Racing Union) and the International Laser Class Association (ILCA)—to regulate the manufacture, sale, and registration

of sailboats using the Bruce Kirby sailboat design and sold under the brand name "Laser." Doc. #219-6 at 2–23 (Head Agreement).

Plaintiffs also entered into "Builder Agreement" contracts with sailboat manufacturers for them to build the sailboats in conformity with the Head Agreement. The Builder Agreements granted LPE and QMI (as successors to the original parties to the Builder Agreements) a license to manufacture, sell, and market the Kirby-designed Laser sailboat. Docs. #228-11 at 2–26 (1983 Agreement); #228-12 (1989 Agreement). In exchange for this license, LPE and QMI owed plaintiffs royalties in an amount of 2% of the dealer wholesale price.

Affixed to each Kirby sailboat were two small plaques, which the parties refer to as an "ISAF plaque" and a "builder's plaque." The ISAF plaque was issued by ILCA to authorized builders and was required for a boat to compete in certain racing events. The ISAF plaque included the Laser name and logo, the International Sailing Federation logo, a unique "hull number" that identified the boat, as well as the phrase "AUTHORISED BY THE INTERNATIONAL SAILING FEDERATION, THE INTERNATIONAL LASER CLASS ASSOCIATION, BRUCE KIRBY INC. & TRADE MARK OWNER." Doc. #228 at 16. The builder's plaque included the Laser name and logo as well as the phrase "LASER SAILBOAT DESIGNED BY BRUCE KIRBY." Doc. #228 at 17.[1]

In 2008, Kirby decided to sell his rights in the Laser boat. He and his company entered into a sales contract with a New Zealand company called Global Sailing Limited (GSL) to receive $2.6 million for all of his interest in the Kirby Sailboat design, including certain intellectual property rights and all rights under agreements entered into between plaintiffs and

---

[1] The parties agree that there is a registered BRUCE KIRBY® trademark. Although there is no registered trademark for "Bruce Kirby, Inc." (which is the entity referred to in the ISAF plaques), at least a genuine fact issue exists whether this virtually identical name is subject to protection under the Lanham Act as a trade name. *See Morgans Grp. LLC v. John Doe Co.*, 2012 WL 1098276, at *4 n.7 (S.D.N.Y. 2012).

third parties relating to the Kirby Sailboat. In January 2009, GSL informed LPE and QMI that the rights had been assigned and to send all royalty payments to GSL. *See* Doc. #228-15. But, citing the lack of documentation to show that plaintiffs had assigned rights to GSL, LPE and QMI continued to send royalties to plaintiffs; when plaintiffs refused to accept the payments, defendants made the payments in escrow. *See* Docs. #228-16, #228-20, #228-22.

In May 2010, GSL attempted to terminate the Builder Agreement with LPE. *See* Doc. #219-5. QMI remained an authorized builder. In 2011, plaintiffs and GSL entered another agreement that purported to revise the parties' relationship in light of the lack of consent by the builders to the plaintiffs' transfer of their rights to GSL. Following entry into that agreement, plaintiffs then purported to terminate the Builder Agreements with QMI and LPE in 2012 on the basis of their non-payment of royalties that plaintiffs claimed were owed under the Builder Agreements. *See* Docs. #228-24, #228-25, #228-26, #228-27. The terminations advised that QMI and LPE were no longer entitled to obtain plaques for their sailboats. Plaintiffs also provided written notice to ISAF and ILCA of the terminations. Nonetheless, ISAF and the builders continued to issue the plaques and did not discontinue the use of the Bruce Kirby name on plaques until shortly after this lawsuit was filed in 2013.

In this lawsuit, plaintiffs allege seven causes of action. Doc. #23. Count I alleges a Lanham Act claim for trademark counterfeiting; Count II alleges a Lanham Act claim for trademark infringement; Count III alleges a violation of the Connecticut Unfair Trade Practices Act (CUTPA); Count IV alleges misappropriation of Bruce Kirby's publicity rights; and Counts V, VI, and VII allege contract-related causes of action that were previously dismissed by the Court's prior summary judgment ruling and are not relevant to the instant ruling.

