UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRUCE KIRBY, INC., *et al.*,
    *Plaintiffs*,

v.

LASERPERFORMANCE (EUROPE)
LIMITED, *et al.*,
    *Defendants*.

No. 3:13-cv-00297 (JAM)

**ORDER GRANTING MOTION TO DISMISS**

Plaintiff Global Sailing Limited (GSL) has filed this lawsuit against five defendants for breach of contract, for violations of the Lanham Act, and for violations of the Connecticut Unfair Trade Practices Act (CUTPA). Defendants have moved to dismiss the Lanham Act and CUTPA claims. For the reasons set forth below, I will grant the motion to dismiss.

### BACKGROUND

The somewhat convoluted facts of this case are set forth at length in my earlier ruling on the parties' cross-motions for summary judgment as to a related action filed in 2013 ("the 2013 action"). *See Bruce Kirby, Inc. v. Laserperformance (Europe) Ltd.*, No. 3:13-cv-00297; *Bruce Kirby, Inc. v. Laserperformance (Europe) Ltd.*, 2016 WL 4275576, at *1 (D. Conn. 2016). The 2013 action principally involved claims by Bruce Kirby and his eponymous company, Bruce Kirby, Inc., against certain companies that build and sell sailboats that he designed. The instant suit filed by GSL has been consolidated with the 2013 action.

In 1969, Bruce Kirby designed a small sailboat that became very popular for racing competitions. During the early 1980s, Bruce Kirby and his company entered into an agreement, called the "Head Agreement," with two international sailing bodies to regulate the manufacture,

1

sale, and registration of sailboats using the Bruce Kirby sailboat design and sold under the brand name "Laser." Kirby and his company likewise entered into contracts called "Builder Agreements" with sailboat builders to build the sailboats in conformity with the Head Agreement. The successors in interest to two of the Builder Agreements with Kirby and his company were Laserperformance (Europe) Limited ("LPE") and Quarter Moon, Inc. ("QMI").

The parties got into a dispute about payment of royalties, and Kirby and his company purported to terminate the Builder Agreements with LPI and QMI in 2012. Then Kirby and his company filed the 2013 action for breach of contract, for infringement and counterfeiting of the BRUCE KIRBY® trademark under the Lanham Act, for unfair trade practices under CUTPA, and for misappropriation of the name and likeness of Bruce Kirby.

Kirby and his company's claims in the 2013 action were complicated by uncertainty about whether they had standing to maintain their claims. This arose from the fact that in 2008, Bruce Kirby and his company sold to GSL his interest in the Kirby Sailboat design as well as all contract rights under the Head Agreement and Builder Agreements. In a prior ruling, I concluded that this sale transferred to GSL all of Kirby's and his company's contractual rights and intellectual property rights relating to the design of the Kirby Sailboat, subject to GSL's later licensing back of the intellectual property rights to Kirby and his company. *See Bruce Kirby, Inc. v. Laserperformance (Europe) Ltd.*, 2016 WL 4275576, at *3–*6.[1] This led me to conclude that Kirby did not have standing to assert claims for rights that he had sold to GSL, and I granted summary judgment against Kirby and his company for lack of standing. *Id.* at *7.

---

[1] The intellectual property assets that were sold to GSL were "all intellectual property rights owned by the Sellers, in whole or in part, or licensed to the Sellers relating to the Kirby Sailboat . . . (I) patents; (II) trademarks, service marks, trade names, service names, brand names, trade dress rights, logos, Internet domain names and corporate names . . . ; (III) copyrights and registrations and applications therefor[ ] . . . including but not limited to the construction manual; (IV) vessel hull designs for the Kirby Sailboat; (V) rights in confidential information used by the Sellers; and (VI) rights under agreements entered into between the Sellers and third parties relating to the Kirby Sailboat." *Bruce Kirby, Inc. v. Laserperformance (Europe) Ltd.*, 2016 WL 4275576, at *3.

Following a motion for clarification, I ruled that—apart from the transfer of intellectual property rights relating to the Kirby Sailboat—Kirby and his company had *not* sold the BRUCE KIRBY® trademark to GSL. Doc. #312 at 3–4. This in turn led me to advise the parties in the 2013 action that I would now reconsider my grant of summary judgment as to the non-contract based claims relating to the BRUCE KIRBY® trademark. By simultaneous filing today, I am issuing a supplemental ruling on the motion by LPE and QMI for summary judgment. This supplemental ruling concludes in large part that genuine fact issues remain as to the Kirby plaintiffs' claims for a violation of the Lanham Act and for misappropriation of likeness against QMI.

GSL was named as a counterclaim defendant in the 2013 action. After I ruled that the Kirby plaintiffs did not have standing to allege their contractual causes of action arising from the Builder Agreements, GSL sought leave to amend its pleading to allege these contractual causes of action against LPE and QMI. I denied that motion as untimely, Doc. #312 at 2–3, and GSL then followed with the instant lawsuit (which has now been consolidated with the 2013 action).

