UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE KIRBY, INC. ET AL | : | |
| | : | CASE NO. 3:13-CV-00297 (JAM) |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| LASERPERFORMANCE (EUROPE) LIMITED, ET AL. | : | |
| | : | |
| | : | |
| Defendants. | : | OCTOBER 5, 2018 |

**DEFENDANT'S OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS TO LASERPERFORMANCE (EUROPE) LIMITED**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, the defendant, LaserPerformance (Europe) Limited, submits the following objections to the Plaintiff's First Set of Requests for Admissions, dated August 31, 2018:

### I. DEFINITIONS

The following instructions apply to all discovery requests made by Global in this case:

1. "You" and/or "Yours" means the entity to whom this document is addressed natural or corporate; either as a member of a group or as an individual.

2. "Dory Ventures" and/or "Dory Ventures Group" (including use of the terms without the word "Group" or abbreviated as "DV"), encompasses both Dory Ventures, LLC believed reliably and in good faith to be operating in Connecticut and Dory Ventures, Ltd. believed reliably and in good faith to be operating in the United Kingdom; the both of which are believed to be under the same operative control; and all other entities or names under which Dory Ventures Group is doing or has done business; any predecessors thereof, and all past or present divisions, subsidiaries, licensees, franchisees, assigns, or affiliates of any of the foregoing entities, domestic or foreign; and all past or present employees, agents, attorneys, or representatives of Dory Ventures Group.

3. "LaserPerformance Group" means: the "group of companies engaged in the sailing dingy business" (Rastegar Deposition, p. 12), viewed together in common as the "LaserPerformance business" (Rastegar Deposition, p. 16; Kia Deposition, p. 78-79); and encompasses members of the group either individually named; or the group as a collective whole the membership of which is believed to at least comprise: Spring Meadow Holdings, Ltd. ("Spring Meadow"); Sina

Holdco Ltd. ("Sina"); Full Moon Holdings Ltd. ("FMH"); Meywin Ltd. ("Meywin"); Acela, Ltd. ("Acela"); LaserPerformance (Europe) Limited ("LPE"); Quarter Moon Acquisitions Inc. ("QMA"), Quarter Moon Inc. ("QMI"), LaserPerformance LLC (aka, LaserPerformance USA, "LP" or "LPUSA"); LaserPerformance Services Ltd.; LaserPerformance Services in Hong Kong; and all other respective subsidiaries and parents, and any and all other entities or names under which LaserPerformance Group is doing or has done business; any predecessors thereof, and all past or present divisions, subsidiaries, licensees, franchisees, assigns, or affiliates of any of the foregoing entities, domestic or foreign; and all past or present employees, agents, attorneys, or representatives of LaserPerformance Group. References to a specific member entity within LaserPerformance Group also encompass any subsidiaries or licensees over which that member has control and/or supervisory authority, and/or from whom a contractual duty is owed. It is understood that many individual members in the group overlap in terms of personnel, management, board members, controlling interests, shared services, places of operation, operational structures, aims and goals, etc., and have relationships with each other (Crane Deposition, p. 106); thus, reference to a single member implies the need for information from other entities in the group, or from individuals acting in multiple roles, as provided to the referenced member in the course of customary and ordinary business practice.

4.      "Farzad Rastegar" refers to defendant not only as a natural person, but also as the holder of various offices, positions, or roles both within Dory Ventures Group and LaserPerformance Group; thus, requests directed to or referencing Farzad Rastegar encompass all roles, positions, and categorizations attributable to Farzad Rastegar or suitable for the production of the requested documentation.

5.      "Global Sailing" refers solely to Plaintiff, Global Sailing Ltd.

6.      "Individuals" or "individual" means natural persons.

7.      "Persons," or "person" includes individuals as well as governmental entities, agencies, officers, departments, or affiliates of the United States of America, or any other governmental entity, and any corporation, foundation, proprietorship, association, organization, partnership or group of natural persons.

8.      "Kirby Sailboat" or "Kirby Boat" means the Kirby Sailboat defined in the 1983 and 1989 Builder Agreements as "a sailboat or sailboat hull manufactured in accordance with the Licensed Design which has been commonly sold in association with the trademark 'LASER.'"

9.      "Date" means an exact day, month and year, if ascertainable, or, if not, the best approximation (including relationship to other events). Where the respondent cannot ascertain an exact date, the answer shall specifically indicate that an approximation has been made.

10.     "Timeframe" means a span of time between two or more dates. Where the respondent cannot ascertain an exact timeframe, the answer shall specifically indicate that an approximation has been made.

11.     "Document(s)" means anything that would be a "writing" or "recording" as defined by Rule 1001 (1) of the Federal Rules of Evidence or a "document" as set forth in Rule 34(a) of the

Federal Rules of Civil Procedure, including, without limitation, the originals, and all nonidentical copies, whether different from the original by reason of any notation made on such copies or otherwise (including without limitation, correspondence, memoranda, notes, diaries, minutes, statistics, letters, telegrams, contracts, reports, studies, checks, statements, tags, labels, invoices, brochures, periodicals, receipts, returns, summaries, pamphlets, books, prospectuses, interoffice and intra-office communications, e-mails, offers, notations of any sort of conversations, working papers, applications, permits, surveys, indices, telephone calls, voice messages, meetings, printouts, teletypes, telefax, invoices, work sheets, and all drafts, alterations, modifications, changes and amendments of the foregoing), graphic or oral representations of any kind (including without limitation, photographs, charts, microfiche, microfilm, videotape, recordings, motion pictures, plans, drawings, surveys), and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs, recordings and e-mail).

12.     "Thing(s)" means any tangible item and shall be construed as broadly as possible under the Federal Rules of Civil Procedure, and the Federal Rules of Evidence.

13.     "Communication(s)" and/or "correspondence" means any and every expression and/or exchange of thoughts, message, or information by and through any medium.

14.     "Evidence" includes documents, things, and potential testimony, and shall be construed as broadly as consistent with the Federal Rules of Evidence.

15.     The terms "relate," "relating to," "refer," "referring to," and "with reference to" include mentioning, describing, discussing, memorializing, concerning, consisting of, containing, evidencing, comprising, analyzing, reflecting, embodying, constituting, depicting in any way, directly or indirectly, the subject matter of the request, including documents and things alluding to, responding to, concerning, connected with, commenting on, in respect of, about, regarding, discussing, showing, describing, reflecting, analyzing, constituting, supporting, corroborating, demonstrating, proving, evidencing, refuting, disputing, rebutting, or contradicting, directly or indirectly, the subject matter of the request.

16.     The terms "including" and "includes" mean "including, but not limited to."

17.     "Identify," "identification," and/or "identity" means:

   (a)     with respect to a person, his or her name and present (or if unknown, the last known) address and telephone number and present (or if unknown, the last known) place of employment, job title and description of his or her duties and responsibilities;

   (b)     with respect to a corporation or other legal entity, the full name, address, and state of incorporation, if known, and the identity of the person(s) who acted on behalf of such entity with respect to the subject matter of the discovery request;

(c)     with respect to a document, a description of the document sufficient to satisfy the reasonable particularity requirement applicable to requests for production propounded pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, the present location of the document, and the identity of the custodian thereof. Documents to be identified shall include documents in your

possession, custody or control, documents known by you to have existed but no longer existing, and other documents of which you have knowledge or information.

18. "Describe" and/or "state" means to set forth fully and unambiguously every fact relevant to the subject of the discovery request, of which you (including your agent and representatives) have knowledge or information, including without limitation ownership, authority, relationships, location, appearance, contents, components, purpose, effect, result, physical or material specifications, procedures, or principles of operation.

19. "And," "or" as well as "and/or" shall be construed disjunctively or conjunctively as necessary in order to bring within the scope of the request all responses which otherwise might be construed to be outside its scope.

20. "Materiel," as distinguished from "Material," is defined as the aggregate of things used or needed in any business, undertaking, or operation. Examples comprise: capital equipment, raw stock, unfinished inventory, working capital, payroll, stock, and the supporting documentation to track, use, or control, or demonstrate ownership of said items and the like.

21. "Monies" is defined as currency, current medium of exchange in the form of coins and banknotes; coins and banknotes collectively; cryptocurrency holdings; assets, property, and resources owned by someone or something; wealth; financial gain; payment for work; wages; a wealthy person or group.

22. "Formation Papers" are documents, such as Articles of Incorporation, which contain the company name, purpose, stock amounts and types, the address of the Registered Agent and the person incorporating the company, the basic charter of a corporation.

23. "Board" or "Board of Directors" is defined as a group of people constituted as a decision-making body of an organization.

24. "Board member" is defined as an individual who belongs to the Board of Directors.

25. "Management" is defined as the process of dealing with or controlling things or people or those people with control over things or people within the organization.

26. "Executive" is defined as a person with senior managerial responsibility in a business organization.

27. "Controlling interest" is defined as the holding by one person or group of a majority of the stock or value of a business, giving the holder a means of exercising control.

28. "Reporting documents" is defined as a document containing information organized in a narrative, graphic, or tabular form, prepared on ad hoc, periodic, recurring, regular or as required basis. Reports may refer to specific periods, events, occurrences, or subjects, and may be communicated or presented in oral or written form.

29. "Government reports" is defined as documents and things required by a business to provide to a government entity organized in a narrative, graphic, or tabular form, prepared on ad

4

hoc, periodic, recurring, regular or as required basis. Reports may refer to specific periods, events, occurrences, or subjects, and may be communicated or presented in oral or written form. Examples comprise: Taxation documentation, Securities and Exchange Commission documentation, shareholder reports, prospectus statements, OSHA reports, Environmental Protection Agency impact statements, and the like.

30. "Scope of responsibility" is defined as a range of activities and/or duties that an employee is reasonably expected to carry out or fulfill within the ambit of his or her job or position.

31. "Capital equipment" and/or "capital asset" is defined as an item with an acquisition cost of $5,000 or more or is considered necessary for the operation of the business; in this instance, the manufacture, sales, and distribution of Kirby Sailboats.

32. "Master Tooling" is as defined as in the 1983 "Agreement Relating to the International Laser Class Boat" as "a master hull mould and a master deck mould owned by Trade Mark owner for use in the manufacture of the Laser class boat and which is in compliance with the specifications therefore as set out in the Construction Manual."

33. "Master Plug" is defined as in the 1983 "Agreement Relating to the International Laser lass Boat" as "reversals produced from Master Tooling."

34. "Production Tooling" and/or "machine tooling" is defined as in the 1983 "Agreement Relating to the International Laser Class Boat" as "hull moulds and deck moulds produced from the Master Plugs by a Builder to the specification of the Construction Manual."

35. "Construction Manual" is defined as in the 1983 "Agreement Relating to the International Laser Class Boat" as "the manual which prescribes the materials to be used in the construction of a Laser class boat and prescribes the method to be used in the manufacture thereof including:

> a) the specifications for the materials to be used in the construction of a Laser class boat, including sailcloth, fittings and raw materials,
>
> b) the method of production of tooling, moulds and plugs used in the construction of a Laser class boat,
>
> c) the manufacture of the hull, deck, centerboard box, centerboard and rudder for a Laser class boat, the method of cutting the sailcloth and finishing the sails for a Laser class boat, and
>
> d) the assembly of parts necessary to make the mast, boom and spars for a Laser class boat,
>
> as amended, revised or reconstituted from time to time in the manner proscribed by the 1983 Agreement.

36. "Licensed Design" and/or "Kirby Sketch" is as defined in the 1983 Brook Shaw agreement and the 1989 agreement with PY Small Boats, Inc. as "the design created by Bruce Kirby for the 13 foot 10 ½ inch sailboat pictured in [relevant schedule / annex], the copyright in which is owned by Bruce Kirby and Kirby Inc." and as it appears in all other subsequent agreements and modifications, publications, and the Construction Manual.

37. "ISAF" is defined as the International Sailing Federation, the successor organization to the International Yacht Racing Union, a party of the 2016 Olympic Sailing Competition – Class Agreement dated 2 November 2012, and the organization responsible for the issuance of plaques, hereby termed "ISAF plaque," for affixation to licensed Kirby Sailboats (see 2016 Olympic Sailing Competition – Class Agreement clause 15.3) indicating a Kirby Sailboat is race legal.

38. "ILCA" is defined as the International Laser Class Association of Cornwall, England. The ILCA currently assigns and issues hull number plaques, "hull plaques," which are tamper evident plaques, which assign hull numbers to licensed builders for use by builders in connection with Kirby Sailboats.

39. It is understood that ISAF plaques and hull plaques are commonly issued and applied together, thus, the term "Plaque" and other grammatical variants (possessives, plurals, etc.) refers to plaques issued by both the ILCA and ISAF unless specifically limited to a plaque from a single origin.

40. "Chief Measurer" is defined as the person designated in Article 6.1 of the 1983 "Agreement relating to The International Laser Class Boat" who has the right:

  (a) to inspect and measure all Master Tooling used by Trade Mark Owner in the manufacture of Master Plugs;

  (b) to inspect the method of manufacture of all Production Tooling to satisfy the Chief Measurer that such Method is in accordance with the Construction Manual, a copy of which has been delivered to the Chief Measurer;

  (c) to make such periodic investigations as in the opinion of the Chief Measurer are necessary to satisfy the Chief Measurer that the manufacture of the Laser class boat is in accordance with the Construction manual.

41. "Dealer Wholesale Price" is as defined in the 1983 Shaw Motor Services Agreement as "Licensee's published wholesale prices for Kirby Sailboats to the Dealer, FOB factory, which shall include the royalty fee payable to Kirby Inc." and excluding the "duty and applicable sales taxes, cost of packaging and IYRU fees, and national and international class fees which may be collected by Licensee."

42. "Service Agreement" or "Services Agreement" (or variants thereof) encompasses the term as used by defendant Rastegar in his Deposition at pages 21 and 22 with further services described on p. 59 and in the deposition of Bahman Kia at p. 16-18. The term references agreements not only to individual natural entities, but also to agreements or understandings

6

between business entities. The term further encompasses any employment contract or agreement or any other arrangement whereby services from an individual or company are obtained for a separate individual or company.

43. "Rastegar Deposition" refers to the deposition of Farzad Ali Rastegar taken on 17 December 2014 as part of Civil Action No. 3:13-cv-00297-RNC.

44. "Crane Deposition" refers to the deposition of William S. Crane taken on 22 December 2014 as part of Civil Action No. 3:13-cv-00297-RNC.

45. "Kia Deposition" refers to the deposition of Bahman Kia taken on 13 January 2015 as part of Civil Action No. 3:13-cv-00297-RNC.

46. "Financial Transfers" refers to loans, exchanges made for value (goods or services), and reflects transactions either singular or iterative in which value provided in one portion of the transaction is repaid, with or without interest, fully and/or in part, in a subsequent portion.

47. "Kirby Plaintiffs" refers to Bruce Kirby; Bruce Kirby, Inc.; or Global Sailing either individually or collectively as appropriate to the context of the question asked.

## II.   INSTRUCTIONS

The following instructions apply to all of Global's discovery requests in this case:

1. Each person or entity responding to these requests for admission is required to furnish responsive information within their personal knowledge or the personal knowledge of their attorneys, agents, representatives or employees.

2. Each objection shall be set forth with specificity and shall include a statement of the grounds therefore. Any request for admission or subpart thereof to which an objection is made shall be responded to insofar as it is not deemed objectionable.

3. If any request or subpart thereof cannot, for any reason, be answered in full, respond to the extent possible, specifying the reasons for the inability to respond to the remainder of the discovery request, and state whatever information or knowledge is available concerning the unanswered portion.

4. Where a claim of privilege is asserted in responding or objecting to any request or subpart thereof, and an answer is not provided on the basis of such assertion:
   a. the party asserting the privilege shall, in the objection to the request or subpart thereof, identify the nature of the privilege (including work product) which is being claimed and if the privilege is being asserted in connection with a claim or defense governed by state law, indicate the state's privilege rule being invoked.
5. If any responsive information is withheld on the basis of any claim of privilege, because it constitutes attorney work product, or otherwise is not subject to discovery, provide a privilege log consistent with Fed. R. Civ. P. 26(b)(5), which, at a minimum, describes generally the

substance or subject matter of the information withheld, states each privilege being relied upon or claimed and the basis for same, and identifies all persons who have had access to such information.

**OBJECTION**: **The defendant objects to these definitions and instructions to the extent they purport to impose obligations on the defendant with respect to responding to these requests for admission which are different and/or greater than the obligations imposed on the defendant by the Federal Rules of Civil Procedure.**

### III.  REQUESTS FOR ADMISSION

12.  In December 2010, Laser Sailboats, Limited maintained premises concurrent with LPE.

> **Objection: The defendant objects to this request on the grounds that it is vague. The defendant does not understand what the plaintiff means by "maintained premises concurrent with LPE."**

13.  At present LPE and Laser Sailboats, Limited maintain concurrent premises.

> **Objection: The defendant objects to this request on the grounds that it is vague. The defendant does not understand what the plaintiff means by "maintain concurrent premises."**

18.  LPE at one time possessed a copy of the Laser Construction Manual.

> **Objection: The defendant objects to this request on the grounds that it is vague. The defendant does not understand what the plaintiff means by "Laser Construction Manual."  The plaintiff included nearly fifty (50) definitions with these requests, including a definition of the term, "Construction Manual" (p. 7, no. 35), which is used in several other definitions (e.g. nos. 32, 34, 36 and 40) and requests (e.g. nos. 31, 56-65), but nowhere does it define the term, "Laser Construction Manual," which the defendant presumes is something different than the "Construction Manual."**

19.  LPE continues to possess a copy of the Laser Construction Manual.

> **Objection: The defendant objects to this request on the grounds that it is vague. The defendant does not understand what the plaintiff means by "Laser Construction Manual."  The plaintiff included nearly fifty (50) definitions with these requests, including a definition of the term, "Construction Manual" (p. 7, no. 35), which is used in several other definitions (e.g. nos. 32, 34, 36 and 40) and requests (e.g. nos. 31, 56-65), but nowhere does it define the term, "Laser Construction Manual," which the defendant presumes is something different than the "Construction Manual."**

20. Laser Sailboats, Limited has a copy of the Laser Construction Manual.

   **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant. In addition, the defendant objects to this request on the grounds that it is vague. The defendant does not understand what the plaintiff means by "Laser Construction Manual." The plaintiff included nearly fifty (50) definitions with these requests, including a definition of the term, "Construction Manual" (p. 7, no. 35), which is used in several other definitions (e.g. nos. 32, 34, 36 and 40) and requests (e.g. nos. 31, 56-65), but nowhere does it define the term, "Laser Construction Manual," which the defendant presumes is something different than the "Construction Manual."**

21. LPE transferred a copy of the Laser Construction Manual to Laser Sailboats, Ltd.

   **Objection: The defendant objects to this request on the grounds that it is vague. The defendant does not understand what the plaintiff means by "Laser Construction Manual." The plaintiff included nearly fifty (50) definitions with these requests, including a definition of the term, "Construction Manual" (p. 7, no. 35), which is used in several other definitions (e.g. nos. 32, 34, 36 and 40) and requests (e.g. nos. 31, 56-65), but nowhere does it define the term, "Laser Construction Manual," which the defendant presumes is something different than the "Construction Manual."**

24. Laser Sailboats, Limited has never sold a Kirby sailboat without a hull number.

   **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

27. Laser Sailboats, Limited has not shipped Kirby sailboats without hull numbers.

   **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

29. LPE has in its custody and control an inventory of all hulls manufactured since at least 2009.

   **Objection: The defendant objects to this request on the grounds that it is vague as to the types of hulls and the identities of the manufacturers of those hulls. To the extent this request seeks an admission concerning hulls of boats that are different than those that are the subject of this lawsuit, the request seeks the admission of facts that are irrelevant and immaterial to this lawsuit. In addition, if this request seeks an admission as to different types of hulls, then the defendant also objects on the grounds that this request does not separately state each matter for which the plaintiff seeks an admission**

30.  LPE was a party/builder to the Laser Construction Manual Agreement as a licensed builder of Kirby Sailboats under the 1983 Builder Agreement.

> **Objection: The defendant objects to this request on the grounds that it is vague. The defendant does not understand what the plaintiff means by "Laser Construction Manual Agreement."  The plaintiff included nearly fifty (50) definitions with these requests, including a definition of the term, "Construction Manual" (p. 7, no. 35), which is used in several other definitions (e.g. nos. 32, 34, 36 and 40) and requests (e.g. nos. 31, 56-65), but nowhere does it define the term, "Laser Construction Manual Agreement," which the defendant presumes is something different than the "Construction Manual."**

35.  While the 1983 Builder Agreement was in effect Mr. Peter Hedge was prohibited from inspecting Kirby Sailboats being manufactured by Laser Sailboats Ltd.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Ltd is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

44.  LPE is not a member to any Builder Agreement in accordance with the Laser Construction Manual Agreement.

> **Objection: The defendant objects to this request on the grounds that it is vague. The defendant does not understand what the plaintiff means by "Laser Construction Manual Agreement."  The plaintiff included nearly fifty (50) definitions with these requests, including a definition of the term, "Construction Manual" (p. 7, no. 35), which is used in several other definitions (e.g. nos. 32, 34, 36 and 40) and requests (e.g. nos. 31, 56-65), but nowhere does it define the term, "Laser Construction Manual Agreement," which the defendant presumes is something different than the "Construction Manual."**

49.  Laser Sailboats, Limited, continues to manufacture, or causes to have manufactured, Kirby Sailboats.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

51.  Laser Sailboats, Limited manufactured Kirby Sailboats after March 10, 2010.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

52. Laser Sailboats, Limited is not a builder/party to the Laser Construction Manual Agreement.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant. The defendant also objects to this request on the grounds that it is vague. The defendant does not understand what the plaintiff means by "Laser Construction Manual Agreement." The plaintiff included nearly fifty (50) definitions with these requests, including a definition of the term, "Construction Manual" (p. 7, no. 35), which is used in several other definitions (e.g. nos. 32, 34, 36 and 40) and requests (e.g. nos. 31, 56-65), but nowhere does it define the term, "Laser Construction Manual Agreement," which the defendant presumes is something different than the "Construction Manual."**

60. Laser Sailboats, Limited has not returned its copy of the Construction Manual to ILCA.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

61. Laser Sailboats, Limited has not returned its copy of the Construction Manual to the Kirby Plaintiffs.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

62. Laser Sailboats, Limited has not returned its copy of the Construction Manual to Global.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

63. Laser Sailboats, Limited has not destroyed any and all copies of the Construction Manual which it may have made.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

65. LaserSailboats, Limited continues to make use of the Construction Manual.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

66. Laser Sailboats, Limited maintains premises at StationWorks, Long Buckby, Northhampton, NN6 7PF, England, United Kingdom.

> **Objection: The defendant objects to this request on the grounds that Laser Sailboats, Limited is not a party to this action and this request is, therefore, not properly addressed to this defendant.**

DEFENDANT,
LASERPERFORMANCE (EUROPE) LIMITED

/s/ Peter T. Fay
Douglas S. Skalka (ct00616)
Peter T. Fay (ct08122)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT  06510
Tel: (203) 821-2000
Fax: (203)821-2009
dskalka@npmlaw.com
pfay@npmlaw.com

## CERTIFICATION

I hereby certify that on October 5, 2018 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

/s/ Peter T. Fay
Peter T. Fay
NEUBERT, PEPE & MONTEITH, P.C.
