UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC., ET AL<br><br>Plaintiff,<br><br>V.<br><br>LASERPERFORMANCE (EUROPE) LIMITED, ET AL.<br><br>Defendants | Case No: 3:13-CV-00297 (JAM)<br><br>March 14, 2019 |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY**

Plaintiff, Global Sailing, Ltd. ("GSL"), by its attorneys, hereby files the following reply memorandum in support of its motion for partial summary judgment as to liability.

## INTRODUCTION

The reply memorandum filed by defendants Quarter Moon, Incorporated and Laser Performance Europe Ltd. (individually, "QMI" and "LPE", collectively, "Defendants") asserts that partial summary judgment on liability is inappropriate because, purportedly, there are triable issues regarding: (i) whether GSL ever had enforceable rights under the 1983 and 1989 Builder Agreements (collectively, the "Agreements"); (ii) if so, whether GSL "first breached" the Agreements, and did so in a material fashion; (iii) whether the alleged first breaches by GSL, if true, provide a basis for Defendants' admitted multiple failures to comport with terms of the Agreements, including failure to pay royalties, refrain from challenging intellectual property

1

**REDACTED**

rights, return items to GSL, etc., all the while continuing to sell Kirby Sailboats, which rights were solely obtained by and through the very Agreements Defendants seek to invalidate; and (iv) whether GSL's liability claims are barred by statutes of limitations (Dkt. 445, p. 2). As demonstrated below, each and every one of these assertions is based upon factual inaccuracies[1] and/or baseless conclusions of law. In the end, try as they might, Defendants cannot escape the words of their own counsel, who described this case in open court as "…from our perspective, primarily a contract case." (Dkt. 281, p. 6) In fact, the Motion for Partial Summary Judgment is exactly focused on that, and the simple, undisputed facts demonstrate with clarity that partial summary judgment on the issue of liability is wholly warranted.

## ARGUMENT

### A. There Was an Enforceable Contractual Relationship Between the Parties

Defendants assert that "[f]or years, GSL has denied the existence of a contractual relationship with LPE and QMI…It is those very same years during which it denied the existence of a contractual relationship with LPE and QMI, 2008-2017, that GSL now claims LPE and QMI breached a contractual relationship with GSL." (Dkt. 445, p. 4) This assertion is completely disingenuous and misleading. GSL has, from the outset, claimed that it purchased contractual rights and obligations under the Agreements from Bruce Kirby ("Kirby") and Bruce Kirby Inc. ("BKI") (together, the "Kirby Plaintiffs") in 2008. (Dkt. 329, p. 3) Indeed, the main defensive argument tendered by Defendants and vigorously pursued in the prior case, was that the 2008 Purchase and Sale agreement between Kirby Plaintiffs and GSL was valid (and not unwound by

---

[1] Indeed, in their statement of Additional Material Facts, a Reply to which is concurrently filed herewith, Defendants attempt to generate material facts by ignoring the clear and consistent statements made by Plaintiffs that rights were transferred under the 2008 Purchase and Sale Agreement and attempt to re-litigate the Head Agreement condition-precedent issues and 2011 Unwinding Agreement issues already mooted by the prior case ruling.

the 2011 agreement between those entities), and that GSL, not the Kirby Plaintiffs, was the proper party with standing to enforce breach of contract claims. (Dkt. 187 p. 31-35) Defendants won their argument when this court ruled that the 2008 Agreement was a valid enforceable contract that transferred the rights of Kirby Plaintiffs to GSL effectively placing GSL into the shoes of Kirby Plaintiffs, and that it was not unwound by the subsequent 2011 Agreement. (Dkt. 283, p. 8-11; Dkt. 445-2, p 5 #15). Thus Defendants, as the licensees under the contracts purchased from Kirby Plaintiffs, clearly were in a contractual relationship with GSL.

The undisputed facts further demonstrate that it was not until 2011, a full three years after the execution of the 2008 Agreement, that GSL believed it sold the enforcement rights under the Agreements back to Kirby Plaintiffs. From 2008 until 2011, GSL maintained and behaved as if it held the rights sold to it by Kirby Plaintiffs in 2008. This included: (a) noticing the Defendants that a sale and transfer of rights occurred and that the contracts would continue as "business as ordinary" (Dkt. 40, p. 40 ¶31; Dkt. 445-2, p. 5 #16; Dkt. 187 p. 33 §6.7); (b) attempting, and for a time succeeding, in collecting royalties due under the Agreements in the stead of Kirby Plaintiffs (Dkt. 445-2, p. 6 #19; Dkt. 187, p. 33-34); and (c) ultimately, "properly" terminating the 1983 Agreement. (Dkt. 445-2, p. 11 #36) GSL never repudiated the existence of contract rights under the Agreements or asserted that it was not a party to them. Instead, GSL asserted only that it believed that it sold the rights it obtained back to Kirby Plaintiffs in 2011. The contractual rights under the Agreements were not extinguished, nor did GSL deny the existence of such rights, simply because of this belief.

None of this is disputed or disputable. Indeed, Defendants have expressly admitted the points as outlined and cited above. Further, Defendants admit that GSL "properly" terminated the

1983 Builders' Agreement with Defendants (Dkt. 445-2, p. 11 #36), something it clearly could not have done if it never had an enforceable contractual relationship.

In fact, in 2014, Defendants brought several counterclaims against GSL in the prior action *based upon the very same Builder Agreements they now seek to question.* (Dkt. 40, p. 32 Counterclaim 1; p. 37 Counterclaim 6; p. 38 Counterclaim 7) To plead the existence of a contract, sue on it, and then deny that it ever existed is the height of hypocrisy.

Thus, the attempt by Defendants to dispute the existence of an enforceable contract is without any basis in fact or law. The undisputed facts illustrate with extreme clarity the existence of such a relationship rendering summary judgment valid.

### B. Defendants Cannot Escape Enforcement of the Agreements By Claiming That GSL First Breached Them.

Defendants next argue that their breaches of the 1983 and 1989 Builder Agreements are excused since GSL allegedly breached these Agreements before Defendants. More specifically, Defendants' assert that "[B]oth Builder Agreements provided that '[n]either Bruce Kirby nor Bruce Kirby Inc. shall assign any rights in the Licensed Design save to an assignee who shall enter into an agreement with Licensee on terms and conditions identical with the terms and conditions of this Agreement." (Dkt. 445, p. 5) Further, Defendants assert that "GSL has admitted that it and the Kirby plaintiffs breached the terms of the Builder Agreements, specifically ▇ because GSL, as assignee, failed to enter into an agreement with the licensees (LPE and QMI) on terms and conditions identical with the terms and conditions of the Builder Agreements. (Dkt. 445, p. 5) They next claim that "If GSL had entered into new agreements with LPE and QMI no other documentation would have been needed. (Dkt. 445, p. 6) And they further state "…GSL's breach occurred in 2008, upon execution of the 2008 Agreement, before any alleged breach by QMI or LPE." (Dkt. 445, p. 6) These arguments and assertions are factually and legally baseless, and do

4

not provide Defendants with any basis whatsoever for avoiding partial summary judgment on the issue of liability.

First, the conclusion reached by Defendants does not flow logically from the assertion they make. If Kirby and BKI could not, and should not, have transferred the licensing rights to GSL in 2008, this would mandate that royalties remained due and owing to Kirby and BKI. Similarly, if GSL (who, by Defendants' logic, improperly purchased the license rights) was required to enter into Agreements with Defendants identical to the 1983 and 1989 Builders Agreements and failed to do so, this would mandate that Defendants were only bound by the terms of the original Agreements, not any changed terms. It does not, and cannot, mean that Defendants received a license in perpetuity to sell the boats without obligation or payment of any royalties to anyone. This would be an absurd result akin to saying that if a mortgage lender transfers a mortgage improperly, this gives the mortgagor the home free and clear to live in without ever having to make any payments again. This argument wholly defies logic.

Indeed, this conclusion is supported by the very case law set forth by Defendants in their response. Most notably, in Bernstein v. Nemeyer, and in Ontario, Ltd. v. Victoria Strong, Ltd., both cited at pages 6-8 of Defendants' response, the courts noted that the elements to consider in assessing whether a breach is material are premised principally upon whether the party asserting the breach received the benefit of the bargain made. (Dkt. 445 p. 6-8) Here, Defendants plainly received the benefit bargained for—a license to sell Kirby Sailboats—and indisputably have continued to exercise that benefit long after the alleged breaches. (Dkt. 445-2, p. 7 #21) By contrast, GSL has received none of the benefits received under the Agreements, namely, royalties, freedom from challenge to the intellectual property rights being licensed, etc. There is no equitable or legal basis upon which to argue, as do Defendants, that the alleged conduct they complain of

somehow gives rise to allowing one party to continue to act under, and receive, all of the benefits from, long-standing agreements (and, as noted above, to even sue under), while depriving the other party of all rights and benefits thereunder.

Second, the allegations of contractual breach by Defendants are factually and logically meritless. In arguing that GSL, as assignee, failed to enter into Agreements identical to the 1983 and 1989 Builders Agreements (Dkt. 445, p. 6), Defendants ignore the undisputed fact that they received a letter from GSL stating that the parties would proceed with "business as usual" under the Agreements already in place. (Dkt. 445-2, p. 5 #16; Dkt. 187, p. 33) It is undisputed that Defendants acquiesced to this. Defendants, rather than asserting that the Agreements were null and void, and giving up their rights derived solely thereunder to sell Kirby Sailboats, continued to sell. (Dkt. 445-2, p. 7 #21) Defendants clearly accepted the transfer of rights from Kirby and BKI to GSL, as they argued vociferously that GSL was the proper party in interest under the 1983 and 1989 Builders' Agreements, a position which necessarily presupposes that the transfer was valid. This position was adopted by this Court, and is law of the case. (Dkt. 283, p.8) Under these circumstances, Defendants argument is wholly disingenuous.

In fact, there was no breach of the Agreements, material or otherwise, by GSL. It is undisputed that Defendants received notice and documentation of the transfer of ownership to GSL. (Dkt. 445-2, p. 5 #16; Dkt. 187, p. 33) It is also undisputed that Defendants have admitted that that the 1893 Agreement was "properly terminated" by GSL (Dkt. 445-2, p. 11 #36), which, again, could not have been the case had GSL's alleged breaches precluded it from obtaining the rights in the first place. To the extent that there is a real, material dispute in this case, it is between Defendants and themselves. A party cannot create a disputed issue of material fact by choosing both sides of an issue, and then claiming its own contradictory position gives rise to a triable issue.

REDACTED

Defendants also nakedly assert, without evidence, that GSL intends to destroy Defendants, and that this gives rise to a triable issue. (Dkt. 445, p. 5, Citing Dkt. 40, pp. 24-26, ¶s 26-34) This claim has already been dismissed by this Court in the prior case; in addition, it is a red herring. To avoid summary judgment under the applicable case law, it is not enough for a party to make wild, unsupported claims and assert that they must be resolved; rather the party making the assertion must provide evidence bearing on its claim. (L.R. 56(a)1) No such evidence is attached to Defendants' Response, or has ever been identified. In addition, even if there was such evidence (there is not), this would, as discussed above, argue only that Defendants could have completely repudiated the contract upon learning of the transfer (it did not), not its baseless claimed right to continue acting as if the Agreements exist for its own purposes, while ignoring any obligations pursuant thereto.

In short, there is simply no basis for Defendants' claim that they are excused from performance under the Agreements. Defendants have admittedly not paid royalties on their sales to GSL (Dkt. 445-2, p. 7 #22), and this failure, by itself, entitles GSL to partial summary judgment on the issue of liability. Moreover, there are additional, separate breaches which provide independent bases for summary judgment.

For example, per ▓▓▓ of the Builder Agreement, ▓▓▓▓▓▓▓▓▓▓▓▓
▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

Defendants also nakedly assert, without evidence, that GSL intends to destroy Defendants, and that this gives rise to a triable issue. (Dkt. 445, p. 5, Citing Dkt. 40, pp. 24-26, ¶s 26-34) This claim has already been dismissed by this Court in the prior case; in addition, it is a red herring. To avoid summary judgment under the applicable case law, it is not enough for a party to make wild, unsupported claims and assert that they must be resolved; rather the party making the assertion must provide evidence bearing on its claim. (L.R. 56(a)1) No such evidence is attached to Defendants' Response, or has ever been identified. In addition, even if there was such evidence (there is not), this would, as discussed above, argue only that Defendants could have completely repudiated the contract upon learning of the transfer (it did not), not its baseless claimed right to continue acting as if the Agreements exist for its own purposes, while ignoring any obligations pursuant thereto.

In short, there is simply no basis for Defendants' claim that they are excused from performance under the Agreements. Defendants have admittedly not paid royalties on their sales to GSL (Dkt. 445-2, p. 7 #22), and this failure, by itself, entitles GSL to partial summary judgment on the issue of liability. Moreover, there are additional, separate breaches which provide independent bases for summary judgment.

For example, per [REDACTED] of the Builder Agreement, [REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]
[REDACTED]

the 1983 Agreement states " ████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████

It is factually indisputable that this offer for sale has not occurred. (Dkt. 1-4, p. 18 Article 10.8; Dkt. 415 Exhibit J).

Similarly, ███████████ of the Agreements, by its language states that contestation of the Licensed Design rights licensed in the Agreements in ███████████████ is an immediate default of the Agreements. It is not disputed that these rights were, in fact, challenged on multiple occasions. (Dkt. 445-2 pp. 10-11 #s 33, 34)

Defendants attempt to explain away the first of these obvious breaches by asserting that there is a question of fact as to whether they still hold the plugs, moulds, tooling, etc. (Dkt. 445, p. 10) Respectfully, this completely misses the point. Whomever now has the materials which should have been offered back is of no moment—under the clear, unambiguous and undisputed language of the Agreements, Defendants could not transfer or dispose of the materials, and had to offer them back upon termination. If they transferred them, they are in breach. If they kept them after what Defendants have admitted was a "proper termination" of the 1983 Builders' Agreement, at least LPE is in breach. There is no material issue of disputed fact which requires trial on these issues.

As to the second issue concerning contesting of rights, Defendants assert that because they contested intellectual property rights after the Kirby Plaintiffs' sale to GSL, they were not in breach of the Agreements, as they were contesting Kirby's rights. (Dkt. 445, p. 10) This argument is disingenuous. The Kirby Plaintiffs sold their rights to GSL. In so doing, they did not extinguish the section of the Agreements making it an instance of default to contest design rights. Again, as

noted earlier, Defendants argue throughout the Response that they were entitled to an identical agreement with GSL to the one they had with the Kirby Plaintiffs—an identical agreement means that *all* terms remain in effect, not merely the ones which benefit Defendants. The clause clearly addresses ownership by both Kirby and Kirby Inc. *and* those who stepped into their shoes, as did GSL. Accordingly, Defendants attempt to avoid summary judgment in this manner fails at a logical level.

Each of these breaches constitutes a separate and independent basis for summary judgment.

### C. GSL's Breach of Contract Claims Are Not Barred By Any Statute of Limitations.

Finally, Defendants claim that "most of GSL's claims are barred by the applicable statutes of limitations." (Dkt. 445, p. 1) The entire explanation for this claim is set forth in footnote 1 to the Response, which states as follows: "The 1983 Builder Agreement (Doc. #1-4, §13.6) is governed by the laws of the Province of Ontario, Canada, which has a two-year statute of limitations for breach of contract. Limitations Act, SO 2002, c 24, Sched. B. GSL did not file this lawsuit until July 13, 2017. Any claims against LPE based upon alleged defaults of the 1983 builder agreement that occurred prior to July 13, 2015, are time-barred. The 1989 Builder Agreement (Doc. #1-8, §14.6) is governed by Connecticut law, which has a six-year statute of limitations. Any claims against QMI based upon alleged defaults of the 1989 builder agreement that occurred prior to July 13, 2011, are time-barred." (Dkt. 445, p. 1 Footnote 1)

By the very terms of Defendants' argument, their statute of limitations claim is *not* pertinent to this motion for summary judgment on liability, but rather to damages, as it expressly admits that certain of GSL's claims for breach, namely those against QMI occurring after July 13, 2011, and those against LPE occurring after July 13, 2015 are *not* barred by the statutes of limitations they cite. In addition, their argument, even as stated, is legally meritless.

First, certain of the breaches of contract alleged by GSL are, under the law of the relevant Jurisdictions, of a continuing nature, which resets the statute of limitations to the date of last breach. (Ride, Inc. v. APS Tech., Inc., No. 3:11-CV-1721 (JCH), 2015 U.S. Dist. LEXIS 172856 (D. Conn. Dec. 30, 2015); Guilbert v. Gardner, 480 F.3d 140 (2d Cir. 2007); Sungard Availability Services v. ICON Funding ULC, 2011 ONSC 7367). For example, each month that Defendants sold Kirby Sailboats and then did not make a required payment of royalties started the clock running all over again. (Dkt. 445-2, p. 7 #21) Thus, the cited statutes of limitations have not yet run at all, much less run prior to the filing of this action.

Second, the argument made by Defendants ignores the circumstances of this case. The very same breach of contract claims made by GSL under the same factual nexus were first advanced in early 2013 by the Kirby Plaintiffs, well in advance of any possible statute of limitations argument. At the time, the claims were advanced by the Kirby Plaintiffs, rather than by GSL, because GSL believed that it had resold the enforcement rights back to Kirby, and thus did not have standing to make the claim—when this Court ruled otherwise, GSL brought the claims. Simply put, Defendants have known of these very claims and the underlying facts for almost six (6) years. Equity demands that the breach of contract claims should "relate back" to the date the claims were first alleged, even if the alleger was a different party, especially under the circumstances present here. (TD Props., LLC v. VP Bldgs., Inc., 602 F. Supp. 2d 351 (D. Conn. 2009))

## CONCLUSION

For the reasons set forth above, GSL respectfully requests entry of partial summary judgment on its behalf on the issue of liability.

                                            Respectfully Submitted

                                            /s/J. Kevin Grogan
                                            J. Kevin Grogan (ct00331)
                                            Grogan, Tuccillo & Vanderleeden, LLP
                                            1350 Main Street, Suite 508
                                            Springfield, MA 01103
                                            Tel. (413) 736-5401 - Fax (413) 733-4543
                                            Email: saillit@gtv-ip.com

                                            *Attorney for Plaintiff, Global Sailing Limited*

REDACTED

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2019, a true copy of the foregoing PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO LIABILITY was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/EFC System.

/s/J. Kevin Grogan
J. Kevin Grogan

REDACTED