UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC., ET AL<br><br>Plaintiff,<br><br>v.<br><br>LASERPERFORMANCE (EUROPE) LIMITED, ET AL.<br><br>Defendants | Case No: 3:13-CV-00297 (JAM)<br><br><br>November 7, 2019 |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION
FOR ENTRY OF ORDER**

Plaintiff, Global Sailing, Ltd. ("GSL"), by its attorneys, hereby files the following Reply Memorandum in support of its Motion for Entry of Order (Dkts. 505 and 505-1, the "Motion" and "Proposed Order" respectively).

**INTRODUCTION**

On August 9, 2019, this Court entered an Order (Order Granting in Part and Denying in Part Motion for Partial Summary Judgment, Dkt. 494, the "August 9 Order") granting partial summary judgment to Plaintiff Global Sailing, Limited ("GSL") on its breach of contract claims against Defendants Laser Performance Europe ("LPE") and Quarter Moon Incorporated ("QMI"). In the August 9 Order, the Court made, *inter alia*, the following findings:

(a) The 1983 Builder Agreement between GSL and LPE (each as successors to the original signors) was terminated (Dkt. 494, pp. 5, 19), meaning there is no present authority for

1

LPE to manufacture or sell Kirby Sailboats, since the only authority for it to do so stems from the 1983 Builder Agreement;

(b) LPE and QMI improperly challenged the design rights of GSL to the Laser Sailboat after July 13, 2015 (Dkt. 494, pp. 5, 17, 19), a challenge which breached the Agreements, and a condition for which the Agreements provide automatic termination with no cure of any Agreement not already terminated. (Dkt. 1-4, pp. 16-17 Article. 10.4; Dkt. 1-8, p. 12 Article 10.4).

(c) LPE failed to attempt to negotiate a sale of the Kirby Sailboat specific plugs, moulds and tooling after July 13, 2015 as required by the 1983 Builder Agreement (Dkt. 494, pp. 4, 19, 20); and,

(d) The 1983 and 1989 Builder Agreements are "enforceable against Defendants" (Dkt. 494, p. 17).

These findings are law of the case.

The Proposed Order tendered by GSL at the invitation of the court does not seek to expand the August 9 Order; rather, it merely seeks to enforce the holdings of the court so that LPE and QMI cannot defy the consequences flowing from the August 9 Order with impunity. Paragraphs 1-5 of the Proposed Order set out the undisputed facts as a predicate to this enforcement. Paragraph 6 of the Proposed Order simply requires LPE to do the very thing the Court found that it failed to do in finding (c) above; namely, attempt to negotiate a sale of the Kirby Sailboat specific plugs, moulds and tooling back to GSL. Similarly, paragraph 7 of the Proposed Order merely prohibits LPE and/or QMI from continuing to operate under the authority provided by the Builder Agreements already found, in the case of LPE, to be terminated (finding (a), above), and in the case of both LPE and QMI, breached by an action for which the Agreements provide automatic termination (finding (b), above). Finally, paragraph 8 simply mandates that if either or both of LPE

and/or QMI have exercised their Article 11 rights and transferred custody of the aforementioned plugs, moulds or tooling to another entity under their control, LPE and/or QMI either must inform such entities of the existence of the August 9 Order, and further advise the entities to transfer the Materials to LPE and/or to refrain from using the Materials.

Not surprisingly, Defendants, in their Response to GSL's Proposed Order (Dkt. 507, the "Objection") completely ignore that each paragraph of GSL's Proposed Order flows inexorably from the Court's own August 9 Order. Instead, Defendants seek to divert attention from this fact by arguing that: (i) the motion does not comply with the Federal Rules of Civil Procedure (Objection, p. 1); (ii) that the breaches of the Builder Agreements were not alleged in the operative Amended Complaint (Objection, p. 2); (iii) that GSL "has not proven that LPE ever owned any materials…" (Objection, pp. 3, 5); (iv) that GSL seeks to compel "unidentified subcontractors" to perform (Objection, p. 4); and, (v) that QMI allegedly remains an authorized Builder under the 1989 Builder Agreement and that none of the obligations directed to QMI under Article 10.9 of the 1989 Builder Agreement are triggered (Objection, p. 4)[1]. As demonstrated below, each and every one of these assertions is based upon factual inaccuracies[2] and/or baseless conclusions of law. Simply put, Defendants wish to escape the judgment of the Court which determined, quite clearly, that "there is no genuine dispute of fact that the Builder Agreements are enforceable against defendants." (Dkt. 494, p. 17)

## ARGUMENT

---

[1] LPE and QMI argue that the "relief requested before there is a final judgment would deprive the defendants of their appellate rights" (Objection, p. 2). No basis is offered for this and no rational explanation exists. It is worth noting that Summary Judgment, which is relief before a final judgment, does not affect the appellate rights of the parties. Defendants can appeal from the final order in this case regardless of whether the Proposed Order is entered.
[2] Indeed, LPE and QMI appear to be unaware of the text of the very contracts they signed: nowhere in their Objection do they attempt to address the language of Article 3.1 of the 1983 and 1989 Builder Agreements, nor do they address Articles 11.1, 11.2, or 11.3.

3

## A. The Motion for Entry of Order was Tendered at the Express Invitation of the Court

Defendants assert that the motion "is essentially a motion seeking declaratory relief." (Objection, p. 2) This is a clear misstatement, since the court has already issued a declaration in its August 9 Order that Defendants, individually and collectively, have breached mandated obligations as set forth above. Therefore, no new declaration is needed, and no declaratory relief is sought in the motion. Instead, GSL seeks only the inclusion of relief which flows without question from the aforementioned August 9 Order. This is not a motion for summary judgment, or anything close to it.

GSL is not "attempting to skip the jury trial it has requested" (Objection, p. 1). Quite to the contrary, GSL is looking forward to the jury trial and an opportunity to prove the amount of monetary damages it has already suffered as a result of Defendants' misconduct. It is already established that "[u]ncontroverted evidence submitted by Global Sailing indicates that LaserPerformance sold Lasers…" and that "[f]urther uncontroverted sales records appear to show Laser sales in 2017 and 2018." (Dkt. 494, pp. 4) However, that trial is limited to damages and any issues attendant thereto (such as proving the identities of which Defendants sold Kirby Sailboats during the period allowed by the Court's limitations decision). (Dkt. 508, Transcript of Hearing dated 23 Sept. 2019, pp. 5-6, the "Transcript"). In fact, GSL's counsel specified at the most recent status hearing that the matters to be raised in the Proposed Order attached to this motion were outside of the issues to be tried before the jury. (Transcript, p. 7) The Court then expressly invited GSL's counsel to circulate a draft of what is now the Proposed Order. (Transcript, p. 7). When asked for comment about the type of order being proposed by GSL, Defendants' counsel responded "[n]othing from Defendants' side…" (Transcript, p. 8). To now claim that the Proposed Order is a backdoor way to avoid a jury trial is disingenuous.

4

Nothing about the Proposed Order has anything to do with the issues to be tried before a jury, precisely because each and every one of the issues which give rise to the Proposed Order has already been decided. To repeat, it is the law of the case (as Defendants themselves acknowledged in the Objection) that LPE "failed to participate in a good faith attempt to sell back Laser manufacturing materials to Global Sailing or another licensee..." (Dkt. 494, p. 17). It is law of the case (and again acknowledged by Defendants in the Objection) that both QMI and LPE breached the no-contest provisions of their respective Builder Agreements. (Dkt. 494, p. 19). It is law of the case that these provisions "are enforceable against Defendants." (Dkt. 494, p. 17). The Proposed Order merely seeks to provide an enforcement mechanism to prevent one or both defendants from continuing to violate provisions held enforceable and in breach by this Court. There is nothing for a factfinder to do with such requests.

**B. The Amended Complaint Alleges the Grounds for Breaches of the Builder Agreements**

Defendants next argue that, somehow, "the defaults found by the court were never alleged by the Plaintiff." (Objection, p. 3). In particular, Defense puts forward that Plaintiffs do not allege:

- QMI breached the 1989 Builder Agreement "no contest" provision.
- LPE breached the 1983 Builder Agreement by challenging the design rights in the Kirby sailboat.
- LPE failed to participate in a good-faith attempt to sell back Kirby sailboat manufacturing Materials.

These three grounds are handily demonstrated in the Amended Complaint (Dkt. 329) which clearly shows at paragraph 32 points "e." and "g." the allegations that LPE and QMI failed participate in a good-faith attempt to sell back the Kirby sailboat construction Materials as defined in Article 3.1

5

of the operative Builder Agreements. Plaintiffs subsequently ask to be made whole in this regard in their Prayer For Relief Item D (Amended Complaint, Dkt. 329, p. 15).

Claims regarding the "no contest" provisions date back to at least the first Complaint filed in the parent case (Dkt. 1). Plaintiffs pleaded Defaults of the 1983 and 1989 Builder Agreements (Claims I and II of the Amended Complaint, Dkt. 329, p. 10). Violating the "no contest" provisions clearly constitutes a "default." Additionally, the Amended Complaint explicitly pleads that the court "award such other and further relief as it deems just and proper." (Dkt. 329, p. 16). It is indeed just and proper that a satisfied condition of breach in a contract is entitled to relief.

### C. LPE and QMI Positively Affirmed Ownership of the Kirby Sailboat Manufacturing Materials.

Defendants continue their attempt to explain away their lack of performance in returning the Kirby sailboat Materials by again asserting that there is a question of fact that Plaintiffs must "prove" as to whether they still hold or ever owned the plugs, moulds, tooling, etc. (Dkt. 445, p. 10; renewed again Objection p. 3-5). It is undisputed fact in this case that LPE and QMI are the successors in interest of the 1983 and 1989 Builder Agreements (Dkt. 494, p. 2). As signatories to the Builder Agreements, LPE and QMI, per the clear and plain text Article 3.1 of their respective Builder Agreements, positively affirm that: "Licensee acknowledges and represents that Licensee has acquired and **is the owner of a set of production tooling** for the construction of Kirby Sailboats including: a) deck moulds, b) hull moulds, c) glue jigs, d) centerboard box moulds, e) deck plugs, and f) hull plugs." (Emphasis Added). Thus, plaintiff has no need to "prove" that which the Defendants have already acknowledged upon assuming the obligations of their respective Builder Agreements.

Nor could Defendants, under Article 11 of their respective Agreements, merely dispose of the Materials or contract their duties away. Article 11.2 of the 1983 Builder Agreement states, "Subject to Article 11.3 hereof, Licensee acknowledges and agrees that this license is not assignable in whole or in part to any person including any corporation which is a successor corporation of Licensee without the prior written consent of Kirby Inc." Article 10.8 of the 1983 Agreement states "Licensee agrees that in the event of termination of this Agreement for any reason, Licensee shall attempt in good faith to negotiate a sale to Kirby Inc., or to negotiate a sale to another licensee of Kirby Inc., all plugs, moulds, and tooling then owned by Licensee relating to the manufacture of Kirby Sailboats at fair market value not to exceed replacement cost." It is factually indisputable, and it is now the law of this case, that this offer for sale has not occurred. (Dkt. 494, p. 20; Dkt. 1-4, p. 18 Article 10.8; Dkt. 415 Exhibit J). The Proposed Order, thus, does not manufacture some new need or fact, but instead seeks to enforce that which is already undisputed.

## D. The Proposed Order compels only Actions by the Defendants not "Unidentified Subcontractors."

Defendants next put forward the disingenuous idea that the Proposed Order somehow compels third party contractors, licensed under Article 11.1 of the respective Builder Agreements, to be subject to the jurisdiction of the court. (Objection p. 3-5). Respectfully, this completely misses the point. Whomever now has the materials which should have been offered back is of no moment—under the clear, unambiguous and undisputed language of the Builder Agreements, Defendants could not transfer or dispose of the Materials, and had to offer them back upon termination. The language of the Proposed Order (Dkt. 505-1, ¶8) clearly states that LPE, if not in direct possession of the Materials it affirmatively represented it owns and controls, shall contact

7

those sub-contractors to whom it provided the Materials and instruct them to return the Materials, their own property, so that LPE may comply with the terms of the Builder Agreement.

### E. The Status of QMI as a Builder is Irrelevant to the Performance of its Contractual Obligations.

Finally, Defendants claim that "until the plaintiff proves that the 1989 Builder Agreement with QMI has been properly terminated, it would be premature to and improper to seek an order preventing QMI from engaging in any conduct it has a right to engage in under the 1989 Builder Agreement." (Objection, p. 4). Defendants again entirely miss the point. If QMI was subject to an active Builder Agreement, the August 9 Order has definitively determined they are in breach of it. (Dkt. 494, p. 5 holding as fact that QMI "…maintains that there are no design rights in the Kirby sailboat.") Indeed, "there is no genuine fact dispute that Quarter Moon has breached the 1989 Builder Agreement's 'no contest' provision." (Dkt. 494, p. 17) Article 10.9 rights are thus triggered and QMI must cease to continue its activities in breach of its Agreement.

Further, under Article 10.4 of the 1989 Builder agreement, "default" by challenge of the rights by plaintiff to the Licensed Design leads to automatic termination of the Agreement[3]. It is the law of this case that the actions taken by QMI give rise to a terminable condition that requires no provision of an opportunity to cure.

---

[3] Article 10.4 of the 1989 Agreement states: "Upon the occurrence of any 'default' under sub paragraphs a), b), c), f) or k) or Article 10.1 hereof and in addition to any other rights, remedies and powers which it might have at law or in equity, Kirby Inc. may at its option give written notice to Licensee specifying the event of default and of the intent of Kirby Inc. to terminate this agreement, and upon giving of such notice, this Agreement shall automatically terminate." Subparagraph f) of Article 10.1 is the relevant violation.

8

## CONCLUSION

For the reasons set forth above, GSL respectfully requests entry of the Proposed Order (Dkt. 505-1) either *in toto* or in such form as the Court determines sufficient to maintain the course of justice.

                        **Grogan, Tuccillo & Vanderleeden, LLP**

                        By____/Jeffrey E. Schiller/_____
                              Jeffrey E. Schiller

Attorneys of Record
James Kevin Grogan, Esq.
Jeffrey E. Schiller, Esq.
Kevin H. Vanderleeden, Esq.
GROGAN, TUCCILLO &
VANDERLEEDEN, LLP
One Financial Plaza
1350 Main Street, Suite 508
Springfield, MA 01103
Tel. (413) 736-5401
Fax (413) 733-4543

## CERTIFICATE OF SERVICE

I hereby certify that on November 07, 2019, a true copy of the foregoing PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF ORDER was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/EFC System.

                                                             **Grogan, Tuccillo & Vanderleeden, LLP**

                                                             By   /Jeffrey E. Schiller/
                                                                     Jeffrey E. Schiller

Attorneys of Record
James Kevin Grogan, Esq.
Jeffrey E. Schiller, Esq.
Kevin H. Vanderleeden, Esq.
GROGAN, TUCCILLO &
VANDERLEEDEN, LLP
One Financial Plaza
1350 Main Street, Suite 508
Springfield, MA 01103
Tel. (413) 736-5401
Fax (413) 733-4543