UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE KIRBY, INC. ET AL | : | |
| | : | CASE NO. 3:13-CV-00297 (JAM) |
| Plaintiff, | : | |
| | : | |
| V. | : | |
| | : | |
| LASERPERFORMANCE (EUROPE) | : | |
| LIMITED, ET AL. | : | |
| | : | |
| Defendants. | : | JANUARY 27, 2020 |

**MEMORANDUM IN OPPOSITION TO MOTION FOR SANCTIONS OF PLAINTIFFS
BRUCE KIRBY AND BRUCE KIRBY, INC.**

## TABLE OF CONTENTS

I.      Introduction………………………………………………………...  1

II.     Additional Relevant Facts…………………………………………….. 2

III.    Discussion………………………………………………………….. 4

        A. Defendants' Responses to the Alleged Violations………………….  4

        Alleged violation #1: The defendants intentionally violated the
        court's September 4, 2014 Order (Doc. 163) by failing to produce
        cost information for Laser sailboats……………………………….... 4

        Alleged violation #2: The defendants failed to produce over 9,000
        documents to the Kirby plaintiffs until one day before the filing of
        the Joint Trial Memorandum……………………………………….. 10

        B. Defendants' Responses to the Alleged Prejudice……………………… 12

        C. Defendants' Responses to the Requested Sanctions…………………… 14

        Requested Sanction #1: A finding of fact and conclusion of law
        that defendant QMI had a certain amount of revenues from the sale
        of Laser sailboats bearing the BRUCE KIRBY trademark between
        February 2011 and May 15, 2013……………………………………. 14

        Requested Sanction #2: A finding of fact and conclusion of law that
        QMI has failed to prove any costs associated with the manufacture
        and/or sale of Laser sailboats. …………………………………………14

        Requested Sanction #3: A finding of fact and conclusion of law that
        QMI's revenues be determined to be QMI's "profits" under the
        Lanham Act, 15 U.S.C. § 1117(a)……………………………………..14

        Requested Sanction #4: An order that the defendants and its damages
        expert, William Murray, be precluded from using at trial any evidence
        of costs of the Laser sailboat or any documents that were not produced
        to Kirby during fact discovery. ………………………………….... 15

        Requested Sanction #5: An order that the defendants be precluded
        from presenting at trial any documents of the over 9,000 documents it
        failed to produce to Kirby…………………………………………… 15

        Requested Sanction #6: An order that the defendants pay the Kirby
        plaintiffs' attorneys' fees for his motions in limine and their motion
        for sanctions………………………………………………………… 16

IV.     Conclusion…………………………………………………………… 17

## <u>TABLE OF AUTHORITIES</u>

Federal Rules of Civil Procedure
      Rule 26……………………………………………………………… 8
      Rule 37……………………………………………………………… 8

U.S. Code
      15 U.S.C. §1117…………………………………………………….. 15

## I.      INTRODUCTION

The defendants, LaserPerformance (Europe) Limited ("LPE") and Quarter Moon, Inc. ("QMI"), submit this memorandum in opposition to the Motion for Sanctions and Request for Expedited Briefing Schedule (the "Motion") filed by the plaintiffs, Bruce Kirby ("Kirby") and Bruce Kirby, Inc. ("BKI")(collectively, the "Kirby plaintiffs") under seal on January 21, 2020 (Doc. 537).

The Kirby plaintiffs have moved for sanctions on the following grounds:

(1)  the defendants allegedly intentionally violated the court's September 4, 2014 Order (Doc. 163) by failing to produce cost information for Laser sailboats; and

(2)  the defendants failed to produce over 9,000 documents to the Kirby plaintiffs until one day before the filing of the Joint Trial Memorandum.

The Kirby plaintiffs assert that they have been prejudiced by the defendants' alleged intentional violation of the court's order and their discovery obligations because they claim:

(1)  they were denied an opportunity to review the material;

(2)  they were denied the opportunity to inquire about or seek further discovery regarding the withheld documents and information; and

(3)  they now have "no idea what Defendants will say about them at trial." Doc. 537, p. 1.

As sanctions, the Kirby plaintiffs request the following findings of fact and conclusions of law:

(1)  that defendant QMI had a certain amount of revenues from the sale of Laser sailboats bearing the BRUCE KIRBY trademark between February 2011 and May 15, 2013;

(2) that QMI has failed to prove any costs associated with the manufacture and/or sale of Laser sailboats; and

1

(3)  that QMI's revenues be determined to be QMI's "profits" under the Lanham Act, 15 U.S.C. § 1117(a).

As further sanctions, the Kirby plaintiffs also seek:

(4) an order that the defendants and its damages expert, William Murray, be precluded from using at trial any evidence of costs of the Laser sailboat or any documents that were not produced to Kirby during fact discovery;

(5) an order that the defendants be precluded from presenting at trial any documents of the over 9,000 documents they failed to produce to Kirby; and

(6) an order that the defendants pay the Kirby plaintiffs' attorneys' fees for their motions in limine and the motion for sanctions.

The defendants object to the motion for sanctions on the grounds that there is no merit to the Kirby plaintiffs' unsupported assertion that any failure to disclose the documents identified by the Kirby plaintiffs was intentional or the result of the defendants' disregard of their discovery obligations. Moreover, under the circumstances, the sanctions requested are neither justified nor just and the Kirby plaintiffs have failed to identify any unfair prejudice as a result of the defendants' alleged conduct.

## II.    ADDITIONAL RELEVANT FACTS

In considering the Kirby plaintiffs' Motion, the defendants request the court to consider the following additional relevant facts. As this court is aware, this case was filed by the Kirby plaintiffs nearly seven years ago, and most of their claims have been disposed of, in large part, because they did not have standing to bring those claims. *See*, Order Regarding Cross-Motions for Summary Judgment on Claims and Counterclaims,  Doc. 283.  Nevertheless, as a result of the Kirby plaintiffs bringing such claims, the defendants, and others, were embroiled in this

litigation for several years while the Kirby plaintiffs engaged in extensive discovery into the businesses of the defendants all while they had no standing to bring most of the claims for which they were conducting discovery.

The Kirby plaintiffs assert that they filed this action in March 2013 and that discovery in this case closed in December 2014. Doc. 537, p.2.  Initially, the Kirby plaintiffs asserted seven claims against seven defendants. All but LPE and QMI were dismissed from the case. On January 20, 2015, these defendants filed a motion for summary judgment. Doc. 186. On August 12, 2016, this court ruled that because the Kirby plaintiffs had no standing, LPE and QMI were entitled to summary judgment on all of the claims against them. The Kirby plaintiffs then waited nine (9) months before filing a Motion for Clarification on May 12, 2017, essentially asserting that the court had mistakenly granted summary judgment to the defendants on certain claims. Doc. 299.  Despite noting that the Kirby plaintiffs were not actually seeking clarification, but rather reconsideration of the court's prior ruling, and that the Kirby plaintiffs' motion was "manifestly untimely," the court nevertheless granted the motion, essentially restoring certain claims of the Kirby plaintiffs in Counts I to IV to the docket on June 21, 2017. *See*, Ruling on Motions to Amend and for Clarification, Doc. 312, p. 3.  However, the defendants' motion for summary judgment as to those claims remained pending. Thereafter, on July 27, 2018, the court issued its Supplemental Ruling Granting in Part and Denying in Part Motion for Summary Judgment as to Counts I to IV, leaving only the claims against QMI in Counts I and II, and against both QMI and LPE for misappropriation of Kirby's name in Count IV. Doc. 365.

The defendants note this history because from August 12, 2016 until June 21, 2017, the Kirby plaintiffs did not have any claims pending and until the court rendered its Supplemental Ruling on July 27, 2018, the parties did not know which claims, if any, would remain.  During

this time, Global Sailing Limited ("GSL") filed a separate lawsuit ("GSL Action") against LPE and QMI, amongst others, and commenced discovery in that action. It was in response to GSL's discovery requests in the GSL action that the defendants produced the 9,000 documents about which the Kirby plaintiffs now complain, in part, in their Motion. The defendants believe that when an email was sent to GSL's counsel with a link to these documents, counsel inadvertently failed to send the email with the link to counsel for the Kirby plaintiffs.

Significantly, on January 23, 2020, the Court bifurcated the consolidated action so that the claims brought by the Kirby plaintiffs in their action will be tried separately from the claims of GSL in its action.  The parties have not identified any documents from the recent production in their exhibit lists.

Against this background the defendants respond to each of the assertions made by the Kirby plaintiffs, in order.

## III.    DISCUSSION

### A.    <u>Defendants' Responses to the Alleged Violations</u>

**Alleged violation #1: The defendants intentionally violated the court's September 4, 2014 Order (Doc. 163) by failing to produce cost information for Laser sailboats.**

The Kirby plaintiffs also have filed a motion in limine concerning this cost information, seeking to exclude it from the trial. *See*, Plaintiff Bruce Kirby and Bruce Kirby, Inc.'s Omnibus Motion in Limine, p. 6. Doc. 525.  For the reasons stated in their Memorandum in Opposition to Omnibus Motion in Limine of Plaintiffs Bruce Kirby and Bruce Kirby, Inc. (Doc. 532), the defendants submit that they did not intentionally violate the court's September 4, 2014 Order and request that they not be sanctioned for any failure to comply with the court's order.

Specifically, the defendants submit: (1) the defendants produced cost data that they will rely on at trial in 2015 when they served the Kirby plaintiffs with their timely-disclosed expert

4

report, as well as through a document produced during fact discovery in 2014; (2) the failure to produce exhibits 597 through 601 during discovery was inadvertent and certainly not intentional; and, (3) under the circumstances, any prejudice from the failure to produce the documents does not justify their preclusion.

The Kirby plaintiffs base their motion on this court's September 4, 2014 Order (Doc. 163) that stated:

> I order the defendants to produce documentation – to the extent such information is available -- regarding materials and manufacturing costs per boat since March 2009. Other information that is relevant to determining defendant's profits, such as the overhead costs allocable to the production of each Laser sailboat, may be subject to deposition or expert testimony.

Conference Memorandum and Order, Doc. 163, p. 2, ¶ 2.

Contrary to the Kirby plaintiffs' argument, it is not undisputed that the defendants never produced cost information for Laser sailboats to them. Following the court's Order, the defendants produced over 30,000 pages of documents to the Kirby plaintiffs, including data for both North American and European Laser sailboat revenues and a summary of per boat costs, per year for both North America and Europe. *See*, Motion, Exhibit B.

In January 2015, the defendants retained William Murray[1] as an expert to rebut the opinions of the Kirby plaintiffs' expert, Joseph DeCusati, concerning plaintiffs' claimed damages and to analyze plaintiffs' trademark damages claim, including an analysis of the Laser sailboat revenues and costs. In February 2015, after Murray met with the defendants to discuss his information needs, the defendants located the documents constituting exhibits 597 through 601 and provided them to Murray. The defendants disclosed Murray as their expert on March 9,

---

[1] Mr. Murray is a licensed certified public accountant accredited in business valuation and certified in financial forensics. *See* p. 1 of Mr. Murray's March 9, 2015 Expert Rebuttal Report. A copy of his curriculum vitae is attached to his Report, which is contained in Doc. 532.

2015 and provided the Kirby plaintiffs with a copy of his Expert Rebuttal Report (the "Report")
with the disclosure.

Murray's report contains a detailed explanation of Laser sailboat costs and includes the
cost data he relied on to develop his opinions in detailed exhibits. *See* Report, pp. 13-18.  He
calculates total cost by combining three separate categories of cost:  overhead, labor, and
material costs.  The first component was overhead.  He relied on Exhibit 597 in order to calculate
overhead.  *See* Report, p. 9.  Exhibit 597 consists of Laser Performance, LLC income statements
for the years 2011, 2012 and 2013.  The second component of costs was labor.  He relied on
statements from the defendants to determine the average cost of labor to produce a single
sailboat. *See* Report, p. 9.

The third component of costs is the cost of materials used in boat manufacture.  For
material costs, Murray used data drawn directly from documents he identified in his Report as
"bills of material."  These documents broke down the costs of sailboat hulls and other component
parts.  He explained the cost to manufacture hulls in Rhode Island from 2011 through April
2012.  *See* Report, p. 8.  He relied on a bill of materials for that cost information.  Exhibit 598 is
the "Master Bill of Materials" documenting the cost of producing the hull in Rhode Island,
including the total cost reported by Murray.  After April 2012, hulls were produced in Europe
and sold to the North American manufacturing facility for cost plus a 15% markup.  *See* Report,
p. 8. Exhibit 600 is a "Master Bill of Materials" documenting the production cost of hulls in
England, including the total material cost of the hull that Murray reported.  Murray used the
monthly currency exchange rate to translate the European hull materials cost into dollars for each
month he calculated damage.  *See* Report, p. 8.

Murray also explained how he arrived at component parts cost. He stated that he was provided a bill of materials for the component parts on the most popular Laser models. *See* Report, p. 8. The bill of materials he referred to is Exhibit 599, entitled "Laser Bill of Materials – US."[2] He transferred the data from that bill of materials to Exhibit 5 of his Report and, based on those costs, derived an average component part cost. *See* Report, pp. 8-9 and Exhibit 5.

Following Murray's disclosure, the parties discussed scheduling his deposition.[3] It appears from a review of the parties' correspondence that such discussions ended by September 2015, perhaps because the parties had filed cross motions for summary judgment that were pending with the court. The Kirby plaintiffs' counsel has not requested Murray's deposition since then. Moreover, the Kirby plaintiffs did not request copies of the materials cited in Murray's Report or object to the completeness of his disclosure until they filed their Omnibus Motion in Limine. While almost all fact witness depositions in these consolidated matters were taken prior to Murray's disclosure, discovery reopened after this case was consolidated with the 2017 lawsuit brought by Global Sailing, Ltd. During that time, both plaintiff, Bruce Kirby, and a former QMI executive, William Crane, were deposed a second time. The Kirby plaintiffs' counsel did not attend the second deposition of William Crane.

The defendants included Exhibits 597 through 601 in the exhibits they provided to the Kirby plaintiffs' counsel in advance of submitting the joint pretrial memorandum. After the Kirby plaintiffs' counsel notified the defendants' counsel that they had not previously received these exhibits, the defendants' counsel undertook a review of their files and records of document production. They have not found, to date, evidence that these exhibits were previously produced.

---

[2] Exhibit 601, entitled "Laser Bill of Materials – UK," is the same information although contains the component part cost for Laser sailboats built in England.
[3] Correspondence between counsel and with Mr. Murray about scheduling his deposition is contained in Doc. 532-2.

The specific attorneys who managed this matter for the defendants are no longer practicing with the defendants' counsel's firm.

The defendants concede that Exhibits 598 through 601 constituted documentation of costs, and should have been produced pursuant to the court's September 4, 2014 Order within a reasonable time after the defendants identified them in February 2015.  Note that Exhibit 597 consists of income statements used by the expert to calculate overhead – a topic the court recognized in its Order may await expert discovery.  The Kirby plaintiffs have not established that its production was required by the Order or by any specific discovery request. Consequently, the defendants should not be precluded from introducing it.

The defendants complied with the court's September 4, 2014 Order by producing a summary of production costs, *see* Exhibit C to Plaintiffs' Motion, and by producing Murray's expert report.  Although Murray's Report was not produced by the deadline for document production in the court's Order, it was produced within the deadline set for expert disclosure.  It included a detailed description of costs and all of the data that the defendants intend to rely on to establish costs.

The defendants did not supplement their production once exhibits 598 through 601 were identified and provided to the expert as required by Rule 26(e) of the Federal Rules of Civil Procedure.  Rule 26 provides that the court may deny a request to preclude evidence if it finds that the failure to supplement was either substantially justified or harmless.  *See* Fed. R. Civ. P. 37(c)(1).  In addition, depending on the circumstances, should the court find sanctions warranted, the Rule gives the court discretion to fashion an appropriate sanction.  *Id.*  The defendants ask the court to forego issuing a sanction for the following reasons.

First, the non-disclosure of these documents was certainly inadvertent.  The circumstances surrounding the identification of and contents of these documents is evidence of inadvertence.  The documents contain information useful to the defendants' opposition to the Kirby plaintiffs' trademark damages claim, and so they had every incentive to produce them. Second, the data from these exhibits plays a prominent role in Murray's March 2015 Report. Indeed, Murray identifies these exhibits in his report.  Clearly, the defendants made no effort to hide them. Moreover, it is most likely that the defendants' counsel fully expected that Murray would be deposed following his disclosure, and that his entire file, including these exhibits would be requested and produced in the normal course of expert discovery.  These circumstances do not justify the failure to supplement; rather the defendants present them to explain the circumstances and rebut the Kirby Plaintiffs' claim that the non-disclosure was intentional.

Second, the defendants propose that any prejudice suffered by the Kirby plaintiffs because of the failure to supplement was slight.  As described herein, the Murray Report set forth in detail a complete description of costs and included all the data from Exhibits 597 through 601 relevant to the issue of the Kirby plaintiffs' damages.  The exhibits simply present the very same data disclosed in the Report in a different format.  In short, the defendants disclosed in 2015 the information that the Kirby plaintiffs now seek to preclude.  The Kirby plaintiffs had the information four years ago and have had an opportunity to use it to prepare for trial.

Third, while it appears that the defendants did not produce these documents until the parties exchanged exhibits, and recognizing that it was the defendants' obligation to supplement their production, nevertheless, the Kirby plaintiffs were on notice of the existence of these records because they were identified in the Murray Report.  Yet they did not request his file or take his deposition.  This, in part, explains why the parties are disputing this issue at this time.

9

Fourth, should the court determine that exhibits 598 through 601 should be precluded because of their late production, the court should not preclude testimony concerning the cost of materials from a knowledgeable witness.  The Kirby plaintiffs were free to inquire of witnesses about costs during their depositions.  They had the opportunity to depose Murray who had provided a detailed explanation of costs.  They had a second opportunity to question the defendants' witness William Crane when he testified at his deposition in October 2018.

Fifth, if the court precludes evidence of material costs, it should not preclude evidence of labor costs or overhead.  Murray's Report describes three categories of sailboat costs of production.  Only one of those three is implicated by the recent production of documents – cost of materials.  As the court indicated in its September 4, 2014 Order, the issue of overhead was properly reserved for expert opinion.  With respect to labor costs, Murray relied on statements from clients, rather than on documents.

Finally, the defendants have offered to produce Murray for a deposition to further alleviate any prejudice allegedly caused by the recent disclosure of the exhibits at issue.

**Alleged violation #2: The defendants failed to produce over 9,000 documents to the Kirby plaintiffs until one day before the filing of the Joint Trial Memorandum.**

The Kirby plaintiffs also have filed a motion in limine concerning these documents, seeking to exclude all of them from the trial. *See*, Plaintiff Bruce Kirby and Bruce Kirby, Inc.'s Omnibus Motion in Limine, Doc. 525, p. 5. As noted by the defendants in their memorandum in opposition to the omnibus motion in limine, these documents were produced to GSL in response to GSL's discovery requests in the GSL action that was not filed until July 2017.  The vast majority, if not all, of these documents recently produced to the Kirby plaintiffs are irrelevant to the Kirby plaintiffs' claims. The GSL action has been bifurcated from the trial of the Kirby

10

plaintiffs' claims.  Significantly, the defendants do not intend to use any of the documents included in the recent production in their defense of the Kirby plaintiffs' claims.

In the present Motion, the Kirby plaintiffs have identified only four documents that they believe the defendants should have produced previously.  The Kirby plaintiffs claim the first such document, Exhibit H to the Motion, which is a single page entitled "Kirby Schedule of Actual Payments – US ($ USD)," relates to when the defendants stopped paying royalties.

The second document, Exhibit I to the Motion, is a two-page string of five, short emails, dated March 4, 2015, including four exchanged between Bill Crane and Christopher Tunstall, concerning the plaques, which were then forwarded to Simon Allentuch in the fifth email. March 4, 2015 is after the date on which the Kirby plaintiffs claim discovery in this case closed. Moreover, it is apparent that these emails were exchanged internally by representatives of a defendant during the pendency of this litigation in preparation for the defense of this trial and never should have been produced to the Kirby plaintiffs. In fact, the email at the top of the string, also dated March 4, 2015, is an email from Bill Crane to Simon Allentuch, who was previously counsel for the defendants while associated with the law firm of Neubert, Pepe & Monteith, P.C. This email constitutes an attorney-client privileged communication that was inadvertently produced to the plaintiffs' counsel and which should be returned and/or destroyed by counsel. Moreover, the defendants submit that the Kirby plaintiffs should be precluded from using this inadvertently disclosed information at trial. Clearly, there is no basis for sanctioning the defendants for failing to produce this document previously since it is protected from discovery.

The third document, Exhibit K, consists of unsigned copies of minutes from three meetings of the board of directors of QMI, dated April 14, 2009, July 23, 2009, and May 12, 2010. The time period during which the Kirby plaintiffs claim the defendants were unauthorized

to use the BRUCE KIRBY trademark is between February 1, 2011 and May 15, 2013. The Kirby plaintiffs claim these documents are somehow related to the issues raised in their motion in limine #3 concerning sales made by QMI. However, their motion in limine #3 seeks to exclude all argument that revenues of LaserPerformance, LLC are not attributable to QMI.  *See*, Omnibus Motion in Limine, Doc. 532, p. 9. LaserPerformance, LLC is not a defendant in this action and it is not even mentioned in the minutes from any of these meetings.  The Kirby plaintiffs have failed to identify how these minutes are relevant to any of their claims.

The fourth, and final, document, Exhibit L, consists of two services agreements between QMI and Dory Ventures, LLC, which is not a defendant in this action. These agreements apparently were in effect from January 1, 2009 to no later than December 31, 2010, the date of termination of the second agreement, unless terminated earlier.  The Kirby plaintiffs have not even attempted to state how these agreements are relevant to their claims or how the alleged failure to produce these documents previously was prejudicial to them.

**B.**   **<u>Defendants' Responses to the Alleged Prejudice</u>**

**(1)  The Kirby plaintiffs were denied an opportunity to review the material.**

**(2)  The Kirby plaintiffs were denied the opportunity to inquire about or seek further discovery regarding the withheld documents and information.**

**(3)  The Kirby plaintiffs now have "no idea what Defendants will say about them at trial."**

Despite their assertion that the defendants post-discovery disclosures are "hugely prejudicial" to them (Motion, p. 10), the Kirby plaintiffs have failed to identify how they have suffered any actual prejudice as a result of any of the alleged discovery violations by the defendants. The mere fact that they were denied an opportunity to review the material, alone, does not constitute prejudice. If it did, then every inadvertent failure to produce a document

could be said to have unduly prejudiced the party to whom the document should have been produced.  The same is true about the claimed prejudice regarding being denied the opportunity to inquire about or seek further discovery.

With respect to Exhibit H, the Kirby plaintiffs already were aware of when the defendants stopped paying the Kirby plaintiffs royalties as they would have records of their receipt of such payments themselves. Moreover, under the various agreements, the defendants' alleged failure to make royalty payments did not and does not result in an automatic and immediate termination of the defendants' rights to manufacture and sell Laser sailboats. Consequently, the timing of when the defendants may have stopped royalty payments is irrelevant to the claims of the Kirby plaintiffs in this case and the argument of the Kirby plaintiffs on this issue is a red herring.

As for Exhibit I, as noted above, this document never should have been produced to the Kirby plaintiffs. Moreover, as they note, the Kirby plaintiffs were provided a copy of Exhibit J, which they argue contains the same information regarding when the defendants purportedly stopped using the plaques. Consequently, the Kirby plaintiffs cannot show any prejudice resulting from the defendants' alleged failure to produce Exhibit I, which the Kirby plaintiffs never should have received in any event.

The minutes from the meetings set forth in Exhibit K are irrelevant to any of the claims of the Kirby plaintiffs. Consequently, any failure to receive these documents previously could not be in any way prejudicial to the Kirby plaintiffs.

Likewise, the services agreements contained in Exhibit L are irrelevant to any of the claims of the Kirby plaintiffs. Consequently, any failure to receive these documents previously could not be in any way prejudicial to the Kirby plaintiffs.

13

As for the Kirby plaintiffs' claimed prejudice that they now have "no idea what Defendants will say about [these documents] at trial[,]" the defendants can eliminate that claimed prejudice by representing that they will not refer to the documents in Exhibits H, I, K, or L, or any of the other 9,000 documents if they were not previously produced.

C.     **Defendants' Responses to the Requested Sanctions**

**Requested Sanction #1: A finding of fact and conclusion of law that defendant QMI had a certain amount of revenues from the sale of Laser sailboats bearing the BRUCE KIRBY trademark between February 2011 and May 15, 2013.**

The plaintiffs have not yet proven that QMI had any revenues as a result of any alleged trademark infringement. The testimony cited by the Kirby plaintiffs (Motion, p. 8) was that the sales documents Mr. Crane was being questioned about represented sales by LaserPerformance, LLC, which is not a defendant in this action. The Kirby plaintiffs also have not proven that QMI infringed upon Kirby's trademark during any particular period of time. They certainly have not yet proven that any trademark infringement occurred between February 2011 and May 15, 2013, so it is premature for the court to determine, rather than the jury, before whom the Kirby plaintiffs have insisted on trying this case, what amount of revenues, if any, were generated between February 2011 and May 15, 2013 or during any particular time period.

**Requested Sanction #2: A finding of fact and conclusion of law that QMI has failed to prove any costs associated with the manufacture and/or sale of Laser sailboats.**

In response to this requested sanction, the defendants incorporate by reference their discussion above. *Supra,* pp. 4-10.

**Requested Sanction #3: A finding of fact and conclusion of law that QMI's revenues be determined to be QMI's "profits" under the Lanham Act, 15 U.S.C. § 1117(a).**

The Kirby plaintiffs apparently claim that because QMI failed to pay 2% of the licensee dealer's wholesale price as a royalty pursuant to the terms of the 1989 Builder Agreement, it is

liable for the full amount (100%) of its revenues, which the Kirby plaintiffs ask this court to

determine are QMI's profits.  This would result in a potential award to the Kirby plaintiffs that is

fifty (50) times the royalty QMI allegedly failed to pay.  This is hardly fair and just relief for the

Kirby plaintiffs for the defendants' alleged misconduct for all of the reasons discussed above.

Moreover, as the Kirby plaintiffs themselves note, in the absence of proof of costs, a plaintiff is

not automatically entitled to an award of a defendant's revenues as profits. Motion, p. 7. The

Kirby plaintiffs also have noted correctly that the remedy awarded should not act as a penalty.

Doc. 522, App. 13, p. 12; see also 15 U.S.C. §1117(a). Further, 15 U.S.C. §1117(a) provides that

if the court finds that the amount of the recovery based on profits is excessive, the court may "in

its discretion enter judgment for such sum as the court shall find to be just, according to the

circumstances of the case." Clearly, a judgment against QMI that would obligate it to pay an

amount equal to fifty times the amount the Kirby plaintiffs claim QMI should have paid as a

royalty would act as a very harsh penalty.

> **Requested Sanction #4: An order that the defendants and its damages expert,**
> **William Murray, be precluded from using at trial any evidence of costs of the Laser**
> **sailboat or any documents that were not produced to Kirby during fact discovery.**

In response to this requested sanction, the defendants incorporate by reference their

discussion above. *Supra,* pp. 4-10.

> **Requested Sanction #5: An order that the defendants be precluded from presenting**
> **at trial any documents of the over 9,000 documents it failed to produce to Kirby.**

As noted above, any failure to produce these documents previously to the Kirby plaintiffs

was not intentional. When these documents were produced to GSL, it is believed that counsel for

the defendants inadvertently failed to include counsel for the Kirby plaintiffs on the email that

provided a link to the documents. Nevertheless, the defendants do not intend to use any of the

documents included in the recent production in their defense of the Kirby plaintiffs' claims

unless they had been previously produced to the Kirby plaintiffs. The defendants' counsel offered to agree to the preclusion of the use of these documents at trial during the telephone conference with counsel for the Kirby plaintiffs on January 14, 2020 (Motion, p. 2) so no further sanctions or any award of legal fees related to these documents is warranted.

**Requested Sanction #6: An order that the defendants pay the Kirby plaintiffs' attorneys' fees for his motions in limine and their motion for sanctions.**

The Kirby plaintiffs have submitted time records related to the review and analysis of the documents produced on December 12, 2019, and the preparation of the motion for sanctions. In the absence of any documentation detailing the legal services provided in connection with the motions in limine, the court should decline to award any attorneys' fees for the preparation of the motions in limine.

With respect to the time purportedly spent preparing the motion for sanctions, it is clear that a certain amount of time was spent assessing and analyzing the documents that were produced. This time would have been spent reviewing the documents whenever they were produced and should not be considered to be related to the preparation of the motion for sanctions.

With respect to the motion for sanctions, it apparently took a partner, an associate, an unlicensed law clerk, and a paralegal nearly forty-two (42) hours to prepare a ten-page motion and related submissions (less whatever time was spent reviewing the documents). While defendants concede that the length of a motion is not necessarily determinative of the time required to produce it, presumably the individuals who prepared this motion charge such extremely high hourly rates (including $320 for an associate who graduated law school in 2015; $210 for a law clerk who is not admitted to the bar; and $230 for a paralegal) because they have certain expertise in these types of matters. The defendants submit that if the court determines the

16

Kirby plaintiffs are entitled to an award of attorneys' fees, it should be for significantly less than the amount requested because the time expended at the rates charged was unreasonably high.

## IV.    CONCLUSION

For the foregoing reasons, the defendants submit that the court should deny the Kirby plaintiffs' Motion for Sanctions.

DEFENDANTS,
LASERPERFORMANCE (EUROPE) LIMITED
and QUARTER MOON, INC.

 /s/ Peter T. Fay
Douglas S. Skalka (ct00616)
Peter T. Fay (ct08122)
Robert B. Flynn (ct15803)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, Connecticut 06510
Tel: (203) 821-2000
Fax: (203) 821-2009
dskalka@npmlaw.com
pfay@npmlaw.com
rflynn@npmlaw.com

## **CERTIFICATION**

I hereby certify that on January 27, 2020, a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.

 /s/ Peter T. Fay
Peter T. Fay (ct08122)
NEUBERT, PEPE & MONTEITH, P.C.