UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC., ET AL.,<br><br>Plaintiffs,<br><br>vs.<br><br>LASERPERFORMANCE (EUROPE) LIMITED, ET. AL.,<br><br>Defendants. | Civil Action No. 3:13-cv-00297-JAM |

**PLAINTIFF BRUCE KIRBY AND BRUCE KIRBY, INC.'S
REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS**

Pursuant to the Court's Order dated January 21, 2020, (Dkt. 541), Plaintiffs Bruce Kirby and Bruce Kirby, Inc. (individually and collectively, "Kirby") hereby submit its reply brief in support of its Motion for Sanctions against Quarter Moon, Inc. and LaserPerformance Europe Limited (individually and collectively, "LP"). (Dkt. 538 ("Motion").)

**I.      INTRODUCTION**

LP's opposition makes clear that there is no justification for its violations of the Court's September 2014 Order and the Federal Rules. LP does not dispute that it violated this Court's Order. (Dkt. 163 ("September 2014 Order").) In fact, LP admits that it ***did not even search for documents*** this Court ordered be produced. While the Court ordered production of cost information by October 1, 2014, LP states that it was not until February ***2015***, "after meeting with [LP's designated damages expert] to discuss [the expert's] information needs," that LP located the cost information this Court compelled. However, instead of promptly disclosing this information to Kirby at that time for ***Kirby's*** information needs (albeit four months late), LP withheld the information for ***five years*** and finally made the production on December 3, 2019 when the parties exchanged exhibits just weeks before trial. LP's trial by ambush is a flagrant

violation of the Court's order and causes immense prejudice to Kirby. LP's violation should be rectified by excluding all evidence and information not produced to Kirby during fact discovery, including cost information.[1] Moreover, as a sanction for LP's deliberate violation, Kirby respectfully requests that the Court award the additional fair and just relief identified in Kirby's Motion for Sanctions.

## II.  LP HAS PROVIDED NO JUSTIFACTION FOR ITS UNDISPUTED VIOLATION OF THE COURT'S SEPTEMBER 2014 ORDER

The gist of LP's opposition is that, contrary to the clear evidence, LP's undisputed violation was unintentional, insignificant, and should be overlooked. None of this is true. The facts cannot support LP's assertion of an "inadvertent" production failure. Kirby moved to compel specific documents, including cost information, which the Court clearly identified in its September 2014 order. LP highlights its sizable production following the Court's order to somehow argue this demonstrates compliance. (Dkt. 549 ("Opposition") at 8.[2]) However, not only does this have the opposite effect of evidencing LP's total disregard of its discovery obligations, LP does not and cannot identify any cost information it produced except an insufficient, one-page summary produced on October 28, 2014 (nearly four weeks late).

Worse still, LP admits that it never even intended to comply with the Court's order. LP only concedes that cost information should have been produced "within a reasonable time" after LP allegedly identified them in February 2015. (Opposition at 11.) But this would have been 4 months *after* the date the information was required to be produced. (*See* September 2014 Order at 3.)  Further, if LP did not "locate" the information until February 2015, then the summary it

---

[1] Kirby notes that, contrary to the parties' discussion on January 14, 2020, LP has now disavowed using any of the 9,000 documents produced on December 12, 2019 in its case. (Dkt. 59 ("Opposition") at 17.) Kirby therefore focuses its Reply on LP's failure to produce cost information.
[2] Page citations to documents on the Court's docket refer to the docket page number.

produced in October 28, 2014 was meaningless and LP consequently produced *no* cost information in response to the Court's order, not even an unsupported summary. LP's assertion that Kirby need not have received the documents when it received a summary is therefore baseless. Indeed, Kirby requested then compelled specific cost information (e.g., the cost information LP is trying to enter into evidence at the eleventh hour), LP possessed this information, and then did not even attempt to produce it on or before the Court's October 1, 2014 deadline.

Notably, LP is now seeking to carve out Exhibit 597 from the Court's September 2014 Order because Exhibit 597 allegedly consists of "income statements used by [LP's expert] to calculate overhead," which is a topic LP alleges the Court recognized "may await expert discovery." (Opposition at 11.) However, the Court ordered the production of the *underlying cost information* notwithstanding its ruling that the specific *allocation* of costs to the "production of each Laser sailboat" may be disclosed in a deposition or expert testimony. (September 2014 Order at 2.) That is, *designation* of the specific expenses as being allocable to the production of Laser sailboats "may be subject to deposition or expert testimony," but the underlying documentation needed to be produced in October 2014. (*Id.*) Thus, LP was *not* allowed to withhold the income statements. In any event, the first paragraph of the Court's September 2014 Order also orders the production of sales information, (*id.*), which clearly includes "income statements." For years, LP never provided this critical information in violation of its general and Court-ordered discovery obligations.

Finally, in its opposition, LP rehashes the history of this case and argues that, had they only succeeded on summary judgment as to Kirby's trademark claims, then their blatant and prejudicial discovery violations would have had no effect. (Opposition at 3.) Not only was LP unsuccessful on its summary judgment motions, the critical date is October 1, 2014—the due

3

date for LP's production. LP disregarded this deadline when it produced only a meaningless summary (on October 28, 2014) without any underlying documentation. Over the next five years, until December 3, 2019, LP never produced this information to Kirby. LP's conduct is warranting of severe sanctions.

## III.     KIRBY IS IMMENSELY PREJUDICED BY LP'S FAILURE TO PRODUCE COST INFORMATION

There is no excuse for LP's violations, which cause Kirby immense prejudice. LP argues that its disregard of the Court's orders and the Federal Rules does not prejudice Kirby, (Opposition at 15-17), yet LP's own admissions prove the contrary. As shown above, the request for cost information from LP's expert and subsequent report show that cost information was an important element of his analysis. (Opposition at 8.) LP admits that cost information is "useful to the defendants' opposition" to Kirby's damages claim and "plays a prominent role in Murray's March 2015 Report." (Opposition at 12.) Indeed, this is precisely why Kirby sought these documents in discovery and filed a motion to compel when they were not produced. Kirby *needed* this information to assess LP's damages defenses, but the information was deliberately withheld by LP. It was the critical nature of these documents that propelled Kirby to compel their production.

Moreover, LP argues that Kirby was "free to inquire of witnesses about costs during their deposition" and offer as hypothetical examples a deposition of LP's expert, Mr. Murray, and Mr. Crane's October 2018 deposition. (Opposition at 13.) However, cost information was not produced until December *2019*. No deposition prior to then could have cured Defendants' violation. Further, LP completely disregards the fact that Kirby already deposed Mr. Crane on the summary provided on October 28, 2014. As explained in Kirby's Motion, when Kirby questioned LP's 30(b)(6) witness, Mr. William Crane, about the summary, he did not know what

the information represented and was incapable of providing any factual support. (Motion at 5-6.) Likewise, Mr. Murray's deficient report, which has never been supplemented under Rule 26(e), did not contain "the facts or data" he considered or the exhibits that will be used support his opinions. Fed. R. Civ. P. 26(a)(2)(B)(ii)-(iii). Neither Kirby's counsel nor its expert has had an opportunity to assess or refute LP's cost information.

This Court has taken a firm line against the late disclosure of evidence and witnesses. In *D'Amico v. Dep't of Children & Families*, this Court excluded the testimony of a witness that was never properly disclosed during discovery. In so doing, Your Honor explained:

> [T]he disclosure requirements under the Federal Rules are not limited to those witnesses whose testimony is likely to be surprising to the other party. Nor is the harm of failing to disclose limited to preventing the other party from deposing the witness; disclosure enables the opposing party to build its theory of the case, to plan its strategies, and to find other evidence to use at trial. All of this cannot easily be done in the few weeks immediately before trial and long after the discovery period has closed.

Case No. 3:16-cv-00655, 2018 WL 650371, at *2 (D. Conn. Jan. 31, 2018) (Judge Meyer). The Court excluded the witnesses due to the prejudice to the opposing party and found it was too much to ask for the opposing party to prepare its case on the eve of trial for a witness not disclosed. *Id.*; *see also Hackman v. Town of East Hartford*, Case No. 17-cv-1344, 2019 WL 4059753, at *5 (D. Conn. Aug. 28, 2019). Notably, in *D'Amico*, the Court was merely determining the consequence for general discovery failures. Here, LP willfully and undisputedly violated a Court order.

## IV.   KIRBY'S REQUESTED RELIEF IS JUST AND TAILORED TO LP'S WILLFUL VIOLATIONS

As to the specific sanctions requested by Kirby, LP opposes an order by the Court that QMI's revenues should be determined to be its "profits" under the Lanham Act. (Opposition at 14-15.) First, LP argues that Kirby has not shown that QMI has any revenues. However, the

revenues of LaserPerformance LLC are the revenues of QMI. (*See* Dkt. 526 at 12-13.) This is further proven by LP's assertion that *LaserPerformance LLC*'s costs should be deducted from *QMI*'s revenues. (Opposition at 9.)

Second, LP argues that Kirby has not yet proven infringement, so a finding of profits finding is premature. However, Kirby is seeking to secure a finding as to QMI's profits *before* trial based on LP's deliberate violations of the Court's order to simplify the issues to be proven at trial.

Third, LP argues that a conclusion that all of LP's revenues are its "profits" is inequitable and cites as evidence a royalty QMI owed to make and sell Laser sailboats. LP misconstrues trademark damages under the Lanham Act, which include a plaintiff's *actual* damages and/or disgorgement of a *defendant's* "profits." 15 U.S.C. § 1117(a). While a royalty may be evidence of actual damages, it is not limiting on disgorgement of LP's profits, which is premised on LP's unjust enrichment, deterrence of trademark infringement, and, in this context, LP's willful violation of the Court's order. *See, e.g., Merck Eprova AG v. Gnosis S.p.A.,* 760 F.3d 247, 255-63 (2d Cir. 2014); *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1535-541 (2d Cir. 1992); *W. E. Bassett Co. v. Revlon, Inc.*, 435 F.2d 656, 664-665 (2d Cir. 1970); *Int'l Star Class Yacht Racing Ass'n v. Tommy Hilfiger, U.S.A., Inc.*, 80 F.3d 749, 752-755 (2d Cir. 1996). Further, the Court "shall . . . enter judgment for three times such profits or damages, whichever amount is greater, together with a reasonable attorney's fee" in cases such as this one involving knowing and intentional use of a counterfeit mark. 15 U.S.C. § 1117(b). Thus, there is no preliminary cap on the Court's sanctions, especially when viewed in the context of the Court's discretion to fashion sanctions against parties that violate Court orders.

## V. KIRBY SHOULD BE AWARDED ALL OF ITS ATTORNEYS' FEES AND COSTS FOR THE PRESENT MOTION

Finally, as to Kirby's fees, LP does not dispute that a just award for its violations should include a fee award. Instead, LP argues, without evidence, that counsel's rate is "unreasonably high" and that Kirby should not be given fees for having to perform at least a cursory review of 9,000 documents that LP first produced on December 12, 2019. (Opposition at 19-20.) Kirby demonstrated by way of the AIPLA 2019 Report of the Economic Survey that its counsel's rates are more than reasonable (below average, in fact) in this region. LP has done nothing to demonstrate that Kirby's counsel's rates are unreasonable. Furthermore, LP's opposition demonstrates that LP's discovery failures necessitated combing through the record to determine what was produced, and when. (*See* Opposition at 10 ("After the Kirby plaintiffs' counsel notified the defendants' counsel that they had not previously received these exhibits, the defendants' counsel undertook a review of their files and records of document production.".) Kirby's review of LP's delinquent production is unquestionably related to a sanctions motion about the materiality and lateness of the production. Notably, Kirby's fee request does not include fees incurred for its Motions in Limine, many of which were also prompted by LP's violations. And, contrary to LP's assertion, Kirby does intend to add at least some of the documents it has recently uncovered to Kirby's exhibit list as they are germane to Kirby's claims and should have been produced. Accordingly, the Court should award Kirby all the fees it has sought for this Motion, including the fees incurred by Kirby for the present reply brief. (*See* the Supplemental Declaration of Benjamin N. Luehrs and C thereto filed contemporaneously herewith).

7

## VI. CONCLUSION

For at least the foregoing reasons and those in Kirby's Motion for Sanctions, Kirby respectfully requests that the Court award the fair and just relief identified in Kirby's Motion.

Respectfully submitted,

January 28, 2020
/s/ Benjamin N. Luehrs
Wesley W. Whitmyer, Jr., ct03509
Walter B. Welsh, ct01220
Benjamin N. Luehrs (phv08980)
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, CT  06901
Tel. 203 703-0800
Fax 203 703-0801
Email: litigation@whipgroup.com
          wwelsh@whipgroup.com
          bluehrs@whipgroup.com

*Attorneys for Plaintiffs*
*Bruce Kirby, Inc. and Bruce Kirby*

## CERTIFICATE OF SERVICE

This is to certify that on this 28th day of January 2020, a true and correct copy of the foregoing **PLAINTIFF BRUCE KIRBY AND BRUCE KIRBY, INC.'S REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR SANCTIONS** was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.

This is to further certify that true copies of the confidential, unredacted copies of the documents that are the subject of the related Motion to File Under Seal are being served via electronic means counsel of record as follows:

| | |
|---|---|
| Douglas S. Skalka | J. Kevin Grogan |
| Peter T. Fay | Kevin Vanderleeden |
| Robert B. Flynn | Jeffrey E. Schiller |
| Neubert, Pepe & Monteith, P.C. | Joseph Romagnano |
| dskalka@npmlaw.com | Grogan, Tuccillo & Vanderleeden, LLP |
| pfay@npmlaw.com | saillit@gvt-ip.com |
| rflynn@npmlaw.com | grogan@gvt-ip.com |
| | schiller@gtv-ip.com |
| | vanderleeden@gtv-ip.com |
| | romagnano@gtv-ip.com |

<u>January 28, 2020</u>                                             */s/ Benjamin N. Luehrs*
Date