UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

BRUCE KIRBY, INC. *et al.*,
    *Plaintiffs*,

v.

LASERPERFORMANCE (EUROPE)
LIMITED *et al.*,
    *Defendants*.

No. 3:13-cv-00297 (JAM)
No. 3:17-cv-01158 (JAM) (consol.)

**ORDER RE MOTION FOR SANCTIONS AND MOTIONS *IN LIMINE*
RELATED TO LATE DISCLOSURE OF DOCUMENTS AND WITNESSES**

This case is about a long-running dispute involving Laser sailboats. In 2013, plaintiffs Bruce Kirby and his namesake company Bruce Kirby, Inc. sued defendants LaserPerformance (Europe) Ltd. ("LPE") and Quarter Moon, Inc. ("QMI"). The trial of this case is scheduled to begin with jury selection next week and trial evidence the week after on the Kirby plaintiffs' claims for violations of the Lanham Act and for common law misappropriation involving the use of the Bruce Kirby name.

Among the pretrial motions before me are certain motions *in limine* and a motion for sanctions, all arising from defendants' belated production of approximately 9,000 documents in December 2019, many years after these documents were supposed to be produced in response to discovery requests and in accordance with the Court's prior order of September 14, 2014.

Pursuant to Fed. R. Civ. P. 37(b), the Kirby plaintiffs seek the following sanctions:

(1) That the Court make Findings of Fact and Conclusions of Law that QMI had approximately $4.3 million in revenues from the sale of Laser sailboats bearing the BRUCE KIRBY trademark between February 2011 and May 15, 2013; that QMI has

1

failed to prove any costs associated with the manufacture and/or sale of Laser sailboats; and that QMI's revenues constitute QMI's profits for the purposes of their Lanham Act claims;

(2) That the defendants be precluded from using at trial any evidence of costs of the Laser sailboat, including Exhibits 597, 598, 599, 600, and 601 (Doc. #537-2 (Ex. A));

(3) That the defendants' rebuttal expert William Murray be precluded from testifying at trial about the costs of the Laser sailboat;

(4) That the defendants be precluded from using at trial any other documents that were not produced to the Kirby plaintiffs during fact discovery, specifically, the 9,000 documents disclosed on December 12, 2019; and

(5) That the Court order defendants to pay attorneys' fees associated with the 9,000 documents disclosed on December 12, 2019 and pursuing the motion for sanctions.

*Ibid*. at 3-4; *see also* Doc. #547 (supporting records for attorneys' fees). The Kirby plaintiffs likewise move to preclude the same categories of evidence in their motions *in limine* (No. 1, No. 2, and No. 4 (second)). Doc. #525.

On January 29, 2020, I conducted a hearing on the parties' respective motions *in limine* as well as the Kirby plaintiffs' motion for sanctions, all of which I took under advisement. In light of the parties' arguments and my further consideration of the parties' papers, this ruling now addresses the Kirby plaintiffs' motion for sanctions as well as the Kirby plaintiffs' motions *in limine* (No. 1, No. 2, and No. 4 (second)) that seek limitations on the scope of the same categories of trial evidence and expert witness testimony. Docs. #537; #525. I will address each category of evidence in turn before addressing the Kirby plaintiffs' requests for sanctions in the

form of attorneys' fees.

*Laser sailboat cost information*

In their motion for sanctions and in their motions *in limine* No. 2 and No. 4 (second), the Kirby plaintiffs seek to preclude defendants LPE and QMI from introducing any Laser sailboat cost information in their motion for sanctions and in their motions *in limine* No. 2 and No. 4 (second). Docs. #537; #525; #526. Defendants contest Kirby's argument that they never produced cost information for Laser sailboats, contending they produced over 30,000 pages of produced documents that included data for both North American and European Laser sailboat revenues, Doc. #549 at 8, as well as a summary of per boat costs, per year for both North America and Europe, *ibid*. (citing Doc. #537-3 (Ex. B)).

There are several categories of cost information at issue—labor, overhead, and materials—each of which I will address in turn.

As to labor costs, LPE and QMI contend their expert Murray relied only on employee statements to determine the labor costs he used in his report, and so his analysis was not based on any improperly withheld documents. Doc. #549 at 9. LPE and QMI thus argue that they should not be precluded from introducing evidence of labor costs, whether in the form of expert testimony or otherwise. Doc. #549 at 9. I agree. Accordingly, I will deny the Kirby plaintiffs' motion for sanctions and motions *in limine* No. 2 and No. 4 (second) insofar as each seeks to preclude defendants from introducing labor cost information in the form of expert testimony from Murray. Docs. #537; #525; #526.

Second, as to the materials costs, it is undisputed that LPE and QMI violated the Court's order of September 4, 2014 (Doc. #163) by failing to produce Exhibits 598, 599, 600, and 601

(concerning Bills of Materials costs). LPE and QMI further acknowledge that their own expert Murray was provided these very exhibits in 2015 and he relied on them in writing his rebuttal report. Doc. #549 at 8-9. Defendants nevertheless contend that they produced cost data that they will rely on at trial in 2015 when they served the Kirby plaintiffs with their timely-disclosed expert report (as well as through a summary document that was produced during fact discovery in 2014), that their failure to produce Exhibits 598, 599, 600, and 601 was inadvertent, and any prejudice from the failure to produce the documents does not justify their preclusion. Doc. #549 at 7-13.[1]

I agree with the Kirby plaintiffs that these Exhibits 598, 599, 600, and 601 should have been timely produced. But in light of the fact that Murray's report was timely disclosed and that the Kirby plaintiffs chose not to depose Murray or to press for the documents upon which Murray relied, I conclude that the Kirby plaintiffs have not sufficiently shown that they were substantially prejudiced by the delay in disclosing these exhibits with Laser sailboat cost information. Accordingly, I conclude that the prejudice to the Kirby plaintiffs can be cured by ordering LPE and QMI (1) to make their expert Murray available immediately for a deposition, at defendants' expense, and (2) to make a Rule 30(b)(6) witness who is able to testify competently about Exhibits 598, 599, 600, and 601 available immediately for a deposition, at defendants' expense. Defendants have offered as much. *See* Doc. #549 at 13. The recording costs of these depositions shall be paid for by the defendants.

And as to overhead costs, defendants contend that this Court's Discovery Order made clear that overhead was properly a subject for expert discovery. Accordingly, defendants argue

---

[1] LPE and QMI make substantially the same arguments in their opposition to the Kirby plaintiffs' motions *in limine* No. 2 and No. 4 (second) on the same topic. Doc. #532 at 7-13.

that Exhibit 597, which consists of income statements and which was used by expert Murray in his report, was *not* improperly withheld. See Doc. #549 at 9-11.[2] But the Kirby plaintiffs take the position that even if overhead was indeed a proper subject for expert discovery, the underlying data—income statements—should have been disclosed in accordance with the Court's order of September 4, 2014. Doc. #555 at 3.

I agree with the Kirby plaintiffs that Exhibit 597, which concerns underlying data for overhead costs, should have been produced under the Court's order of September 4, 2014 (as with Exhibits 598, 599, 600, and 601), even if the topic of overhead costs was properly a subject for expert discovery.

In sum, as to information regarding Laser sailboat materials costs and overhead costs, I will grant the Kirby plaintiffs' motion for sanctions insofar as it seeks to specifically preclude the defendants from introducing Exhibits 597, 598, 599, 600, and 601 into evidence. But I will deny the Kirby plaintiffs' motion insofar as it seeks a sanction that the defendants otherwise be precluded from introducing cost information at trial and insofar as it would also seek to preclude defense expert Murray from testifying as to his properly disclosed rebuttal report at trial.

I will also deny the Kirby plaintiffs' motion for sanctions to the extent that they ask this Court to make certain factual findings and legal conclusions. What the Kirby plaintiffs seek— several "Findings of Fact and Conclusions of Law"—are more properly the subject of a motion for summary judgment, not a motion *in limine*. I conclude that these are disputed factual issues that should be considered by the jury. And although Federal Rule of Civil Procedure 37(b)(2)(A) provides that a court may order that "designated facts be taken as established for the purposes of

---

[2] LPE and QMI make substantially the same arguments in their opposition to the Kirby plaintiffs' motions *in limine* No. 2 and No. 4 (second) on the same topic. Doc. #532 at 7-13.

the action, as the prevailing party claims," for the reasons discussed above, I conclude that such a severe sanction is not warranted.

Consistent with the foregoing conclusions, I will deny the Kirby plaintiffs' motion *in limine* No. 2 to preclude defendants from introducing evidence of costs (other than Exhibits 597, 598, 599, 600, and 601) and I will deny the Kirby plaintiffs' motion *in limine* No. 4 (second) to preclude defense expert Murray from testifying. Docs. #525; #526.

### *The December 2019 disclosure of 9,000 documents*

In its motion for sanctions as well as its motion *in limine* No. 1, the Kirby plaintiffs seek to preclude LPE and QMI from introducing any of the 9,000 documents that were not produced before December 12, 2019. Docs. #537; #525. In opposition, LPE and QMI represent that they will not seek to admit or make reference to any of these 9,000 documents that were not previously produced. Doc. #549 at 17.[3]

In light of defendants' agreement on this point, I will grant the Kirby plaintiffs' motion for sanctions and motion *in limine* No. 1 insofar as each motion seeks to preclude defendants from introducing any of the 9,000 documents that were not produced until December 12, 2019. Docs. #537; #525.

### *Witnesses not included in initial disclosures*

In their motion *in limine* No. 1, the Kirby plaintiffs also seek to preclude five witnesses on the basis that they were not included in the defendants' initial disclosures. Doc. #525 at 7-8

At the pretrial conference on January 29, 2020, counsel for defendants represented that

---

[3] LPE and QMI make substantially the same arguments in their opposition to the Kirby plaintiffs' motion *in limine* No. 1 on the same topic. Doc. #532 at 2-4.

they would reach a decision by or on Monday, February 3, 2020, about whether they will be calling witnesses Nirvan Shirvani and Charles Flynn. In light of defense counsel's representations at the conference, I will defer my decision on the Kirby plaintiffs' motion *in limine* No. 1 insofar as it seeks to preclude these two witnesses. Doc. #525.

As to the other witnesses identified in the Kirby plaintiffs' motion *in limine* No. 1, Khosrow Jahanshad, Gogol Kafi, Philippe Zylberg, the defendants shall likewise communicate to plaintiffs whether they will be calling these witnesses by or on Wednesday, February 5, 2020, and I will likewise defer my decision on the Kirby plaintiffs' motion *in limine* No. 1 insofar as it seeks to preclude these three additional witnesses. Doc. #525.

*Attorneys' fees*

In their motion for sanctions, the Kirby plaintiffs seek attorneys' fees under Rule 37(b)(2)(C), which provides that when a party fails to comply with a discovery order, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C). The total requested attorneys' fees is $12,038. Doc. #547.

In response to this Court's Order (Doc. #541), the Kirby plaintiffs filed documentation to support this request. Doc. #547. This submission contains a declaration from attorney Benjamin N. Luehrs and invoice dated January 23, 2020, with billing records. *Ibid*.; Doc. #547-1. I find that the Kirby plaintiffs' submission fulfills the requirement in the Second Circuit that a party seeking attorneys' fees must provide contemporaneous attorneys' records detailing the legal services provided in connection with the instant motion, including "for each attorney, the date, the hours expended, and the nature of the work done." *New York State Ass'n for Retarded*

*Children, Inc. v. Carey*, 711 F.2d 1136, 1148 (2d Cir. 1983)); *CSL Silicones Inc. v. Midsun Grp. Inc.*, 2016 WL 3568173, at *6 (D. Conn. 2016).

Courts evaluating a request for attorneys' fees pursuant to Rule 37 must conduct a "lodestar analysis, which calculates reasonable attorneys' fees by multiplying the reasonable hours expended on the action by a reasonable hourly rate." *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 108 (2d Cir. 2014). The resulting amount "is only presumptively reasonable; it is still within the court's discretion to adjust the amount upward or downward based on the case-specific factors." *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, 2012 WL 4092515, at *1 (D. Conn. 2012) (quotation marks and citation omitted).

"Hence, the process is really a four-step one, as the court must: (1) determine the reasonable hourly rate; (2) determine the number of hours reasonably expended; (3) multiply the two to calculate the presumptively reasonable fee; and (4) make any appropriate adjustments to arrive at the final fee award." *Friedman v. SThree PLC.*, 2017 WL 4082677, at *1 (D. Conn. 2017) (internal quotations omitted).

    i.    <u>Reasonable hourly rate</u>

The Kirby plaintiffs submit that two attorneys, one law clerk, and one paralegal performed work on the motion for sanctions: Benjamin N. Luehrs, Walter B. Welsh, Mackenzie L. Long, and Joan M. Burnett. Doc. #547. Attorney Luehrs's billing rate in this matter is $320 per hour, Attorney Welsh's rate is $450, Law Clerk Long's hourly rate is $210 per hour, and Paralegal Burnett's hourly rate is $230 per hour. *Ibid.*

Determination of an appropriate hourly rate "contemplates a case-specific inquiry into the prevailing market rates for counsel of similar experience and skill to the fee applicant's counsel."

8

*Farbotko v. Clinton Cty. of New York*, 433 F.3d 204, 209 (2d Cir. 2005). The Court may take "judicial notice of the rates awarded in prior cases and the court's own familiarity with the rates prevailing in the district." *Friedman v. SThree PLC.*, 2017 WL 4082678, at *5 (D. Conn. 2017) (quoting *Farbotko*, 433 F.3d at 209). This determination "also requires an evaluation of evidence proffered by the parties." *Ibid*.

"According to the forum rule, courts should generally use the hourly rates employed in the district in which the reviewing court sits in calculating the presumptively reasonable fee." *CSL Silicones, Inc. v. Midsun Grp. Inc.*, 2017 WL 1399630, at *4 (D. Conn. 2017) (quoting *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009) (quotation marks and citations omitted). To overcome this presumption, "[t]he party seeking the award must make a particularized showing that the selection of counsel was based on experience and objective factors and that use of in-district counsel would produce a substantially inferior result." *Ibid*. (citations omitted).

Here, the Kirby plaintiffs submit that the mean hourly rate for attorneys in Boston and New York is $431, and $465, respectively (but without further documentation), while the mean hourly rate for IP attorneys is $412 (based on the AIPLA Report of the Economic Survey 2019, Doc. #547-2).[4] More broadly, in their submission the Kirby plaintiffs make no showing that would overcome the forum presumption. Accordingly, I will base a reasonable hourly rate on the prevailing market rates for attorneys in the District of Connecticut.

Defendants object to the requested fees as excessive, principally on the basis that the

---

[4] The Kirby plaintiffs submit no documentation showing prevailing rates for attorneys who are not yet admitted to the bar or for paralegals.

9

hourly rates for all but Attorney Welsh are "extremely high."[5] Defendants specifically challenge Attorney Luehrs' rate of $320 per hour as being too high for an associate and a 2015 law school graduate. *See* Doc. #547 at 19. Defendants further challenge the per hour rates for Attorney Long and Paralegal Burnett. *Ibid*.

A survey of some fee awards in this district reveals that Attorney Luehrs' rate, based on his years of legal experience, is higher than those awarded to attorneys in this District. *See, e.g.*, *Crawford v. City of New London*, 2015 WL 1125491, at *3 (D. Conn. 2015) (noting that "an examination of more recent attorneys' fees awards in this district demonstrates that $450/hour is on the high end and is generally reserved for particularly distinguished attorneys successfully taking on difficult or novel cases" (collecting cases)); *Bridgeport & Port Jefferson Steamboat Co. v. Bridgeport Port Auth.*, 2011 WL 721582, at *5 (D. Conn. 2011) (finding $325 per hour a reasonable rate for a partner with eighteen years of experience, and $275 per hour reasonable for senior associates with more than eight years of experience).

But I find a rate of $300 per hour reasonable in light of today's market and Attorney Luehrs' experience, as well as the complexity of this case. *See, e.g.*, *Dubois v. Maritimo Offshore Pty Ltd.*, 2019 WL 4723140, at *11 (D. Conn. 2019) (approving $350 per hour rates); *Humphrey v. Crea*, 2019 WL 3561899, at *4 (D. Conn. 2019) (approving $300 and $400 per hour rates).

As to Attorney Long's hourly rate, I conclude that a rate of $200 is appropriate. *See, e.g.*, *Perez v. Lasership, Inc.*, 2015 WL 8750965, at *3 (D. Conn. 2015) (determining that a rate of $200 for a more junior attorney to be reasonable). And finally, as to Paralegal Burnett's hourly

---

[5] I accordingly assume defendants have no objection to Attorney Walsh's rate. *See Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 246 (D. Conn. 2010) ("if [non-movant's] Counsel believed that any of the [movant's] Counsel was not entitled to be compensated at an hourly rate of $400, they should have said so and why"); *see also Perez v. Lasership, Inc.*, 2015 WL 8750965, at *3 (D. Conn. 2015) (citing *Handschu* to conclude the same).

rate, this Court has previously awarded $115 per hour to paralegals. *See Maerkel v. Comm'r of Soc. Sec.*, No. 3:17-CV-00170 (JAM), 2020 WL 57526, at *4 (D. Conn. 2020) (awarding a rate of $115.00 per hour for paralegal work in 2017); *see also Perez*, 2015 WL 8750965, at *3 (awarding a rate of $100.00 per hour for paralegal work). I accordingly find the hourly rate of $230—higher even than Attorney Long's hour rate—to be excessive. I therefore find that an hourly rate of $150 for Paralegal Burnett, in light of the complexities of this case, to be appropriate and reasonable.

## ii. Hours reasonably expended

The Kirby plaintiffs' team billed a total of 41.9 hours in connection with the motion for sanctions, with Attorney Luehrs billing 17.9 hours, including 8.9 hours for entries that consisted in whole or in part of "assess[ing] and analyz[ing] LP's December 12, 2019 production," Attorney Welsh billing 5 hours, Law Clerk Long billing 15.5 hours, and Paralegal Burnett billing 3.5 hours. *See* Doc. #549 at 2-3. To support this request, the Kirby plaintiffs have provided the Court with time records indicating the dates, hours expended, and nature of the work completed by each attorney and staff member. *See* Doc. #547-1.

Proffered hours are reasonable if "at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Perez*, 2015 WL 8750965 at *1 (quoting *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)). "Fees should not be awarded for time entries when the corresponding description of work performed is vague and therefore not susceptible to a determination of whether the time [billed] was reasonably expended." *Perez*, 2015 WL 8750965 at *7 (quoting *Conn. Hosp. Ass'n v. O'Neill*, 891 F. Supp. 687, 690 (D. Conn. 1994)). To address vague entries, "the Second Circuit has approved a percentage reduction method," *Ibid*. (quoting *Rand-Whitney*, 2006 WL 2839236, at *16), and some courts have

11

reduced hours for vagueness at a rate of 10% to 5%, *see Perez*, 2015 WL 8750965, at *8.

Defendants object to the Kirby plaintiffs' claimed hours on the basis at least some hours spent reviewing the December 12, 2019 production of 9,000 documents—which, according to the records, was billed by Attorney Luehrs—would have had to take place regardless of when they were produced and should not be considered. *See* Doc. #549 at 19. I agree. Attorney Luehrs billing 17.9 hours, including 8.9 hours for entries that consisted in whole or in part of "assess[ing] and analyz[ing] LP's December 12, 2019 production." More specifically, Attorney Luehrs spent 2.4 hours on reviewing the December 12, 2019 production (entry for 1/11/2020), while an additional 6.5 hours were billed by Attorney Luehrs in "blocks" that included reviewing the December 12, 2019 production as one of the entries. *See, e.g.*, Doc. #547 at 2 (Luehrs entry for 1/10/2020, "Continue to assess and analyze LP's December 12, 2019 production; assess and analyze case law and case record in support of Kirby's anticipated Motion for Sanctions."). Because these 6.5 hours are billed in blocks, and I cannot discern exactly how many hours in each entry Attorney Luerhs spent on document review, I conclude that the 6.5 total hours warrants a 10% reduction, or 0.65 hours. Accordingly, I will reduce Attorney Luehrs' billed hours by 3.05 hours (2.4 hours plus 10% of 6.5 hours, or 0.65 hours), for a total of 14.85 hours.

Because Attorney Luehrs' records are the only ones to include time spent reviewing the December 12, 2019 production, and because defendants base their objection on this type of work alone, I assume that the defendants have no objection to the number of hours otherwise billed by Attorney Walsh, Attorney Long, and Paralegal Burnett. Accordingly, I conclude that the hours billed by each Attorney Walsh, Attorney Long, and Paralegal Burnett (5 hours, 15.5 hours, and

3.5 hours, respectively) to be reasonable.

      iii.      <u>Calculating a presumptively reasonable fee</u>

I must next multiply the two (reasonable hourly rates and hours reasonably expended) to calculate the presumptively reasonable fee.

Multiplying Attorney Luehrs' rate of $300 per hour by 14.85 hours results in a sum of $4,455. Next, multiplying Attorney Walsh's rate of $450 per hour by 5 hours results in a sum of $2,250. Attorney Long's rate of $200 per hour multiplied by 15.5 hours results in a subtotal of $3,100, and Paralegal Burnett's total (based on a $150 per hour rate and 3.5 hours) comes to $525. These subtotals together result in a sum of $10,330.

      iv.      <u>Adjustments to the presumptively reasonable fee</u>

Having determined the presumptively reasonable fee, the final step in the fee determination is to inquire whether an upward or downward adjustment is required. The Supreme Court has held that "the most critical factor in determining the reasonableness of a fee award is the degree of success obtained." *Valley Hous. Ltd. P'ship v. City of Derby*, 2012 WL 1077848, at *11 (D. Conn. 2012) (quoting *Farrar v. Hobby,* 506 U.S. 103, 114 (1992)).

The Kirby plaintiffs' motion for sanctions makes clear that defendants violated the Court's Order of September 4, 2014. And defendants do not dispute their noncompliance. Based on my foregoing conclusions in this ruling, I conclude that the Kirby plaintiffs' motion for sanctions is successful to the extent that it called attention to defendants' noncompliance with the Court's Discovery Order and sought appropriate measures to cure any prejudice to the Kirby plaintiffs as a result of defendants' discovery violation. For these reasons, I conclude that it is appropriate to impose these fees and costs on defendants as a consequence of their failure to

comply with discovery obligations, and I conclude that a downward adjustment is not needed.

In sum, in light of LPE and QMI's violation of this Court's discovery order by not producing Exhibits 597, 598, 599, 600, and 601 prior to December 2019—which the defendants do not dispute and as discussed above—and to discourage discovery noncompliance by promoting deterrence, I find that an award attorneys' fees to the Kirby plaintiffs to be appropriate. Accordingly, I will grant the Kirby plaintiffs' motion insofar as it seeks a sanction of attorneys' fees. Doc. #537. I will award $10,330 in attorneys' fees that the Kirby plaintiffs incurred in connection with this motion for sanctions, and the sum shall be paid within 30 days.

## CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part and DEFERS in part the Kirby plaintiffs' motion for sanctions (Doc. #537) and motions *in limine* No. 1, No. 2, and No. 4 (second) (Doc. #525), as set forth in this ruling.

It is so ordered.

Dated at New Haven this 31st day of January 2020.

/s/*Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge