**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

BRUCE KIRBY, INC. *et al.*,
    *Plaintiffs*,

      v.

LASERPERFORMANCE (EUROPE)
LIMITED *et al.*,
    *Defendants.*

No. 3:13-cv-00297 (JAM)
No. 3:17-cv-01158 (JAM) (consol.)

# JURY INSTRUCTIONS

**TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................... 3

SECTION I. GENERAL INSTRUCTIONS ............................................................... 3

ROLE OF JUDGE AND COURT ........................................................................ 3

BURDEN OF PROOF ......................................................................................... 4

SECTION II. ISSUES IN THIS CASE ...................................................................... 5

LIABILITY ........................................................................................................... 6

Liability for Count One – Trademark Infringement ........................................... 7

Liability for Count Two – False Designation of Origin ..................................... 14

Liability for Count Three – Misappropriation of Bruce Kirby Name ............... 15

DAMAGES ........................................................................................................... 17

Damages for Counts One and Two – Trademark Infringement and False
Designation of Origin ........................................................................................ 18

Damages for Count Three – Misappropriation ................................................ 21

SECTION III. INSTRUCTIONS FOR DELIBERATIONS .................................... 23

FORMS OF EVIDENCE ..................................................................................... 23

WITNESS CREDIBILITY – GENERAL ........................................................... 24

CLOSING ARGUMENTS ................................................................................... 25

LAWYERS' ARGUMENTS ARE NOT EVIDENCE ....................................... 25

SECTION IV. CONCLUSION .................................................................................. 25

## INTRODUCTION

Members of the jury, you now have heard all of the evidence. At this point, I will instruct you about the law that applies to this case. You may follow along as I read these instructions aloud, and please feel free to write on these copies—you will be permitted to take them into the jury room with you.

My instructions will be in three parts: First, I will discuss general rules concerning the role of the Court and the duty of the jury; second, I will go over the issues in this case and set out the specific questions of fact that you must answer based on the evidence at trial; and third, I will give you some rules and guidelines for your deliberations.

Before we begin, I ask you to look over the other document that has been given to you—namely, the verdict form. After I have given these instructions and you hear the closing arguments of counsel, you will go back into the jury room to deliberate. When you are done deliberating, you will use the verdict form to report your verdict to the Court and the parties.

## SECTION I. GENERAL INSTRUCTIONS

## ROLE OF JUDGE AND COURT

As judge, I perform basically two functions during the trial. First, I decide what evidence you may consider, as you've seen me do throughout the trial.

Second, I instruct you on the law that you are to apply to the facts in this case. These instructions supersede the initial instructions I gave you at the outset of the case, and if any of the lawyers happen to state the law differently from the way I am explaining it to you, you must follow my instructions.

## BURDEN OF PROOF

Because this is a civil case, the plaintiffs have the burden to prove the facts that are necessary to support their claims by a preponderance of the evidence. But this rule is subject to exception for certain issues for which the defendants instead bear the burden of proof. I will tell you more about who bears the burden of proof with respect to particular facts or issues later in these instructions, and the important thing to keep in mind right now is that the standard of proof is whether a fact has been proven by a preponderance of the evidence.

To establish a fact by a preponderance of the evidence, a party must prove that the fact is more likely true than not true. In other words, if you find that a party who bears the burden to prove a particular fact has fallen short of proving that fact is more likely true than not true or that the weight of evidence is evenly divided between the parties, then you must decide that fact issue for the other party who does not bear the burden of proof as to that fact. However, if a party has proven that a fact is more likely true, even slightly more true than not, then you are to find that party has proven the fact by a preponderance of the evidence.

In determining whether a claim has been proven by a preponderance of the evidence, you may consider the testimony of all witnesses, regardless of who may have called them, and all the exhibits received in evidence, regardless of who may have presented them. A preponderance of the evidence means the greater weight of the evidence; it refers to the quality and persuasiveness of the evidence, not to the number of witnesses or documents presented.

Some of you may have heard of proof beyond a reasonable doubt, which is the proper standard of proof in a criminal trial where the government has charged someone with a crime. That requirement does not apply to a civil case like this one, and you should only apply the preponderance-of-evidence standard for all disputed issues in this case.

## SECTION II. ISSUES IN THIS CASE

I will now discuss the issues in this case. But before I do that, I will caution you that it is important to distinguish between what the law calls "liability" and what the law calls "damages." When I use the word "liability," I am referring to whether a defendant should be liable at all to a plaintiff, as distinct from how much in damages a defendant may owe to a plaintiff to whom the defendant has been found to be liable. Of course, a defendant is under no obligation to pay a plaintiff damages unless he is liable to the plaintiff in the first place (*i.e.*, if the

defendant has broken the law or a duty that is owed to the plaintiff).

## LIABILITY

So let's focus first on issues of liability before considering any issues about potential damages. There are three liability claims or "counts" at issue in this case. The first count is for *trademark infringement*. The second count is for *false designation of origin*. These two claims are brought only by one of the plaintiffs— Bruce Kirby Inc. (BKI)—against only one of the defendants—Quarter Moon Inc. (QMI). The third count is for *misappropriation of Mr. Kirby's name*. This claim is brought only by Mr. Kirby against both of the defendants—QMI and LaserPerformance (Europe) Limited (LPE), which are separate corporate entities.

Several of the parties in this case are corporations. A corporation is a legal entity that may be sued and subject to liability. Each corporate party in this case is separate from other corporations and should be treated independently by you. A corporation can only act through its officers, directors, employees, and agents, and it may be held liable for these individuals' actions provided that these individuals' actions were taken within the scope of their employment or agent relationship on behalf of the corporation. It is for you to decide whether any particular acts taken by any particular individuals were within the scope of their employment or agency on behalf of any of the corporation parties in this case.

## LIABILITY FOR COUNT ONE – TRADEMARK INFRINGEMENT

The first count is a claim by BKI against QMI for trademark infringement. Before I tell you exactly what must be proved for this claim, I will tell you a little bit about the background law.

What is a trademark? Generally, a trademark is any word, name, symbol, or any combination of these elements which is adopted and used by a trademark owner to (1) identify goods and distinguish them from those sold by others and (2) demonstrate to the consuming public that the saleable goods are authorized by or associated with the trademark owner. The function of a trademark is to designate goods as products made or authorized by, or associated with, a particular trademark owner and to protect the trademark owner's goodwill against the sale of products that are not actually made or authorized by or associated with a particular trademark owner.

Because a trademark may readily identify something about the nature or value of particular goods, the law recognizes that trademarks themselves have value and therefore the law treats a trademark as a form of property that one may own and control. A company may register its ownership of a trademark with the United States Patent and Trademark Office.

If a company owns a trademark, then it has the exclusive right to use the

trademark itself or to allow others to use the trademark on such terms and conditions as the trademark owner may decide. Others may not sell goods or products that infringe or unlawfully interfere with the trademark owner's property rights.

There are different ways that a party may infringe on a trademark. One way is if a party counterfeits the trademark—that is, if it uses or replicates an identical or substantially indistinguishable version of the trademark without the consent or authorization of the trademark's owner. Counterfeiting is one way to infringe on a trademark, in large part because of the risk of consumer confusion. But even absent counterfeiting, a trademark may also be infringed if someone uses words, names, or symbols in a similar but not identical manner without the consent of the trademark owner and if the use creates an unacceptable risk of confusion about the source, sponsorship, approval, or affiliation of the goods.

In light of these background principles, let's turn now to what are the elements or necessary facts that BKI must prove by a preponderance of the evidence for its trademark infringement claim against QMI:

(1)    First, that BKI was the owner of the BRUCE KIRBY mark;

(2)    Second, that the BRUCE KIRBY mark was a valid mark entitled to protection;

(3)     Third, that QMI, without BKI's consent, used the BRUCE KIRBY

trademark in commerce in a way that was likely to cause confusion as

to the source, sponsorship, approval, or affiliation of QMI's products.

**Element One – Trademark Ownership**

The parties have stipulated that BKI is the registered owner of the BRUCE

KIRBY trademark. Therefore, you should conclude that BKI has proven this

element by a preponderance of the evidence.

**Element Two – Validity of Trademark**

The parties have stipulated that the BRUCE KIRBY mark is a valid mark

entitled to legal protection. Therefore, you should conclude that BKI has proven

this element by a preponderance of the evidence.

**Element Three – Use in Commerce with Likelihood of Confusion**

The final element that BKI must prove to succeed on its trademark

infringement claim is that QMI, without BKI's consent, used the BRUCE KIRBY

trademark in commerce in a manner that was likely to cause confusion about the

source, sponsorship, approval, or affiliation of the Laser sailboat.

A trademark has been *used in commerce* if the trademark has been used in

connection with the sale of goods such as by being affixed on or associated with

goods that are offered for sale.

A likelihood of *confusion* means confusion with respect to a consumer's decision whether to buy a Laser sailboat. The confusion must be about the source, sponsorship, approval, or affiliation of the Laser sailboat.

Whether there is a *likelihood* of confusion means that there is a reasonable probability of confusion, not merely a possibility of confusion. It need not be proved that any specific person was actually confused or misled. It is sufficient if you find that the consequences of QMI's use of the BRUCE KIRBY trademark in all reasonable probability would have been to cause confusion about the source, sponsorship, approval or affiliation of the Laser sailboat offered for sale by QMI.

In determining whether QMI used the BRUCE KIRBY trademark in a manner likely to cause confusion, you may draw on your common experience as citizens of the community. Among any other factors that you believe relevant, you may consider the following factors to the degree that they may have bearing on this case or be helpful:

(1)    The strength of the BRUCE KIRBY mark (*e.g.*, the degree to which the BRUCE KIRBY trademark was generally known);

(2)    The degree of similarity between the use of the trademark by BKI and QMI's use of the trademark;

(3)    Proximity of the products and their competitiveness with one another;

(4)    Evidence that the senior user (BKI) may "bridge the gap" by developing a product for sale in the market of the alleged infringer's product;

(5)    Evidence of any actual confusion about the source, sponsorship,

approval, or affiliation of the parties' products caused by QMI's use of the trademark;

(6)    Evidence that the imitative trademark was adopted in bad faith;

(7)    Respective quality of the products; and

(8)    The sophistication of consumers in the relevant market.

This is just a list of possibly relevant factors, and you may consider any other factors or circumstances to decide if BKI has proven that there was a likelihood of confusion.

As I noted above, a trademark may be infringed in various ways, and one of those ways is by use of a counterfeit trademark. A counterfeit mark is a false trademark that is identical with, or substantially indistinguishable from, the genuine trademark, and one which is used without the consent or authorization of the genuine trademark's owner.

The use of a counterfeit mark is inherently confusing. For this reason, if you conclude that BKI has proven that QMI used without consent a counterfeit of the BRUCE KIRBY trademark, then you may presume on this basis alone and without consideration of additional factors that there was a likelihood of confusion for purposes of BKI's trademark infringement claim. However, QMI may still rebut this presumption if it proves by a preponderance of the evidence that there was no likelihood of confusion in light of all other surrounding factors and circumstances in this case.

You will see on the jury verdict form that there is a general question whether QMI engaged in trademark infringement. It is followed by a specific question about whether QMI engaged in trademark infringement by means of the use of a counterfeit mark.

### The Fair Use Defense

QMI contends that, even if BKI has or can prove that it infringed on the BRUCE KIRBY trademark, it may not be liable because it engaged in a "fair use" of the trademark. Because this is an affirmative defense, the burden falls on QMI—rather than BKI—to prove each of the three requirements for a fair use defense by a preponderance of the evidence.

First, QMI must prove that it used the term BRUCE KIRBY other than as a trademark. You may ask whether it used the term BRUCE KIRBY for reasons other than to attract consumer attention for purposes of Laser boat sales.

Second, QMI must prove that it used the BRUCE KIRBY name in a descriptive sense. If a trademark incorporates a term that is the only reasonably available means of describing a characteristic of a good, then you may conclude that the name has been used in a descriptive sense.

Third, QMI must prove that it used the BRUCE KIRBY name in good faith. If QMI used the BRUCE KIRBY name with intent to trade on the goodwill of the

trademark owner by creating confusion, then QMI has not proved good faith.

You will see on the jury verdict form that there is a question whether QMI has proven its fair use defense. You should consider the issue of the fair use defense only if you have concluded that BKI has proven the elements of its claim for trademark infringement. If you conclude that QMI has proven all three elements of the fair use defense, then QMI is not liable at all for Count One Trademark Infringement.

### *Willful Trademark Infringement*

If you conclude that BKI has proven its claim for trademark infringement and that QMI has not proven its fair use defense, then you should further consider whether BKI has proven that QMI *willfully* engaged in trademark infringement. In order to prove such willful infringement, BKI must prove that QMI was actually aware of its infringing activity or that QMI acted with reckless disregard or was willfully blind to whether it was engaging in trademark infringement.

You will see on the jury verdict form that there is a question whether BKI has proven that QMI willfully infringed the trademark. You should answer this question only if you have concluded that BKI has proven the elements of its claim for trademark infringement and that QMI has not proven its fair use defense.

### LIABILITY FOR COUNT TWO – FALSE DESIGNATION OF ORIGIN

The second count is a claim by BKI against QMI for false designation of origin. This is a separate violation of the law but one that shares the same three elements as the claim for trademark infringement above.

For this second count of false designation of origin, you should consider the same three elements you have considered above with respect to the trademark infringement claim. If you conclude that BKI has proven all three elements for its false designation claim, then you should further consider whether QMI has proved all three elements of its fair use affirmative defense. You need not further consider for Count Two the issues of counterfeit trademark.

But if you conclude that BKI has proven its claim for false designation of origin and that QMI has not proven its fair use defense, then you should further consider whether BKI has proven that QMI *willfully* engaged in false designation of origin, as I have explained it to you earlier.

You will see on the jury verdict form that there is a question whether BKI has proven that QMI willfully engaged in false designation of origin. Again, you should answer this question only if you have concluded that BKI has proven the elements of its claim of false designation of origin and that QMI has not proven its fair use defense.

14

## LIABILITY FOR COUNT THREE – MISAPPROPRIATION OF BRUCE KIRBY NAME

Mr. Kirby has brought a claim against both QMI and LPE for a violation of his privacy by wrongfully using his name, or what is called misappropriation of name or likeness.

A person has a protected interest in the exclusive use of his own identity, insofar as it is represented by his name or likeness, and insofar as the use may be of benefit to him or others. A person's privacy is invaded if a party appropriates that person's name or likeness for some commercial advantage, without that person's consent. In other words, it is against the law to use someone's name or likeness to advertise the defendant's business or product, or for some other commercial purpose, without their consent.

Mr. Kirby must prove by a preponderance of the evidence the following four elements to support his misappropriation claim:

(1)    First, that LPE or QMI, or both, used the Bruce Kirby name;

(2)    Second, that LPE or QMI, or both, did so without Mr. Kirby's consent;

(3)    Third, that LPE or QMI, or both, did so for the purpose of appropriating to their benefit the commercial value of the name; and

(4)    Fourth, that the use of Bruce Kirby name benefited LPE or QMI, or

both.

Let's consider these elements in more detail.

### First Element – Use of Bruce Kirby's Name

The first element that Mr. Kirby must show is that either or both of QMI or LPE used the Bruce Kirby name. To use someone's name does not mean that their name is simply mentioned or referred to in connection with legitimate mention of that person's public activities. In other words, no one has the right to object merely because their name is brought before the public, since a name is not in any way a private matter. A name is public information. Mr. Kirby must show that QMI or LPE or both has used his name in a way that goes beyond mere references to him in connection with his public activities.

### Second Element – Absence of Consent

The second element Mr. Kirby must prove is that QMI or LPE or both used his name in a way I have just described without obtaining his consent to use his name in that way.

### Third Element – Commercial Purpose

The third element that Mr. Kirby must prove is that LPE or QMI, or both, used his name for a commercial purpose. A defendant may not publicize a person's name without consent for the purpose of appropriating to the defendant's benefit

the commercial or other value associated with that person's name.

### Fourth Element – Benefit from Using the Name of Another

The final element that Mr. Kirby must prove is that QMI or LPE, or both, derived some commercial benefit or value from the wrongful use of Mr. Kirby's name.

Mr. Kirby brings claims of misappropriation against both QMI and LPE. You must separately evaluate his claim against each defendant and determine whether he has met his burden of proof as to each element of the misappropriation claim as to each QMI and LPE individually.

\* \* \*

So that concludes my review of the three claims with the respective elements that BKI and Mr. Kirby must prove in order for QMI or LPE, or both, to be liable.

## DAMAGES

I will now instruct you on the issue of damages as they relate to BKI's and Mr. Kirby's claims against QMI and LPE. If—and only if—you conclude that plaintiffs have proven any of their claims should you consider any issues of damages. You should not interpret the fact that I am providing you with instructions about how to calculate damages as an indication that I believe that plaintiffs have proven their claims.

## DAMAGES FOR COUNTS ONE AND TWO – TRADEMARK INFRINGEMENT AND FALSE DESIGNATION OF ORIGIN

If you decide for BKI on the question of liability for trademark, then you should consider the amount of money damages—if any—to award to BKI. Except as noted below, it is BKI's burden to prove the facts necessary to an award of damages. Please note that my instructions for this section address damages for both Counts One and Two but you may not award duplicate damages for Counts One and Two. In other words, if you award damages for one of these two counts, then you may not award damages for the other count because to do so would be duplicative.

BKI seeks an award of damages in the amount of profits that QMI earned as a result of its trademark infringement. Whether BKI suffered any injuries and, if so, what actual damages it would be entitled to receive for such injuries is not relevant to your decision about whether BKI is entitled to an award of damages in the form of QMI's profits. In order for you to award BKI the profits that QMI earned as a result of its trademark infringement, you must first make certain predicate findings that I will describe below and then you must calculate the profits that were earned by QMI as a result of the trademark infringement.

### *Predicate Findings for an Award of QMI's Profits*

The first finding that you must make in order to award any profits that QMI

earned is that QMI engaged in willful trademark infringement. This is an issue I have already instructed you on in the "Liability" section above.

The second finding you must make is *either* that QMI was unjustly enriched *or* that there is a need to deter QMI or others from engaging in willful trademark infringement. For a finding of unjust enrichment, BKI must prove QMI's deceptive intent. The use of a counterfeit trademark, as I described it to you earlier, may be proof of deceptive intent. For a finding of the need for deterrence, BKI must prove that QMI demonstrated an intentional or callous disregard of the known rights of BKI as a trademark holder or that there is a need to deter others from engaging in willful trademark infringement.

If you have not made the required predicate findings, then you may not award BKI any of QMI's profits. Because BKI does not claim any actual loss as a result of the trademark violation, you should instead award BKI nominal damages of $1 for QMI's infringement of the BRUCE KIRBY trademark

### *Calculation of Profits*

Profit is determined by deducting all expenses from gross revenue. Gross revenue is all of QMI's receipts from using the infringing trademark in the sale of its product. BKI has the burden of proving QMI's gross receipts by a preponderance of the evidence. BKI must prove the amount of its profit damages

with reasonable certainty, but not mathematical precision, and an award of damages may not be based on speculation or guesswork.

Expenses are all costs incurred in producing the gross revenue. QMI has the burden of proving the expenses. QMI also bears the burden of proving that any portion of the profit is attributable to factors other than the infringement. QMI must prove each of these by a preponderance of the evidence.  In other words, if BKI proves the amount of sales, then QMI has the burden of proving the expenses and costs that it had in producing and selling the product.  Such expenses should be deducted from the sales amount in order to establish the amount of profit damages that BKI is entitled to.

Unless you find that a portion of the profit from the sale of the products using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement. If you determine that BKI is entitled to an award of profits under the deterrence rationale, you may decide to award QMI's profits even if the profits were not acquired due to the use of BKI's mark.

## DAMAGES FOR COUNT THREE – MISAPPROPRIATION

Mr. Kirby seeks an award of compensatory damages and an award of punitive damages against QMI and LPE. He bears the burden to prove all the facts to justify any award of damages. I have already instructed you how to calculate damages for Counts One and Two but please note that the rules for calculating damages for Count Three are different, and you must follow my instructions in this section concerning any damages you may award for Count Three. I will describe each category of requested damages below.

### *Compensatory Damages*

If you determine that Mr. Kirby has proven his misappropriation claim, then Mr. Kirby is entitled to fair, just, and reasonable compensation. The damages for such misappropriation are measured by either of the following two measures:

(1)    the commercial benefit obtained by QMI or LPE, or both, from the use of his name, as I have explained to you earlier; or

(2)    the actual harm to Mr. Kirby.

Mr. Kirby must prove damages under this claim by a preponderance of the evidence and he must prove that these damages were proximately caused by the wrongful conduct of one or both of the defendants. Mr. Kirby must prove any damages with reasonable certainty and with as much definiteness and accuracy as

circumstances permit, but he is not required to prove damages with mathematical precision. Damages are recoverable only to the extent that the evidence affords a sufficient basis for estimating the amount of damages with reasonable certainty.

If you have found that both QMI and LPE are liable for misappropriation that has caused the same harm to Mr. Kirby, you should make sure that Mr. Kirby does not receive duplicative damages for the same harm. If you find that Mr. Kirby has proven the elements of liability on his misappropriation claim but has not proven any damages, then you should award nominal damages of $1 for Mr. Kirby's misappropriation claim.

### *Punitive Damages*

In addition to seeking compensatory damages, Mr. Kirby seeks an award of punitive damages against QMI and LPE. Punitive damages may be awarded only for conduct that is outrageous because of reckless indifference to the rights of others, or they may be awarded for an intentional and wanton violation of those rights.

Punitive damages are damages designed to "punish" a defendant, and they are a remedy only when the evidence shows intentional or reckless violation of the rights of others. The law permits the jury, under certain circumstances, to determine if the injured party is entitled to punitive damages, in order to punish the

wrongdoer for some extraordinary conduct and to serve as a warning to others not to engage in such conduct. Punitive damages, when appropriate, are intended to protect the community and to be an expression of the jury's indignation at the misconduct.

Although you are being asked to decide whether these prerequisites for punitive damages exist, you are not being asked to decide the amount of any such punitive damages to award. If you find that Mr. Kirby has proven these prerequisites for an award of punitive damages, then you need only specify on the verdict form for which of the defendants you find the prerequisites for punitive damages to have been proven, and then I will decide at a later time whether to exercise the Court's discretion to award punitive damages and how much—if any—in punitive damages to award.

## SECTION III. INSTRUCTIONS FOR DELIBERATIONS

### FORMS OF EVIDENCE

As I advised you at the beginning of this trial, the only evidence in this case is the evidence that was presented by means of live and recorded witness testimony, documentary exhibits, and the parties' stipulations that were introduced during trial. The lawyers' questions, statements, and arguments are not evidence. There are two types of evidence that you may properly use in reaching your

verdict: direct and circumstantial evidence. It is a general rule that the law makes no distinction between direct and circumstantial evidence, but simply requires that your verdict must be based on a preponderance of all of the evidence presented.

## WITNESS CREDIBILITY – GENERAL

You have had the opportunity to observe all of the witnesses. It is now your job to decide how believable each witness was in his testimony. You are the sole judges of the credibility of each witness and of the importance of his testimony.

How do you determine truthfulness? You base it on what you have seen and heard. You watched the witness testify. Everything a witness said or did on the witness stand counts in your determination. How did the witness impress you? Was he frank, forthright and candid, or evasive and edgy as if hiding something? How did the witness appear; what was his demeanor—that is, his behavior, manner, and appearance—while testifying? Often it is not what a person says but how he says it that convinces us.

You should use all the tests for truthfulness that you would use in determining matters of credibility in your everyday lives. You should consider any bias or hostility the witness may have shown for or against any party, as well as any interest the witness has in the outcome of the case. You should consider the opportunity the witness had to see, hear, and know the things about which he

testified, the accuracy of the witness's memory, candor or lack of candor, intelligence, the reasonableness and probability of the witness's testimony, its consistency or lack of consistency, and its corroboration or lack of corroboration with other credible testimony.

## CLOSING ARGUMENTS

At this point we will interrupt the instructions to hear closing arguments of counsel. I will conclude the instructions after those summations.

## *[BREAK FOR CLOSING ARGUMENTS]*

## LAWYERS' ARGUMENTS ARE NOT EVIDENCE

You have just heard closing arguments of counsel. I want to remind you that what the lawyers have said is not evidence. The lawyers merely presented their arguments about what they contend that the evidence has shown. Their credibility is not an issue that should enter into your decision in this case.

## SECTION IV. CONCLUSION

When you return to the jury room, you should first elect one person to act as your foreperson who will preside over your deliberations and will be your spokesperson here in court. Your verdict must be unanimous for each of the findings indicated on the jury verdict form given to you. Until a verdict is agreed to by each juror, it is not a unanimous verdict.

Your verdict should represent the considered judgment of each juror. Each of you must make your own decision, but you must consider impartially all of the evidence and the views of your fellow jurors. It is your duty to consult with one another and to deliberate with a view toward reaching an agreement, if you can do so consistent with the individual judgment of each juror.

In the course of your discussion, do not hesitate to re-examine your own individual views, or to change your opinions, if the deliberations and the views of your fellow jurors convince you to do so. But you should not surrender your honest convictions about the facts or about the weight or effect of the evidence solely because of the opinion of your fellow jurors or merely to bring an end to deliberations.

Your verdict of course must be based solely upon the evidence developed at this trial, or the lack of evidence. Please bear in mind that all litigants are equal before the law. You should not, therefore, consider any personal feelings you may have about the race, religion, nationality, national origin, sex, age, wealth, lifestyle, or other features of the parties.

When you have reached unanimous agreement as to your verdict, you will have your foreperson fill in your answers, date, and sign the verdict form. Then inform the court security officer or clerk that you have reached a verdict. The terms used in the verdict form are discussed here in these instructions, and these

instructions must govern your deliberations.

When you go into the jury room to begin your deliberations, you will have exhibits with you shortly, but you will not have a transcript of the testimony. If you want any of the testimony read to you, that can be done and will occur in open court. Reading the testimony is a time-consuming process, so please be as specific as possible if and when you decide to request a reading of portions of the testimony.

Requests that testimony be read back, as well as any other communication with the court, should be made in writing, signed by your foreperson, and given to the courtroom deputy or a marshal. I will respond to your request as promptly as possible either in writing or by having you return to the courtroom so that I can address you orally.

It is proper to add a final caution: nothing that I have said in these instructions—and nothing that I have said or done during the trial—has been said or done to suggest to you what I think your verdict should be. What the verdict shall be is your exclusive duty and responsibility.

Now please proceed to your deliberations in the jury room. Deliberate only when all of you are present. After you begin your deliberations, you are not to leave the jury room without first notifying the marshal or court security officer,

who may escort you if necessary. No deliberations may take place without all jurors being present. If you bring your cell phones into the jury room, you must deactivate them during deliberations. You must not research any issue nor communicate with each other or with anyone about the case through the internet, e-mail, texting, etc. Further, if at any time a juror departs the jury room to use the facilities or needs to access a cell phone for a personal reason, the other jurors must immediately cease deliberations and may not recommence deliberations until all jurors are present and all cell phones are put away.

As you deliberate, determine the facts on the basis of the evidence as you have heard it and apply the law as I have outlined it for you. Render your verdict fairly, uprightly, and without any prejudice. Take as long as you think is necessary to fairly and impartially reach your verdict. Thank you for your attention.