UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE KIRBY, INC. ET AL | : | |
| | : | CASE NO. 3:13-CV-00297 (JAM) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| LASERPERFORMANCE (EUROPE) | : | |
| LIMITED, ET AL. | : | |
| | : | |
| Defendants. | : | MAY 13, 2020 |

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION
TO DEFENDANTS' POST-TRIAL MEMORANDUM**

**DEFENDANTS,
LASERPERFORMANCE (EUROPE)
LTD, and QUARTER MOON, INC.,**
Douglas S. Skalka. (ct00616)
Peter T. Fay (ct08122)
Robert B. Flynn (ct15803)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Tel: 203.821.2000
Fax: 203.821.2009
dskalka@npmlaw.com
pfay@npmlaw.com
rflynn@npmlaw.com

# TABLE OF CONTENTS

I. INTRODUCTION…………….…………………………………………………………...1

II. THE LAW GOVERNING DISGORGEMENT SUPPORTS A JUDGMENT FOR QMI…….1

    A.  The Supreme Court's Decision in *Romag Fasteners* Supports a Judgment
       Against BKI for its Claim of Disgorgement of Profits………………………………….1

    B. Actual Consumer Confusion is a Prerequisite to an Award of Profits Based
       on a Theory of Unjust Enrichment……………………………………………….….3

    C. The Court, Not the Jury, Should Decide the Issue of Willfulness…………………….4

III. THE COURT NEED NOT AND SHOULD NOT ADOPT THE JURY'S FINDING OF
      WILLFUL TRADEMARK INFRINGEMENT…………………………………………4

    A.  The Court is not Required to Adopt the Jury's Determination of Willfulness………...4

    B.  The Advisory Jury's Determination that Trademark Infringement was Willful Was
       Neither Correct Nor Conclusive……………………………………………………..6

    C.  The Court Is Not Required to Accept the Jury's Apparent Determination that the Time
       Period for Willful Infringement Ran from February 2011 through April 23, 2013…….7

IV.  QMI'S ARGUMENT REGARDING THE LACK OF PROOF OF KNOWLEDGE OF
      THE BRUCE KIRBY TRADEMARK IS PROPER…………………………………... 7

    A.  QMI's Arguments Do Address Kirby's Claim for False Designation of Origin Claim...7

    B.   The Record Lacks Any Evidence Establishing QMI Knew or Should Have Known
       that its Conduct Infringed the BRUCE KIRBY Trademark……………………………..8

V.   QMI'S REMAINING ATTORNEY ARGUMENTS BASED UPON THE
      EVIDENCE ARE PROPER…………………………………………………………14

VI.   CONCLUSION…………………………………………………………………15

# TABLE OF AUTHORITIES

**Cases**

*4 Pillar Dynasty, LLC v. New York & Co.,*
    933 F.3d 202 (2d Cir. 2019)…………………………………………………….2, 3, 4
*Proctor v. LeClaire*,
    715 F.3d 402 (2d Cir. 2013)……………………………………………………..….. 5
*Romag Fasteners, Inc v. Fossil, Inc.*,
    140 U.S. 1492 (2020)……………………………………………….……………..2, 4


**Statutes**

15 U.S.C. § 1117…………………………………………………………..……2, 4

**Federal Rules**

Fed. R. Civ. Pro. 50……………………………………………..……………2, 15

## I.      INTRODUCTION

In its Post-Trial Brief, QMI asked the Court to enter judgment in its favor on BKI's claim for disgorgement of profits pursuant to the Lanham Act. QMI asked the Court to reject the jury's advisory verdict awarding BKI $4,337,157 in damages on the grounds that (i) BKI failed to prove willfulness; (ii) equitable considerations in addition to QMI's state of mind compelled a judgment in QMI's favor; and (iii) the jury's advisory verdict was unsupported by the evidence and constituted an extraordinary windfall to a company that had long ago sold its rights to profit from the sale of Laser sailboats.

In its Opposition, BKI insists on the full award. To support its unjustified claim, it argues the Court has no power to modify the jury's verdict, despite Congress' specific direction that an award of lost profits is to be made by the Court. It persists in claiming that QMI knowingly infringed on the BRUCE KIRBY trademark despite a trial record devoid of evidence of any notice to QMI of the trademark or any notice to QMI of infringement. It also persists in claiming that QMI's conduct was somehow nefarious when, in fact, QMI used the Builder Plaque and the ISAF Plaque in the same manner it had done for years as required by the parties' many agreements, the Construction Manual, and the ILCA rules. At most, BKI proved that a contract dispute existed between QMI and GSL. It did not prove infringement justifying an award of profits. QMI requests the Court to enter judgment on its behalf on BKI's claim for trademark infringement. If the Court awards any profits, the award should be limited (i) to a time period during which QMI had some notice that BKI had withdrawn its existing authorization to use the Bruce Kirby name, and (ii) to an award of revenues less proven costs.

## II.     THE LAW GOVERNING DISGORGEMENT SUPPORTS A JUDGMENT FOR QMI

### A.  The Supreme Court's Decision in *Romag Fasteners* Supports a Judgment Against BKI for its Claim of Disgorgement of Profits.

The Supreme Court's decision in *Romag Fasteners, Inc v. Fossil, Inc*., published one day after QMI filed its Post-Trial Brief, modified Second Circuit law governing the disgorgement of profits under 15 U.S.C. 1117(a). *Romag,* No. 18-1233, 140 U.S. 1492, 1497, -- S. Ct. -- (2020). It held that a finding of willfulness was not a prerequisite to disgorgement of profits.  *Id.*

Significantly, the Supreme Court emphasized the role the issue of intent plays in a trial court's decision whether to award profits. While the Court ruled that a finding of willfulness was not a legal requirement for an award of profits, it identified the infringer's state of mind as an issue for trial courts to consider when applying "principles of equity" as required by 15 U.S.C. §1117(a) to determine whether to award profits and, if so, the appropriate amount of such an award. "[W]e do not doubt that a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Id.* at 1497.

QMI recognizes that *Romag* changes the Second Circuit law cited in its Post-Trial Brief. Nevertheless, its discussion of the evidence applies with equal force applying Second Circuit law post-*Romag* as it did applying it pre-*Romag*. The circumstantial evidence of QMI's state of mind proves conclusively that QMI was, at most, an unknowing infringer. *See* Post-Trial Br., pp. 16-23. This should be a "highly important consideration in determining whether an award of profits" in this case "is appropriate." When combined with consideration of other equitable principles, it is clear that an award of profits to BKI in this case would be unjust, and amount to no more than a windfall. *See 4 Pillar Dynasty, LLC v. New York & Co.,* 933 F.3d 202, 214 (2d Cir. 2019), *see also* Post-Trial Br., pp. 23-26 (discussing other principles of equity applied to the evidence). For these reasons, QMI asks the Court to enter judgment in its favor.[1]

---

[1] BKI's only claim is one for disgorgement of profits, which requires a finding by the jury of infringement and findings by the Court concerning whether an award is equitable and, if so, how much of an award should be made. If the Court determines that no damages should be awarded, the claim fails in its entirety, and judgment should be entered in favor of QMI.  Contrary to BKI's claim that a Rule 50 motion was required to preserve the right to move for judgment, Rule 50 only applies to claims tried to a jury.

**B. Actual Consumer Confusion is a Prerequisite to an Award of Profits Based on a Theory of Unjust Enrichment.**

BKI argues that a showing of actual consumer confusion is not necessary to award profits under an unjust enrichment theory. Opp. Br., pp. 2-6. It argues that the discussion of unjust enrichment in *4 Pillar Dynasty* did not apply to this case because the facts of that case are distinguishable from the evidence in this case. However, the Second Circuit's discussion of the unjust enrichment theory in *4 Pillar Dynasty* was not a discussion of how it may have applied under the particular circumstances of that case. It was, instead, a general discussion of the three theories supporting awards of profits. *Id.,* 933 F.3d at 212. It applies equally here.

Moreover, recovery under a theory of unjust enrichment requires evidence of unjust enrichment. Specifically, it requires proof that the defendant gained something from its wrongdoing and a determination that it would be unjust to allow the defendant to retain its ill-gotten gains. In the case of trademark infringement, in order to show a defendant gained something of value, a plaintiff must prove it more likely than not that a defendant's use of a trademark confused a consumer sufficiently to cause the consumer to purchase a product that he would not otherwise have purchased. In other words, it must show actual consumer confusion, and then quantify the award of profits to approximate that amount of profit the defendant made by confusing consumers. ***In this case, BKI failed to prove that a single consumer was aware prior to purchase that the name Bruce Kirby appeared on either the Builder Plaque or the ISAF Plaque.***

BKI also argues that it need only prove a "manifestation of consumer confusion" in the form of a loss of goodwill. Opp. Br., p. 4. However, it fails to show that QMI's conduct resulted in BKI losing any goodwill in the name Bruce Kirby. There is no evidence that anyone outside of

builders and race officials were aware the name Bruce Kirby appeared on the plaques or, if they were aware of it, that it had any impact on BKI's goodwill.

###    C.   The Court, Not the Jury, Should Decide the Issue of Willfulness.

BKI contends that the issue of willfulness or intent **must** be decided by the jury.  Opp. Br., pp. 6-7. This is incorrect. A jury decision on the issue of willfulness is not binding.  *See 4 Pillar Dynasty*, 933 F.3d at 209 n. 6. As evident from the language of the statute, Congress assigned responsibility for the award of profits to the court. 15 U.S.C. 1117(a). The Supreme Court's *Romag* decision removed any doubt about the proper characterization of the issue of willfulness as an equitable, rather than a legal, issue. It described a defendant's state of mind as an important consideration for the Court when applying equitable principles to the evidence when the Court decides whether it is appropriate to award profits. *Romag, supra,* at 1497.

BKI cites several decisions for the proposition that a jury, not the court, must decide the issue of willfulness when considering an award of profits. Opp. Br., pp. 6-7. None of the cases cited support this statement. At most, they indicate that some courts and parties have allowed juries to decide this issue. They do not stand for a requirement that parties to an action for profits under 15 U.S.C. §1117 have the right to a jury on the issue of willfulness.

### III.   THE COURT NEED NOT AND SHOULD NOT ADOPT THE JURY'S FINDING OF WILLFUL TRADEMARK INFRINGEMENT

###    A.   The Court is not Required to Adopt the Jury's Determination of Willfulness.

BKI argues that where equitable and legal claims are tried together and require resolution of the same issues of fact, a jury finding on a common issue of fact must be adopted by the court when considering the equitable claim involving the same issue. The purpose of this principle is to ensure that one trial does not produce inconsistent findings for an identical issue. It is a form of collateral estoppel. Generally, collateral estoppel does not apply to a claim unless "the

4

identical issue was raised in a previous proceeding [and] the issue was actually litigated and decided in the previous proceeding…." *Proctor v. LeClaire*, 715 F.3d 402, 414 (2d Cir. 2013)

Specifically, BKI claims that the jury determined that QMI's infringement was willful when it decided (i) QMI's fair use defense; (ii) the likelihood of confusion factor in the *Polaroid* test, and (iii) Mr. Kirby's claim for punitive damages for misappropriation of his name. The principle does not apply in this case because the state of mind issue for BKI's trademark claim is not identical to the three findings identified by BKI, and the only finding made by the jury concerning QMI's state of mind while engaging in conduct found to be infringing was that made as part of the jury's advisory verdict concerning trademark damages.

The jury's finding against QMI on its fair use defense meant that the jury found that QMI did not meet its burden of proving at least one of the three elements of that claim (s*ee* Tr., v. 3 (Instructions) 401:24-403:2), but it is not a finding that QMI acted in bad faith. Thus, a finding by the Court that QMI did not willfully infringe will not be inconsistent with the jury's fair use defense verdict. The jury's verdict against QMI on trademark did not include specific findings about its consideration of the *Polaroid* factors.[2] Thus, a finding by the Court that QMI did not willfully infringe will not be inconsistent with the jury verdict of infringement.

The jury's finding in support of punitive damages for the misappropriation of name claim is different from the issue of willfulness for trademark infringement. In order to prove trademark infringement, BKI was required to prove that QMI used the trademarked name "Bruce Kirby" in a manner that was reasonably probable to cause consumer confusion about the source, sponsorship, approval, or authorization of the Laser. Tr., v. 3 (Instructions) 397:8-12. The claim is focused on the consumer's decision to purchase a Laser. Willfulness in this context means an

_____

[2] *See* Tr., v. 3 (Instructions) 397:13-399:2. The Court instructed the jury that to determine the issue of likelihood of confusion it may consider any or all of 8 enumerated factors. However, the jury did not make any findings concerning individual factors, including whether "the imitative trademark was adopted in bad faith." *Id.,* 398:19-20.

intent to confuse customers prior to purchase or reckless indifference to whether conduct is causing such confusion. In contrast, the more general claim of misappropriation of name required a different plaintiff, Kirby, to prove that QMI used his name without his consent for some commercial benefit. The claim was not tied to consumers' decisions to purchase Lasers. The jury's finding concerning QMI's state of mind was not specific. The jury may have found that QMI intended to obtain a commercial benefit through some means other than confusing consumers. Thus, the issues of trademark infringement and misappropriation of name are not identical, and the jury decision concerning Kirby's entitlement to punitive damages was not a finding about whether QMI willfully infringed BKI's trademark rights. Consequently, the Court cannot adopt the jury's verdict concerning punitive damages for misappropriation of name as a finding that QMI willfully infringed BKI's trademark.[3]

## B. The Advisory Jury's Determination that Trademark Infringement was Willful Was Neither Correct Nor Conclusive.

To support its claim that QMI willfully infringing the BRUCE KIRBY trademark, BKI makes the unsubstantiated claim that "QMI and LPE sold boats bearing the BRUCE KIRBY trademark for years while paying a royalty to Kirby because the BRUCE KIRBY trademark was required to make the boats eligible to race and saleable." Pl. Opp. Br., p. 9. QMI paid a royalty for the license to use the boat design, *see* Ex. 31, 89 BA §2.1, and Art. 8.; it did not pay royalties to use the BRUCE KIRBY trademark.

BKI continues to claim that the presence of the BRUCE KIRBY trademark on the Plaques was important to a consumer's decision to purchase the Laser. Opp. Br., p. 10.

---

[3] The difference in damage awards is also strong evidence that the jury did not treat these two claims as identical. The jury issued an advisory verdict for trademark infringement awarding BKI $4,337,157 in profits.  In contrast, it awarded only nominal damages to Mr. Kirby for misappropriation of his name, even though it had the right to award damages based on that claim. BKI argues that the fact that the jury did not award any damages to Mr. Kirby for misappropriation of name conclusively shows that the jury did not want to award duplicative damages under both the trademark claim and misappropriation of name claim against QMI.  That is speculation.

Significantly, the only evidence concerning the significance of the plaques was testimony that their presence on a boat made the boat "legal." There is no evidence that purchasers looked for the plaques before they purchased the boats. ***There is no evidence that a single purchaser knew that Bruce Kirby's name appeared on either plaque before he or she purchased a Laser.***

BKI claims that QMI intentionally ceased royalty payments and continued to use the plaques and that this conduct established willfulness. Pl. Opp. Br., p. 10. The fact that QMI may not have paid royalties only shows it may have breached its contract with GSL. Because GSL did not terminate QMI's license to build and sell boats, QMI was still authorized to build and sell them. Because QMI was at all times a licensed builder, all of the Lasers it sold were "legal." All were qualified to race. ILCA issued sail numbers to QMI on ISAF plaques.

### C.  The Court Is Not Required to Accept the Jury's Apparent Determination that the Time Period for Willful Infringement Ran from February 2011 through April 23, 2013.

Finally, BKI claims that the Court must accept the jury's determination that the infringement started in January 2011 and continued through April 23, 2013, and award all revenue received by QMI for that time period. The Court should reject this argument because it contradicts the Lanham Act's requirement that the Court, not the jury, determine whether infringement found by the jury justifies an award of profits at all and, if it does, what the appropriate amount should be. *See* §§II.A. and II.C., *supra*.

## IV.  QMI'S ARGUMENT REGARDING THE LACK OF PROOF OF KNOWLEDGE OF THE BRUCE KIRBY TRADEMARK IS PROPER

### A.  QMI's Arguments Do Address Kirby's Claim for False Designation of Origin Claim

BKI claims that QMI failed to address the false designation of origin claim. Opp. Br., p. 15. In fact, QMI directly addressed both the ISAF and Builder Plaques issues in its Post-Trial Brief. *See* Post-Trial Br., p. 16, fn. 12. BKI's claim for false designation of origin is based upon the ISAF Plaque, which does not include the BRUCE KIRBY trademark; it includes the name,

"Bruce Kirby, Inc." Long ago BKI agreed to the inclusion of its name on the ISAF Plaque pursuant to the various agreements, including the Laser Construction Manual, which it then assigned to GSL. No evidence was submitted at trial to establish that BKI's assignee, GSL, ever terminated QMI as a licensed builder or permanently terminated QMI's right to use the ISAF plaque, which it, as assignee of BKI, authorized ILCA to issue. Certainly no evidence was presented at trial to establish that QMI was aware prior to the filing of this lawsuit that there was any claim that the ISAF Plaque contained a trademark by using the phrase, "Authorised by … Bruce Kirby, Inc." BKI's repeated claims that the ISAF Plaque contains the phrase "'authorised by' BRUCE KIRBY" is a transparent attempt to change the language on the plaque so that it includes the BRUCE KIRBY trademark rather than the Bruce Kirby, Inc. name. *See, e.g.* Opp. Br., pp. 4 ("QMI used the literal phrase 'authorised by' BRUCE KIRBY"); 11, and 20.

**B.   The Record Lacks Any Evidence Establishing QMI Knew or Should Have Known that its Conduct Infringed the BRUCE KIRBY Trademark.**

Regardless of whether BKI is referring to QMI's use of the phrase, "Laser Sailboat Designed by Bruce Kirby" on the Builder Plaque or the use of the phrase, "Authorised by [ISAF], [ILCA], Bruce Kirby, Inc. & Trade Mark Owner" on the ISAF Plaque, none of the evidence submitted ***at trial*** established that QMI had direct knowledge it was infringing on the BRUCE KIRBY trademark or that it used either of these phrases without authorization to do so.

The evidence listed by BKI fails to establish "QMI's direct knowledge" of its "willful infringement." Opp. Br., p. 17. BKI relies on testimony that was stricken. Opp. Br., p. 17 *citing* Vol.1 at 137:14-17. BKI also confusingly uses "trademark" as if it has the same meaning as "name" or plaque. Just because Bruce Kirby's name appears on a plaque does not prove use of the trademark BRUCE KIRBY. The testimony BKI cites, at most, establishes the significance of

the presence of the plaques on the Laser Sailboats.[4] All of the testimony cited by BKI establishes

how important the ***plaques*** were; none of this testimony establishes that it made any difference to

a single purchaser whether the phrases, "designed by Bruce Kirby" or "authorised by … Bruce

Kirby, Inc." appeared on the boats. A reasonable inference that may be drawn from the evidence

is that "anyone who knew" might still look for the ***plaques*** on the boats after these phrases were

removed, but no evidence was submitted at trial that any of those purchasers would have

declined to purchase a boat because these phrases no longer appeared on the plaques. No

evidence was submitted that it made any difference to any purchaser whether these phrases

appeared anywhere on the Laser Sailboats.

Mr. Kirby claimed his "name" appears on the ISAF Plaque. Tr. v. 1, 113:1-8. This is not

true. Bruce Kirby, **Inc.** appears on the ISAF Plaque, not the name of an individual. BKI conflates

the two names, but they are legally not the same. Only BRUCE KIRBY was trademarked. If BKI

had "always been dutiful in supporting his [sic] trademark use" (Opp. Br., p. 17), then why did

BKI fail to submit into evidence a single document showing that it ever requested that QMI stop

using the BRUCE KIRBY trademark prior to the commencement of this lawsuit? BKI's

argument also ignores the proven fact that QMI used the name Bruce Kirby on its Builder Plaque

for many years pursuant to the 1989 Builder Agreement with Bruce Kirby and BKI, which they

subsequently assigned to GSL, and which was never terminated prior to April 2013, when QMI

stopped using the Bruce Kirby name on the Builder Plaque. The 1989 Builder Agreement

licensed QMI to manufacture, sell and market Laser Sailboats (BK-218, #s 13, 15-16) according

---

[4] Opp. Br., p. 17, *citing* Vol. 1, 114:11-115:17 ("anyone who knew much about the boat and who wanted to race it looked for the plaque. Because the plaque made the boat authentic, it made it a legal Laser…. one that was built to the specs in the builders manual"); Vol. 1, 116:06-118:5 (Construction Manual required both plaques; all Laser sailboats were required to have the plaques, which were placed in same location "so anyone who knew about Lasers would know where to find them"); Vol. 1, 138:2-139:2 (plaques were needed to comply with construction manual; if did not comply with manual, could not be raced); Vol. 2, 304:22-24 (plaque needed to make boat class legal); Vol. 2, 305:19-24 (customers wanted to know a boat was class legal because they wanted to race boats in Laser races).

to a Construction Manual, which required the ISAF and Builder Plaques to be affixed to each boat (BK-218, #s 19-22). So while the evidence established QMI had knowledge it was using Bruce Kirby's *name* to identify him as the designer of the boat on the Builder Plaque, BKI has not identified any evidence to establish QMI knew it was not authorized to use Bruce Kirby's name on the Builder Plaque or that it knew it was improperly using the trademark BRUCE KIRBY on the Builder Plaque. QMI's sophistication and Crane's testimony about the LASER trademark are not probative of whether QMI had knowledge of the BRUCE KIRBY trademark or its infringement of the BRUCE KIRBY trademark. *See* Opp. Br., pp. 18-19.

Next, BKI argues that QMI used the BRUCE KIRBY trademark to sell Laser Sailboats, but there was no evidence presented, and none cited in BKI's Opposition Brief, that any use of the trademark helped to sell a single sailboat. BKI improperly attempts to characterize Farzad Rastegar as somehow refusing to testify in this matter and then argue what "necessarily required due diligence" would have been part of a deal between Mr. Rastegar and Mr. Kirby that never happened. Opp. Br., p. 19. No testimony or other evidence was introduced at trial to establish whether any due diligence was required during these purported negotiations and, if so, what that due diligence would have included. No evidence was submitted at trial that established the terms of this purported deal. The cited evidence does not support an inference that Mr. Rastegar knew of the existence of the trademark. And yet it is BKI who accuses QMI's counsel of making improper argument in their brief.

Then, with stunning hypocrisy, BKI literally seeks to introduce **new evidence,** not introduced at trial, to somehow establish "some of the due diligence efforts related to the negotiations" to prove QMI's knowledge. Opp. Br., p. 20 (discussing BK-100, which admittedly was "not introduced at trial"). This is confounding since BKI asserts that it established a "theme of … over-proving its case," and that QMI'S direct knowledge of the trademark and its willful

infringement "was shown repeatedly throughout the trial." Opp. Br., p. 15. Instead of identifying the evidence it relied upon, BKI boldly asserts that it "had no reason to" introduce this exhibit at trial "given the abundant evidence of QMI's direct knowledge and willfulness in the record". *Id*. After accusing Mr. Rastegar of somehow refusing to testify (plaintiffs had identified 107 pages of testimony from Mr. Rastegar's deposition to be used at trial, but never offered any of them), BKI then suggests that it did not offer this exhibit because it would have required it to call the letter's author, Wes Whitmyer, as a witness. So instead of calling Mr. Whitmyer as a witness and having him testify concerning this letter, BKI attempts to slip it in the back door, *after* the trial was completed. As an excuse, BKI argues that it is including this document now because QMI has argued lack of knowledge (it was BKI's burden to prove knowledge with evidence admitted at trial) and it is doing so "for the mere purpose of providing illumination for Kirby's 2007-2008 negotiations with QMI's director (Rastegar)." Opp. Br., p. 20. If BKI believed these negotiations required illumination, then it should have introduced evidence of these negotiations at trial. It is improper for BKI to do so now and QMI objects to the court considering this belated evidence.

        BKI argues it "sent multiple letters protesting QMI and LPE's continued, unauthorized use of the BRUCE KIRBY trademark." Opp. Br., p. 20. It is revealing that BKI does not identify to whom these "multiple letters" were sent. Exhibit BK-114 (Ex. M) was sent to ILCA and no evidence was introduced that established either defendant was aware of this letter or received a copy prior to April 2013. Confusingly, BKI argues this letter somehow establishes that Kirby "was *not* writing about the *contractual agreements* in 2010" and that he was "writing with respect to *other* rights in 2010, namely the trademark rights." Opp. Br., p. 20. QMI did not agree with this interpretation merely by noting that any issues with respect to performance under the Builder Agreements would have been for GSL to address since BKI had assigned its rights under the Builder Agreements to GSL. BKI's interpretation of this letter is bewildering. The letter, co-

11

signed by GSL and Bruce Kirby individually, was sent to ILCA indicating they were seeking

payment of overdue monies from builders who were "not in compliance with their agreements

***with Global, which has purchased the rights of Bruce Kirby Inc.***" Ex. BK-114 (emphasis

added). Trademark rights are not mentioned in this letter, which is not surprising since GSL was

not concerned with trademark rights, but with payment under the ***contractual*** builder

agreements, which it had purchased from BKI. This letter also does not say anything about Kirby

wanting ILCA to stop issuing plaques because the plaques had his name on them. If that is what

Kirby truly wanted in 2010, then Kirby or his counsel, Mr. Whitmyer, should have sent a letter to

QMI or LPE, rather than to ILCA, telling QMI or LPE to stop using his name on the plaques.

Mr. Kirby's testimony about "letters" was equivocal. There is no evidence that plaintiffs ever

sent a letter to either defendant telling them they did not have authorization to use the BRUCE

KIRBY trademark. Mr. Kirby may have testified in February 2020 that defendants no longer had

his authorization to use his name but plaintiffs presented no evidence at trial to establish that

plaintiffs ever told defendants in 2010 or 2011 that they did not have his authorization to use his

name on the plaques affixed to Laser Sailboats.

    Instead, BKI submitted Exhibits BK-51 and BK-52 (Exs. U and V) in which it purports to

terminate defendants' rights to build the licensed design for failure to pay royalties due under the

Builder Agreements, to which plaintiffs were no longer parties. Neither of these letters mention

trademarks or the use of Bruce Kirby's name on the plaques. Interestingly, in both letters

plaintiffs seek to enforce rights set forth in the "License and Manual Agreement dated November

11, 2005," which plaintiffs have argued "Kirby never signed". Opp. Br., p. 26. Plaintiffs are

seeking to enforce rights under an agreement he "never signed," but the defendants' attempt to

hold BKI to its obligations under this agreement is somehow frivolous? As "evidence" of these

letters qualifying as a demand that defendants "stop using his name," BKI cites to pre-trial

12

colloquy with the court. Opp. Br., p. 21 (citing to Vol. 1, at 26:25-26:13). Clearly this exchange does not constitute evidence of anything.

BKI's repeated argument that QMI's willful infringement is somehow proven by the purported conspiracy to change the rules in order to remove the BRUCE KIRBY trademark from the plaque continues to make no sense. Opp. Br., p. 21. If, as BKI posits, the BRUCE KIRBY trademark was used for many years by QMI to help it sell Laser Sailboats (and if it in fact had any impact whatsoever on QMI's ability to sell boats), then why would QMI want to remove his name from their Laser Sailboats? The Bruce Kirby name was removed, as BKI argues (Opp. Br., p 22), because of the rule change, not because QMI was concerned that it was knowingly and willfully infringing the BRUCE KIRBY trademark. Mr. Kirby testified that plaintiffs sold their rights to GSL in 2008, including the rights to build the boats according to the construction manual, and thought he was out of the business at that time. Tr. v. 1, 147:18-148:5. Plaintiffs confirmed they sold their rights in the business to GSL in a letter to defendants on February 17, 2011 (Ex. 564), so there was no reason to keep either of their names on the plaques. BKI has not identified any evidence from this contrived conspiracy to establish that there was any concern about the use of trademarks as a reason for the rule change. While claiming QMI conspired to remove the BRUCE KIRBY trademark, BKI also confusingly argues that "QMI did not want to stop using the BRUCE KIRBY trademark because the mark made QMI money." Opp. Br., p. 22.

BKI also tries to shift the burden of proof improperly to QMI by arguing that QMI's witnesses "never once testified that it did not have direct knowledge of the BRUCE KIRBY trademark." Opp. Br., p. 22. There was no reason for QMI to offer this testimony since it was BKI's burden to prove QMI's knowledge of the trademark. In fact, the evidence established that plaintiffs themselves believed, at least until they sent letters to QMI and LPE in October and

November 2012, respectively, that QMI and LPE were authorized builders with the right to use the plaques on the Laser Sailboats. Exs. BK-51 and BK-52.

Contrary to BKI's suggestion otherwise (Opp. Br., p. 23), QMI, in its Answer, dated June 12, 2013 (Doc. 40, p. 6, #15) admitted only that as of the date of its Answer BKI was the owner of the BRUCE KIRBY trademark.  Again, rather than arguing what it would have done with BK-100 if it had actually offered that exhibit at trial, BKI makes the circular argument that QMI must have failed to rebut BKI's proof of knowledge because it knew if it had then BKI would have offered BK-100. Rather than rely on an exhibit that is not in evidence to prove knowledge, BKI should have identified any evidence of knowledge that it did submit. BKI's failure to do so belies its assertion it "over-proved" its case (Opp. Br., p. 15) with "substantial evidence of direct knowledge." *Id*. at 23.

## V.    QMI'S REMAINING ATTORNEY ARGUMENTS BASED UPON THE EVIDENCE ARE PROPER

BKI spends much of its brief insinuating that QMI's counsel's arguments are somehow improper, repeatedly using the phrase, "attorney argument," in a pejorative sense. *E.g.* Opp. Br., pp. 1, 14, 15, 16, 20, 22-24. There is nothing improper about an attorney presenting argument about what the evidence has shown or what inferences may be reasonably drawn from the evidence. This is precisely what this Court instructed the jury about the attorneys' closing arguments. Tr. v. 3, 475:1-4. QMI supported its arguments and all suggested inferences with citations to documents in evidence and transcripts. Contrarily, BKI's belated attempt to introduce new evidence (e.g BK-100) is certainly improper and should not be countenanced by the court.

With respect to the format and text of the ISAF Plaque, during the relevant time during which QMI was authorized as a licensed builder of boats (which continued through April 2013) the language was dictated by, *inter alia*, the Construction Manual. These facts were stipulated to

14

by the parties. *See*, BK-218, #s 13, 16, 19-22. It is hard to understand BKI's argument that this is somehow directly contradicted by the evidence presented at trial. Opp. Br., pp. 24-25. The rule was not changed until April 23, 2013 (Tr. v. 1, 203:12-18), which is after the period of time during which BKI claims QMI infringed upon the trademark. Whether the Construction Manual was changed to be consistent with the rule change is neither in evidence nor relevant.

BKI argues that the reason sales did not decrease following the rule change was "***because the rule changed*** and, as a result, boats without the BRUCE KIRBY trademark were now class legal…." Opp. Br., p. 27. However, this proves QMI's point: the phrases were only on the plaques because the Construction Manual and the rules required those phrases on the plaques, not because those phrases helped to sell any boats. Even if the ***plaques*** helped to sell boats there was no evidence that any purchaser of a boat ever looked at the plaques to determine whether they said "designed by Bruce Kirby" or "authorised by … Bruce Kirby, Inc."

Finally, BKI's concluding argument about the appropriateness of QMI asking the court to enter judgment as a matter of law is misplaced. Rule 50(a) only applies to cases that are resolved by juries. Fed. R. Civ. P. 50. The present case involves an advisory verdict by the jury, but the claims ultimately will be determined by the court. *See,* section II, *supra.*

## VI.    CONCLUSION

For the foregoing reasons, and those set forth in Defendants' Post-Trial Brief, QMI requests the Court to enter judgement in its favor on BKI's claims for disgorgement of profits for trademark infringement and false designation of origin.

DEFENDANTS,
LASERPERFORMANCE (EUROPE) LTD,
and QUARTER MOON, INC.


/s/ Peter T. Fay
Douglas S. Skalka. (ct00616)
Peter T. Fay (ct08122)
Robert B. Flynn, Esq. (ct15803)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Tel: 203.821.2000
Fax: 203.821.2009
dskalka@npmlaw.com
pfay@npmlaw.com
rflynn@npmlaw.com


## **CERTIFICATION**

I hereby certify that on May 13, 2020 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing].  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing].  Parties may access this filing through the Court's system.


/s/ Peter T. Fay
Peter T. Fay (ct08122)
NEUBERT, PEPE & MONTEITH, P.C.

16