## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| BRUCE KIRBY, INC., ET AL.,<br><br>      Plaintiffs,<br><br>          vs.<br><br>LASERPERFORMANCE (EUROPE) LIMITED, ET. AL.,<br><br>      Defendants. | Civil Action No. 3:13-cv-00297-JAM |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT, PUNITIVE DAMAGES, ATTORNEYS' FEES AND PRE-JUDGMENT INTEREST

# TABLE OF CONTENTS

I.  Introduction ................................................................................................................. 1

II.  QMI Fails to Acknowledge Willfulness is Not Required for an Award of Profits .................. 1

III. The Jury Already Decided the Underlying Facts of Kirby's Claims and Damages ................. 2

    A.  Kirby Proved QMI's Infringement of the BRUCE KIRBY trademark ............................. 3

    B.  Kirby Proved Willfulness, Even Though Doing So Was Not Necessary ........................... 3

    C.  Kirby Proved QMI's Knowing Willful Infringement Dating Back to February 2011 ........ 4

    D.  Kirby Proved Defendants' Illegal Misappropriation of Kirby's Name ............................. 7

    E.  Kirby Proved Entitlement to Punitive Damages ................................................................ 7

IV. QMI Failed to Introduce Evidence of (or Prove) Costs or Apportionment ............................. 8

    A.  QMI Failed to Introduce or Prove Any of Its Costs ......................................................... 8

    B.  QMI Confuses the Burdens Concerning Apportionment, Failed to Meet Its Apportionment Burden at Trial, and Cannot Rebut Kirby's Proof of the Importance of Kirby's Name ...... 9

V.  Punitive Damages Should be Awarded .................................................................................. 10

VI. Defendants Cannot Contest the Jury's Misappropriation Damages ...................................... 11

VII. The Court Should Award Kirby His Attorneys' Fees ............................................................ 11

    A.  This case is "Exceptional" Under the Lanham Act ......................................................... 11

    B.  Fees Should be Awarded For Claims 1, 2, and 4, and Defendants' Counterclaims Under the Court's Inherent Authority ........................................................................................ 13

VIII. Pre-judgment Interest Should Be Awarded on Kirby's Claims 1, 2, and 4 ........................ 13

IX. The Court Should Deny Any Request by Defendants For Judgment as a Matter of Law ...... 15

# TABLE OF AUTHORITIES

**Cases**

*Cobalt Multifamily Inv'rs I, LLC v. Shapiro*,
No. 06-CV-6468-KMW-MHD, 2014 WL 5343306 (S.D.N.Y. Oct. 21, 2014) ....................... 14

*Hamilton–Brown Shoe Co. v. Wolf Brothers & Co.*,
240 U.S. 251 (1916) ..................................................................................... 14

*Health All. Network, Inc. v. Cont'l Cas. Co.*,
245 F.R.D. 121 (S.D.N.Y. 2007) .................................................................... 15

*Lipton v. Nature Co.*,
71 F.3d 464 (2d Cir. 1995) .............................................................................. 4

*Macchietto v. Keggi*,
103 Conn. App. 769 (2007) ............................................................................ 11

*Mealey v. Apartment Rentals*,
125 F.3d 844 (2d Cir. 1997) ........................................................................... 15

*Romag Fasteners, Inc v. Fossil, Inc.*,
140 S. Ct. 1492 (2020) ..................................................................................... 1

*Sleepy's LLC v. Select Comfort Wholesale Corp.*,
909 F.3d 519 (2d Cir. 2018) ........................................................................... 12

*Smith v. Cingular Wireless*,
No. 05-CV-1149-MRK, 2006 WL 1272612, (D. Conn. Apr. 10, 2006) ................... 11

*Song v. Ives Labs., Inc.*,
957 F.2d 1041 (2d Cir. 1992) ......................................................................... 3, 8

*Teutscher v. Woodson*,
835 F.3d 936 (9th Cir. 2016) ............................................................................ 8

*Wade v. Orange Cty. Sheriff's Office*,
844 F.2d 951 (2d Cir. 1988) ............................................................................. 4

**Statutes**

15 U.S.C. § 1117(a) .......................................................................................... 9
Conn. Gen. Stat. § 37-3a ................................................................................... 13

**Rules**

Fed. R. Civ. P. 50 ............................................................................................. 7

**Other Authorities**

5 McCarthy on Trademarks and Unfair Competition (5th ed.) ..................................... 9
Connecticut Practice Book § 16-37 ....................................................................... 11

## I.  Introduction

Defendants' Opposition, (Dkt. 615 ("Opp.")), comprises the same empty attorney-arguments from previous filings. Repetition of Defendants' failed arguments in post-trial briefing is no more effective now than at trial. The Court should disregard Defendants' meritless assertions and instead find the frivolousness of Defendants' briefing to be further evidence this is an exceptional case for purposes of Kirby's fee request. To the extent the Court finds Defendants' post-trial litigation is exceptional, too, Kirby requests permission to submit copies of its invoices for April, May, and June 2020 following the parties' June 22 oral argument.

For the reasons herein and those in Kirby's Motion for Judgment, (Dkt. 610-1 ("Kirby Mot.")), and Opposition to QMI's post-trial brief, (Dkt. 618 ("Kirby Opp.")), Kirby respectfully requests the Court grant Kirby's Motion in its entirety.[1]

## II.  QMI Fails to Acknowledge Willfulness is Not Required for an Award of Profits

Defendants' Opposition fails to address the Supreme Court's recent holding that willfulness is not a rigid precondition to an award of profits. *See Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492 (2020) ("*Romag*"). Kirby expects QMI will argue in its reply that, even though willfulness is no longer a requirement, the *Romag* decision noted "a trademark defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate." *Romag*, 140 S. Ct. at 1497. However, there is no need to dwell on this or any other language in *Romag* here because Kirby already proved, and the jury already determined, QMI's willfulness. Whether a predicate finding or a "important consideration," the jury's binding determination of willfulness, which notably could have been proven by willful

---

[1] Kirby's Motion requests an award of damages for QMI's misappropriation in an amount commensurate with the jury's award, and then only identifies the amount as $0. (Dkt. 610 at 1.) As the jury's verdict shows, and as Defendants note, the jury awarded nominal damages for QMI's misappropriation. (Dkt. 575 ("Verdict") at 4.) Kirby therefore respectfully amends its motion for judgment to request nominal damages accordingly.

blindness had Kirby not proved direct knowledge, fully supports the jury's award. Accordingly, the Court should not disturb the jury's award as to QMI's profits.

### III. The Jury Already Decided the Underlying Facts of Kirby's Claims and Damages

Kirby has already shown in previous filings the pervasiveness and impropriety of Defendants' efforts to relitigate facts in their post-trial briefs. Indeed, the jury already determined all the necessary facts at trial for the Court to enter judgment on the jury's award. The jury already made, for example, at least the following findings in support of their verdict:

| Determination of Fact |
|---|
| "[T]he consequences of QMI's use of the BRUCE KIRBY trademark in all reasonable probability would have been to cause confusion about the source, sponsorship, approval or affiliation of the Laser sailboat offered for sale by QMI" (Dkt. 579 ("Inst.") at 10) |
| "QMI was actually aware of its infringing activity or that QMI acted with reckless disregard or was willfully blind to whether it was engaging in trademark infringement" (Inst. at 13) |
| QMI's "deceptive intent" (Inst. at 19) |
| QMI did not prove costs (Inst. at 20) |
| QMI did not prove any attribution of profits to sources other than the BRUCE KIRBY trademark (Inst. at 20) |
| QMI willfully infringed the BRUCE KIRBY trademark beginning at least as early as February 1, 2011 (Inst. at 18-19) |
| QMI and LPE used Kirby's trademarked "name in a way that goes beyond mere references to him in connection with his public activities" (Inst. at 16) |
| QMI and LPE used Kirby's trademarked name "without Mr. Kirby's consent" (Inst. at 16) |
| QMI and LPE used Kirby's trademarked name "for the purpose of appropriating to [their] benefit the commercial or other value associated with that person's name" (Inst. at 16-17) |
| QMI and LPE "derived some commercial benefit or value from the wrongful use of Mr. Kirby's [trademarked] name" (Inst. at 17) |
| QMI and LPE possessed "an intentional or callous disregard of the known rights of BKI as a trademark holder or that there is a need to deter others from engaging in willful trademark infringement" (Inst. at 19) |
| Misappropriation damages "were proximately caused by the wrongful conduct of one or both of the defendants" (Inst. at 21) |
| QMI and LPE's "conduct [was] outrageous because of reckless indifference to the rights of others, or" QMI and LPE "intentional[ly] and wanton[ly] violat[ed] [] those rights (Inst. at 22) |
| QMI and LPE's "intentional or reckless violation of the rights of others" (Inst. at 22) |
| QMI and LPE's "extraordinary conduct" requires punitive damages "to serve as a warning to others not to engage in such conduct."  (Inst. at 23) |
| Punitive damages are "needed to protect the community and to [ ] express[ ] [] the jury's indignation at the misconduct." (Inst. at 23) |

These findings are unanimous, unwavering, and indisputable. And, as stated in Kirby's Opposition, the court is constrained by these findings and not at liberty to contradict them. (*See* Kirby Opp. at 12-14); *see also, e.g., Song v. Ives Labs., Inc.*, 957 F.2d 1041, 1048 (2d Cir. 1992) ("[A] judge sitting at equity may not render a verdict which is inconsistent with that of a jury sitting at law on a claim involving the same essential elements.").

### A. *Kirby Proved QMI's Infringement of the BRUCE KIRBY trademark*

Defendants' Opposition shows QMI's never-ending assertion of non-infringement and fair use despite an overwhelming record to the contrary. QMI's tired arguments failed at trial and should likewise be disregarded here. Following the parties stipulation as to Kirby's ownership of the BRUCE KIRBY trademark and the mark's validity, (Ex. A[2] at ¶¶ 7-9), Kirby proved a likelihood of confusion, as determined by the jury, which QMI does not substantively dispute. Instead of conceding infringement, however, QMI clings to *post hac*, unsupported attorney-arguments concerning things like readability of the plaques, the alleged effect of a hiking strap on the plaques' visibility, and that QMI illegally used the BRUCE KIRBY trademark purely for purposes of compliance. These fact arguments need have been submitted to the jury and, to the extent they were, the jury rejected them. Moreover, failed arguments like these are directly contradicted by the record, which shows (1) the BRUCE KIRBY trademark was fundamental to the salability of Laser as an indicium of race-eligibility and authenticity, and (2) Defendants' willful, unauthorized use of Kirby's trademarked name to make millions of dollars in sales.

### B. *Kirby Proved Willfulness, Even Though Doing So Was Not Necessary*

QMI continues to contest the jury's binding determination of willfulness and bad faith yet has no mechanism to do so. The issue of willfulness was properly submitted to the jury pursuant

---

[2] Cites to Exs. A–DD refer to exhibits attached the Declaration of Benjamin N. Luehrs, filed April 22. (Dkt. 610-2.)

to its unique ability to resolve factual issues of intent. (*See* Kirby Opp. at 11-12; *see also, e.g.,*
*Lipton v. Nature Co.*, 71 F.3d 464, 472 (2d Cir. 1995) (noting that "[d]eterminations of
credibility are within the province of the jury and may not be resolved on summary judgment").
Unlike in *4 Pillar,* the parties here did not agree to try willfulness to the Court. (*See* Kirby Opp.
at 11.) To the contrary, the issue was submitted to the jury and Kirby proved QMI's intent to
deceive as to the sponsorship, affiliation or approval of Lasers using the BRUCE KIRBY
trademark without Kirby's authorization for a commercial benefit that was in fact obtained. The
Court should therefore not hesitate to enter judgment against QMI for willful infringement.

C. *Kirby Proved QMI's Knowing Willful Infringement Dating Back to February 2011*

QMI's assertion of a lack of knowledge of the BRUCE KIRBY trademark prior to March
4, 2013 is nothing more than unsupported attorney argument that directly contradicts the record
and is emphatically not believable. As illustrated in Kirby's Opposition, (Kirby Opp. at 20-28),
the evidence of record conclusively establishes QMI's direct knowledge of the BRUCE KIRBY
trademark and its knowing, willful infringement. By way of example only, (1) QMI used the
BRUCE KIRBY trademark for years to sell boats in relation to a contractual agreement to
manufacture Laser sailboats, (2) QMI's knowledge of the BRUCE KIRBY trademark dating
back to February 1, 2011 was a litigated question of fact with respect to QMI's intent to deceive
customers using the BRUCE KIRBY trademark, (3) QMI's is highly sophisticated with
intellectual property assets, such as the Builder Agreements, (4) QMI's director, Farzad
Rastegar, negotiated with Kirby to buy some, but not all, of Kirby's trademarks in conjunction
with a $2.6 million dollar transaction, (5) Kirby sent letters protesting QMI's use of Kirby's
trademarked name on plaques after QMI failed to pay royalties, (6) QMI instituted a rule change
that was specifically designed to remove the BRUCE KIRBY trademark from the plaques
because QMI knew it did not have authorization to use the mark, an assertion QMI has never

4

plausibly rebutted, and (7) QMI failed to elicit or enter any evidence or testimony at trial, or cite to any evidence post-trial, to rebut Kirby's proofs. (Kirby Opp. at 20-28.)

Indeed, QMI's unsupported attorney arguments are insufficient to contest the jury's factual findings. For instance, Defendants argue that "Plaintiffs did not present any evidence that either QMI or LPE were aware of the [March 2010] letter." (Opp. at 5.) Of course Defendants were aware of this letter. Indeed, this letter was sent only after "numerous failed attempts to be paid." (Ex. M.) QMI even *agrees* that Kirby was writing about rights other than the Builder Agreement rights in 2010. (Dkt. 611 at 10 ("If there were issues with respect to performance under the Builder Agreements [after 2008], that was for GSL to address.").) Kirby testified he wanted ILCA to stop issuing plaques to Defendants because the plaques "had [his] name on them and [QMI and LPE] were building boats with those plaques on them and not paying any royalties." (Vol. 1 at 129:16-20 (Kirby), 179:13-17 (Kirby).) Kirby was clear that Defendants did not have authorization to use his trademarked name after they stopped paying. (Vol. 1 at 134:20-24 (Kirby), 136:08-19 (Kirby) ("Q. When did Quarter Moon, Incorporated . . . lose authorization to use your name on Laser sailboats? A. Well, when they stopped paying royalties. . . . Q. [I]s your answer the same with respect to . . . LaserPerformance (Europe)? A. Yes.").) There were immediate consequences following the March 2010 letter, namely LPE's termination two months later. (Vol. 2 at 307:12-16 (Crane).) This wake-up call led QMI to resume royalty payments for a time while smuggling plaques to its terminated European counterpart (LPE). (Kirby Mot. at 15-16.) The notion that Defendants were in the dark as to these happenings is wholly not credible.

With respect to Kirby's letters of late 2012, QMI argues these letters do not concern the BRUCE KIRBY trademark. (*See* Opp. at 6.) This is decidedly not correct. The letters specifically state that Defendants are not entitled to trademarked plaques. (*See* Exs. U and V). Kirby sent the

letters "[t]o stop [QMI and LPE] from building the boat with the plaques with [his name] and not paying anybody anything." (Vol. 1 at 180:8-17 (Kirby).) The Court has noted that "the consequence of the termination letter[s]" is Kirby demanded they "stop using his name." (*See* Vol. 1 at 26:25-26:13.) Moreover, while QMI asserts there was never any evidence Defendants received any additional letters, (Opp. at 14), this assertion is belied by the 2012 letters themselves. (*See* Ex. U (noting letter of July 2012); Ex. V (noting letter of October 2012).)

Furthermore, even if there was some record evidence to rebut Kirby's proofs of QMI's direct knowledge (there is not), QMI's assertions that Kirby "applied for and received a trademark" and/or "trademark***ed***" his name, only address Kirby's ***registered*** trademark (claim 1) and are inconsequential to Kirby's claim for false designation of origin (claim 2), which is based on use of the mark rather than registration. (*See*  Kirby Opp. at 20-22.) *Post hac* attorney argument cannot overcome the clear record establishing QMI's knowledge of the BRUCE KIRBY trademark and willful infringement thereof as early as February 2011.

Finally, QMI requests the Court enter an award of profits commensurate with QMI's willful infringement. Kirby agrees with this request, but the time period is determined by the jury. Indeed, the jury already determined the time period as a matter of fact when the Court (1) made willfulness a predicate finding to a determination of profits, (2) instructed the jury to only award profits for willful infringement (*e.g,* profits resulting from deceptive intent), and (3) the jury awarded profits dating back to February 1, 2011. (*See* Inst. at 18-19; Verdict at 3.) Accordingly, the jury already determined QMI was a willful infringer of the BRUCE KIRBY trademark as early as February 2011 and the Court is constrained by this finding. Thus, Kirby and QMI agree the Court should award profits commensurate with QMI's willful infringement, which the jury found lasted between February 2011 and April 23, 2013.

### D.  Kirby Proved Defendants' Illegal Misappropriation of Kirby's Name

Like claims 1 and 2, Defendants try to re-litigate the jury's findings related to claim 4. Specifically, Defendants allege Kirby failed to prove lack of consent for QMI and failed to prove a commercial benefit for both QMI and LPE. However, QMI's lack of consent from Kirby was necessarily proven in relation to the jury's verdict on infringement and misappropriation. QMI presents no legal or factual bases to challenge this finding post-trial and cannot raise the issue now after failing to file a Rule 50(a) motion. *See* Fed. R. Civ. P. 50; (Kirby Mot. at 32-33).

With respect to commercial benefit, Defendants simply do not agree with the jury's determination of what the facts showed. Kirby testified that sailors would "look for" the plaques with the BRUCE KIRBY trademark on the boat and "know where to find them" as a result of Defendants' consistent, years long use of the plaques. (Vol. 1 at 118:5 (Kirby).) Anyone "who wanted to race" the Laser "looked for" the plaques with the trademark as an indicium of an "authentic" boat that was "a legal Laser" (*i.e.*, race eligible). (Vol. 1 at 114:19-24 (Kirby); Vol. 2 at 304:22-24 (Crane).) Prior to April 23, 2013, boats **without** Kirby's name could not race in regattas, (Vol. 1 at 137:14-17 (Kirby)), as illustrated in the Laser class rules effective prior to April 23, 2013, (Ex. X), and were therefore **worthless** to Laser racers. Ensuring whether a boat was class-legal was the precise inquiry made by Defendants' customers when making a purchase **because they wanted to race boats in Laser races**. (Vol. 2 at 19-24 (Crane).) Use of Kirby's trademarked name therefore formed the entire basis for Defendants' sales and Defendants can make no credible argument that their illegal use failed to provide a commercial benefit.

### E.  Kirby Proved Entitlement to Punitive Damages

The Court was explicit in instructing the jury it must make predicate findings before awarding punitive damages. (*See, e.g.,* Inst. at 23.) QMI makes the same baseless arguments that Kirby did not prove factual elements like "reckless indifference." (*See* Opp. at 27.) The jury's

findings are supported for all the reasons above. Defendants cannot first challenge these findings post-trial. *See* Fed. R. Civ. P. 50.

## IV. QMI Failed to Introduce Evidence of (or Prove) Costs or Apportionment

### A. QMI Failed to Introduce or Prove Any of Its Costs

QMI seeks to untether trademark damages from the trial facts by vaguely asserting the Court is not bound by the "findings" of an advisory jury. (Opp. at 21.) As stated in Kirby's Opposition, however, in a suit that presents legal and equitable claims involving common questions of fact, those questions must be decided by a jury, and the Court is obligated to accept all the jury's factual findings on common questions. (Kirby Opp. at 12-20.) Indeed, where equitable claims are tried to a court and legal claims to a jury, "the trial judge must 'follow the jury's implicit or explicit factual determinations' 'in deciding the equitable claims.'" *Teutscher v. Woodson*, 835 F.3d 936, 944 (9th Cir. 2016) (citations omitted). "[A] judge sitting at equity may not render a verdict which is inconsistent with that of a jury sitting at law on a claim involving the same essential elements." *Song*, 957 F.2d at 1048.

Here, the only jury finding that was arguably "advisory" is how much profits constitutes an *equitable* award. The amount of QMI's revenues and costs are not equitable issues but issues of fact that must be proven by a preponderance of the evidence. Thus, the jury determined as a *matter of fact* that QMI had $4,337,157 in revenues and $0 in costs from February 1, 2011 through April 23, 2013. The jury then issued an advisory finding that an equitable determination of "profits" is $4,337,157. It is the *equitable* amount of profits that the Court must determine. However, the Court must accept as a matter of fact that QMI proved no costs at trial.

With respect to DeCusati's testimony and the clear dichotomy between his opinions and Murray's, QMI attempts to sweep this under the rug by casually stating DeCusati "may have approached the assignment differently." (Opp. at 24.) This is a gross perversion of the record.

(*See, e.g.,* Kirby Mot. at 21-27.) DeCusati did not testify that a reasonable expert might have calculated costs his way or Murray's. DeCusati repeatedly opined that the documents reviewed by Murray "didn't come anywhere close to being sufficient to prove expenses" and did not allow a reasonable expert to come to a cost determination. (Vol. 2 at 269:8-24 (DeCusati).) He testified that, after looking at the documents relied upon by Murray, he had "no ability to know what the costs are based on the information produced to [him] or that [he] reviewed in this matter." (Vol. 2 at 279:10-12 (DeCusati).) He "had no ability and [he] saw no documents that allowed him to calculate or prove any of the expenses or costs for the defendant." (Vol. 2 at 280:1-5 (DeCusati).) Thus, Kirby established, and the jury found, that QMI failed to prove costs. QMI's briefs are nothing more than bare recitals of attorney arguments that Murray's work and findings were sufficient. The jury disagreed and there is no basis to reach another conclusion.

B. *QMI Confuses the Burdens Concerning Apportionment, Failed to Meet Its Apportionment Burden at Trial, and Cannot Rebut Kirby's Proof of the Importance of Kirby's Name*

Defendants repeatedly allege that, contrary to the record, Kirby did not prove a sufficient relationship between use of Kirby's trademarked name and boat sales. As shown above, however, Kirby in fact proved use of Kirby's trademarked name constituted the entirety of the reason Defendants sold any Laser sailboats prior to April 23, 2013 as use of Kirby's trademarked name was tied to a boat's eligibility to race.

Regardless, QMI completely confuses the burdens with respect to the significance of Kirby's trademarked name on Laser sailboats. It is QMI's burden, not Kirby's, to prove what portion of profits are attributable to Kirby's name as opposed to some other factor. 15 U.S.C. § 1117(a) ("defendant must prove all elements of cost or deduction claimed"); 5 McCarthy on Trademarks and Unfair Competition § 30:65 (5th ed.) ("Under the federal Lanham Act, as well as the common law, it is the infringer's burden to prove any proportion of his total profits which

may not have been due to use of the infringing mark."); (*see also* Inst. at 20 ("QMI also bears the burden of proving that any portion of the profit is attributable to factors other than the infringement.").) It is precisely for this reason the Court instructed the jury that "[u]nless you find that a portion of the profit from the sale of the products using the trademark is attributable to factors other than use of the trademark, you should find that the total profit is attributable to the infringement." (*Id.*)

Here, QMI has no evidence, and presented no evidence, as to apportionment, so it argues this issue is somehow Kirby's burden to prove. However, Kirby proved its burden of establishing QMI's revenues **and** fully headed off any potential proof from QMI, which it never even made, that the entire value of the Laser sailboat is attributable to Kirby's trademarked name. The jury credited Kirby's proof and made this independent factual finding in conjunction with their verdict. Thus, every one of QMI's arguments that Kirby somehow "failed" to show the value of his name are not only false, they are inapposite. Accordingly, QMI's arguments regarding attribution are legally erroneous, should be disregarded, and the Court should accept the jury's profits award of $4,337,157.

## V.  Punitive Damages Should be Awarded

Defendants do not contest how Kirby calculated punitive damages. Defendants' arguments instead concern factual assertions that have already been resolved. Indeed, Defendants specifically challenge the jury's findings on the factual predicates to the award of punitive damages and again allege good faith in contradiction with the record. Defendants repeated focus on factual issues illustrates their incessant desire to re-litigate the past rather than actually focus post-trial issues. Defendants also confuse Kirby's historic entitlement to royalties with his due compensation of $1,089,378 for legal expenses incurred to bring Defendants to account. Moreover, and as Defendants' acknowledge, compensatory damages for misappropriation may

be measured by commercial benefit obtained by Defendants, which Kirby proved is 100% of their revenues ($4,337,157 for QMI and $16,503,016 for LPE). Thus, the jury's award provides only a fraction of Kirby's due compensation. An award of punitive damages for $1,089,378 for Kirby's litigation expenses is more than reasonable and necessary for Kirby's full compensation.

## VI. Defendants Cannot Contest the Jury's Misappropriation Damages

Defendants request the Court "not enter a judgment" on claim 4 by alleging without support Kirby did not factually establish his claim. There is no legal or factual support for Defendants' request. Moreover, Defendants request amounts to yet another procedurally barred motion for judgment as a matter of law, which Defendants waived. (*See* Kirby Opp. at 32-33.) Defendants cite *Kelly v. Kurtz* in support of their request, but this state-law case is inapposite as QMI's briefing is subject to federal procedural law. *See, e.g., Smith v. Cingular Wireless*, No. 05-CV-1149-MRK, 2006 WL 1272612, at *1 (D. Conn. Apr. 10, 2006). In any event, the same rationale requiring a predicate motion for a directed verdict applies in state law cases. *See, e.g.,* Connecticut Practice Book § 16-37 (after acceptance of a verdict "a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon, set aside and have judgment rendered in accordance with his or her motion for a directed verdict."); *Macchietto v. Keggi*, 103 Conn. App. 769, 778, (2007) ("As has often been stated, a motion for a directed verdict is a prerequisite to a motion for judgment notwithstanding the verdict.")

## VII. The Court Should Award Kirby His Attorneys' Fees

### A. *This case is "Exceptional" Under the Lanham Act*

QMI misstates the law regarding what constitutes an "exceptional" case under the Lanham Act. QMI cites *Sleepy's LLC* in which the Second Circuit discusses how it ***previously*** held required fraud or bad faith. (*See* Opp. at 30.) However, the court in *Sleepy's LLC* thereafter adopts the more flexible *Octane Fitness* standard to replace the former, unduly rigid standard.

11

Indeed, combating rigidity in trademark matters was the Supreme Court's purpose in both *Romag* and *Octane Fitness*. Accordingly, in the Second Circuit an "exceptional case" is "simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) *or* the unreasonable manner in which the case was litigated." *Sleepy's LLC v. Select Comfort Wholesale Corp*., 909 F.3d 519, 530–31 (2d Cir. 2018) (emphasis of the disjunctive added).

The scarcity of support for Defendants' litigating positions was shown in Kirby's opening brief. (Kirby Mot. at 37-46.) QMI's post-trial briefs are further evidence of the incredible weakness of Defendants' positions and the unreasonableness of Defendants' litigating. There is no excuse for Defendants' repetition of frivolous and failed arguments during post-trial briefing.

Moreover, while QMI spends much of its Opposition trying to draw analogies between its meritless claims and Kirby's ***disputed*** claims that were dismissed on summary judgment, these claims have many key distinctions. For instance, Kirby actually litigated its claims in good faith until the Court dismissed them. Defendants, on the other hand, never even attempted to prove their claims and dismissed them ***without*** dispute ***before trial*** because ***the claims had no support in law or fact***. It is obviously not Kirby's position, as QMI indicates, that any claim not presented at trial is meritless. (Opp. at 36.) It is Kirby's position, however, that when Defendants bring eight counterclaims (counterclaims 2-9), never once factually them after seven (7) years of litigation, and then voluntarily dismiss the claims because of a complete lack of evidence, this shows the claims were brought in bad faith. Defendants show no basis to hold otherwise.

This case's exceptionality is further shown by the frivolousness of Defendants' defenses. Defendants did not, and could not, craft a plausible defense to their willful infringement and misappropriation. (Kirby Mot. at 38-41.)

12

Also notable in Defendants' Opposition to Kirby's fee request is the matters Defendants do not contest. For instance, QMI does not contest the method of Kirby's calculation of fees, the amount of work performed, the amount of fees requested, or the reasonableness of the fees. QMI also fails to argue why Kirby's dismissed claims are unrelated to Kirby's Lanham Act claims. QMI offered no opposition other than to say the Court should categorically not entertain the notion of awarding fees for any non-Lanham Act claims. Kirby's explanation as to how each of his claims led to establishing his proofs at trial is therefore uncontested. Neither can QMI separate Kirby's Lanham Act claims from the misappropriation claims. Therefore, while Kirby asserts it is entitled to $944,208 in fees, if the Court finds this case exceptional, QMI at minimum presented no opposition to an award of fees in the amount of $289,285 for fees incurred after the Court's June 2017 Order. (Kirby Mot. at 46.)

      B. *Fees Should be Awarded For Claims 1, 2, and 4, and Defendants' Counterclaims Under the Court's Inherent Authority*

Kirby re-asserts all the reasons above and those in its opening brief in support of his request for attorneys' fees on claims 1, 2, and 4 and Defendants' counterclaims pursuant to the Court's inherent authority. Defendants offers no reasons as to why their counterclaims were ***not*** meritless or ***not*** brought for an improper purpose. Indeed, Defendants never once argue the merits of their counterclaims (because they cannot), or direct the Court to anywhere in the record where their counterclaims are supported. There is therefore no rebuttal to Kirby's assertion as to the lack of merit and impropriety of Defendants' claims.

## VIII. <u>Pre-judgment Interest Should Be Awarded on Kirby's Claims 1, 2, and 4</u>

Defendants do not contest how Kirby calculated pre-judgment interest under any claims or any theory. Pre-judgment interest should be awarded on claims 1 and 2 under the Lanham Act for all the reasons Kirby raised above and in relation to Kirby's request for attorneys' fees. Pre-

13

judgment interest should also and/or in the alternative be awarded on Claims 1, 2, and 4 under Conn. Gen. Stat. §37-3a pursuant to the Court's discretion. Defendants' only arguments against an award of interest under this statute is the bare allegation that interest cannot or should not be awarded because "no money has been detained after it became payable" by Defendants and the "statute require[s] the amount of money due to be fixed or liquidated and that the money must be 'wrongfully' withheld by the defendant before awarding interest." (Opp. at 40.) However, this is a case premised on theories of unjust enrichment. Connecticut courts have specifically held that interest may be awarded on judgments predicated on unjust enrichment theories. *See, e.g.*, *Cobalt Multifamily Inv'rs I, LLC v. Shapiro*, No. 06-CV-6468-KMW-MHD, 2014 WL 5343306, at *5 (S.D.N.Y. Oct. 21, 2014) (construing Conn. Gen. Stat. §37-3a and citing cases).

The reason for the courts rulings is simple: unjustly-enriched defendants like Defendants are wrongfully withholding money from Kirby through use of his assets, namely his trademark and name, without authorization. Indeed, the Supreme Court as far back as 1916 likened the infringer to a trustee, who acquired the profits "by [the] wrongful use of the [trust] property." *Hamilton–Brown Shoe Co. v. Wolf Brothers & Co.*, 240 U.S. 251, 259, 36 S.Ct. 269, 60 L.Ed. 629 (1916). The amount of money due is easily calculated as QMI's profits and QMI and LPE's commercial benefit. Additionally, in view of Defendants' statement that the jury's award against LPE comprised all LPE's sales from October 2012 through April 23, 2013, Kirby has provided another calculation of pre-judgment interest starting from October 2012 (totaling $1,826,200.58) in a Supplemental Declaration of Robert D. Keeler, filed herewith.

Accordingly, judgements premised on theories of unjust enrichment meet the qualifications of interest awards under Conn. Gen. Stat. § 37-3a. The Court should therefore

award interest to Kirby in the amount of $3,563,526.70 under claims 1 and 2 and in the amount of $2,155,999.76, $2,066,401.20, or $1,826,200.58 under claim 4.

## IX. The Court Should Deny Any Request by Defendants For Judgment as a Matter of Law

Footnote 7 in Defendants' Opposition states that "QMI takes the position that the phrase 'Authorized by… Bruce Kirby, Inc.' on the ISAF Plaque cannot constitute trademark infringement because the name 'Bruce Kirby, Inc.' is not trademarked and is separate and distinct from the individual Bruce Kirby" and "the Court has yet to rule on that claim." (Opp. at 7 n.7.) To the extent this is a motion for judgment as a matter of law, Kirby opposes this motion (and any other such motion in Defendants' post-trial briefing) because they never moved for judgment as a matter of law during trial. There is therefore no mechanism for Defendants' requested relief (and they have not identified any). *See also Mealey v. Apartment Rentals*, 125 F.3d 844 (2d Cir. 1997) ("This Court will not waive the procedural requirement that a Rule 50(a) motion is a prerequisite to a Rule 50(b) motion . . . ."); *Health All. Network, Inc. v. Cont'l Cas. Co.*, 245 F.R.D. 121, 124 (S.D.N.Y. 2007), *aff'd*, 294 F. App'x 680 (2d Cir. 2008) ("Since Defendants did not initially raise, under Rule 50(a), their motion for judgment as a matter of law on Plaintiffs' claim for unpaid fees, the Court declines to allow them to raise the issue at this point).

Respectfully submitted,

May 13, 2020          */s/ Benjamin N. Luehrs*
Wesley W. Whitmyer, Jr., ct03509
Walter B. Welsh, ct01220
Benjamin N. Luehrs (phv08980)
Robert D. Keeler, ct29692
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, CT  06901
Tel. 203 703-0800
Fax 203 703-0801

Email: litigation@whipgroup.com
       wwelsh@whipgroup.com
       bluehrs@whipgroup.com
       rkeeler@whipgroup.com

*Attorneys for Plaintiffs*
*Bruce Kirby, Inc. and Bruce Kirby*

16

**CERTIFICATE OF SERVICE**

This is to certify that on this 13th day of May 2020, a true and correct copy of the foregoing **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT, PUNITIVE DAMAGES, ATTORNEYS' FEES AND PRE-JUDGMENT INTEREST** Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the court's CM/ECF System.


May 13, 2020                                             */s/ Benjamin N. Luehrs*_____