UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE KIRBY, INC. ET AL. | : | |
| | : | CASE NO. 3:13-CV-00297 (JAM) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| LASERPERFORMANCE (EUROPE) LIMITED, ET AL. | : | |
| | : | |
| Defendants. | : | JULY 13, 2020 |

**DEFENDANTS' SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO PLAINTIFFFS' MOTION FOR JUDGMENT, PUNITIVE DAMAGES, ATTORNEY'S FEES, AND PRE-JUDGMENT INTEREST**

**I. Introduction**

The defendants, LaserPerformance (Europe) Limited ("LPE") and Quarter Moon, Inc. ("QMI"), submit this memorandum in further opposition to the plaintiffs' motion for attorneys' fees and punitive damages and, more specifically, in response to the Plaintiffs' Supplmental Response in Support of Motion for Judgment, Punitive Damages, Attorneys' Fees, and Pre-Judgment Interest (Doc. 640).

**II. Discussion**

The plaintiffs, Bruce Kirby ("BK") and Bruce Kirby, Inc. ("BKI"), continue to fail to provide a reasonable basis to support their claims for the vast majority of attorneys' fees they seek to recover.

Rather than properly separate the fees related to BKI's prosecution of the Lanham Act claims, the plaintiffs suggest that because four (4) out of their seven (7) original claims somehow

related to claims brought against QMI and LPE to "cease their unauthorized use of Kirby's trademarked name," they are entitled to an award of at least fifty-seven (57) percent of the billing entries highlighted in blue, which they claim relate to legal work that is "inextricably intertwined with legal work related to" the Lanham Act claims (Claims 1 and 2). There are multiple flaws with this approach. First, only three, not four, of the seven original claims made it to trial: Claim I (counterfeiting), Claim II (trademark infringement) and Claim IV (misappropriation of Bruce Kirby's name). Presumably, plaintiffs argue these constitute four claims because Claim IV was asserted against two defendants at trial. Following this logic, however, the plaintiffs greatly overstate the percentage of claims that they ultimately pursued at trial. When they first filed their complaint (Doc. 1) in March 2013, each of the two plaintiffs asserted seven claims against numerous defendants, in addition to LPE and QMI, for a total of forty-three (43) claims, as follows:

      Claim I (counterfeiting): BK and BKI against QMI, International Sailing Federation Limited ("ISAF"), International Laser Class Association ("ILCA"), Karaya (Jersey) Limited ("Karaya"), and Farzad Rastegar ("Rastegar") (ten separate claims);

      Claim II (trademark infringement): BK and BKI against QMI, ISAF, ILCA, Karaya, and Rastegar (ten separate claims);

      Claim III (CUTPA): BK and BKI against QMI, LPE, ISAF, ILCA, Karaya, and Rastegar (twelve separate claims);

      Claim IV (misappropriation of Bruce Kirby's name): BK against QMI, ISAF, ILCA, Karaya, and Rastegar (five separate claims);

      Claim V (breach of 1983 Builder Agreement): BK and BKI against LPE (two separate claims);

Claim VI (breach of 1989 Builder Agreement): BK and BKI against QMI (two separate claims); and

Claim VI [sic] (inducement to default Builder Agreements): BK and BKI against ISAF and ILCA (two separate claims).

The number of separate claims increased to sixty-five (65) in the First Amended Complaint (Doc. 23) filed on April 30, 2013, which is the operative complaint:

Claim I (counterfeiting): BK and BKI against QMI, LPE, ISAF, ILCA, Karaya, Velum Limited ITM SA (Antigua and Barbuda) ("Velum"), and Rastegar (fourteen separate claims);

Claim II (trademark infringement): BK and BKI against QMI, LPE, ISAF, ILCA, Karaya, Velum, and Rastegar (fourteen separate claims);

Claim III (CUTPA): BK and BKI against QMI, LPE, ISAF, ILCA, Karaya, Velum, and Rastegar (fourteen separate claims);

Claim IV (misappropriation of Bruce Kirby's name): BK against QMI, LPE, ISAF, ILCA, Karaya, Velum, and Rastegar (seven separate claims);

Claim V (breach of 1983 Builder Agreement): BK and BKI against LPE and Rastegar (four separate claims);

Claim VI (breach of 1989 Builder Agreement): BK and BKI against QMI and Rastegar (four separate claims); and

Claim VII (inducement to default Builder Agreements): BK and BKI against ISAF, ILCA, Velum, and Karaya (eight separate claims).

However, by the time of trial, of the sixty-five claims set forth in the First Amended Complaint, only four survived: Claim I (BKI v. QMI for counterfeiting), Claim II (BKI v. QMI

3

for trademark infringement), Claim IV (BK v. QMI and LPE for misappropriation of BK's name). Consequently, following plaintiffs' logic, the percentage of fees highlighted in blue, to the extent the court agrees with plaintiffs that these fees are inextricably intertwined with legal work related to the Lanham Act claims, should be limited to 6.2% (4 divided by 65 = 6.15%), not 57%.

Moreover, the defendants submit that the plaintiffs have not provided sufficient justification for the court to agree that these fees are inextricably intertwined with legal work related to the Lanham Act claims. The plaintiffs' attorneys' fees invoices are simply too vague in many entries to permit the court to determine whether the entries are related to prosecution of the Lanham Act claims and, consequently, the plaintiffs have failed to satisfy their burden of proving that the fees are related.

For example, despite claiming LPE was terminated years earlier in 2010 (Doc. 610-1, p. 7), the plaintiffs seek fees related to a termination letter to LPE prepared on May 16, 2013. Doc. 640-4, p. 15 of 37. Plaintiffs seek numerous fees related to preparation of a prejudgment remedy application, which they apparently did not pursue. Doc. 640-4, pp. 7-21 of 37. They seek fees related to responding to motions filed by defendants other than QMI, which have nothing to do with the Lanham Act claims against QMI. *See, e.g.* Doc. 640-4, p. 22 (7/1/13 entry), p. 28 (8/9/13, 8/20/13, and 8/21/13 entries). Plaintiffs also seek fees for preparing discovery requests to parties other than QMI. *See, e.g.* Doc. 640-4, p. 29 (8/31/13 entry), p. 31 (9/4/13 entries). The plaintiffs even seek fees related to "review and preparation of case document re: Global Sailing Limited's Interrogatory Responses", and this entry they have highlighted in green, claiming they are entitled to the full amount of these fees. *See, e.g.* Doc. 640-5, p. 10 of 44 (3/27/14 entry) and p. 21 of 44 (entry for 6/9/14). Yet they have offered no basis for the court to conclude that fees

4

related to GSL's interrogatory responses have anything to do with BKI's prosecution of its Lanham Act claims against QMI or BK's misappropriation of name claims against QMI and LPE. There are numerous entries concerning document production and review of documents produced that fail to identify to or from which of the several defendants the documents were being produced, much less whether the documents had any connection to the Lanham Act claims. *See, e.g.* Doc. 640-5, pp. 14-18 of 44. In fact, they seek fees related to ILCA's answer and defenses. Doc. 640-5, p. 19 (entry for 6/2/14). They also seek fees related to a motion in limine to preclude ILCA from relying on ISAF as a defense. Doc. 640-5, p. 20 of 44 (entries for 6/4/14 and 6/5/14). They claim fees related to ILCA's motion for summary judgment. *See, e.g.* Doc. 640-6, p. 8 04 30 (entry for 2/13/15, p. 9 of 30 (entries for 2/24/15 - 2/26/15), p. 10 of 30 (entries for 2/2/7/15 and 2/28/15). They claim fees related to ILCA's request for dismissal. Doc. 640-5, p. 28 of 44 (entry for 8/7/14). They claim fees that are specifically identified as being related to preparing discovery requests to ILCA. *See, e.g.* Doc. 640-5, p. 34 of 44 (entries for 10/21/14 and 10/23/14), p. 35 of 44 (entry for 10/24/14), p. 36 of 44 (entries for 11/7/14 and 11/10/14). It is impossible to determine whether there are other entries that refer to document production to or from defendants other than QMI. How are the fees related to the claims against ILCA inextricably intertwined with the prosecution of the Lanham Act claims against QMI? There are too many vague entries to possibly list them all here. Those cited above are just examples of entries that are clearly not related to the prosecution of the Lanham Act claims against QMI.

In fact, incredibly, the plaintiffs seek fees related to their prosecution of claims this court decided they did not even have standing to bring. *See, e.g.,* Doc. 640-5, p. 31 of 44 (entry for 9/12/14)("researching and drafting damages analysis section reflecting Kirby's rights under the

respective builders agreements and outstanding royalties owed"). Most of the damages analysis prepared by their expert concerned these "outstanding royalties" that they claimed they were owed, without standing to do so. It is reasonable to conclude that most of the entries in the invoices having to do with damages analysis likewise were related to those claims which were dismissed by this court.

It is the plaintiff's burden to relate the fees to the claims for which they argue they are entitled to recover attorneys' fees. Instead, they have attempted to impose on the defendants and the court the burden of trying to sort out these claims for fees. For this reason alone, the plaintiffs' request for fees should be denied.

In addition, the plaintiffs' requests for costs related to postage, photocopying, telephone and internet charges should be denied. These are overhead costs incurred by plaintiffs' counsel that should be covered by their hourly rates and not separately billed to the plaintiffs. Even if permitted, the plaintiffs have not submitted any invoices or support to show that any of these charges were reasonable or in any way related to the prosecution of either the Lanham Act claims or the misappropriation of name claims. For example, the plaintiffs have not submitted anything to establish what the photocopying charge was per page or how many pages were copied or whether the telephone and internet charges were separate charges or a portion of flat rates the firm paid for telephone and internet services.

Similarly, charges for legal research and document hosting should be considered part of the overhead costs of plaintiffs' counsel, but in any event should not be awarded because plaintiffs have failed to submit any invoices or support to show that any of these charges were reasonable or in any way related to the prosecution of either the Lanham Act claims or the misappropriation of name claims.

The plaintiffs also argue that "there is absolutely no basis to apportion Kirby's legal fees or expenses following the Court's August 12, 2016 summary judgment order, after which Kirby possessed *only* claims concerning Defendants' unauthorized use of Kirby's trademarked name." Doc. 640, p. 3. This ignores the fact that different plaintiffs brought different claims. BKI asserted the trademark claims; BK asserted the misappropriation of name claim. There was no trademark claim presented at trial against LPE.

Also, the plaintiffs' argument ignores the reality that the court's final ruling on summary judgment was not entered until July 27, 2018. Doc. 365. The plaintiffs' argument, therefore, even if accepted, would only relate to fees incurred after July 27, 2018 and the plaintiffs still have not separated the fees related to prosecution of the Lanham Act claims from the misappropriation of name claim. The vast majority of plaintiffs' fees were incurred during the time from 2013 until July 2018 when they were pursuing claims other than those that ultimately went to trial. After July 2018, according to the plaintiffs' submission, the actual attorneys' fees claimed were $268,927.

Another issue the plaintiffs fail to substantiate in their submission is the reasonableness of the fees they incurred. This cannot simply be presumed. For example, the plaintiffs submitted a trial exhibit list that included two-hundred twenty-two (222) exhibits and yet ultimately only twenty-nine (29) of them were admitted as full exhibits. Doc. 577. The defendants objected to many of the plaintiffs' proposed exhibits and it seemed as though plaintiffs had simply "dumped" a list of exhibits on the defendants to burden the defendants with having to object to them without any real intent of ever using so many of these exhibits. For example, the plaintiffs proposed duplicative exhibits and exhibits consisting of discovery promulgated upon parties and non-parties to this action as well as responses, including objections, to such discovery (e.g.

notices of deposition, subpoenas, interrogatories and requests for production). In their request for attorneys' fees, the plaintiffs have failed to eliminate the unreasonable time plaintiffs' counsel spent preparing this unreasonable exhibit list and responding to the defendants' likely anticipated objections.

Finally, the plaintiffs only called two fact witnesses at trial, only one of whom they prepared for trial: Mr. Kirby himself. The only other fact witness, Bill Crane, was a defense witness called by plaintiffs. The plaintiffs also called just one expert witness. The evidentiary portion of the trial lasted less than two full days. Many of the key facts were never in dispute. *See, e.g.* stipulations of fact by the parties set forth in Exhibits BK-217, 218, and 222. Yet the plaintiffs seek attorneys' fees of $758,415.15 related to the Lanham Act claims, $32,460.00 related to the defense of counterclaims (that were not tried), and total legal fees and expenses as punitive damages in the amount of $885,889.66. The plaintiffs have failed to prove that the attorneys' fees they seek to recover are reasonable, as required under 15 U.S.C. §1117(a).

### III. Conclusion

For all the reasons set forth in their prior memorandum (Doc. 615) and for the additional reasons set forth above, the defendants submit that the plaintiffs have failed to establish that there is anything exceptional about this case that would justify an award of attorneys' fees to the plaintiffs under the Lanham Act, 15 U.S.C. §1117(a), that BK is entitled to an award of attorneys' fees under his misappropriation of name claim, or that the fees they claim are reasonable.

DEFENDANTS,
LASERPERFORMANCE (EUROPE)
LTD, and QUARTER MOON, INC.,

 /s/ Peter T. Fay
Douglas S. Skalka (ct00616)
Peter T. Fay (ct08122)
Robert B. Flynn (ct15803)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Tel: 203.821.2000
Fax: 203.821.2009
dskalka@npmlaw.com
pfay@npmlaw.com
rflynn@npmlaw.com

## CERTIFICATION

I hereby certify that on July 13, 2020 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

 /s/ Peter T. Fay
Peter T. Fay (ct01822)
NEUBERT, PEPE & MONTEITH, P.C.