UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BRUCE KIRBY, INC. ET AL | : | |
| | : | CASE NO. 3:13-CV-00297 (JAM) |
| Plaintiffs, | : | |
| | : | |
| V. | : | |
| | : | |
| LASERPERFORMANCE (EUROPE) LIMITED, ET AL. | : | |
| | : | |
| Defendants. | : | July 20, 2020 |

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION AND RULE 59 MOTION FOR NEW TRIAL**

Douglas S. Skalka, Esq.
Peter T. Fay, Esq.
Robert B. Flynn, Esq.
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510

## TABLE OF CONTENTS

                                                                                                                       **Page**

I.    THE COURT SHOULD DISMISS PLAINTIFFS CLAIMS AGAINST QMI FOR LACK OF STANDING………………………………………………...1

        A.  Kirby does not have standing to sue QMI for misappropriation of his name……………………………………………………………………………...1

        B.  BKI does not have standing to sue for QMI under the Lanham Act for QMI's use of BRUCE KIRBY on plaques on Laser Sailboats…………………..2

II.   DEFENDANTS DID NOT WAIVE THE RIGHT TO MOVE FOR A NEW TRIAL ON THE GROUNDS THAT THE EVIDENCE DOES NOT SUPPORT THE VERDICT……………………………………………………….4

III.  THE COURT SHOULD ORDER A NEW TRIAL FOR BKI'S TRADEMARK CLAIMS AND KIRBY'S MISAPPROPRIATION OF NAME CLAIM AGAINST QMI BECAUSE THE JURY'S FINDINGS CONCERNING CONSENT AND LIKELIHOOD OF CONFUSION ARE AGAINST THE WEIGHT OF THE EVIDENCE…………………………………..7

IV.  THE COURT SHOULD ORDER A NEW TRIAL FOR KIRBY'S MISAPPROPRIATION OF NAME CLAIM AGAINST LPE……………....……..8

        A.  The evidence does not support the damage award against LPE……………….8

        B.  The evidence does not support a punitive damage award against LPE………..10

V.   CONCLUSION……………………………………………………………….10

# TABLE OF AUTHORITIES

*Decisions*                                                                                                              *Page*

*Alexander v. Yale Univ.*, 631 F.2d 178 (2d Cir. 1980) ..................................................................1

*Baskin v. Hawley*, 807 F.2d 1120 (2d Cir. 1986)..........................................................................6

*Gurski v. Rosenblum & Filan, LLC*, 276 Conn. 257 (2005)..........................................................2

*Jorgensen v. York Ice Mach. Corp.* 160 F.2d 432 (2d Cir. 1947)..................................................6

*MacDermid Printing Sols. LLC v. Cortron Corp.*, 833 F.3d 172 (2d Cir. 2016)..................8

*Macquesten Gen. Contracting, Inc. v. HCE, Inc.*, 128 F. App'x 782 (2d Cir. 2005)...............5

*Muryn v. New York Cent. R.R. Co.*, 270 F.2d 645 (2d Cir. 1959)..................................................6

*Oliveras v. Am. Exp. Isbrandtsen Lines, Inc.*, 431 F.2d 814 (2d Cir. 1970).....................5, 6

*Russo v. New York*, 672 F.2d 1014 (2d Cir. 1982).........................................................................5

*Sojak v. Hudson Waterways Corp.*, 590 F.2d 53 (2d Cir. 1978)....................................................5


*Secondary Sources*

Fed. R. Civ. P. 12. ......................................................................................................................... 1

Fed. R. Civ. P. 50..........................................................................................................................5, 6

Fed. R. Civ. P. 59..........................................................................................................................5, 7

9B Fed. Prac. & Proc. Civ. § 2531 (3d ed.)......................................................................13

11 Fed. Prac. & Proc. Civ. § 2806 (3d ed.)......................................................…..........................6


## I. THE COURT SHOULD DISMISS PLAINTIFFS CLAIMS AGAINST QMI FOR LACK OF STANDING.

Plaintiffs contend that defendants' motion to dismiss for lack of standing is an untimely motion for summary judgment an improper motion for judgment as a matter of law.[1] P. Br. p. 9. The argument is baseless. Defendants can raise issue of standing at any time. Fed. R. Civ. P. 12(h)(3). It is procedurally distinct from a motion for judgment as a matter of law. Plaintiffs were required to prove facts sufficient to establish standing at trial. *Alexander v. Yale Univ.*, 631 F.2d 178, 185 (2d Cir, 1980). They did not.

### A. Kirby does not have standing to sue QMI for misappropriation of his name.

The Court should enter judgment against Kirby on his misappropriation of name claim against QMI because he lacks standing to sue QMI for using his name in compliance with contracts that he created and then assigned to GSL.

Kirby argues that QMI's motion should be denied because QMI failed to prove that Kirby assigned his "publicity rights" to GSL. P. Br. p. 18. Significantly, QMI does not claim that Kirby assigned his "publicity rights" in general. Instead, it claims that Kirby assigned a discrete right to use his name in a specific phrase on the Builder Plaque for a specific product – the Laser. Kirby assigned to GSL the right to authorize the manufacture and sale of Lasers with the words "designed by Bruce Kirby" on Builder Plaques affixed to Laser sailboats.

Kirby claims that QMI failed to prove the assignment. P. Br. p. 18. In its Memorandum of Law ("D. Br."), QMI explained the basis for its claim. Kirby included the phrase "designed by Bruce Kirby" on Builder Plaques as a requirement in the Construction Manual. *See* D. Br., Statement of Facts ("SOF") §D. He made compliance with the Construction Manual a

---

[1] References to Plaintiffs' memorandum of law in opposition to defendants' Motion to Dismiss and for New Trial use the citation form "P. Br." followed by the page number. Defendants also adopt the definitions the parties have used in post-trial briefing to refer to parties, witnesses and documents.

1

requirement of the 1989 Builder Agreement. *Id.*, SOF §A. By virtue of the Builder Agreement, Kirby had the right to require the use of his name on the Builder Plaques, and QMI had the right to use his name on the Builder Plaques.

Kirby then assigned all of his rights under the 1989 Builder Agreement and the Construction Manual to GSL. *Id.*, SOF §E. GSL thereby bought the right to require QMI to use "designed by Bruce Kirby" on Builder Plaques. The 1989 Builders Agreement remained in effect between June 2008, when Kirby assigned his rights to GSL and April 23, 2013, the date QMI stopped selling Lasers with Kirby's name on the Builder Plaques. *Id.* These facts are uncontested.

Kirby questioned whether Connecticut courts recognize the assignment of a person's publicity rights. In fact, they generally view that contract rights are freely assignable. *See Gurski v. Rosenblum & Filan, LLC*, 276 Conn. 257, 266 (2005) (comparing assignability of contract rights and tort claims). Beyond raising this issue, Kirby presents no basis for treating the discrete right in question differently from any other contract right.

Kirby has failed to explain how he was injured by QMI's authorized use of the Builder Plaques as required by its valid existing contract with GSL. By failing to explain how evidence produced at trial established injury-in-fact, Kirby has failed to establish standing. Therefore, his claim against QMI for misappropriation of name should be dismissed.

### B. BKI does not have standing to sue for QMI under the Lanham Act for QMI's use of BRUCE KIRBY on plaques on Laser sailboats.

The Court should enter judgment in QMI's favor on BKI's Lanham Act claims because BKI lacks standing to sue for QMI's use of the Bruce Kirby name on plaques on Laser sailboats between January 2011 and April 2013.

BKI contends that QMI's motion should be denied because it failed to prove that BKI assigned its trademark rights to Kirby's name, and it stipulated to the ownership of the trademark. QMI does not challenge that BKI was the registered owner of the BRUCE KIRBY trademark. It was.

Instead, QMI contends BKI authorized QMI's use of Kirby's in a series of contracts, and then assigned those contracts to GSL, giving GSL whatever rights BKI had to continue the use of the Bruce Kirby name as authorized by those agreements. BKI did not transfer its trademark rights to BRUCE KIRBY. Rather, when it assigned the 1989 Builder Agreement to GSL, it assigned the discrete right to authorize use of the phrase "designed by Bruce Kirby" on Builder Plaques affixed to Lasers. It also assigned to GSL the discrete right to authorize builders to affix to Lasers ISAF Plaques distributed by ILCA that stated "authorized by Bruce Kirby, Inc." The Builder Agreement also gave QMI the right to sell Lasers with these Plaques. The 1989 Builders Agreement remained in effect between June 2008, when Kirby assigned his rights to GSL and April 23, 2013, the date QMI stopped selling Lasers with Kirby's name on the Builder Plaques. *Id.*

BKI has failed to point to a discrete personal injury that it suffered by QMI's continuing use of the phrases at issue. At all times, QMI built and sold Lasers in compliance with the Construction Manual. It affixed Builder Plaques and ISAF Plaques in accord with the Builder Agreement, Construction Manual and ILCA Rules. In short, it acted in compliance with the contract requirements originally authorized by BKI and subsequently assigned to GSL.

The only misconduct identified at trial was QMI's failure to pay royalties to GSL. In short, QMI complied with all contract terms, except the royalty provision. However, failure to pay royalties did not injure BKI in any way – that was a right owned solely by GSL. Despite the

3

royalty provision breach, GSL did not terminate the Builder Agreement or its express authorization to use Kirby's name on Plaques as required by the Construction Manual.

BKI cannot claim that the failure to pay royalties caused it injury. It has not explained how it was otherwise injured. Admittedly, the jury found a likelihood of confusion based on QMI's use of Kirby's name; however, that particular use was expressly authorized by the Builder Agreement and by the Construction Manual, both of which were agreed to by BKI and then assigned to GSL. An authorized use is, by definition, not an infringement. In its brief, BKI claimed that QMI's "unauthorized use" conferred standing. P. Br. p. 11. However, BKI failed to present evidence of any unauthorized use, and therefore failed to establish injury sufficient to prove standing.

To the extent that QMI is required, for purposes of challenging standing for a trademark claim, to show the written assignment of a the specific, discrete right to use Kirby's name at issue in this case, QMI relies on the 1989 Builder Agreement, the Construction Manual, the ISAF Agreement and the 2008 GSL Agreement. Together, they define the parties' rights and memorialize the assignment.

For the foregoing reasons, QMI requests that the Court dismiss Counts One and Two for lack of standing.

## II.   DEFENDANTS DID NOT WAIVE THE RIGHT TO MOVE FOR A NEW TRIAL ON THE GROUNDS THAT THE EVIDENCE DOES NOT SUPPORT THE VERDICT.

Plaintiffs contend that defendants waived the right to move for a new trial challenging the evidentiary basis for the verdict for two reasons: (i) they characterize defendants' motion as a challenge is to the "sufficiency of the evidence," rather as a challenge claiming the verdict is "against the weight of the evidence; and (ii) they contend that defendants waived the right to

4

challenge the sufficiency of the evidence because they did not file a Rule 50(a) motion for judgment as a matter of law. P. Br. pp. 6-8. The Court should reject this contention for the following reasons.

First, defendants' challenges to the jury's findings of no consent, likelihood of confusion, and the predicate for an award of punitive damages each argue that these findings are against the weight of the evidence. *See* §§III and IV.B, *infra*. By pointing out the deficiencies in plaintiffs' proofs, defendants merely highlight the weakness of plaintiffs' case in the face of strong evidence contrary to the jury's verdict. LPE concedes that its challenge to the damage award is, in part a challenge to the sufficiency of the evidence; *see* §III.A., *infra;* however, it does not concede that it waived the right to assert that challenge in a motion for new trial.

Second, this Circuit's case law is clear - a party need not file a Rule 50(a) motion to preserve the right to file a motion for new trial. *See Macquesten Gen. Contracting, Inc. v. HCE, Inc.*, 128 F. App'x 782, 784 (2d Cir. 2005). Rule 59 does not contain any such precondition. Plaintiffs appear to claim that defendants cannot seek a new trial when the verdict is entirely unsupported, but are entitled to a new trial where there is evidence to support the verdict, but the judge nevertheless believes the verdict was a serious error. The Second Circuit has rejected this line of argument.

> We are of the opinion that where the undisputed evidence results in a verdict that is totally without legal support justice requires a new trial despite counsel's failure to move for a directed verdict prior to submission of the case to the jury. To rule that an unintended flaw in procedure bars a deserving litigant from any relief is an unwarranted triumph of form over substance, the kind of triumph which, commonplace enough prior to our more enlightened days, we strive now to avoid whenever possible.

*Oliveras v. Am. Exp. Isbrandtsen Lines, Inc.*, 431 F.2d 814, 817 (2d Cir. 1970) (citations omitted); *see also Sojak v. Hudson Waterways Corp.*, 590 F.2d 53, 54 (2d Cir. 1978); *Russo v.*

5

*New York*, 672 F.2d 1014, 1021 (2d Cir. 1982); *Baskin v. Hawley*, 807 F.2d 1120, 1134 (2d Cir. 1986). In *Oliveras,* the court explained that the consequence of electing to forego a Rule 50(a) motion is the waiver of the right ***to move post-trial for judgment on the grounds of insufficiency of the evidence***. It does not result in the waiver of the right ***to move for a new trial*** for that same unsupported verdict.

The only two cases that plaintiffs cite in support of the waiver principle they ask the Court to adopt, *Jorgensen v. York Ice Mach. Corp.* 160 F.2d 432 (2d Cir. 1947), and *Muryn v. New York Cent. R.R. Co.*, 270 F.2d 645 (2d Cir. 1959), do not support it. Both decisions are inapplicable to defendants' motion for a new trial. In *Jorgensen*, the appellant failed to file a Rule 50(a) motion and ***failed to file a motion for a new trial challenging the evidentiary basis for the verdict***. 160 F.2d at 433-34. The issue in that decision was whether plaintiff could challenge the sufficiency of the evidence for the first time on appeal. *Muryn* is a two-paragraph *per curiam* decision that cites *Jorgensen* but fails to include any analysis that supports the principle that plaintiffs cite it for.

The trial court's authority to grant a new trial where the evidence does not support the verdict is an integral part of our civil justice system. It "involves an element of discretion which goes further than the mere sufficiency of the evidence. It embraces all the reasons which inhere in the integrity of the jury system itself." 11 Fed. Prac. & Proc. Civ. § 2806 (3d ed.) (quoting *Tidewater Oil Co. v. Waller*, 302 F.2d 638, 643 (10th Cir. 1962)). "[T]he trial judge does not sit to approve miscarriages of justice." *Id.* "[F]ar from being a denigration or a usurpation of jury trial," the right to grant a new trial "has long been regarded as an integral part of trial by jury as we know it. *Id.*

6

Plaintiffs ask the Court to adopt a principle that contradicts the purpose of Rule 59 – to authorize the trial court to safeguard against an unjust verdict. If our jurisprudence recognizes that a verdict against the weight of the evidence constitutes a serious error or a miscarriage of justice, then certainly a verdict unsupported by the evidence would be too. Simply stated, a judgment unsupported by evidence is entirely and unquestionably unjust. If a trial court can use its authority under Rule 59 to order a new trial to cure injustice, why is it constrained from doing so where a verdict is entirely unsupported by the evidence?

Neither case law nor the policy underlying the Court's Rules supports plaintiffs' request that the Court deem any of Defendants' claims waived.

### III. THE COURT SHOULD ORDER A NEW TRIAL FOR BKI'S TRADEMARK CLAIMS AND KIRBY'S MISAPPROPRIATION OF NAME CLAIM AGAINST QMI BECAUSE THE JURY'S FINDINGS CONCERNING CONSENT AND LIKELIHOOD OF CONFUSION ARE AGAINST THE WEIGHT OF THE EVIDENCE.

In its Post-Trial Brief, QMI asked the Court to enter judgment in its favor on the grounds that BKI failed to prove an entitlement to profits under the Lanham Act. If the Court declines to enter judgment in QMI's favor, QMI asks the Court to enter an order for new trial of BKI's Lanham Act claims on two grounds: (i) the jury's implied finding that QMI used Kirby's name without BKI's consent is against the weight of the evidence; and (ii) the jury's implied finding that QMI's use of Kirby's name created a likelihood of confusion as to source, sponsorship, approval or affiliation. QMI also requests a new trial for Kirby's claim of misappropriation of name claim against QMI on the grounds that the jury's implied finding that QMI used Kirby's name without his consent on the grounds that the finding is against the weight of the evidence.

BKI's only argument in opposition to a new trial was its assertion that the Court should not overturn the jury's verdict because the issues were "sharply contested" and based on credibility

7

assessment of the witnesses.[2]  P. Br. 19.  Significantly, the trial's only two facts witnesses – Crane and Kirby -- did not offer conflicting testimony.  Moreover, QMI does not question their credibility.  QMI bases its argument concerning *consent* on evidence of the parties' agreements, and on manufacturing and sales procedures and specifications required by the 1989 Builder Agreement, the Construction Manual, ILCA Rules, and the parties' other agreements. The substance of these documents is undisputed.  QMI relies in part of Kirby's and Crane's testimony to argue that the verdict concerning *likelihood of confusion* is against the weight of the evidence. Both witnesses testified that those Laser owners who looked of the plaques did so to confirm that the Lasers were race eligible.  That testimony is the only evidence of Laser owners' connection to the Plaques.  In fact, the boats were race eligible.  Therefore, the evidence establishes that Plaques did not cause confusion, nor were they likely too – they accurately communicated race eligibility to those Laser owners who looked for them.

## IV. THE COURT SHOULD ORDER A NEW TRIAL FOR KIRBY'S MISAPPROPRIATION OF NAME CLAIM AGAINST LPE.

### A. The evidence does not support the damage award against LPE.

LPE moves for a new trial or remittitur on the grounds that the verdict is demonstrably excessive when viewed in the light of the evidentiary record.  The Court should grant a new trial because the damage award is wholly unsupported by the evidence and is, therefore, a miscarriage of justice. *See MacDermid Printing Sols. LLC v. Cortron Corp.,* 833 F.3d 172, 190-91(2d Cir. 2016) (damage is excessive under Connecticut law when the record does not support the award).

Kirby asks the Court to assume that the jury awarded just 15% of Kirby's claim for all revenue from June 2010 through to April 23, 2013, the period during which he claims LPE

---

[2] BKI did not respond substantively to QMI's argument, other than to refer the Court back to its earlier submissions. P. Br. p. 19.

8

misappropriated his name. P.Br. pp. 22-23. This assumption is unsupportable. The jury unmistakably calculated damages as 100% of revenue between October 1, 2012 and April 23, 2013. Its damage figure matches to the penny the total revenue earned by LPE from October 2012 to April 23, 2013.[3] This fact leads to two further inescapable conclusions.

First, it is clear that the jury measured damages as ***all revenue earned*** by LPE during that time period. This fact frames the issue for the Court: is an award of 100% of revenue from the sale of Lasers a serious error, a miscarriage of justice, or excessive? The answer to each question is "yes." It is an irrefutable fact that LPE incurred expenses to build the Lasers it sold.[4] On this basis alone, an award of all revenue is excessive. Moreover, the record is devoid of evidence of the extent to which ***any*** Laser purchasers in Europe, the Middle East or Africa based their purchasing decisions on the appearance of the name Bruce Kirby on the Builder Plaque. General testimony that some owners who wished to race looked for Plaques to confirm race-eligibility, without any evidence of the percentage of consumers who purchased Lasers to race, did not provide the jury with data sufficient to quantify the commercial benefit LPE received from the use of the Plaques. Kirby had the burden of proving commercial benefit to a reasonable degree of certainty. He failed. Consequently, the damage award is excessive and unsupported by the evidence and is therefore unjust.

The second inescapable conclusion the Court must draw from the amount of the damage award is that the jury determined that LPE's misappropriation of Kirby's name was limited in time from October 1, 2012 through April 23, 2013. Thus, if the Court orders a new trial on

---

[3] Ex. 220 is a table that lists LPE's revenue by month from June 2010 through April 23, 2013. The total sum of revenue for that time period is $16,503,016.32. The sum of all revenue for the months from October 2012 through April 23, 2013 is exactly $2,520,578.81 – the exact amount awarded by the jury.

[4] QMI's expenses for the time period from October 2011 through April 2013 were approximately 88.25% of its revenues. *See* Defendants' Post-Trial Brief pp. 28-29 (Doc. 611).

9

damages, it should limit the new trial to any damages incurred between October 1, 2012 and April 23, 2013.

### B. The evidence does not support a punitive damage award against LPE.

In response to LPE's claim that the evidence does not support a finding of punitive damages, Kirby refers to Plaintiffs' discussion of the evidence their previous briefing. Indeed, Defendants have briefed extensively the fact that defendants both used Kirby's name to comply with the Construction Manual and ILCA Rules, and the fact the size and location of Kirby's name on the Builder Plaque and on the Laser makes the claim that defendants used it to sell Lasers untenable. However, Kirby has never responded to the claim that, by virtue of his assignment of the 1983 Builder Agreement to GSL, he sold to GSL his right to claim any commercial benefit from the sale of Lasers to GSL. Accordingly, the use of his name for a commercial benefit was not a violation *his* rights. To the extent it violated any party's rights, those rights belonged to GSL. For that reason, the finding of liability and the punitive damage award should be set aside, and a new trial granted on the issue.

### V.   CONCLUSION.

Based on the foregoing argument and the evidence and argument set forth in their memorandum of law in support of their motion to dismiss and motion for new trial, as well as the argument and evidence set forth in their post-trial brief, defendants request that all claims against QMI be dismissed, or, failing that, that an order enter for new trial on all claims against QMI. Defendants further request a new trial on Kirby's claim against LPE.

DEFENDANTS,
LASERPERFORMANCE (EUROPE) LTD,
And QUARTER MOON, INC.,


/s/ Robert B. Flynn
Douglas S. Skalka. (ct00616)
Peter T. Fay (ct08122)
Robert B. Flynn, Esq. (ct15803)
NEUBERT, PEPE & MONTEITH, P.C.
195 Church Street, 13th Floor
New Haven, CT 06510
Tel: 203.821.2000
Fax: 203.821.2009
dskalka@npmlaw.com
pfay@npmlaw.com
rflynn@npmlaw.com

11

## **CERTIFICATION**

I hereby certify that on July 20, 2020 a copy of the foregoing was filed electronically [and served by mail on anyone unable to accept electronic filing]. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system [or by mail to anyone unable to accept electronic filing]. Parties may access this filing through the Court's system.

/s/ Robert B. Flynn
Robert B. Flynn, Esq. (ct15803)
NEUBERT, PEPE & MONTEITH, P.C.