As I noted in an order granting reconsideration (Doc. #312 at 3-4), my prior summary judgment ruling dismissed Counts I to IV on the basis of a mistaken conclusion that plaintiffs had sold the BRUCE KIRBY® trademark to GSL. Because of that error, I concluded that plaintiffs did not have standing to maintain their non-contract claims as alleged in Counts I to IV. In light of my grant of reconsideration, I now consider on the merits those arguments advanced by defendants for dismissal of Counts I to IV of the amended complaint.

## DISCUSSION

The principles governing the Court's review of a motion for summary judgment are well established. Summary judgment may be granted only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). I must view the facts in the light most favorable to the party who opposes the motion for summary judgment and then decide if those facts would be enough—if eventually proved at trial—to allow a reasonable jury to decide the case in favor of the opposing party. *See generally Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (*per curiam*); *Pollard v. New York Methodist Hosp.*, 861 F.3d 374, 378 (2d Cir. 2017).

### *Lanham Act (Counts I and II)*

The Lanham Act protects against the counterfeiting or infringement of trademarks. *See* 15 U.S.C. § 1114(1) (counterfeiting); *id.* § 1125(a)(1) (infringement); *Kelly-Brown v. Winfrey*, 717 F.3d 295, 304 (2d Cir. 2013). According to plaintiffs, LPE and QMI engaged in counterfeiting and infringement by continuing to use the Bruce Kirby name on both the builder's plaques and the ISAF plaques even after Kirby had terminated their respective builder agreements. Defendants raise three arguments seeking dismissal of the Lanham Act claims: (1) that LPE is a British company that did not engage in any violation of the Lanham Act inside the

United States and that the Lanham Act may not be applied to the extraterritorial conduct of LPE; (2) that a "fair use" defense bars plaintiffs' Lanham Act infringement claim; and (3) that there is no genuine issue of fact to support plaintiffs' Lanham Act counterfeiting claim. I will consider each of these arguments in turn.

   1. *Extraterritorial Application of the Lanham Act to LPE*

LPE argues that it may not be liable under the Lanham Act because its alleged violations of the Lanham Act took place outside the United States. Notwithstanding the usual rule that federal laws do not apply to conduct outside the United States, *see RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2100-2101 (2016), it is well established that the Lanham Act may be applied in certain circumstances to extraterritorial activities. *See Steele v. Bulova Watch Co.*, 344 U.S. 280, 286 (1952); *Trader Joe's Co. v. Hallatt*, 835 F.3d 960, 966 (9th Cir. 2016).

A court should consider the following three factors to decide if the Lanham Act applies to a defendant's extraterritorial activity: "(i) whether the defendant is a United States citizen; (ii) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiffs trademark rights under domestic law; and (iii) whether the defendant's conduct has a substantial effect on United States commerce." *Atl. Richfield Co. v. Arco Globus Int'l Co., Inc.*, 150 F.3d 189, 192 (2d Cir. 1998); *Int'l Diamond Importers, Inc. v. Med Art, Inc.*, 2017 WL 2839640, at *8 (S.D.N.Y. 2017).

As to the first factor, it is undisputed that LPE is incorporated and has its place of business in the United Kingdom. The second factor is not applicable, because this case does not deal with competing trademarks but with claims for non-licensed use of a trademark. Lastly, as to the third factor, there is no material fact dispute that LPE itself did not itself purchase, utilize, or affix the plaques to sailboats. LPE shipped partially completed Kirby sailboats *without any*

5

*plaques* to a different entity—LaserPerformance LLC, who is not a defendant and is a subsidiary of QMI—in Rhode Island. In turn, LaserPerformance LLC then completed the final assembly, affixing any plaques to the completed boats. *See, e.g.*, Doc. #228 at 16–17, Doc. #228-30 at 2; Doc. #228-45 ("QMI is entitled to have the Hull Plaques delivered to LaserPerformance LLC and have LaserPerformance LLC affix them to the classic Laser sailboats"). Plaintiffs have not shown that LPE engaged in any conduct involving the plaques within the United States. Nor have plaintiffs shown a genuine fact issue to suggest that LPE engaged in any plaque-related conduct outside the United States that in turn has a substantial effect on U.S. commerce.[2] Accordingly, I will dismiss Counts I and II against LPE on the ground that the Lanham Act may not be applied to LPE's conduct outside the United States.

2. *Fair Use Defense*

QMI alleges a "fair use" defense to plaintiffs' trademark infringement claim (Count II). *See* 15 U.S.C. § 1115(b)(4). To assert a successful "fair use" defense, a defendant must prove three elements: "that the use was made (1) other than as a mark, (2) in a descriptive sense, and (3) in good faith." *Kelly-Brown*, 717 F.3d at 305. I conclude that genuine fact issues remain as to each of these elements.

First, as to whether QMI used the Bruce Kirby name "other than as a mark," I must consider whether QMI used the mark "as a symbol to attract public attention." *Kelly-Brown*, 717 F.3d at 306. It is true that the Bruce Kirby name appears only in small lettering on the plaques and next to far larger lettering of the Laser trademark. *See id.* at 310 (noting that "the prominent

---

[2] Plaintiffs argue without citation to any specific portion of the record that the source of ISAF plaques was in the United States. Doc. #223 at 34-35; *see also* D. Conn. L. Civ. R. 7(a)(3) (court not required "to review portions of the record in response to a motion, where the moving and opposition papers to do not make specific reference to such portions of the record"). Even assuming this to be true, it does not show that LPE engaged in any conduct within or outside the United States that had any substantial effect on U.S. commerce.

6

display of the defendants' own trademarks can contribute to a finding that the defendants were not using a different distinct phrase as a mark"). But here, in light of plaintiffs' showing that the very appearance of the Bruce Kirby name on the plaques was indispensable to any boat's qualification for use in racing, I conclude that at least a genuine fact issue suggests that the Bruce Kirby name was indeed used by QMI for purposes of attracting public attention. If plaintiffs are correct, the importance of the Bruce Kirby name was that it was there, no matter how prominently displayed.

Second, as to whether QMI used the Bruce Kirby name only "in a descriptive sense," a genuine fact issue remains whether QMI was using the Bruce Kirby name for descriptive purposes only. As the Second Circuit has noted, "the scope of the fair use should be related to the degree to which the descriptive meaning is relevant to the goods with which it is associated in the alleged infringement, and whether there are other terms available to describe the pertinent characteristic." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos Inc*., 228 F.3d 56, 65 (2d Cir. 2000). Moreover, "[w]hether a use is descriptive must be determined by assessing the manner in which the mark is used with respect to the product or service sold by the alleged infringer." *Ibid.*

Although it is possible to assign a descriptive connotation to the phrases "designed by Bruce Kirby" and "authorised . . . by Bruce Kirby, Inc.," there is arguably no reason for QMI to describe who designed or authorized the boat except for a *non*-descriptive, commercial purpose of establishing a boat's qualification for racing. Moreover, in view of plaintiffs' evidence that it acted to terminate the Builders' Agreements, at least a genuine fact issue remains whether the alleged description that was used thereafter on ISAF plaques (that the boat was "authorised" by Bruce Kirby, Inc.) was even true.

7

Third, as to the good faith requirement, there is at least a genuine issue of fact remaining about QMI's motives. "Courts and commentators who have considered the question equate a lack of good faith with the subsequent user's intent to trade on the good will of the trademark holder by creating confusion as to source or sponsorship." *Id.* at 66. Here, in view of evidence that plaintiffs told QMI they no longer sponsored or endorsed the use of the Bruce Kirby name, a genuine fact issue remains whether QMI acted in good faith by nonetheless continuing to use the name and to arguably create confusion about plaintiffs' endorsement or sponsorship. *See id.* at 67–68 (reversing district court's grant of summary judgment on good faith issue for failure to consider evidence on both sides of issue). Accordingly, I conclude that genuine fact issues remain as to QMI's "fair use" defense.

Moreover, because the plaques expressly reference the "Bruce Kirby" name, there is a substantial question whether the so-called "nominative fair use" doctrine rather than the "descriptive fair use" doctrine should apply here. "The doctrine of nominative fair use allows a defendant to use a plaintiff's trademark to identify the plaintiff's goods so long as there is no likelihood of confusion about the source of the defendant's product or the mark-holder's sponsorship or affiliation." *Int'l Info. Sys. Sec. Certification Consortium, Inc. v. Sec. Univ., LLC*, 823 F.3d 153, 165 (2d Cir. 2016) (internal quotations and citation omitted), *cert. denied*, 137 S. Ct. 624 (2017). For nominative fair use cases, the Second Circuit has instructed that nominative fair use is *not* properly characterized as within the scope of the statutory descriptive fair use defense. *Id.* at 167-68. Instead, courts should evaluate a nominative fair use in the context of evaluating the standard *Polaroid* factors and specifically to consider "(1) whether the use of the plaintiff's mark is necessary to describe both the plaintiff's product or service and the defendant's product or service, that is, whether the product or service is not readily identifiable

8

without use of the mark; (2) whether the defendant uses only so much of the plaintiff's mark as is necessary to identify the product or service; and (3) whether the defendant did anything that would, in conjunction with the mark, suggest sponsorship or endorsement by the plaintiff holder, that is, whether the defendant's conduct or language reflects the true or accurate relationship between plaintiff's and defendant's products or services." *Id.* at 168. Even viewing this case as within the scope of the nominative fair use doctrine, I conclude—as to QMI's continued use of the name after the Builder's Agreement was terminated—that substantial fact issues remain about whether the use of the Bruce Kirby name was necessary, narrowly tailored with respect to this necessity, and used in a manner that did not confusingly suggest sponsorship or endorsement by plaintiffs. I therefore will decline to grant summary judgment for QMI on that basis as to Count II.

      3. *Counterfeiting Claim*

QMI further argues that no genuine fact issue supports plaintiffs' counterfeiting claim (Count I). The Lanham Act creates a civil cause of action for trademark counterfeiting for the use of a "copy" of a registered trademark if "such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). Here, there is no dispute that the BRUCE KIRBY name is a registered trademark. Although it is true as defendants suggest that the facts of this case do not fit the prototypical example of a trademark counterfeiting case (*e.g.*, affixing a "Rolex" label to a knock-off brand), the statute extends quite broadly to bar the use of a "copy" of a registered trademark in a manner that will create confusion about the source, sponsorship, affiliation, or connection of a product to the trademark owner. *See Int'l Info. Sys. Sec. Certification Consortium, Inc.*, 823 F.3d at 161-62.

In view of plaintiffs' evidence of a contract breach and that they no longer approved use of the Bruce Kirby name, a genuine fact issue remains whether QMI unlawfully used the Bruce Kirby trademark in a manner likely to cause consumer confusion about the sponsorship and approval of the sailboat. Indeed, "[w]hen an ex-licensee continues to use a mark after its license expires, likelihood of confusion is established as a matter of law." *L & L Wings, Inc. v. Marco-Destin, Inc.*, 676 F. Supp. 2d 179, 188 (S.D.N.Y. 2009); *Church of Scientology Int'l v. Elmira Mission of the Church of Scientology*, 794 F.2d 38, 44 (2d Cir. 1986) (same). Accordingly, I conclude that genuine fact issues remain to support plaintiffs' counterfeiting claim against QMI, and I will deny QMI's motion for summary judgment as to Count I.

*CUTPA (Count III)*

QMI and LPE seek summary judgment on plaintiffs' CUTPA claim. Because plaintiffs' CUTPA claims as to QMI and LPE are predicated solely on any violation of the Lanham Act (the Court having previously ruled that plaintiffs do not have standing to pursue their contract claims against QMI and LPE), it follows that the CUTPA claim against LPE must be dismissed in light of my ruling above that LPE is not liable to plaintiffs under the Lanham Act.

As to QMI, plaintiffs do not show the requisite connection to the State of Connecticut to support their CUTPA claim against QMI. It is true that "[w]hile the plain language of CUTPA is directed at unfair competition taking place in this state . . . CUTPA does not require that a violation actually occur in Connecticut, if the violation is tied to a form of trade or commerce intimately associated with Connecticut." *Cohen v. Roll-A-Cover, LLC*, 131 Conn. App. 443, 464 (2011). QMI is a Rhode Island company, and plaintiffs do not point to any evidence in the record to show that any of QMI's activity in violation of the Lanham Act occurred in or was intimately

associated with Connecticut.³ Accordingly, for lack of a genuine issue of fact to show unlawful activities within or intimately related to Connecticut, I will dismiss plaintiffs' CUTPA claim (Count III).

### *Misappropriation of Bruce Kirby's Publicity Rights (Count IV)*

QMI and LPE seek summary judgment on plaintiffs' claim for misappropriation of Bruce Kirby's name and likeness. Connecticut law recognizes a cause of action in tort for "appropriation of [someone's] name or likeness." *Foncello v. Amorossi*, 284 Conn. 225, 234 (2007) (adopting 3 Restatement (Second), Torts § 652A (1977)). This tort protects "the interest of the individual in the exclusive use of his own identity, in so far as it is represented by his name or likeness, and in so far as the use may be of benefit to him or others." 3 Restatement (Second) of Torts § 652C cmt. a (1977). While the Restatement acknowledges that "[n]o one has the right to object merely because his name or his appearance is brought before the public," it emphasizes that the right to one's name is a property right that may be licensed to another for a specific length of time. *Id.* § 652C cmts. a & d. "The common form of invasion of privacy under the rule here stated is the appropriation and use of the plaintiff's name or likeness to advertise the defendant's business or product, or for some similar commercial purpose." *Id.* § 652C cmt. b.

As to the ISAF plaques (which refer to "Bruce Kirby, Inc." and not to "Bruce Kirby" by personal name), I conclude that plaintiffs have no cause of action for misappropriation of Bruce Kirby's name and likeness. "A corporation, partnership or unincorporated association has no personal right of privacy" and cannot bring a claim for violation of this tort. *Id.* § 652I cmt. c. On the other hand, as to the use of the "Bruce Kirby" personal name on builder's plaques, a genuine

---

³ Plaintiffs assert without specific citation to the record that "Kirby Sailboats bearing the false marks were routinely imported into Connecticut for sale in violation of Kirby's trademark rights." Doc. #223 at 36. Because plaintiffs have not identified the specific portion of the record to support this claim, I decline to rely on this statement as grounds to defeat summary judgment.

11

fact issue remains whether this may be grounds for misappropriation of Bruce Kirby's name for commercial benefit for the time period after the alleged termination of contract rights.[4] Accordingly, I will deny summary judgment as to the alleged non-consensual use of the Bruce Kirby name on builder's plaques.

## CONCLUSION

For the reasons stated above, the Court GRANTS in part and DENIES in part defendants' motion for summary judgment (Doc. #186). As to Counts I and II (Lanham Act claims), it GRANTS summary judgment as to LPE but DENIES summary judgment as to QMI. As to Count III (CUTPA), it GRANTS summary judgment for both LPE and QMI. As to Count IV, it GRANTS summary judgment as to the use of the name "Bruce Kirby, Inc." on ISAF plaques but DENIES summary judgment for LPE and QMI as to the use of the name "Bruce Kirby" on builder plaques.

It is so ordered.

Dated at New Haven this 27th day of July, 2018

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge

---

[4] Although LPE has argued that the Lanham Act should not apply to its extraterritorial activity, it has not similarly argued that Connecticut's common law tort for misappropriation of likeness may not be applied to extraterritorial activity, and therefore I will not for now address this somewhat complex issue. *See generally* Jeffrey A. Meyer, *Extraterritorial Common Law: Does the Common Law Apply Abroad?* 102 Geo. L.J. 301 (2014).