The instant lawsuit names five defendants: LPE, QMI, Laserperformance LLC ("LP"), Farzad Rastegar, and Dory Ventures LLC ("Dory"). Rastegar and Dory are alleged to control and dictate the building and sales activities of LPE, LP, and QMI.

The instant lawsuit includes eight counts that collectively allege three kinds of claims: contract claims for breach of the Builder Agreements, intellectual property claims for violation of the Lanham Act, and unfair trade practice claims in violation of CUTPA. Specifically, Claim I alleges a breach of contract claim against LPE, and Claim II alleges a breach of contract claim against QMI. These contract claims are not at issue in the pending motion to dismiss.

Claims III, IV, and V allege violations of the Lanham Act by all five defendants (all based on actions by LP, LPE, and QMI that were allegedly controlled by Rastegar and Dory). The amended complaint alleges in relevant part that "LP is assisting LPE selling Kirby Sailboats in the

United States, which is outside the territories originally authorized in the Builders Agreement," and that "LP was never authorized to sell Kirby Sailboats anywhere in the world at any time," and "LPE has never been authorized to sell Kirby Sailboats in the United States." Doc. #327 at 11 (¶ 41). The amended complaint further alleges that "LPE and QMI are building, selling, and/or manufacturing Kirby Sailboats, as well as using components, each despite having no authorization to do so." *Ibid.* (¶ 42).

In addition, the amended complaint alleges that "the Kirby Sailboats being built by LP, LPE and/or QMI since the termination of the Builders Agreement are not properly licensed," and that "LP, LPE and QMI, actively and repeatedly misrepresent to the public that the boats being sold are properly licensed Kirby Sailboats when they are not, thereby deceiving the public." *Ibid.* (¶ 43). On this basis, the amended complaint alleges that "LP, LPE and QMI are making false designation of origin and/or descriptions of fact which are 'likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association . . . or as to the origin, sponsorship, or approval of . . . goods, services or commercial activities . . .'" and that "[t]hese actions violate Section 43A of the Lanham Act." *Ibid.* (¶¶ 43 & 44).[2]

Claims V, VI, and VII allege CUTPA violations by all five defendants. The CUTPA claims are alleged in skeletal form and largely based on the same factual allegations that support the Lanham Act claims.

## DISCUSSION

The background principles governing a Rule 12(b)(6) motion to dismiss are well established. The Court must accept as true all factual matters alleged in a complaint, although a complaint may not survive unless the facts it recites are enough to state plausible grounds for relief. *See, e.g.*,

---

[2] The foregoing allegations are drawn from Count III of the amended complaint which alleges a cause of action against LPE, LP, and QMI. Claims IV and V merely incorporate the same allegations against Rastegar and Dory, respectively, and further allege that they controlled and dictated the actions of LPE, LP, and QMI. Doc. #327 at 12-13 (¶¶ 46–51).

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Mastafa v. Chevron Corp.*, 770 F.3d 170, 177 (2d Cir. 2014). Although this "plausibility" requirement is "not akin to a probability requirement," it "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. Because the focus must be on what facts a complaint alleges, a court is "not bound to accept as true a legal conclusion couched as a factual allegation" or "to accept as true allegations that are wholly conclusory." *Krys v. Pigott*, 749 F.3d 117, 128 (2d Cir. 2014). In short, my role in reviewing a motion to dismiss under Rule 12(b)(6) is to determine if the complaint—apart from any of its conclusory allegations—alleges enough facts to state a plausible claim for relief.

*Lanham Act Claims*

The Lanham Act authorizes a civil action arising from the use of any false statements in connection with certain commercial transactions:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

As the Supreme Court has noted, this statute "thus creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014). The Second Circuit has observed that claims for false designation of origin and false advertising cannot be "combine[d] into a

generalized unfair competition claim," because they "are distinct and require separate consideration." *Twentieth Century Fox Film Corp. v. Marvel Enters., Inc.*, 277 F.3d 253, 259 (2d Cir. 2002) (citation omitted).

To the extent that a plaintiff may proceed under § 1125(a)(1)(A) for false designation, a plaintiff must establish that plaintiff has rights to a protected trademark (or trade dress), even if the trademark is not formally registered. *See ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 154 (2d Cir. 2007). A trademark is defined by law to mean "any word, name, symbol, or device, or any combination thereof" used by any person "to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. Although GSL adverts to its rights in general to the Kirby Sailboat, the amended complaint does not allege any trademark for which GSL has rights that have been violated by any false designation of origin or other false statement. Accordingly, the amended complaint fails to allege plausible grounds for relief under § 1125(a)(1)(A).

GSL argues in its briefing that it owns a copyright in the Kirby sailboat design. But the amended complaint fails to allege that GSL has a copyright to the Kirby sailboat design. In any event, it is far from clear that GSL could maintain a claim under the Lanham Act based on a copyright violation. "[T]he Supreme Court has held that the Lanham Act protects only 'the producer of . . . tangible goods that are offered for sale, and not . . . the author of any idea, concept, or communication embodied in those goods,'" and therefore "[t]he failure to credit the true author of a copyrighted work is not a false designation of origin, but a violation of copyright." *Freeplay Music, Inc. v. Cox Radio, Inc.*, 409 F. Supp. 2d 259, 263 (S.D.N.Y. 2005) (Lynch, J.) (quoting *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 33 (2003)).

GSL next argues that the amended complaint asserts claims for false advertising under the Lanham Act, which applies to misrepresentations by means of "commercial advertising or

6

promotion." 15 U.S.C. § 1125(a)(1)(B). The amended complaint, however, neither cites this specific provision of the Lanham Act nor refers at all to "commercial advertising or promotion." The only reference in the amended complaint to "advertising" is within a preliminary jurisdictional allegation stating with no elaboration that defendants "have advertised in Connecticut." Doc. #327 at 4 (¶ 2).

The portion of the amended complaint that actually purports to charge a violation of the Lanham Act alleges that defendants "actively and repeatedly misrepresent to the public that the boats being sold are properly licensed Kirby Sailboats when they are not, thereby deceiving the public." *Id.* at 11 (¶ 43). Because of course anyone may make statements to the public that do not necessarily or likely constitute "commercial advertising or promotion," this allegation does not suffice to allege a plausible violation of the Lanham Act's prohibition against false commercial advertising. *See Fashion Boutique of Short Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002) (noting that the term "commercial advertising or promotion" does not extend to all forms of "commercial speech" and that "the touchstone of whether a defendant's actions may be considered 'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market").

Nor does the amended complaint describe any detail about the wording or appearance of any allegedly false advertising. The amended complaint is likewise lacking in any allegation that false advertising specifically caused "an injury to a commercial interest in reputation or sales." *Lexmark*, 134 S. Ct. at 1390.

In short, the amended complaint does not adequately allege a plausible Lanham Act claim, either for false designation or false advertising. The amended complaint otherwise fails to give fair notice to defendants of what GSL contends they did wrong that make them liable under the Lanham Act. Accordingly, I will dismiss GSL's Lanham Act claims.

*CUTPA Claims*

CUTPA prohibits the use of "unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. § 42–110b(a). The statute "provides a private cause of action to [a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a [prohibited] method, act or practice." *Harris v. Bradley Mem'l Hosp. & Health Ctr., Inc.*, 296 Conn. 315, 351 (2010). CUTPA claims can be based on either an "actual deceptive practice" or an unfair practice—that is, a "practice amounting to a violation of public policy." *Ulbrich v. Groth*, 310 Conn. 375, 409 (2013).

Connecticut law has long recognized three factors that determine whether a particular business practice violates CUTPA:

> (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers, [competitors or other businesspersons].

*Artie's Auto Body, Inc. v. Hartford Fire Ins. Co.*, 317 Conn. 602, 609 n.9 (2015). There is no requirement, however, that all three criteria be met "to support a finding of unfairness" for purposes of a CUTPA claim. *Ibid.*

The amended complaint quite cursorily and confusingly alleges that "[t]he acts of LP, LPE and QMI as more specifically contained in paragraph 32 above, which are in violation of 15 U.S.C. § 1114, also violate Section 110b of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42b-110b, resulting in damage and ascertainable loss to GSL." Doc. #327 at 13 (¶ 53).[3] To the extent that this rests on an allegation of the violation of the Lanham Act, the CUTPA claims cannot survive for the same reasons I have explained that the Lanham Act claims must be dismissed.

---

[3] Although GSL confusingly refers to 15 U.S.C. § 1114, GSL did not actually bring a claim under this Lanham Act provision, which protects against trademark infringement of registered trademarks.

Alternatively, to the extent that the CUTPA claims rest on allegations in Paragraph 32 of the amended complaint concerning a breach of contract, a CUTPA claim may not rest merely on allegations of breach of contract. "A simple breach of contract cannot constitute a violation of the Connecticut Unfair Trade Practices Act. There must be significant aggravating circumstances." *Boulevard Assocs. v. Sovereign Hotels, Inc.*, 72 F.3d 1029, 1040 (2d Cir. 1995) (internal citation omitted). GSL here has not alleged any significant aggravating circumstances beyond the allegations that fall short of stating a plausible Lanham Act claim.

## CONCLUSION

For the reasons stated above, I will grant without prejudice defendants' motion to dismiss (Doc. #341) Claims III, IV, V, VI, VII, and VIII as to all defendants. If GSL wishes to file a carefully drafted second amended complaint with respect to its Lanham Act or CUTPA claims, it may do so by August 27, 2018.

It is so ordered.

Dated at New Haven this 27th day of July, 2018.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge